Beth G. Baldinger, Esq. (BGB-0852)
MAZIE SLATER KATZ & FREEMAN, LLC
103 Eisenhower Parkway
Roseland, New Jersey  07068
(973) 228-9898
Attorneys for Plaintiff

## UNITED STATED DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| XAVIER INGRAM,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF CAMDEN, CAMDEN COUNTY POLICE DEPARTMENT; JEREMY MERCK; ANTONIO GENNETTA; MARK MARCHIAFAVA; JOHN SCOTT THOMSON; ORLANDO CUEVAS; JOHN DOE(S) 1-50; ABC ENTITIES 1-10.<br><br>Defendants. | CIVIL ACTION NO.:<br><br><br><br>**COMPLAINT**<br>**AND JURY DEMAND** |

Plaintiff, Xavier Ingram, a resident of 714 Sycamore, City of Camden, Camden County, New Jersey, by way of complaint against defendants, hereby says:

### PARTIES

1. At all relevant times, plaintiff, Xavier Ingram ("Ingram") was a resident of the City of Camden, County of Camden, State of New Jersey.

2. Defendant, County of Camden ("Camden County") is a governmental entity authorized and operating under the laws of the State of New Jersey with responsibility for making governmental policy and for oversight of numerous county agencies and instrumentalities, including defendant Camden County Police Department.

3.      Defendant, Camden County Police Department -- also known as and operating as Camden County Police Department Metro Division (hereinafter "CCPD") -- is organized and exists pursuant to the laws of the State of New Jersey.

4.      Defendant CCPD is a policy making agency and instrumentality of Camden County responsible for providing police and law enforcement services to and on behalf of Camden County in the City of Camden pursuant to a Police Services Agreement between Camden County and the City of Camden.

5.      At all relevant times herein, defendant John Scott Thomson (hereinafter "Chief Thomson") was and is the duly appointed Chief of Police of the CCPD.  As such, Chief Thomson was the superior of defendants Orlando Cuevas, Jeremy Merck, Antonio Gennetta, Mark Marchiafava, and John Does 1-50 and was responsible for their screening, hiring, training, retention, supervision, discipline and conduct.  Chief Thomson was also responsible for the supervision and oversight of the CCPD, including the formulation and enforcement of the regulations, policies, procedures and standards of the CCPD regarding, inter alia, the use of force, arrest procedures, medical care, internal affairs investigations, discipline and overall conduct of police officers.  Chief Thomson was responsible for ensuring that all police officers and other personnel of the CCPD obeyed the laws of the United States, the State of New Jersey, and the lawful regulations and policies of the CCPD. At all relevant times, Chief Thomson was acting under color of New Jersey law, as an agent, servant and employee of Camden County and/or the CCPD, pursuant to the policies, customs and practices of Camden County and/or the CCPD.  Chief Thomson is being sued in this action in his official capacity.

6.     At all relevant times herein, defendant Orlando Cuevas (hereinafter "Asst. Chief Cuevas") was and is the duly appointed Assistant Chief of Police of the CCPD. Asst. Chief Cuevas, individually and/or jointly with Chief Thomson, acted as the superior of defendants Jeremy Merck, Antonio Gennetta, Mark Marchiafava, and John Does 1-50 and was responsible for their screening, hiring, training, retention, supervision, discipline and conduct.  Asst. Chief Cuevas, individually and/or jointly with Chief Thomson, was also responsible for the supervision and oversight of the CCPD including the formulation and enforcement of the regulations, policies and procedures of the CCPD regarding, inter alia, the use of force, arrest procedures, medical care, internal affairs investigations, discipline and overall conduct of police officers.  Asst. Chief Cuevas, individually and/or jointly with Chief Thomson, was responsible for ensuring that all police officers and other personnel of the CCPD obeyed the laws of the United States, the State of New Jersey, and the lawful regulations and policies of the CCPD. At all relevant times, Asst. Chief Cuevas was acting under color of New Jersey law, as an agent, servant and employee of Camden County and/or the CCPD, pursuant to the policies, customs and practices of Camden County and/or the CCPD.  Asst. Chief Cuevas is being sued in this action in his official capacity.

7.     At all relevant times herein, defendant Jeremy Merck (Badge #126) (hereinafter "Merck") was a Sergeant in the CCPD and acting under color of New Jersey law as an agent, servant and employee of Camden County and/or the CCPD. Merck is being sued in this action in his official capacity.

3

8.     At all relevant times herein, defendant Anthony Gennetta (Badge #357) (hereinafter "Gennetta") was a police officer in the CCPD and acting under color of New Jersey law as an agent, servant and employee of Camden County and/or the CCPD. Gennetta is being sued in this action in his official capacity.

9.     At all relevant times herein, defendant Mark Marchiafava (Badge #354) (hereinafter "Marchiafava") was a police officer in the CCPD and acting under color of New Jersey law as an agent, servant and employee of Camden County and/or the CCPD. Marchiafava is being sued in this action in his official capacity.

10.    At all relevant times, defendants John Does 1 through 50 (fictitious designation for one or more unidentified individuals)("John Does") were duly appointed police officers, supervisors, technicians, agents, servants, and/or employees of Camden County and/or CCPD acting under color of New Jersey law.

11.    At all relevant times, defendants ABC Entities 1 through 10 (fictitious designation for one or more departments, agencies or divisions of Camden County and/or CCPD ("ABC Entities") were responsible for the CCPD, its police and law enforcement personnel and/or services and were acting under color of New Jersey law.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A.     EXCESSIVE USE OF FORCE IN ARREST

12.    On June 12, 2014 at approximately 9:40 p.m. defendants, Merck, Gennetta and Marchiafava (collectively "Defendant Officers") were assigned to the CCPD's Community Safety Team with Merck as the supervisor. The Defendant Officers were on foot patrol conducting a 'sweep' of the Chestnut Court apartment complex.

4

13.    As the Defendant Officers entered the courtyard of Chestnut Court Apartments, Ingram was walking towards the adjacent parking lot which leads to Eddie's Liquor Store ("Eddie's store") located at the corner of S. 7th Street and Chestnut Street.

14.    As the Defendant Officers followed Ingram across the parking lot, Ingram was aware that the Defendant Officers were directly behind him and held his arms and hands above his head showing that they were empty.  The Defendant Officers did not stop, detain or speak to Ingram before he entered Eddie's store.

15.    While in Eddie's store, Ingram purchased a soda and met up with his friend. The two had made plans earlier in the evening to meet at Eddie's store and return to his friend's home for the evening.

16.    As Ingram exited Eddie's store with his friend he was suddenly approached and shoved by Gennetta and Marchiafava.  Scared, Ingram turned away and ran down South 7th Street into the parking lot of the Spanish Restaurant. Gennetta and Marchiafava pursued Ingram.  Ingram then ran out of the Spanish Restaurant parking lot into the middle of South 7th Street yelling "I give up", "I surrender" or words to that effect and laid down onto the street with his hands out in front of him.  Gennetta and Marchiafava immediately jumped on Ingram and handcuffed him.  Ingram did not resist in any fashion.  Merck arrived at the scene as Ingram was being arrested.

17.    As Ingram was handcuffed and face down on the street, the Defendant Officers violently stomped on the back of Ingram's neck and back and further proceeded to viciously strike him.  An officer then placed his boot on the back of Ingram's neck and intentionally stepped down forcefully. Ingram heard the sound of his neck break and immediately felt excruciating pain. Ingram screamed for the Defendant Officers to stop,

that his neck hurt and he could not feel his arms and legs.  Merck then told Ingram to "shut up" and kicked him. The Defendant Officers' use of unjustified, unnecessary and excessive force in arresting Ingram was objectively unreasonable and done under color of New Jersey law in violation of Ingram's right to be free of unlawful and unreasonable seizure under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution.

18.     Further evidencing the violent propensities and lawless attitude of the Defendant Officers and John Does was their assault of an eyewitness, Darren Dickerson ("Dickerson"). As Dickerson was passing by on the sidewalk he observed the Defendant Officers and John Does physically assaulting Ingram while he was handcuffed on the street.  Dickerson told the police to stop and they responded by threatening him in a menacing tone, to wit: "move on, unless you want some of this too." Dickerson, disturbed by his observations of the Defendant Officers assaulting Ingram and their threat to him, yelled at the Defendants and proceeded to walk away. Moments later, a police cruiser pulled up alongside Dickerson at which time multiple CCPD officers, including several of the Defendant Officers, attacked Dickerson.   The CCPD officers violently forced Dickerson to the ground face down and handcuffed him.   The CCPD officers then forcefully, violently and repeatedly stomped on and kneed Dickerson in his back and kicked his ribs. Dickerson suffered painful injuries and needed medical care. The CCPD officers forced Dickerson into the back of a patrol car and took him to the police station where they charged him. The police then took Dickerson to the hospital emergency room and after he was discharged they incarcerated him in jail. The charges have since been dismissed.

19.     The aforementioned acts and omissions were done pursuant to official policy and/or the policies, customs and practices of Camden County and/or the CCPD.

**B.     FAILURE TO PROVIDE MEDICAL CARE**

20.     At the above time and place Ingram was handcuffed and under the control and custody of the Defendant Officers and John Does.

21.      Defendant Officers and John Does heard Ingram complain of great pain in his neck and that he could not feel his arms and legs.  These police officers assessed and checked Ingram.  They lifted up his handcuffed arms and observed as his arms dropped down as dead weight.  These officers then forcefully rolled Ingram over onto his back and observed that he had no feeling or movement in his legs or body which were limp and lifeless. These defendants then forcibly pulled Ingram up into a sitting position - which he was unable to hold - and then shoved him over and/or recklessly released him causing him to fall forward and strike the ground. The defendants again proceeded to forcefully move Ingram, including but not limited to pulling him up into a sitting position and holding him upright against an officer's leg - with his head and neck unsupported - and held him in this position until the ambulance arrived.

22.     The Defendant Officers and John Does had first aid and/or First Responder training in emergency medical care in which they were taught that when a person is suspected of having a spinal injury that they must immediately stabilize their spine and not move them. The defendants' failure to stabilize Ingram's spine and forcefully moving him was a violation of their training, the standard of care, CCPD policies and their duty to provide medical care to Ingram in violation of his rights as protected by the Fourth, Fourteenth and Eight Amendments of the U.S. Constitution.

23.     The aforementioned acts and omissions were done pursuant to official policy and/or the policies, customs and practices of Camden County and/or the CCPD.

C.     **INJURIES AND DAMAGES**

24.     Cooper University Medical Center reports that the mechanism of Ingram's injuries was due to assault. Ingram sustained massive injuries to multiple areas of his cervical spine which include, but are not limited to, the following:

- Left vertebral artery dissection.
- Fractures at C4 and C5 with post-traumatic anterorolishthesis of C4 on C5.
- Extrusion of the C4-5 discs and retrolisthesis of the C5 vertebrae into the central canal.
- Severe spinal cord compression at C4-C5.
- Jumped left C4-C5 facet and perched right C4-C5 facet.
- Epidural hemorrhage at C4-C5.
- Severe injury and disruption of the ligaments at C4-C5.
- Disc protrusion at C2- C3.
- Cord contusion at C3 – C5.
- Significant edema in the muscles and soft tissues from C2 through C5 levels.
- Large disc fragment dislocated behind C4 - C5.

Ingram sustained the aforementioned injuries as a direct and proximate result of the aforesaid actions and omissions of the Defendant Officers and has been rendered a quadriplegic who is permanently and totally disabled.

D.     **CONSPIRACY TO COVER-UP OFFICERS' WRONGFUL CONDUCT**

25.     Chief Thomson and John Does have conspired to cover-up the wrongful conduct of the Defendant Officers including having posted on CCPD's website false and misleading statements on June 13, 2014, to wit: asserting that Ingram was handcuffed without incident, that Ingram complained of injuries from his fall; that the Officers immediately rendered aid to Ingram by stabilizing him; and that Ingram's "tragic injury

appear to be an accident of his own accord" - attributing his injuries to his having slipped

an fallen on the street.

26.     Camden County and CCPD operate 121 high-tech cameras ("Skycams")

throughout the City of Camden which are monitored by trained technicians in CCPD's

'Real Time Tactical Operation Intelligence Center'.  The Skycam cameras are so powerful

that it has been reported they are able to 'spot a stash in a discarded pack of Newports from

blocks away."   Camden County and CCPD have live audio feed into the Intelligence

Center through microphones, officers' personal radios, patrol car radios and other audio

equipment throughout the city.

27.     Camden County and CCPD had a Skycam camera trained on the pursuit and

arrest of Ingram, as well as all events leading up to his being removed from the scene by

ambulance.   However, to date they have refused requests to disclose all of the Skycam

video footage and taped radio transmissions of the officers at the scene of the subject

events.  Instead, Camden County and/or CCPD did release a small portion of the skycam

video footage. While the Skycam video was trained on the events as they were unfolding,

the focus of the camera remains pulled back so that the officers' conduct is unclear. Upon

information and belief, the focus of the camera was intentionally pulled back so as cover-

up and conceal the illicit and wrongful conduct of the Defendant Officers and John Does.

## **JURISDICTION**

28.     This Court has jurisdiction pursuant to Title 28 of the United States Code,

Section 1331, and Title 42 of the United States Code, Sections 1983.

29.     Venue is properly laid in the United States District Court of the District of

New Jersey pursuant to Title 28 United States Code Section 1391(b) in that all of the acts

complained of herein occurred in the district and that the defendants are citizens of, reside in, or are public entities of the State of New Jersey and domiciled within this district.

30.     The matter in controversy herein involves an amount in excess of $75,000 (Seventy Five Thousand Dollars) exclusive of interest.

## FIRST COUNT

### LIABILITY FOR EXCESSIVE USE OF FORCE
### IN VIOLATION OF 42 U.S.C. §1983

31.     Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth herein at length.

32.     The Defendant Officers used unjustified, unnecessary and excessive force in arresting Ingram.  As Ingram was handcuffed and face down on the street, Defendant Officers violently stomped on the back of Ingram's neck and back and further proceeded to strike him. An officer placed his boot on the back of Ingram's neck and intentionally stepped down forcefully breaking Ingram's neck and causing multiple spinal injuries. Ingram screamed for the Defendant Officers to stop, that his neck hurt and he could not feel his arms and legs. Merck told Ingram to "shut up" and kicked him. The nature and extent of the force used by the Defendant Officers was objectively unreasonable and done with deliberate indifference to Ingram's rights, health, safety and welfare.

33.     The Defendant Officers were acting under color of New Jersey law when they engaged in this illicit conduct which deprived Ingram his civil and constitutional rights to be free of unlawful and unreasonable seizure as guaranteed by the Fourth, Eighth and Fourteenth Amendments of the United States Constitution and/or by the New Jersey Constitution and as such the aforementioned acts constitute an actionable violation of 42 U.S.C. §1983.

34.     The Defendant Officers acted maliciously in that they consciously violated Ingram's civil and constitutional rights, and consciously intended to injure Ingram in the manner done knowing it was unlawful to do so, and/or they acted in a wanton manner by recklessly and/or callously disregarding Ingram's rights.

35.     As a direct and proximate result of the aforementioned violations of 42 U.S.C. §1983, Ingram has suffered and will continue to suffer severe and permanent injures, has been and will continue to endure extreme pain, suffering, emotional distress and mental anguish, has and will continue to suffer the loss of enjoyment of life, has been deprived of his civil and constitutional rights, and has sustained other damages.

WHEREFORE, plaintiff Xavier Ingram demands judgment against defendants County of Camden, Camden County Police Department, Jeremy Merck, Antonio Gennetta, Mark Marchiafava, John Does 1-50, ABC Entities 1-10 jointly and severally, for compensatory damages with interest; punitive damages; attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

## SECOND COUNT

### LIABILITY FOR FAILURE TO PROVIDE MEDICAL CARE IN VIOLATION OF 42 U.S.C. 1983

36.     Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth herein at length.

37.     Defendant Officers owed a duty to Ingram, who was handcuffed, arrested and in their custody and control, to provide medical care and to exercise due and reasonable care to preserve his life, health and safety.

38.     The Defendant Officers' training in first aid and/or as First Responders included the appropriate assessment, response and provision of medical care to persons who have, or are suspected of having, spinal injuries which includes immediate stabilization of the spine and not to move them. Defendant Officers knew that failure to provide this medical care posed a high risk for more serious and life threatening injuries and complications.

39.     Defendant Officers knew Ingram had severe pain in his neck, that he could not feel or move his arms, legs or body, and as such he presented with signs of paralysis and spinal cord injury suffered as a result of the use of force in arresting him which constituted a serious and life-threatening medical need necessitating medical care.

40.     Defendant Officers breached their duty and failed to provide Ingram with medical care in accordance with their training and official CCPD policies, procedures and standards. Specifically, they failed to immediately stabilize Ingram's spine and forcibly moved him, to wit: rolling him over; forcing him into a sitting position and then shoving him and/or recklessly releasing him causing him to fall forward and strike the ground; and then forcing him into a sitting position and holding him up against an officer's leg - with his head and neck not stabilized - until the ambulance arrived.   These actions and omissions were objectively unreasonable and/or done with deliberate indifference to Ingram's medical needs, rights and clearly foreseeable risks of further injury to Ingram.

41.     Defendant Officers were acting under color of New Jersey law when they exhibited the objectively unreasonable and/or deliberately indifferent conduct to Ingram's serious medical needs depriving Ingram of his civil and constitutional rights as guaranteed by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution,

and/or by the New Jersey Constitution, which acts and omissions constitute an actionable violation of 42 U.S.C. §1983.

42.     The Defendant Officers acted maliciously in that they consciously violated Ingram's civil and constitutional rights, and consciously intended to injure Ingram in the manner done knowing it was unlawful to do, and/or they acted in a wanton manner by recklessly and/or callously disregarding Ingram's rights.

43.     As a direct and proximate result of the aforementioned violations of 42 U.S.C. §1983, Ingram has suffered and will continue to suffer severe and permanent injures, has been and will continue to endure extreme pain, suffering, emotional distress and mental anguish, has and will continue to suffer the loss of enjoyment of life, has been deprived of his civil and constitutional rights, and has sustained other damages.

WHEREFORE, plaintiff Xavier Ingram, demands judgment against defendants County of Camden, Camden County Police Department, Jeremy Merck, Antonio Gennetta, Mark Marchiafava, John Does 1-50, and/or ABC Entities 1-10 jointly and severally, for compensatory damages with interest; punitive damages; attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

**THIRD COUNT**

**SUPERVISORY AND BYSTANDER LIABILITY
FOR CONSTUTIONAL VIOLATIONS UNDER 42. U.S.C. 1983**

44.     Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth at length herein.

13

45.     Defendant Merck was the supervisor with authority over subordinate officers Gennetta, Marchiafava, and John Does.  Merck observed the subordinate officers use of excessive, unnecessary and unjustified force against Ingram, and further observed their failure to provide medical care in failing to stabilize his spine and in moving him. Merck knew that the subordinate officers' acts and omissions were done with deliberate indifference and/or objectively unreasonable manner in violation of Ingram's constitutional and civil rights as guaranteed under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution and/or New Jersey Constitution.

46.     As the supervisor, Merck had a duty to intervene and stop the unconstitutional conduct by his subordinate officers.  Merck breached that duty by failing to intervene which resulted in violation of Ingram's constitutional and civil rights and serious physical injuries.  Accordingly, Merck is subject to bystander liability under Title 42 U.S.C. §1983.

47.     As the supervisor Merck had actual knowledge, personal involvement in and acquiesced to his subordinates' illicit actions and omissions towards Ingram, which resulted in violation of Ingram's constitutional and civil rights and serious physical injuries. Accordingly, Merck is subject supervisory liability under Title 42 U.S.C. §1983.

48.     Merck acted maliciously in consciously violating Ingram's federal rights and consciously intended to injure Ingram in the manner done knowing it was unlawful to do so, and further acted in a wanton manner by recklessly and/or callously disregarding Ingram's rights, health, safety and welfare.

49.     As a direct and proximate result of the aforementioned violations of 42 U.S.C. §1983, Ingram has suffered and will continue to suffer severe and permanent injures, has been and will continue to endure extreme pain, suffering, emotional distress and mental anguish, has and will continue to suffer the loss of enjoyment of life, has been deprived of his civil and constitutional rights, and has sustained other damages.

WHEREFORE, plaintiff Xavier Ingram, demands judgment against defendants Jeremy Merck, John Does 1-50, County of Camden, Camden County Police Department, and ABC Entities 1-10, jointly and severally, for compensatory damages with interest; punitive damages; attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

**FOURTH COUNT**

**GOVERNMENTAL LIABILITY FOR CONSTITUTIONAL
VIOLATIONS CAUSED BY INADEQUATE
POLICIES, PROCEDURES AND CUSTOMS**

50.     Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth herein.

**A.     BACKGROUND TO THE CCPD**

51.     Pursuant to the "Memorandum of Understanding In Furtherance of the Camden County Police Department", Camden County expressed its willingness to form a new county-wide police department and the City of Camden expressed its interest in joining it.  The plan was for the City of Camden to cease operating the City of Camden Police Department, lay off all of its staff and officers and have the CCPD provide police and law enforcement services to the City of Camden.  The newly formed CCPD would hire a number of former police officers and staff of the City of Camden Police Department.

This Memorandum of Understanding also provided that the City of Camden would share with Camden County the personnel records of current and laid off municipal law enforcement personnel, including but not limited to their training and discipline records. Upon information and belief, the City of Camden did provide such personnel records to Camden County.

52.     On or about January 26, 2013 Camden County, vis-à-vis a resolution passed by the Camden County Board of Freeholders, formed the CCPD.

53.     On or about March 19, 2013, Camden County approved the hiring of approximately 155 police officers who were or had been employed by the City of Camden Police Department. This included 15 superior ranking officers. Camden County also hired or authorized the hiring of approximately 120 police officers from outside of Camden County.

54.     As of April 30, 2013, the City of Camden Police Department ceased operations.

55.     As of May 1, 2013, and continuing through all times relevant hereto, the CCPD provided police and law enforcement services to the City of Camden pursuant to a Police Services Agreement.

**B.     BACKGROUND TO THE CITY OF CAMDEN POLICE DEPARTMENT**

56.     The City of Camden Police Department had a long-standing and extensive history of citizen complaints of police misconduct including excessive use of force and other violations of citizens' civil and constitutional rights, rule infractions and disciplinary problems with its police officers. The City of Camden Police Department's Internal Affairs Unit ("Internal Affairs") was reportedly plagued by failures to properly handle reports and

investigate complaints against its officers and other irregularities which permitted its officers' misconduct to continue.

57.     Camden County knew or should have known that there were multiple claims and lawsuits arising from illicit, unlawful and unconstitutional acts by the City of Camden Police Department police officers many of whom were hired to work for Camden County and CCPD.  Camden County knew or should have known that the City of Camden Police Department maintained a culture of wrongdoing while under the oversight and supervision of Chief Thomson and Asst. Chief Cuevas.  Despite knowing of this culture of wrongdoing, Camden County has failed to take any remedial action to prevent such wrongdoing by those City of Camden police officers and law enforcement personnel hired for CCPD.

58.     Two former officers with the City of Camden Police Internal Affairs Unit, Lt. Anthony Carmichael and Lt. John A. Sosinavage, filed suit against both Camden County and the City of Camden, as well as Chief Thomson and Asst. Chief Cuevas, alleging that they misused the Internal Affairs Department for improper purposes, including but not limited to, ordering that they charge officers with serious offenses without conducting investigations into the allegations; drop investigations into 'favored' officers, to focus on rule infractions rather than criminal/serious infractions; and that it was not necessary to follow the Attorney General Guidelines for internal affairs investigations. (Carmichael v. Police Chief John Scott Thomson, Case No. 1:14-cv-03323, U.S. District Court, Camden; Sonsinavage, v. Police Chief John Scott Thomson, Case No. 1:14-cv-03292, U.S. District Court, Camden).

**C.**    **POLICIES AND CUSTOMS CONTINUE UNCHECKED AT THE CCPD**

59.    Chief Thomson ascended through the ranks of the City of Camden Police Department, serving in various operational, investigative and command positions.  He also served as its Chief of Police for 5 years, since 2008, before being sworn in as the Chief of Police for CCPD on May 1, 2013.

60.    Asst. Chief Cuevas spent his entire 23 year career in Camden City Police Department working his way up the ranks until 2008 when he was promoted to Inspector of Operations and in 2010 he was named Inspector of Support Services.  On May 1, 2013, Cuevas  joined the CCPD as Deputy chief and was promoted to Assistant Chief of Police on October 28, 2013.

61.    Camden County and the CCPD knew that Chief Thomson and Asst. Chief Cuevas were final decision makers and policy makers, and the supervisors in charge of the hiring, training, supervision, discipline and oversight of police officers, and the overall operations in the City of Camden Police Department, including the internal affairs unit.

62.    Camden County and CCPD, having been provided with the personnel and disciplinary records of former City of Camden Police Department police officers and supervisory personnel, knew or should have known that those City police officers and supervisory personnel hired for CCPD had a history of complaints of police misconduct, including but not limited to excessive force, and that there had been a widespread pattern, practice and custom within that police force for violating the civil and constitutional rights of Camden citizens.  Further, Camden County and CCPD knew that its highest policy makers, decision makers and/or supervisors, Chief Thomson and Asst. Chief Cuevas, had tacitly approved such pattern, practice and customs and had acted with deliberate

indifference in failing to properly train, supervise and discipline the officers, including the Defendant Officers herein, to prevent future acts of misconduct.

63.     Camden County and the CCPD, by and through Chief Thomson and Asst. Chief Cuevas, have condoned and perpetuated a custom and practice of inadequate and improper investigations of civilian complaints against police officers in its internal affairs unit, as well as having failed to provide sufficient training, supervision and discipline of its officers, including the Defendant Officers herein, which constitutes tacit approval and encouragement of the customs and practices under which CCPD's officers' engage in conduct which violates the civil and constitutional rights of Camden citizens.

64.     Camden County and the CCPD, by and through Chief Thomson and Asst. Chief Cuevas, had actual notice that constitutional violations were likely to occur and acted with deliberate indifference in failing to properly screen, train, supervise its officers, and in failing to properly investigate complaints of police misconduct and discipline officers of the CCPD, including the Defendant Officers herein, which allowed this conduct to continue unchecked.

## D.     CONSPIRACY TO COVER-UP DEFENDANT OFFICERS' WRONGFUL CONDUCT IN FURTHERANCE OF CCPD POLICIES AND CUSTOMS

65.     Camden County and the CCPD, by and through Chief Thomson, Asst. Chief Cuevas and/or John Does have further perpetuated these unlawful policies, customs, and culture of wrongdoing by conspiring to cover-up the wrongful conduct of the Defendant Officers in this case. Such actions include but are not limited to (i) having posted on CCPD's website false and misleading statements on June 13, 2014, to wit: asserting that Ingram was handcuffed without incident, that Ingram complained of injuries

from his fall; that the Officers immediately rendered aid to Ingram by stabilizing him; and that Ingram's "tragic injury appear to be an accident of his own accord" - attributing his injuries to his having slipped an fallen on the street; (ii) manipulating the high-tech Skycam video camera which was trained on the events with Ingram as they were occurring so as to disguise, cover-up and conceal the officers' illicit and violent actions on Ingram; and (iii) condoning the preparation and filing of false police reports by the Defendant Officers regarding Ingram.

66.    All of the aforementioned acts and omissions of the Defendant Officers in violating plaintiff Ingram's rights under 42 U.S.C.§1983, were directly and proximately caused by official governmental policies, regulations, policies, customs and practices, formulated, tolerated and/or tacitly approved by Chief Thomson, Asst. Chief Ceuvas, John Does, Camden County and/or the CCPD.

67.    As a direct and proximate result of the aforementioned violations of 42 U.S.C. §1983, Ingram has suffered and will continue to suffer severe and permanent injures, has been and will continue to endure extreme pain, suffering, emotional distress and mental anguish, has and will continue to suffer the loss of enjoyment of life, has been deprived of his civil and constitutional rights and has sustained other damages.

WHEREFORE, plaintiff Xavier Ingram, demands judgment against defendants John Scott Thomson, Orlando Cuevas, John Does 1-50, County of Camden, CCPD and/or ABC Entities 1-10, jointly and severally, for compensatory damages with interest, attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

## FIFTH COUNT

## GOVERNMENTAL LIABILITY FOR CONSTITUTIONAL DEPRIVATIONS CAUSED BY INADEQUATE TRAINING AND SUPERVISION

68.     Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth herein at length.

69.     Camden County, CCPD, Chief Thomson, Asst. Chief Cuevas, John Does and/or ABC Entities had a duty to properly train and supervise their officers, including the Defendant Officers herein.   These defendants breached this duty in that the training provided to the CCPD officers was inadequate and they failed to adequately supervise their officers with deliberate indifference to the fact that their failure to properly train and supervise would obviously result in the violation of the civil and constitutionally protected rights of citizens, including those of plaintiff Ingram, to not be subject to excessive, unnecessary and unjustified use of force, be denied medical care for serious medical needs and other wrongs.

70.     As a direct and proximate result of the deliberate indifference to the need for proper training and supervision by Camden County, CCPD, Chief Thomson, Asst. Chief Cuevas, John Does and/or ABC Entities, plaintiff Ingram was deprived of his rights as guaranteed by the Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution and/or the New Jersey Constitution.

71.     As a direct and proximate result of the aforementioned violations of 42 U.S.C. §1983, Ingram has suffered and will continue to suffer severe and permanent injures, has been and will continue to endure extreme pain, suffering, emotional distress and mental anguish, has and will continue to suffer the loss of enjoyment of life, has been deprived of his civil and constitutional rights, and has sustained other damages.

WHEREFORE, plaintiff Xavier Ingram, demands judgment against defendants Camden County, CCPD, John Scott Thomson, Orlando Cuevas, John Does 1-50 and/or ABC Entities 1-10, jointly and severally, for compensatory damages with interest, attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## CERTIFICATION

I have been retained to represent plaintiff Xavier Ingram in connection with the within matter. I hereby certify that to the best of my knowledge the matter in controversy is not the subject of any other action pending in any court, or of a pending arbitration or administrative proceeding. There are no other parties of whom I am presently aware who should be joined in this action.

The defendants herein have been served with a Notice of Tort Claim pursuant to N.J.S.A. 59:9-1, et. seq., and plaintiff does herein reserve his right to seek to amend this action to add state law claims as against these defendants after expiration of the 6 month period of time as this Court has supplemental jurisdiction over such state law claims.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**MAZIE SLATER KATZ & FREEMAN, LLC**
Attorneys for Plaintiffs

BY: _____
BETH G. BALDINGER

Dated:  September 3, 2014

22