IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

XAVIER INGRAM and
DARREN A. DICKERSON,

            Plaintiffs,

   v.

COUNTY OF CAMDEN, et al.,

            Defendants.

HONORABLE JEROME B. SIMANDLE

Civil Action No.
14-5519 (JBS-KMW)

**MEMORANDUM
OPINION**

**SIMANDLE,** District Judge:

    1.   On June 14, 2014, Plaintiff Xavier Ingram was allegedly assaulted by several Camden County Police Officers resulting in catastrophic injuries including quadriplegia, in violation of 42 U.S.C. § 1983. As the alleged assault unfolded, Plaintiff Darren A. Dickerson was a bystander who yelled curse words at the police officers about their misconduct and allegedly was also attacked by certain police officers, causing injury, also in violation of 42 U.S.C. § 1983. Plaintiffs filed separate suits in this Court which were consolidated by the Court under this case number on January 15, 2019. (See Order [Docket Item 211].)

    2.   This matter comes before the Court by way of two motions to strike the opinions and testimony of expert witnesses Dr. James Yue, M.D., and Dr. Paul Ivancic, Ph.D., proffered by Plaintiff Ingram, filed by Defendants County of Camden, Camden County Police

Department, Chief John Scott Thomson, Orlando Cuevas, and Nicholas Marchiafava (hereinafter, collectively, "County Defendants"). (See Motion to Exclude the Opinions and Testimony of James Yue, M.D. (hereinafter "Yue Mot.") [Docket Item 140]; Motion to Exclude the Opinions and Testimony of Paul Ivancic, Ph.D. (hereinafter "Ivancic Mot.") [Docket Item 141].) The present motions were joined by Defendant Jeremy Merck, (see Letter [Docket Item 153]), and opposed by Plaintiff Ingram. (See Plaintiff Ingram's Brief in Opposition to Defendants' Motion to Preclude the Testimony of Plaintiff Ingram's Expert James Yue, M.D. (hereinafter "Yue Opp'n") [Docket Item 161]; Plaintiff Ingram's Brief in Opposition to Defendants' Motion to Preclude the Testimony of Plaintiff Ingram's Expert Paul Ivancic, Ph.D. (hereinafter "Ivancic Opp'n") [Docket Item 162].) Thereafter, County Defendants filed reply briefs in relation to each motion. (See Reply Brief in Further Support of Motion to Strike the Opinions and Testimony of James Yue, M.D. (hereinafter "Yue Reply") [Docket Item 186]; Reply Brief in Further Support of Motion to Strike the Opinions and Testimony of Paul Ivancic, Ph.D. (hereinafter "Ivancic Reply") [Docket Item 187].)

    3.    The context of the present Daubert motions, very briefly summarized, arises from an incident of a police foot-chase of the Plaintiff, Xavier Ingram, as the officers apprehended him upon

suspicion that he had discarded a pistol in a nearby parking area. As Ingram ran from the officers, he slipped and fell, seemingly feet first, on wet pavement, striking his buttocks and probably shoulders and head as he fell, all without being touched by the officers. Within less than a second, the officers jumped on or near his torso as he lay on the ground. The precise actions taken by the officers, and the necessity and degree of force imposed upon Plaintiff are in great dispute. It is not disputed that Plaintiff sustained grievous, paralyzing injuries to his cervical spine and spinal cord due to trauma suffered by his neck. The neck injuries included a fracture dislocation of the left C4-5 facet joint, a perched right facet, right-sided paramuscular injury, vertebral artery dissection, spinal cord displacement, and ejection of a large disc fragment behind the C4-5 vertebral bodies, all resulting in permanent quadriplegia. Plaintiff alleges the fall caused no injury and that the quadriplegia was the result of police officers kneeing his neck on the pavement and stomping on his neck. Plaintiff Ingram's experts at issue in this motion seek to offer opinions, inter alia, as to the causal mechanism of such an injury so as to rule out the slip-and-fall as the cause and to establish to a reasonable certainty that the officers' application of force was the cause. The Defendants have generally blamed the fall itself for all injuries, for which they could not be liable

since the officers did not touch him before the fall. There is also a significant dispute whether his injuries were caused by police roughness after he was arrested as they moved him in several ways without protecting his neck and spine.

4. The Court has considered the submissions and held oral argument with regard to these motions on February 26, 2019. Prior to the oral argument, on February 25, 2019, the Court convened two pre-hearing conference calls, off the record, with the attorneys to discuss the logistics pertaining to the oral argument and to encourage the parties to meet and confer in order to find any areas of agreement with respect to the present motion. All counsel agreed that testimony of these challenged experts would not be necessary at the Daubert hearing the next day.

5. For the reasons set forth below, County Defendants' motion to bar the opinion and testimony of Dr. Yue will be granted in part and denied in large part and County Defendants' motion to bar the opinion and testimony of Dr. Ivancic will be denied.

6. Dr. Yue and Dr. Ivancic furnished lengthy and detailed expert reports (initial and supplemental), accompanied by their impressive professional CV's, and each prospective witness was deposed by defendants at length. In some instances, defense counsel raised questions at disposition which went beyond the opinions expressed in the experts' reports and defense counsel now object

to the answers they received as being improper; this aspect of the motions was resolved by agreement of Plaintiff Ingram's counsel to not adduce such testimony beyond the experts' reports at trial.

7. The admissibility of Dr. Yue's and Dr. Ivancic's testimony is subject to Rules 702 and 703 of the Federal Rules of Evidence, which mandate that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert opinions may be based on

> facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

8. Rule 702 has been distilled into "a trilogy of restrictions on expert testimony: qualification, reliability, and

fit." Schneider ex. rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citation omitted). Qualification refers to the requirement that the witness possess specialized expertise. The Third Circuit has "interpreted the specialized knowledge requirement liberally, and ha[s] stated that this policy of liberal admissibility of expert testimony extends to the substantive as well as the formal qualification of experts." Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994)).

    9.    Reliability means that the expert's testimony must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation," and "[p]roposed testimony must be supported by appropriate validation...." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590 (1993). Daubert announced a non-exhaustive list of factors that bear on the inquiry of reliability: (1) whether the theory or technique can be and has been tested, (2) whether the theory or technique has been subjected to peer review, (3) the known or potential rate of error and the existence of and maintenance of standards controlling the technique's operation, and (4) general acceptance of the practice. Oddi v. Ford Motor Co., 234 F.3d 136, 144-45 (3d Cir. 2000) (quoting Daubert, 509 U.S. at 593-97). "[A]ny step that renders the analysis unreliable under the Daubert factors renders

the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." In re Paoli, 35 F.3d 717, 745 (3d Cir. 1994); see also In re TMI Litig., 193 F.3d 613, 695 (3d Cir. 1999); In re Human Tissue Products Liab. Litig., 582 F. Supp. 2d 644, 656 (D.N.J. 2008). However, reliability does not require correctness. In re Paoli, 35 F.3d at 744. Rather, the party need only demonstrate "by a preponderance of the evidence" that the expert's opinion bears adequate indicia of reliability, not that it is objectively "true." Krys v. Aaron, 112 F. Supp. 3d 181, 190 (D.N.J. 2015).

10.  The fit requirement "goes primarily to relevance" by "requir[ing] a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Daubert, 509 U.S. at 591-92. "In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." Schneider, 320 F.3d at 404 (citations omitted).

### Admissibility of Dr. Yue's Expert Opinions

11.  Dr. James J. Yue, M.D., is an orthopedic surgeon and an associate professor of orthopedic surgery at Quinnipiac University. (Yue CV [Docket Item 139-49], 1.) Dr. Yue graduated from Northwestern University Medical School in 1992, completed his residency in orthopedic surgery at Case Western University

Hospitals in 1997, subsequently completed two spinal trauma fellowships at the R.A. Cowley Shock Trauma Center, part of the University of Maryland Medical Center, and at the Centre for Spinal Surgery and Studies, part of the Queen's Medical Centre in Nottingham, United Kingdom. (Id. at 1-2.) Dr. Yue was an assistant professor of orthopedic surgery at the University of Medicine and Dentistry of New Jersey, Robert Wood Johnson Medical School from 1998-2002, after which time he taught at the Yale University School of Medicine from 2002-2017, whereafter he began his current position at Quinnipiac University. (Id.) Dr. Yue produced an expert report in this case regarding the injuries sustained by Plaintiff Ingram and their potential causes. (Yue Report [Docket Item 139-50].) In his report, Dr. Yue opined that "[Plaintiff] Ingram's slip and fall did not produce the cervical spine injury, regardless of whether he fell forward, backwards, or to his side landing on his stomach." (Id. at 6.) Further, Dr. Yue expressed his opinion that

> the first traumatic insult, which was the compression of the[Plaintiff Ingram's] neck with an officer's knee, resulted in a left sided perched or dislocated C4-5 facet, and the subsequent traumatic insult, which was the compression of the boot on [Plaintiff] Ingram's neck resulted in either the completion of the facet dislocation from its perched position or a worsening of the displacement and translation of the spinal canal leading to the spinal cord injury and disc herniation.

(Id.) Dr. Yue further opined that "the officers' actions in moving [Plaintiff] Ingram after inflicting traumatic forces to his neck and after they were aware of his complaints of pain and loss of feeling in his extremities caused further damage and injuries." (Id. at 7.)

12. County Defendants contend that Dr. Yue's report and testimony should be barred at trial because his opinion regarding the mechanism of Plaintiff Ingram's injuries is "speculative," because his opinion that Plaintiff Ingram's fall could not have caused his spinal injuries is likewise "speculative,"[1] and because Dr. Yue improperly opines as to Plaintiff Ingram's credibility. (Yue Br. [Docket Item 140-1], 6-11.)

13. Plaintiff Ingram responds that Dr. Yue's opinions are not speculative, because they rely on extensive medical documentation, including MRI and CT imaging, regarding Plaintiff Ingram's injuries. (Yue Opp'n [Docket Item 161], 1-2, 6-13.) Plaintiff Ingram additionally responds that Dr. Yue's opinions were not based solely on Plaintiff Ingram's deposition testimony, but rather that Dr. Yue found that Plaintiff Ingram's testimony was most consistent with the objective medical evidence. (Id. at

---

[1] The Court interprets County Defendants' arguments regarding the "speculativeness" of Dr. Yue's opinions as arguments that Dr. Yue's report and opinions rely on an improper or unreliable methodology.

13-16.) Plaintiff Ingram did, however, concede at oral argument that Dr. Yue should not be permitted to testify as to Plaintiff Ingram's veracity or credibility.

14. <u>Analysis</u>. Defendant's objection that Dr. Yue is not sufficiently qualified to render expert opinions in this case is not well-taken. Defendants essentially have argued that, despite Yue's experience, training, and certification as an orthopedic surgeon, that he is somehow not qualified because he has not seen this exact type of injury in his practice. Dr. Yue has explained that he has indeed been called upon to perform surgery and treat patients with displaced vertebrae and a perched facet in the spinal column, as in this case. Dr. Yue has indicated that it would be very rare to see the other traumatic damage that the medical records disclose here, including deep muscle damage extending to the spinal column and arterial dissection. This degree of specificity of prior medical experience is not required by Rule 702. It more than suffices that Dr. Yue has spent his career as a researcher and surgeon of spinal trauma and that he is extremely knowledgeable of the mechanisms for damage to the spinal column and spinal cord.

15. Second, the defendants' contention that Dr. Yue's opinions are "speculative," that is that both the mechanism of Plaintiff Ingram's injuries and the ruling out of Ingram's fall as

a cause of those injuries, are not based upon a reliable methodology recognized by experts in the field of trauma surgery. To the contrary, it is apparent that Dr. Yue has reviewed and relied upon extensive medical documentation, including MRI and CT imaging, giving a clear picture of the extent of Plaintiff Ingram's traumatic injuries. The extensive medical record in this case, listed at the outset of Dr. Yue's report, identifies the first complete picture of Plaintiff Ingram's injuries and reveals many clues as to the mechanism for the injury. Dr. Yue has carefully reviewed and rejected the hypothesis that this injury was caused by Plaintiff Ingram's fall. This Court, of course, makes no determination of this hotly-disputed question of fact of whether the injury was caused by the fall or by the police officers' kneeling and/or standing on Plaintiff Ingram's neck as he was subdued lying on the ground. What Dr. Yue has done, however, is to rule out a fall as the cause of the injury based upon his medical training and experience. He has noted the bruising on the right side of the neck that extends all the way into the tissue to the vertebrae, coupled with the absence of any evidence of external contusion or evidence of trauma to the head that could be suffered in a slip-and-fall accident.

16. Defendants' argument that Dr. Yue does not understand the precise nature of Mr. Ingram's slip and fall is also not well-

taken. Dr. Yue has explained why a slip and fall by one who is running would never be expected to cause this sort of trauma. He has testified that his opinion does not change according to the precise mechanism of the fall, since all parties agree that the fall occurred while Mr. Ingram was running, that his feet went out from under him, his feet slid feet-first on slippery pavement, and that he ended up on the ground where the police subdued him within about one second of hitting the pavement. This version is, of course, consistent with the videotape which shows the police chase and Ingram's feet-first slip at a distance. While defendants may not agree with Dr. Yue's assessment of the mechanism of the injury, or while they may have a different factual version of how the fall occurred, these are items for cross-examination, not for admissibility.

17. Defendants' objection that Dr. Yue's testimony does not "fit" the facts of the case must likewise be rejected. There are, to be sure, facts in dispute. Under Rule 703, an expert may base an opinion upon admissible evidence, or even upon inadmissible evidence of the sort from which an expert in the field may formulate opinions. In this case, there is ample admissible evidence, from the testimony of plaintiff Ingram and to some extent the testimony of a bystander, that plaintiff Ingram was uninjured in the slip-and-fall and severely injured by a policeman kneeling

and standing on plaintiff Ingram's neck. Again, the fact that some of the defendants are prepared to offer testimony that contradicts plaintiff Ingram's version of events does not mean that a reasonable, experienced, well-informed expert must choose the defendants' factual version. It suffices that there are ample facts in the record to form a factual basis -- and thus a good "fit" -- between the circumstances of the case and the assumptions underlying the expert's opinion. Again, if those factual assumptions that Dr. Yue is making turn out to be untrue, he can be confronted on cross-examination and his opinion may or may not be undermined thereby. That is a trial issue, and not one for a Daubert hearing.

18. Finally, defendants have argued that Dr. Yue has not given a sufficient explanation for the mechanism of the injury which, apparently as all experts agree in this case, was caused by a combination of blunt trauma and rotation. Defendants ask, where is the rotation in Dr. Yue's report? Dr. Yue has sufficiently explained how the forces at play, as he understands them, in the situation in which Mr. Ingram found himself on the ground with his head turned and his neck exposed, provided a pathway for exactly this trauma. Whether his assumptions about the rotational aspects of the injury are sufficiently probative will await the jury's determination.

19. In short, the Court finds that Dr. Yue's testimony will be a benefit to the jury in resolving complex issues of medical fact and causation, that they're expressed by a physician with more than ample experience in this field of expertise, that they're based on a reliable methodology, and that they fit the factual basis that Dr. Yue has accepted for purposes of this opinion. The exception that the Court has made, as counsel agreed at oral argument, is that Dr. Yue will not be permitted to express an opinion as to credibility of any witness; but, without expressing an opinion on credibility, he may spell out, in neutral terms, the factual basis of his opinion if elicited on direct or cross-examination and the reasons derived from the medical evidence of why he offers the opinion that one version is more consistent with what he sees in these injuries than the competing version.

20. Thus, the defendants' motion to strike the proposed expert testimony of Dr. Yue will be denied, with the exception that Dr. Yue will not be permitted to express an opinion on any witness' credibility.

### Admissibility of Dr. Ivancic's Expert Opinion

21. Dr. Paul C. Ivancic, Ph.D., is a researcher and consultant in human injury biomechanics and causation. (Ivancic CV [Docket Item 139-36], 1.) Dr. Ivancic received his Ph.D. in Biomedical Engineering from Yale University in 2006. (Id.)

Subsequently he worked as a research scientist and assistant professor in the Biomechanics Research Laboratory of the Yale University School of Medicine from 2006-2016. (Id.) Dr. Ivancic produced an expert report in this case regarding the mechanisms and causation of the injuries sustained by plaintiff Ingram. (Ivancic Report [Docket Item 139-38].) In his report, Dr. Ivancic opines that

> [Plaintiff] Ingram's cervical facet fracture/dislocation, disc extrusion, and vertebral artery dissection were caused by forced flexion, compression, anterior shear, and right axial rotation loads applied to his neck by the officers during the arrest. The officers subsequently moved Mr. Ingram into various positions causing his unstable cervical spine to move violently which significantly increased the severity of his cervical fracture/dislocation and paralysis.

> [Plaintiff] Ingram did not sustain his paralyzing neck injuries due to the slip and fall. His neck fracture/dislocation did not occur due to inertial loading of his head and neck during the slip and fall or due to blunt impact of his body with the street during the fall. The neck loads during the slip and fall were insufficient to cause compression fracture, non-symmetric injuries (dislocated left facet and perched right facet), disc extrusion, vertebral artery dissection, ligamentous disruptions, and injuries to the superficial and deep muscular layers of his neck. [Plaintiff] Ingram's cervical facet fracture/dislocation caused quadriplegia. He underwent emergent reduction and posterior and anterior fusion surgeries. It is my opinion that his injuries and paralysis are permanent.

(Id. at 4.)

22.     County Defendants argue that Dr. Ivancic's report and testimony should be barred at trial because (1) Dr. Ivancic's opinion conflates correlation with causation; (2) Dr. Ivancic cannot exclude Plaintiff Ingram's fall as a cause because he failed to identify exactly how Plaintiff Ingram fell; (3) Dr. Ivancic's opinion that the Officer Defendants caused Plaintiff Ingram's injuries is "speculative"; (4) Dr. Ivancic's testimony regarding the timing of Plaintiff Ingram's fall is inconsistent; (5) Dr. Ivancic opines on the legal concept of "excessive force"; (6) Dr. Ivancic's opinions are based on a "more likely than not" standard; (7) Dr. Ivancic makes factual findings that are properly the role of the jury; (8) Dr. Ivancic opines as to the permanency of Plaintiff Ingram's injuries, though he is not a medical doctor; (9) Dr. Ivancic opines as to the consequences of moving persons with suspected neck injuries, though he is not a medical doctor; and (10) Dr. Ivancic states that no person could ever sustain a perched facet injury as the result of a slip-and-fall. (Ivancic Br. [Docket Item 141-1], 7-27.)

23.     Plaintiff Ingram responds that Dr. Ivancic is qualified to testify in this case, that his opinions are supported by the record, and that his causation analysis is proper. (Ivancic Opp'n [Docket Item 162], 5-17.) Plaintiff Ingram further argues that Dr. Ivancic is qualified to opine on the consequences of Plaintiff

Ingram's slip-and-fall because he has studied injury mechanisms related to falls. (Id. at 17-18.) Plaintiff Ingram also asserts that Dr. Ivancic's opinion that Plaintiff Ingram's injuries were caused by the Officer Defendants is well supported by the record. (Id. at 18-23.) Plaintiff Ingram further argues that (1) Dr. Ivancic should be allowed to say "excessive force," because he is not referring to the violation of any particular standard of care; (2) none of Dr. Ivancic's opinions are made under a "more likely than not" standard; (3) Dr. Ivancic did not displace the jury's role in making factual findings; (4) the permanency of Plaintiff Ingram's injuries are not in dispute; (5) Dr. Ivancic testified that people with a spinal injury can incur further injury if they are moved improperly, which Plaintiff Ingram contends happened in this case; and (6) Dr. Ivancic only testified that a person could not "generally" sustain a perched facet injury from a slip-and-fall. (Id. at 23-25.) Plaintiff Ingram's counsel did, however, concede at oral argument that at trial Plaintiff Ingram would not seek to elicit testimony from Dr. Ivancic regarding the permanency of Plaintiff Ingram's injuries.

24. Concerning Dr. Ivancic's qualifications as an expert in the mechanics of traumatic orthopedic injuries, the Court finds that he easily qualifies by virtue of his education, training, and experience to express opinions within that field. Fed. R. Ev.

702(a). His extensive qualifications are set forth at page 1 of his September 18, 2017 report [Docket Item 139-38] and need not be repeated here. His research interests include spine biomechanics and human injury biomechanics. His research has been recognized and funded through the CDC's National Center for Injury Prevention and Control, and his work includes "delineation of the mechanisms of traumatic high-energy injuries, including dynamic loads required to cause injury and resulting motions." [Id.] He is the author of over sixty scientific papers in peer-reviewed journals, the majority of which focused on "delineation of injury mechanisms during automobile crashes." [Id.]. His initial expert report cites to twenty scholarly articles pertaining to cervical spinal injury mechanisms, of which he is the author of four. To object to his qualifications on the ground that he has not specifically rendered an opinion in a case involving stomping or kneeling on the neck misses the point that his scholarly work is clearly related to the subject matter at hand, whether or not he has seen precisely this fact pattern.

25. Dr. Ivancic, like all expert witnesses, is not a fact-finder. Nonetheless, he must set forth a factual basis containing his assumptions of the factual premises upon which his opinion is based. In a case like this one, in which there are very significant disputes of fact regarding the mechanism of the injury, among other

issues, Dr. Ivancic's testimony would be of little use if it is not based on sufficient facts or data. Fed. R. Ev. 702(b). In his initial report of September 18, 2017, as well as in his supplemental report of January 10, 2018 [Docket Item 139-39], and in his answers to questions at depositions on February 21, 2018 [Docket Item 139-40], he has endeavored to set forth the facts from the record on which he relies, as well as to distinguish those from other facts in the record which he claims to be immaterial to his opinions. As in all cases, if important factual assumptions upon which the expert's opinion are based, turn out to be incorrect, the basis for the opinion, and hence its weight and perhaps credibility, are lessened. Such matters are not susceptible to being resolved in a Daubert motion where, as here, the expert has explained why he has made certain factual assumptions based upon a record that contains competing or contradictory facts.

26. Again, however, like any other expert witness, Dr. Ivancic will not be permitted to testify that he finds certain facts to be true or fabricated or certain witnesses to be credible or incredible. That is not the function of a biomechanical engineering expert and, more precisely, it is the function of the jury. The Court is confident, based upon assurances by Plaintiff Ingram's counsel at oral argument in this regard, that Dr. Ivancic

will not be asked questions about witness credibility, but he will be permitted to answer questions, if asked by either party, why he selects certain facts as a basis and rules out others. One limitation, however, is that he will not be permitted to express an opinion that the force applied to Plaintiff Ingram's cervical spine was "excessive", because that term has a dual meaning which may be confusing to the jury. It is for the jury to determine whether the force that they find to have been applied under the circumstances was constitutionally "excessive force."  He may, however, use a term such as "very substantial" force, or "great" force, or "force exceeding the amount sufficient to cause the physical injuries of Mr. Ingram." He is permitted to do so because, within the expertise of biomechanical engineer who has specialized in traumatic cervical spinal injuries in humans, he has performed a necessary study and explanation of the amount of force, given Plaintiff Ingram's physical characteristics, that helped Dr. Ivancic to rule out Mr. Ingram's slip-and-fall as a causal mechanism for this sort of injury.

27. Defendants' objection that Dr. Ivancic's proposed testimony as not being the product of a reliable methodology, as required by Fed. R. Ev. 702(c) is easily addressed.  As Plaintiff Ingram has argued, it is clear that Dr. Ivancic is well familiar with the principles and methods of his profession. He addresses

the limitations of the biomechanical scientific methodology, which include the obvious fact that in vivo research data are unattainable. No scientist would subject a human to an experiment to determine, for instance, how much force must be applied to a healthy cervical spine to manifest injuries of the sort that are found in this case. But from the known research, including his own, he explains how such a determination can be reliably made. The party proffering an expert's opinion testimony need not demonstrate that the expert employed the best possible methodology, or even the "correct" methodology, but that the methodology that was selected is "reliable" enough to not mislead the jury and to achieve for the expert's opinion, a grounding in scientific or other specialized knowledge.

28. Finally, Defendants, as noted above, attack whether Dr. Ivancic has reliably applied those principles and methods to the facts of this case. Defendants appear to posit it as a fact that the injury must have been caused by Mr. Ingram's slip-and-fall, whereby he fell backward on the pavement and injured his neck while perhaps twisting to the side, causing the rotational aspect of his injury. Since Ivancic lays out the reasons why he rejects that as a reasonable possibility for the mechanism of this injury, that does not render his opinion unreliable. He lays out, in painstaking detail, his opinion why no fall while running under the situation

here could have caused such catastrophic cervical and arterial injuries. While certainly accepting the fact that Ingram fell, Dr. Ivancic explains why the injuries could only have happened post-fall, that is, after Ingram was touched by the police. Similarly, Defendants have pointed out that Dr. Ivancic states his opinions under a "more likely than not" standard, or, as Dr. Ivancic phrases it, "to a reasonable degree of scientific probability." [Docket Item 139-38 at p.1]. He has used the same language in his supplemental expert report [Docket Item 139-39 at p.1]. Plaintiff Ingram's counsel indicated that this language will be refined to reflect the applicable standard of a "reasonable degree of scientific certainty," and this should not be an issue going forward. Defendants are free to cross-examine Dr. Ivancic on his original statement of the standard and his understanding of the revised standard of "reasonable degree of scientific certainty."

29.  Defendants' objection to Dr. Ivancic's expression or opinion about the permanency of Mr. Ingram's injuries is moot, as Plaintiff Ingram will not be offering such an opinion from Dr. Ivancic. Defendants pose an objection to Dr. Ivancic's opinion as to the consequences of moving persons with suspected neck injuries, on the ground that he is not a medical doctor. The Court agrees with Plaintiff Ingram that an ordinary medical doctor, even an orthopedist, might typically not be as well-qualified to express

such an opinion as Dr. Ivancic, who has studied the actual mechanics of cervical spinal injuries. Moreover, Dr. Ivancic has spelled out his factual assumptions regarding his opinion of Plaintiff Ingram's injuries being caused or aggravated by the decision of the officers to move Mr. Ingram after he had been subdued and without regard to Mr. Ingram's complaints of paralysis at that time. Whether Dr. Ivancic disregarded important contrary information in reaching his opinion may, of course, be explored on cross-examination, but it does not present a serious question of admissibility of his opinion, but rather of the eventual weight that a jury may choose to give to it.

30. Thus, the Defendants' motion to preclude the expert opinion testimony of Dr. Ivancic will be denied.

## Conclusion

31.  For the reasons stated above, County Defendants' motion to bar the opinion and testimony of Dr. Yue will be granted in part and denied in part and County Defendants' motion to bar the opinion and testimony of Dr. Ivancic will be denied. If any particular concerns exist about the admissibility of some aspect of Dr. Yue's or Dr. Ivancic's opinions not squarely addressed herein, they may be raised in an appropriate pretrial motion in limine if counsel is unable to resolve the issue.  An accompanying Order will be entered.


**March 29, 2019**                              **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                                U.S. District Judge