IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| XAVIER INGRAM and<br>DARREN A. DICKERSON,<br><br>        Plaintiffs,<br><br>   v.<br><br>COUNTY OF CAMDEN, et al.,<br><br>        Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No.<br>14-5519 (JBS-KMW)<br><br>**OPINION** |

APPEARANCES:

Shelley Lynn Stangler, Esq.
Terrence Michael McNamara, Esq.
LAW OFFICES OF SHELLEY L. STANGLER, P.C.
155 Morris Avenue
Springfield, New Jersey 07869
    Attorneys for Plaintiff

William M. Tambussi, Esq.
William F. Cook, Esq.
BROWN & CONNERY, LLP
360 Haddon Avenue
Westmont, New Jersey 08108
    Attorneys for Defendants

**SIMANDLE,** District Judge:

On June 14, 2014, Plaintiff Xavier Ingram was allegedly assaulted by several Camden County Police Officers resulting in catastrophic injuries including quadriplegia, in violation of 42 U.S.C. § 1983. As the alleged assault unfolded, Plaintiff Darren A. Dickerson was a bystander who yelled curse words at the police officers about their misconduct and allegedly was also attacked by

certain police officers, causing injury, also in violation of 42 U.S.C. § 1983. Plaintiffs filed separate suits in this Court which were consolidated by the Court under this case number on January 15, 2019. (See Order [Docket Item 211].)

The Dickerson claims come before the Court by way of motion for summary judgment filed by Defendants County of Camden, Camden County Police Department, Chief John Scott Thomson, Orlando Cuevas, and Nigel Shockley (hereinafter, collectively, "Defendants"). (See Motion for Summary Judgment [Docket Item 56][1].) The present motion is opposed by Plaintiff Dickerson. (See Plaintiff's Brief in Opposition to Motion for Summary Judgment (hereinafter "Pl.'s Opp'n") [Docket Item 67].) Thereafter, Defendants filed a reply brief. (See Reply Brief (hereinafter "Defs.' Reply") [Docket Item 68].)

The Court has considered the submissions and held oral argument on March 21, 2019. For the reasons set forth below,

---

[1] As the present motion was filed prior to the consolidation of the Ingram and Dickerson cases, this motion was originally designated as [Docket Item 56] in Civil No. 14-6905 (RBK-KMW). Upon consolidation, the present motion was designated [Docket Item 214] in the consolidated Civil No. 14-5519 (JBS-KMW). As neither Plaintiff Dickerson's opposition brief, nor Defendants' reply brief relating to the present motion, nor Plaintiff Dickerson's Complaint were assigned corresponding docket item numbers in the consolidated Civil No. 14-5519 (JBS-KMW), this opinion shall cite to those docket item numbers assigned to the documents in the original Dickerson case, Civil No. 14-6905 (RBK-KMW).

2

Defendants' motion for summary judgment [Docket Item 56] will be granted in part and denied in part. The Court finds as follows:[2]

I. **Factual and Procedural Background.**

The factual and procedural background of this case was previously detailed in the Court's Memorandum Opinion of January 16, 2019, and shall not be repeated herein, except as necessary for the determination of the present motion. See Ingram v. Cty. of Camden, No. 14-5519, 2019 WL 231759 (D.N.J. Jan. 16, 2019). Discovery extending over several years has been completed and the motion is ripe for decision.

II. **Standard of Review.**

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue

---

[2] For purposes of the instant motion and pursuant to Local Civil Rule 56.1, the Court looks to Plaintiff Dickerson's Complaint, [Docket Item 1], when appropriate, Defendants' Statement of Undisputed Material Facts, [Docket Item 56-2], Plaintiff Dickerson's Response to Statement of Material Facts and Counterstatement of Material Facts, [Docket Item 67-35], Defendants' Reply Statement of Undisputed Material Facts, [Docket Item 68-1], and related exhibits and documents. Where not otherwise noted, the facts are undisputed by the parties.

3

for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party "need not match, item for item, each piece of evidence proffered by the movant," but must present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cnty. of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

**III. Discussion.**

Defendants move for summary judgment as to three separate portions of Plaintiff Dickerson's Complaint [Docket Item 1]. Defendants allege that Plaintiff Dickerson's false arrest claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994), or by the presence of probable cause, or because Defendant Shockley is protected by the doctrine of qualified immunity. (Defs.' Br. [Docket Item 56-1], 6-14.) Defendants further assert that they are entitled to summary judgment as to Plaintiff Dickerson's claim regarding the

use of excessive force because the force used by Defendant Shockley against Plaintiff Dickerson was reasonable and because Defendant Shockley is protected by the doctrine of qualified immunity. (Id. at 14-21.) Finally, Defendants assert that they are entitled to summary judgment as to all claims against Defendants County of Camden, Camden County Police Department, John Scott Thomson, and Orlando Cuevas because the County's training, policies, and discipline meet applicable requirements.[3] (Id. at 21-23.)

---

[3] Defendants additionally contend that they are entitled to summary judgment as to these issues because there is no underlying liability against Defendant Shockley for excessive force, and therefore there can be no municipal or supervisory liability against Defendants County of Camden, Camden County Police Department, John Scott Thomson, and Orlando Cuevas. (See Defs.' Br [Docket Item 56-1], 22.) However, as the Court shall not grant summary judgment in Defendant Shockley's favor as to his liability for the alleged use of excessive force, as explained below, the question of Defendant Shockley's liability is still to be determined and the Court need not address this argument at this time.

Defendants also contend that they are entitled to summary judgment with respect to supervisory and municipal liability, because Defendants contend that the Court should disregard the opinions and testimony of Plaintiff's Monell expert: Dr. Chapman. (See id. at 23.) However, Defendants' arguments on this point fail to provide the Court with any substantive reason to disregard Dr. Chapman's opinions and testimony with respect to the Dickerson case. The entirety of Defendants' argument appears to be that Dr. Chapman's opinions and testimony have been rejected by other judges in other cases, and therefore this Court should reject his opinions and testimony in this case (See id.) None of the cases cited by Defendants hold that Dr. Chapman is unqualified to serve as an expert witness with regard to Monell liability, rather they appear to take issue with Dr. Chapman's specific opinions or factual bases as they related to those cases. See Wheeler v. City of Jersey City, No. 12-7528, 2016 WL 1029271, at *5-6 (D.N.J. Mar. 14, 2016); J.G. ex rel. Koss v. Lingle, No. 13-414, 2014 WL 4273269, at *1-2, 9-

5

A. False Arrest.

Defendants contend that they are entitled to summary judgment as to Count I of Plaintiff Dickerson's Complaint [Docket Item 1], seeking damages under 42 U.S.C. § 1983 for false arrest. (Defs.' Br. [Docket Item 56-1], 6-14.) Defendants assert that, under Heck, 512 U.S. 477, Plaintiff Dickerson may not pursue a claim of false arrest when he later pled guilty to a municipal violation in relation to that same arrest. Heck holds, in relevant part, that

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck, 512 U.S. at 487. Defendants assert that success on Plaintiff Dickerson's claim for false arrest would "necessarily imply the invalidity" of his guilty plea which arose from the arrest. (Defs.' Br. [Docket Item 56-1], 7-10.) Plaintiff Dickerson did not oppose

---

10 (W.D. Wis. Aug. 28, 2014). Additionally, one case to which Defendants cite does not mention Dr. Chapman by name and barely references expert testimony whatsoever. See Jackson v. Hamilton Twp., No. 10-3989, 2014 WL 1217662 (D.N.J. Mar. 24, 2014). Defendants further do not provide a citation to any legal authority by which this Court could disregard Dr. Chapman's separate opinions and testimony in this case, due only to the fact that his opinions and testimony with respect to other, unrelated cases have previously been disregarded by other courts. (See Defs.' Br [Docket Item 56-1], 23.) Therefore, the Court shall not disregard Dr. Chapman's opinions and testimony pertaining to Dickerson's claims on the basis of the present motion.

6

Defendants' request for summary judgment on Count I of the Complaint in his brief in opposition, (see generally Pl.'s Opp'n [Docket Item 67]), nor did Plaintiff's counsel oppose this request at oral argument.[4] The Court finds that finding for Plaintiff Dickerson with respect to Count I of his Complaint would "necessarily imply the invalidity" of his later guilty plea and there is no evidence that his "conviction or sentence has already been invalidated." Therefore, Count I of Plaintiff Dickerson's Complaint is barred by Heck, 512 U.S. 477, Defendants are entitled to summary judgment as to Count I of Plaintiff Dickerson's Complaint, and this portion of Defendants' motion shall be granted.

B. Excessive Force.

Defendants contend that they are also entitled to summary judgment in their favor as to Count II of Plaintiff Dickerson's Complaint, seeking damages under 42 U.S.C. § 1983 for excessive force. (Defs.' Br. [Docket Item 56-1], 14-21.) Defendants assert that Defendant Shockley is entitled to qualified immunity and that the force used by Defendant Shockley against Plaintiff Ingram, as alleged by Plaintiff Ingram, did not offer a clearly established constitutional right and could not be thought, by a reasonable officer in these circumstances, to have been in violation of that

---

[4] Plaintiff Dickerson maintains that his later guilty plea does not preclude him from seeking damages under 42 U.S.C. § 1983 for excessive force related to his arrest in this incident. (See Pl.'s Opp'n [Docket Item 67], 5-6.)

7

right. (See id.) Plaintiff Dickerson opposes this request, asserting that Defendant Shockley is not entitled to qualified immunity, and that on the merits there exist questions of material fact whether the amount of force used by Defendant Shockley was objectively reasonable under the circumstances presented in this case. (See Pl.'s Opp'n [Docket Item 67], 14-21.)

1. Qualified Immunity.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015) (internal citation and quotation marks omitted). "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]'" Tolan v. Cotton, 572 U.S. 650, 655–56 (2014) (citing Saucier v. Katz, 533 U.S. 194, 201, (2001)). In this case, Plaintiff Dickerson has alleged a violation of his Fourth Amendment right to be free of excessive force during the course of an arrest. (See Complaint, ¶ 27; see also Graham v. Connor, 490 U.S. 386, 393 (1989).) Plaintiff Dickerson alleges that he witnessed the arrest of Plaintiff Ingram and then yelled a number of profane comments to the police officers on the scene regarding their treatment of

8

Plaintiff Ingram; Plaintiff Dickerson further alleges that after he was directed to move along by another officer of the Camden County Police Department he was walking away from the scene of Plaintiff Ingram's arrest when, without warning that Plaintiff Dickerson should stop or that he was under arrest, Defendant Shockley tackled Plaintiff Dickerson to the ground and punched and kicked him before handcuffing him. (See Pl.'s Opp'n [Docket Item 67], 1.) As described below, the parties have identified a number of eyewitnesses to these events and there is a video surveillance recording of the events. Taking these into account, in the light most favorable to Plaintiff Dickerson, would show that Defendant Shockley violated the federal right to be free from excessive force in arrest, in violation of the Fourth Amendment. In other words, the alleged conduct of Shockley violated a constitutional right, if the allegations were accepted as true.

The second prong of the qualified immunity inquiry requires the Court to determine

> whether the right in question was "clearly established" at the time of the violation. Hope v. Pelzer, 536 U.S. 730, 739, [] (2002). . . . "[T]he salient question . . . is whether the state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." Id. at 741.

Tolan, 572 U.S. at 655–56. Regarding claims of excessive force during the process of arrest, the Third Circuit has stated that

9

> we have relied on the factors set forth in Graham and Sharrar in evaluating whether an officer made a reasonable mistake. See Estate of Smith v. Marasco, 430 F.3d 140, 149-150 (3d Cir.2005); Couden v. Duffy, 446 F.3d 483, 497 (3d Cir.2006). We have stated that these factors "are well-recognized," Couden, 446 F.3d at 497, and that when an officer applies them in "an unreasonable manner, he is not entitled to qualified immunity." Estate of Smith, 430 F.3d at 150.

Green v. New Jersey State Police, 246 F. App'x 158, 162–63 (3d Cir. 2007). As the Court shall determine, below, neither the Graham nor the Sharrar factors indicate that, taking the evidence in the light most favorable to Plaintiff Dickerson, Defendant Shockley could not have reasonably believed that this alleged degree of force would have been reasonable under the circumstances in this case. The right to be free from excessive force during arrest is one of the most well-known rights, a matter on which police officers are routinely instructed due to its importance in their everyday duties toward arrestees. Because the Court finds that "it would be unreasonable for [an officer] to believe these actions would not constitute excessive force, we hold that [Plaintiff Dickerson's] rights were 'clearly established.'" Green, 246 F. App'x at 163. Therefore, Defendants' motion shall be denied to the extent that it seeks summary judgment in Defendant Shockley's favor on a theory of qualified immunity.

## 2. Excessiveness of Force.

Turning toward analysis of evidence that has emerged in Dickerson's case, there are significant factual disputes about the exact amount and type of force used, the rationale for such force, and the events which led up to the use of force by Defendant Shockley in arresting Plaintiff Dickerson. Plaintiff Dickerson asserts that he came upon the Ingram scene, complained to the police officers at the scene that they were mistreating Plaintiff Ingram, at which time an officer responded, vulgarly, that Plaintiff Dickerson should leave or else he may also be assaulted by police officers. (See Dickerson's Deposition [Docket Item 56-12], 63:2-68:5.) According to Plaintiff Dickerson he then "replied with a curse word" and a vulgar comment and began to walk away, at which point Defendant Shockley arrived on the scene and asked Plaintiff Dickerson to repeat the comments he had just made to the other officers. (Id. at 68:7-17.) Plaintiff then repeated what he had said to the other officers and continued to walk away, at which point Defendant Shockley, without any warning, tackled Plaintiff Dickerson from behind, and punching him, injuring his back, neck, and ribs, handcuffed him, picked him up, and placed him in a patrol car. (Id. at 68:17-69:19.)

Meanwhile, Defendants assert that Plaintiff Dickerson was verbally harassing police officers who were attempting to keep pedestrians clear of a scene while waiting for paramedics to

11

arrive, at which point Defendant Shockley allegedly informed Plaintiff Dickerson that he was under arrest. Defendants allege Plaintiff Dickerson then fled, Defendant Shockley caught him, took him to the ground, and handcuffed him. (See Defs.' Br. [Docket Item 56-1], 2.) Defendants do not claim that Plaintiff Dickerson ever touched Defendant Shockley or resisted the arrest.

There is a surveillance video of the events in question, and Defendants contend that it clearly shows that Defendant Shockley's actions were reasonable under the circumstances. (See id. at 16-20.) The Court has reviewed the surveillance video and finds that it is of such low quality that it cannot be used to definitively ascertain the amount of force that Defendant Shockley used in arresting Plaintiff Dickerson. Although not clear, a reasonable jury viewing the video could find it confirms Plaintiff Dickerson's version that he never moved toward any officer and was walking away when tackled violently from behind. Furthermore, there is no associated audio recording to determine whether Plaintiff Dickerson was put on notice that he was being placed under arrest before Defendant Shockley threw Plaintiff Dickerson to the ground. There are also a number of witnesses, including Plaintiff Dickerson and Defendant Shockley, with conflicting testimony. It would be inappropriate at this time for the Court to determine the veracity or credibility of these conflicting witnesses.

Under Graham, 490 U.S. 386, a plaintiff has the burden of showing that the amount of force directed at him by an arresting officer was constitutionally excessive. What is "excessive" is determined under all the circumstances then confronting the arresting officer, considering the Graham factors, among others, namely: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. The Third Circuit expounded upon the Graham factors in Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997), stating that

> [o]ther relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

Sharrar, 128 F.3d at 822.

In this case, taking the evidence in the light most favorable to Plaintiff Dickerson, none of the Graham factors indicate that the claimed degree of force would have been reasonable under the circumstances, as Plaintiff Dickerson was arrested for a minor disorderly conduct violation, there was no evidence that Dickerson had a weapon, was threatening violence, or otherwise constituted a threat to safety, and Dickerson was not resisting arrest or

13

attempting to evade. Rather he was leaving the area in compliance with the direct request of a police officer. Likewise, taking the evidence in the light most favorable to Dickerson, none of the Sharrar factors indicate that substantial force would have been reasonable under the circumstances, as there is no evidence that Dickerson was acting violently (although he was noisy and disrespectful), there is no evidence that there was insufficient time for Defendant Shockley to have taken another, non-violent course of action, there is no evidence that Dickerson was considered to be armed, nor is there evidence that Shockley was outnumbered. Therefore, taking the evidence in the light most favorable to Plaintiff Dickerson, the Court finds that material facts are in dispute and that a reasonable jury could find it was excessive to tackle a suspect to the ground and punch and kick him, all prior to giving him warning that the officer wished for the suspect of a disorderly persons offense to stop, much less that he was under arrest.

Plaintiff Dickerson, as the party opposing summary judgment, is entitled to the facts and reasonable inferences most favorable to him. In Plaintiff Dickerson's best case, a reasonable jury could find that he was admittedly loudly cursing a police officer objecting to what Dickerson perceived as the beating of Ingram he was witnessing, but that he never threatened an officer, never displayed something like a weapon, never advanced toward an

officer, never touched an officer, never assumed a fighting posture, nor prevented an officer from performing his duties at the crime scene. When Plaintiff Dickerson was told to "shut up," he stopped yelling and walked away from the officer and away from the Ingram scene. The video confirms this. A reasonable jury could find that Defendant Shockley took Plaintiff Dickerson down much too hard onto the pavement, without warning, in an effort to hurt him, and caused substantial injuries. Dickerson put up no resistance on the ground but was allegedly still handled roughly by Defendant Shockley. When balanced against the non-serious, non-violent nature of the disorderly persons offense with which Plaintiff Dickerson was charged, where Plaintiff Dickerson was unaware he was about to be thrown to the pavement and was offering no resistance, a reasonable jury could find that Defendant Shockley exercised a degree of force that was not only improper but unconstitutionally excessive. Under this version of the facts, a jury could reasonably find that this force was not for the purpose of arresting Dickerson, but rather for the purpose of summarily punishing him for being obnoxious toward the officers at a time of heightened emotion due to his witnessing the alleged beating of Ingram in the street nearby. The Fourth Amendment permits the use of force, sometimes even deadly force, to accomplish an arrest in especially aggravated circumstances presenting demonstrable danger to the law enforcement officer or others. In Plaintiff Dickerson's

circumstances, looking at disputed evidence in the light most favorable to him for the purposes of this motion, a jury could reasonably find for Plaintiff. Therefore, Defendants' motion shall be denied to the extent that it seeks summary judgment with respect to the issue of excessive force.

       C.    <u>Municipal Liability.</u>

Defendants finally contend that they are entitled to summary judgment in favor of Defendants County of Camden, Camden County Police Department, John Scott Thomson, and Orlando Cuevas as to Counts IV and V of Plaintiff Dickerson's Complaint [Docket Item 1], seeking damages under 42 U.S.C. § 1983 for inadequate policies, procedures, and customs (Count IV) and for inadequate training and supervision (Count V). (<u>See</u> Defs.' Br. [Docket Item 56-1], 21-23.) Defendants assert that municipal and supervisory liability is barred because Defendant Camden County Police Department's training, policies, and discipline meet all applicable standards and Defendant Shockley received such training and supervision. (<u>See</u> <u>id.</u> at 22.)

    Plaintiff Dickerson contends that there exists a genuine dispute of material fact with respect to his claims for municipal and supervisory liability on the part of Defendants County of Camden, Camden County Police Department, John Scott Thomson, and Orlando Cuevas. (<u>See</u> Pl.'s Opp'n [Docket Item 67], 18-34.) Plaintiff Dickerson relies heavily on the expert report prepared

by Dr. Chapman and asserts that Defendant Shockley had a prior history of at least six incidents of the use of force that, under Camden County Police Department's own policies, should have triggered an "early warning" intervention by his supervisors, but that Defendant Shockley never had such an intervention. (See id. at 18-19, 26-34.) Dr. Chapman further opines that Camden County Police Department's "early warning" policies put Defendants County of Camden, Camden County Police Department, John Scott Thomson, and Orlando Cuevas on notice that Defendant Shockley was engaging in inappropriate use of force, that the lack of intervention led to the violation of Plaintiff Dickerson's constitutional rights. (Id.) Plaintiff Dickerson further argues that Camden County Police Department's handling of Defendant Shockley's history of use of force is not in compliance with the New Jersey Attorney General's guidelines or Defendant Camden County Police Department's policies regarding officers' use of force. (See id. at 26-34; Plaintiff's Counterstatement of Material Facts [Docket Item 67-35], ¶¶ 36-46.) Dr. Chapman further states that Camden County Police Department's use of force policy is outdated and does not take into account the Supreme Court's ruling in Graham, 490 U.S. 386, which Dr. Chapman identifies as a cause of Plaintiff Dickerson's injuries. (See Chapman Report [Docket Item 67-13], 35.) Additionally, Dr. Chapman opines that Camden County Police Department did not provide

17

Shockley with appropriate training regarding the use of force, and that this was a cause of Dickerson's injuries. (See id. at 35-36.)

Defendants assert that Camden County Police Department is in compliance with all guidelines and policies with regard to the use of force, (see Defs.' Br. [Docket Item 56-1], 22), that Plaintiff Dickerson's failure to train claim is without support in the record, (see Defs.' Reply [Docket Item 68], 7-8), and that Plaintiff Dickerson's failure to investigate or supervise claim misrepresents the record. (See id. at 8-11.) As noted, supra, Defendants also contend that Dr. Chapman's opinions and testimony should be disregarded, but Defendants have not presented a sufficient argument for such at this time. Dr. Chapman's report opines that Camden County Police Department's training is outdated and insufficient and that Camden County Police Department violated its own policies on retraining and remedial intervention by ignoring the "early warning" factors with respect to Defendant Shockley. (See Chapman Report [Docket Item 67-13].) Defendants' police practices expert, Mr. Ryan, contends that none of this is so. (See Ryan Report [Docket Item 56-18].) However, it is not the Court's role at the summary judgment phase to determine which of these experts' opinions is more credible or weighty. Therefore, a genuine dispute of material fact exists that cannot be resolved by the Court at this juncture and Defendants' request for summary

judgment as to Plaintiff Dickerson's claim for municipal and supervisory liability will be denied.

**IV. <u>Conclusion.</u>**

For the reasons stated above, Defendants' motion for summary judgment will be granted in part and denied in part. The motion is granted to dismiss Plaintiff Dickerson's claims in Count I (false arrest), and denied in part as to Plaintiff Dickerson's claim for excessive use of force in violation of 42 U.S.C. § 1983 and the Fourth Amendment. Summary judgment to dismiss Plaintiff Dickerson's <u>Monell</u> claims against County Defendants is denied. Summary judgment on the ground of qualified immunity as to the excessive force claim is also denied. An accompanying Order shall be entered.

| | |
|---|---|
| **March 29, 2019** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | U.S. District Judge |

19