IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| XAVIER INGRAM and DARREN A. DICKERSON, | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil Action No. 14-5519 (JBS-KMW) |
| v. | **OPINION** |
| COUNTY OF CAMDEN, et al., | |
| Defendants. | |

APPEARANCES:

Beth G. Baldinger, Esq.
MAZIE SLATER KATZ & FREEMAN, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068
    Attorney for Plaintiff Ingram

William M. Tambussi, Esq.
William F. Cook, Esq.
BROWN & CONNERY, LLP
360 Haddon Avenue
Westmont, New Jersey 08108
    Attorneys for County Defendants & Defendant Marchiafava

Jay J. Blumberg
BLUMBERG & WOLK, LLC
158 Delaware Street
Woodbury, New Jersey 08096
    Attorney for Defendant Merck

Matthew B. Wieliczko
ZELLER & WIELICZKO, LLP
120 Haddontowne Court
Cherry Hill, New Jersey 08034
    Attorney for Defendant Gennetta

**SIMANDLE**, District Judge:

On June 14, 2014, Plaintiff Xavier Ingram was allegedly assaulted by several Camden County Police Officers resulting in catastrophic injuries including quadriplegia, in violation of 42 U.S.C. § 1983. Presently before the Court are four motions for summary judgment filed by Defendants County of Camden, Camden County Police Department, Chief John Scott Thomson, Orlando Cuevas (hereinafter, "County Defendants"), and Nicholas Marchiafava [Docket Item 143], Defendant Jeremy Merck [Docket Item 144], Defendant Antonio Gennetta [Docket Item 145], and Plaintiff Ingram [Docket Item 146]. All of the present motions have been opposed and briefing has been completed. The Court has considered the submissions and held oral argument on March 21, 2019. For the reasons set forth below, the motion for summary judgment filed by County Defendants and Defendant Marchiafava [Docket Item 143] will be granted in part and denied in part, Defendant Merck's motion for summary judgment [Docket Item 144] will be denied, Defendant Gennetta's motion for summary judgment [Docket Item 145] will be denied, and Plaintiff Ingram's motion for summary judgment [Docket Item 146] will be denied. The Court finds as follows:[1]

---

[1] For purposes of the instant motion and pursuant to Local Civil Rule 56.1, the Court looks to Plaintiff Ingram's Second Amended Complaint, [Docket Item 64], when appropriate, County Defendants' Statement of Undisputed Material Facts, [Docket Item 143-2], Defendant Merck's Statement of Undisputed Material Facts, [Docket Item 144-5], Defendant Gennetta's Statement of Undisputed Material

## I.     Factual and Procedural Background.

The factual and procedural background of this case was previously detailed in the Court's Memorandum Opinion of January 16, 2019, and shall not be repeated herein, except as necessary for the determination of the present motion. See Ingram v. Cty. of Camden, No. 14-5519, 2019 WL 231759 (D.N.J. Jan. 16, 2019). Discovery extending over several years has been completed and the motions are largely ripe for decision.

## II.     Standard of Review.

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is

Facts, [Docket Item 145-2], Plaintiff Ingram's Statement of Undisputed Material Facts, [Docket Item 146-27], Defendant Gennetta's Response to Statement of Material Facts, [Docket Item 159-1], Defendant Merck's Response to Statement of Material Facts, [Docket Item 160-2], Defendant Marchiafava's Response to Statement of Material Facts, [Docket Item 164-1], Plaintiff Ingram's Response to Statement of Material Facts, [Docket Item 169], and related exhibits and documents. Where not otherwise noted, the facts are undisputed by the parties.

required to examine the evidence in light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party "need not match, item for item, each piece of evidence proffered by the movant," but must present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cnty. of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

## III.    Discussion.

Defendants[2] move for summary judgment as to certain portions of Plaintiff Ingram's Second Amended Complaint [Docket Item 64]. Defendants assert that they are entitled to summary judgment as to Plaintiff Ingram's claim regarding the use of excessive force because the force used by Officer Defendants against Plaintiff Ingram was reasonable and because Officer Defendants are protected by the doctrine of qualified immunity. (County Defs.' Br. [Docket

---

[2] Unless otherwise noted, the Court shall use the term "Defendants" when referring to all Defendants named in Plaintiff Ingram's Second Amended Complaint [Docket Item 64].

Item 143-1], 15-27; Merck's Br. [Docket Item 144-1], 5-8; Gennetta's Br. [Docket Item 145-1], 24-34.) Defendants further assert that they are entitled to summary judgment as to all New Jersey state law claims because they are rendered immune from suit by New Jersey's "pursuit immunity" statute. (County Defs.' Br. [Docket Item 143-1], 28 n.13; Merck's Br. [Docket Item 144-1], 5-6; Gennetta's Br. [Docket Item 145-1], 36.) County Defendants assert that they are entitled to summary judgment as to all claims against Defendants County of Camden, Camden County Police Department, John Scott Thomson, and Orlando Cuevas[3] because County Defendants' training, policies, and discipline meet applicable requirements and because they cannot be held liable for claims under 42 U.S.C. § 1983 by way of a theory of <u>respondeat</u> <u>superior</u>. (<u>See</u> County Defs.' Br. [Docket Item 143-1], 28-30.) Defendant Merck seeks summary judgment regarding Plaintiff Ingram's claim against him for supervisory liability under 42 U.S.C. § 1983. (<u>See</u> Merck's Br. [Docket Item 144-1], 8-11.) Finally, Defendants and Plaintiff Ingram all seek summary judgment in their respective favors regarding Plaintiff Ingram's claim for failure to render medical aid. (<u>See</u> County Defs.' Br. [Docket Item 143-1], 27-28; Gennetta's

---

[3] During oral argument, counsel for Plaintiff Ingram withdrew all of Plaintiff Ingram's claims against Defendant Cuevas. Therefore, the Court shall grant County Defendants' present motion for summary judgment insofar as it seeks summary judgment in favor of Defendant Cuevas.

Br. [Docket Item 145-1], 34-35; Merck's Br. [Docket Item 144-1], 11; Ingram's Br. [Docket Item 148], 19-33.)[4]

A. <u>Excessive Force.</u>

Defendants contend that they are entitled to summary judgment in their favor as to Count I of Plaintiff Ingram's Second Amended Complaint [Docket Item 64], seeking damages under 42 U.S.C. § 1983 for excessive force, because Defendants are entitled to qualified immunity and because Plaintiff Ingram has not established that he has suffered a constitutional violation. (County Defs.' Br. [Docket Item 143-1], 15-27; Merck's Br. [Docket Item 144-1], 5-8; Gennetta's Br. [Docket Item 145-1], 24-34.) Defendants assert that each of the Officer Defendants[5] is entitled to qualified immunity and that the force used against Plaintiff Ingram was not unconstitutionally excessive. (See <u>id.</u>) Plaintiff Ingram opposes this request, asserting that the Officer Defendants are not entitled to qualified immunity and that there exist questions of material fact in relation to whether the amount of force used on

---

[4] Defendants also assert that Plaintiff Ingram has not presented sufficient evidence to show that Officer Defendants were a proximate cause of his injuries. (See, <u>e.g.</u>, County Defs.' Br. [Docket Item 143-1], 25.) Defendants rely on their motions to strike Plaintiff Ingram's experts Dr. Yue and Dr. Ivancic to support this request. (Id.) However, as the Court has largely denied those motions to strike, (see Order [Docket Item 228],) this portion of Defendants' motions shall be denied.

[5] Unless otherwise noted, the Court shall use the term "Officer Defendants" when referring to Defendants Marchiafava, Gennetta, and Merck, collectively.

Plaintiff Ingram was objectively reasonable under the circumstances presented in this case. (See Pl.'s Opp'n [Docket Item 170], 7-16, 18-19.)

    1.   Qualified Immunity as to Excessive Force.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015) (internal citation and quotation marks omitted). "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]'" Tolan v. Cotton, 572 U.S. 650, 655–56 (2014) (citing Saucier v. Katz, 533 U.S. 194, 201, (2001)). In this case, Plaintiff Ingram has alleged a violation of his Fourth Amendment right to be free of excessive force during the course of an arrest and failure to provide medical care.[6] (See Second Amended Complaint

---

[6] The parties dispute whether this claim falls under the Fourth Amendment or the Fourteenth Amendment, as described below. It is Plaintiff Ingram's position that the Fourth Amendment provides the proper test for his claim. Additionally, Defendant Merck argues that the Eighth Amendment, which protects individuals who are serving sentences after having been convicted of a crime, is inapplicable in this context. (See Merck's Br. [Docket Item 160], 4-5.) Neither Plaintiff Ingram nor any other party appears to assert that the Eighth Amendment applies in the context of this

[Docket Item 64], ¶ 27; see also Graham v. Connor, 490 U.S. 386, 393 (1989).) Plaintiff Ingram alleges that as he walked out of a liquor store, nearby police officers started to chase him, he assumed that it was because of an outstanding warrant he had, got scared, and ran. (Ingram Dep. [Docket Item 146-10], 11:16-12:2.) After running for some distance, Plaintiff Ingram alleges he tried to surrender to police on the slippery pavement by going down to the ground. (Id. at 12:5-6.) In the process of getting down, Ingram claims his feet slipped from under him and he landed on his side. (Id. at 12:6-8.) As soon as he hit the ground, an officer jumped on his back and two officers started punching and kicking him. (Id. at 12:9-12.) After the officers started beating him, Plaintiff Ingram asserts that he could feel the blows, was in extreme pain, and was screaming that he could not breathe and that he could not feel his legs. (Id. at 12:12-15.) Then Defendant Merck walked over to Ingram, told him to "shut up," stepped on his neck, and Plaintiff Ingram heard it crack. (Id. at 12:15-18.) According to Ingram, the officers tried to sit him up, but when they released him, he collapsed onto his stomach. (Id. at 12:21-23.) Ingram then blacked out. (Id. at 20-24.) As described below, the parties have identified a number of eyewitnesses to these events and there is a video surveillance recording of the events. Taking these into

---

case. Therefore, the Court shall not address any Eighth Amendment protections at this time.

account, in the light most favorable to Plaintiff Ingram, show

that the Officer Defendants violated a federal right.

The second prong of the qualified immunity inquiry requires

the Court to determine

> whether the right in question was "clearly
> established" at the time of the violation.
> Hope v. Pelzer, 536 U.S. 730, 739, []
> (2002). . . . . "[T]he salient question . . .
> is whether the state of the law" at the time
> of an incident provided "fair warning" to the
> defendants "that their alleged [conduct] was
> unconstitutional." Id. at 741.

Tolan, 572 U.S. at 655-56. Regarding claims of excessive force

during the process of arrest, the Third Circuit has stated that

> we have relied on the factors set forth in
> Graham and Sharrar in evaluating whether an
> officer made a reasonable mistake. See Estate
> of Smith v. Marasco, 430 F.3d 140, 149-150 (3d
> Cir.2005); Couden v. Duffy, 446 F.3d 483, 497
> (3d Cir.2006). We have stated that these
> factors "are well-recognized," Couden, 446
> F.3d at 497, and that when an officer applies
> them in "an unreasonable manner, he is not
> entitled to qualified immunity." Estate of
> Smith, 430 F.3d at 150.

Green v. New Jersey State Police, 246 F. App'x 158, 162-63 (3d

Cir. 2007). As the Court shall determine, below, neither the Graham

nor the Sharrar factors indicate that, taking the evidence in the

light most favorable to Plaintiff Ingram, the Officer Defendants'

use of allegedly deadly force (especially kneeling on Ingram's

neck and kicking or stomping on the neck of a non-resisting

suspect) would have been reasonable under the circumstances in

this case. Because the Court finds that "it would be unreasonable for [an officer] to believe these actions would not constitute excessive force, we hold that [Plaintiff Ingram's] rights were 'clearly established.'" Green, 246 F. App'x at 163.

    2. <u>Qualified Immunity as to Deliberate Indifference to Serious Medical Need of a Detainee</u>

  Plaintiff also alleged a second constitutional violation arising after he was seized and immobile on the ground. He alleges that, after his neck was broken, and he was handcuffed, that he was "seized" for constitutional purposes, and that the officers were aware of the profound seriousness of his injuries. When Officer Defendants nonetheless rolled him over, and then sat him up, despite hearing his complaints that he could not feel his legs and despite seeking that he could not cooperate to support himself, and his body was contorted and he fell face forward on his face, that further injury to his spinal cord was the result. Plaintiff's expert, Dr. Yue, <u>inter</u> <u>alia</u>, opines how these maneuvers probably caused additional damage to Plaintiff's cervical area. Plaintiff alleges that he had a constitutional right, whatever the source of his injuries, once he was seized, to be free from the deliberate indifference of the arresting officers to his serious medical needs as a detainee in violation of the Fourth (or alternatively the Fourteenth) Amendment.

At step one of the qualified immunity inquiry, taking the evidence in the light most favorable to Plaintiff Ingram, he has alleged a violation of his federal right to be free from deliberate indifference to his serious medical needs while a pretrial detainee. (Second Amended Complaint [Docket Item 64], ¶¶ 36-43.)

With regard to claims for inadequate medical care by pretrial detainees, the Third Circuit has held that

> the Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections "at least as great as the Eighth Amendment protections available to a convicted prisoner," without deciding whether the Fourteenth Amendment provides greater protections. [City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244, (1983).] In previous cases, we have found no reason to apply a different standard than that set forth in Estelle (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pretrial detainee is sufficient under the Fourteenth Amendment. See, e.g., Boring v. Kozakiewicz, 833 F.2d 468, 472 (3d Cir.1987).

Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003). The Third Circuit went on to say that

> [i]n Estelle, [429 U.S. 97, 102-04 (1976),] the Supreme Court held that the Eighth Amendment proscribes deliberate indifference to prisoners' serious medical needs. . . . In order to establish a violation of [plaintiff's] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need.

Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). As described, supra, Plaintiff alleges, and a reasonable jury could so find, that Plaintiff was suffering from a serious medical need related to the neck injury he sustained and Officer Defendants' acts and omissions by ignoring his cries that he could not feel his legs and ignoring the signs that he was unable to physically support himself and nevertheless choosing to roll him over, pull his body upright, and then drop him on his face constitute deliberate indifference to that serious medical need. Thus, Plaintiff has alleged a constitutional violation of his right to be free from deliberate indifference to his serious medical needs.

With regard to this the second prong of the qualified immunity analysis, the right of persons in police custody to be free from deliberate indifference to their medical need was recognized by the Supreme Court at least as early as Estelle in 1976, and this right was clearly established with respect to pretrial detainees at least as early as City of Revere in 1983, a reasonable police officer should know that they are not to be deliberately indifferent to the serious medical needs of their pretrial detainees. Therefore, the Court finds that the second constitutional right which Plaintiff Ingram alleges was violated was indeed "clearly established."

Therefore, Defendants' motions shall be denied to the extent that they seek summary judgment in Officer Defendants' favor on a theory of qualified immunity pertaining to both excessive force and deliberate indifference to the serious medical need of a person in custody.

### 3. Excessiveness of Force.

In the present case, there are significant factual disputes about the exact amount and type of force used by Officer Defendants against Plaintiff Ingram. Plaintiff Ingram alleges that as he walked out of a liquor store, nearby police officers started to chase him, he assumed that it was because of an outstanding warrant he had, got scared, and ran. (Ingram Dep. [Docket Item 146-10], 11:16-12:2.) After running for some distance, Plaintiff Ingram alleges he tried to surrender to police by going down to the ground. (Id. at 12:5-6.) In the process of getting down, Ingram claims his feet slipped from under him and he landed on his side. (Id. at 12:6-8.) As soon as he hit the ground, an officer jumped on his back and two officers started punching and kicking him. (Id. at 12:9-12.) After the officers started beating him, Plaintiff Ingram asserts that he could feel the blows, was in extreme pain, and was screaming that he could not breathe and that he could not feel his legs. (Id. at 12:12-15.) Then Defendant Merck walked over to Ingram, told him to "shut up," stepped on his neck, and Plaintiff Ingram heard it crack. (Id. at 12:15-18.) According to

Ingram, he told the officers he could not breathe and could not move. Nonetheless, the officers tried to sit him up, but when they released him, he collapsed onto his face and stomach. (Id. at 12:21-23.) Ingram then blacked out. (Id. at 20-24.) He alleges this post-seizure conduct showed indifference to his serious medical needs and worsened his condition.

Meanwhile, Defendants assert that Plaintiff Ingram's catastrophic injuries were caused not by the actions of Officer Defendants, but rather as a result of Plaintiff Ingram's slip-and-fall. (See County Defs.' Br. [Docket Item 143-1], 25.) Indeed, there is a dispute between expert witnesses whether the injuries were more likely caused by the slip-and-fall (which occurred before any officer touched Plaintiff) or by the force applied to Plaintiff's cervical vertebrae and spinal cord by police kneeling and/or stomping on the side of his neck.

There is a surveillance video of the events in question, and Defendants contend that it clearly shows that Officer Defendants' actions were reasonable under the circumstances. (See id. at 20-22.) The Court has reviewed the surveillance video and finds that it is of such low quality that it cannot be used to definitively ascertain the amount of force that Officer Defendants used in arresting Plaintiff Ingram. There are also a number of witnesses, including Officer Defendants, Plaintiff Dickerson and certain third parties, with conflicting testimony. It would be

inappropriate at this time for the Court to determine the veracity or credibility of these conflicting witnesses.

Under Graham, 490 U.S. 386, a plaintiff has the burden of showing that the amount of force directed at him by an arresting officer was constitutionally excessive. What is "excessive" is determined under all the circumstances then confronting the arresting officer, considering the Graham factors, among others, namely: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. The Third Circuit expounded upon the Graham factors in Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997), stating that

> [o]ther relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

Sharrar, 128 F.3d at 822.

In this case, taking the evidence in the light most favorable to Plaintiff Ingram, the Graham factors do not indicate that deadly force would have been reasonable under the circumstances, as

Plaintiff Ingram was arrested under false pretenses,[7] he did not have a weapon, was not threatening violence, or otherwise constituting a threat to safety. Plaintiff Ingram was attempting to flee, but in the absence of any other Graham factors, this alone does not support the Officer Defendants' use of deadly force against Plaintiff Ingram's neck as he lay on the ground. Likewise, taking the evidence in the light most favorable to Plaintiff Ingram, none of the Sharrar factors indicate that the degree of force would have been reasonable under the circumstances, as there is no evidence that Plaintiff Ingram was acting violently, there is no evidence that there was insufficient time for Officer Defendants to have refrained from exerting deadly force against Plaintiff Ingram's neck or spine, Plaintiff Ingram was not armed (although there is evidence he discarded a gun during the foot chase, which Plaintiff disputes), nor is there evidence that Officer Defendants were outnumbered. Therefore, taking the evidence in the light most favorable to Plaintiff Ingram, the Court finds that a reasonable officer would know that it would be excessive to jump on a suspect who had fallen to the ground, punch

---

[7] As highlighted at oral argument, Plaintiff Ingram has never been convicted of or pled guilty to any crime resulting from the arrest at issue, he maintains that all evidence against him was planted, and that Officer Defendants had no probable cause to pursue or arrest him. Count IX of Plaintiff Ingram's Second Amended Complaint [Docket Item 64] asserts a claim for false arrest, and no party has yet sought summary judgment as to that claim.

and kick him, step on or knee his neck, and to lift and drop him in spite of Plaintiff Ingram's vocal cries that he lost feeling in his extremities.

Plaintiff Ingram, as the party opposing summary judgment, is entitled to the facts and reasonable inferences most favorable to him. In Plaintiff Ingram's best case, a reasonable jury could find that he was pursued by police under false pretenses, that he never threatened an officer, never displayed something like a weapon, never advanced toward an officer, never touched an officer, never assumed a fighting posture, that after his fall he was not resisting whatsoever, that after his fall Officer Defendants beat Plaintiff Ingram while he lay on the ground, that Plaintiff Ingram's neck injury was sustained by force applied by the Officer Defendants, that he told Officer Defendants that he could not feel his legs prior to Officer Defendants disregarding Plaintiff Ingram's cries that he was in pain, could not breathe, and could not feel his legs, and picking him up and dropping his limp body causing him to fall onto his face. A reasonable jury could find that Officer Defendants exercised a degree of force that was not only improper but unconstitutionally excessive. Under this version of the facts, a jury could reasonably find that this force was not for the purpose of arresting Plaintiff Ingram, but rather for the purpose of summarily punishing him. The Fourth Amendment permits the use of force, sometimes even deadly force, to accomplish an

arrest in especially aggravated circumstances presenting demonstrable danger to the law enforcement officer or others. In Plaintiff Ingram's circumstances, looking at disputed evidence in the light most favorable to him for the purposes of this motion, a jury could reasonably find for Plaintiff. Therefore, Defendants' motion shall be denied to the extent that it seeks summary judgment with respect to the issue of excessive force.

   B.   Deliberate Indifference to Serious Medical Needs of Detainee

As noted, supra, Plaintiff claims that, whatever the causes of his injuries were, Defendant Officers made them worse due to deliberate indifference to his serious medical needs when the seizure was complete and he was in their custody. Plaintiff does not appear to allege that the officers failed to promptly seek medical care, as the evidence shows that an ambulance was summoned and arrived quickly. Plaintiff alleges, and the facts viewed in the light most favorable to him, that the officers knew he was unable to move and complained he had no feeling but nonetheless moved him twice, for no medical reason, without support for his neck, causing further injury.

Defendants Marchiafava, Gennetta, and Merck all assert that they are entitled to summary judgment in their favor with respect to Plaintiff Ingram's claims for failure to render medical aid under 42 U.S.C. § 1983. (See County Defs.' Br. [Docket Item 143-

1], 27-28; Gennetta's Br. [Docket Item 145-1], 34-35; Merck's Br. [Docket Item 144-1], 11.) Conversely, Plaintiff Ingram asserts that he is entitled to summary judgment in his favor with respect to his claims for failure to render medical aid under 42 U.S.C. § 1983. (See Ingram's Br. [Docket Item 148], 19-33.) The parties strongly dispute whether this claim falls under the Fourth or Fourteenth Amendment. (See Ingram's Br. [Docket Item 148], 21-33; Gennetta's Opp'n [Docket Item 159], 9; Merck's Opp'n [Docket Item 160], 5-16; County Defs.' Opp'n [Docket Item 164], 14-17.) The Honorable Judge Irenas previously held that the Fourth Amendment's reasonableness standard applies when a plaintiff claims a failure to render medical aid at the time of their arrest, while the Fourteenth Amendment's deliberate indifference standard applies after arrest has been affected and the individual is considered a pretrial detainee. Davis v. Twp. of Paulsboro, 421 F. Supp. 2d 835, 855 (D.N.J. 2006) (citing James v. York Cty. Police Dep't, 160 F. App'x 126, 131 n.3 (3d Cir. 2005)).

In the present case, the moment of seizure is in dispute, and therefore the Court cannot simply choose the appropriate test to apply with regard to Plaintiff Ingram's claim for failure to render medical aid. "It is a question of fact precisely when, in each case, the arrest took place." Sibron v. New York, 392 U.S. 40, 67 (1968) (citing Rios v. United States, 364 U.S. 253, 261-262 (1960)). Therefore, as this issue is currently in dispute, the

question of when Plaintiff Ingram was actually seized cannot be decided in the context of the present motions, but rather must wait for the jury to determine. If "seizure" pursuant to the arrest was completed by subduing and handcuffing Plaintiff on the ground, then this second phase of constitutional violation may be said to have occurred post-seizure, that is, while in custody, and rights of a pretrial detainee apply. See Natale, 318 F.3d at 581. On the other hand, if he was not yet a "detainee" because seizure was not yet complete, then this second phase of injurious contact occurred pursuant to the arrest and would be analyzed as part of the "excessive force" claim, as above.

In the version of events most favorable to Plaintiff Ingram, as described, supra, his need for medical attention stemming from a spinal injury became apparent to the Officer Defendants prior to or during the course of arrest, as a result of Plaintiff Ingram having loudly stated that he could not feel his legs, and rather than rendering immediate medical aid, the Officer Defendants, all of whom are trained first responders, proceeded to pick up Plaintiff Ingram, drop him on his face, pick him up again, and then finally call for an ambulance. In this version of events, Officer Defendants knew or should have known that a person suffering from a spinal injury should not be moved whatsoever, and rather should be stabilized in place, prior to the arrival of paramedics. A reasonable jury could find these facts and, were

they to do so, they could also reasonably find in favor of Plaintiff Ingram with respect to this claim. Therefore, Defendants' motions must be denied with respect to this claim.

Likewise, in the version of events most favorable to Defendants, the Officer Defendants did not become aware of Plaintiff Ingram's medical need until after he was seized. Officer Defendants, still unaware of Plaintiff Ingram's neck injury, attempted to get Plaintiff Ingram to stand in order to escort him to a patrol car. Once aware that Plaintiff Ingram's reason for not standing was an injury to his neck, Officer Defendants immediately stabilized Plaintiff Ingram in place and requested an ambulance. A reasonable jury could find these facts and, were they to do so, they could also reasonably find in favor of Defendants with respect to this claim. Therefore, Plaintiff's motion for summary judgment must be denied.

### C. Municipal liability.

County Defendants also contend that they are entitled to summary judgment in favor of Defendants County of Camden, Camden County Police Department, John Scott Thomson, and Orlando Cuevas as to Counts IV and V of Plaintiff Ingram's Second Amended Complaint [Docket Item 64], seeking damages under 42 U.S.C. § 1983 for inadequate policies, procedures, and customs (Count IV) and

for inadequate training and supervision (Count V).[8] (See County Defs.' Br. [Docket Item 143-1], 28-30.) Plaintiff has confirmed that his Monell claims arise only with respect to the excessive use of force by the arresting officers, and not the claim of deliberate indifference to a serious medical need. County Defendants assert that these claims for municipal and supervisory liability are barred because County Defendants' expert, Mr. Ryan, opines that Camden County Police Department's training and policies meet all applicable standards and Defendant Shockley received such training and supervision.[9] (See id. at 29.) County

---

[8] Additionally, County Defendants contend that they are entitled to summary judgment in favor of Defendants County of Camden and Camden County Police Department with respect to Counts I, II, and III of Plaintiff Ingram's Second Amended Complaint [Docket Item 64], because they each appear to seek damages under 42 U.S.C. § 1983 from these two defendants on a theory of respondeat superior. County Defendants rightly assert that public entities are not subject to § 1983 liability by way of respondeat superior, rather such liability can only be brought by way of a Monell claim, as in Counts IV and V of Plaintiff Ingram's Second Amended Complaint [Docket Item 64]. (See County Defs.' Br. [Docket Item 143-1], 28 n.14. (citing Monell v. Department of Social Services, 436 U.S. 658, 691 (1978); Fagan v. City of Vineland, 22 F.3d 1283, 1291 (3d Cir. 1994)).) Plaintiff Ingram does not appear to oppose this request. (See generally Pl.'s Opp'n [Docket Item 170].) The Court finds that public entities are not liable for § 1983 violations by way of a respondeat superior theory, and therefore County Defendants' motion shall be granted to this extent.

[9] County Defendants additionally contend that they are entitled to summary judgment as to these issues because there is no underlying liability against the Officer Defendants for excessive force, and therefore there can be no municipal or supervisory liability against Defendants County of Camden, Camden County Police Department, John Scott Thomson, and Orlando Cuevas. (See Defs.' Br [Docket Item 143-1], 28-29; County Defs.' Reply [Docket Item 183],

Defendants further assert that the Court should disregard the opinions and testimony of Plaintiff Ingram's expert, Dr. Chapman, and filed a motion to strike same. (See id. at 29-30.) That motion has been addressed in part, but approximately 48 additional objections by Defendant need to be resolved to ascertain Daubert admissibility. [Docket Item 229.]

Plaintiff Ingram contends that there exists a genuine dispute of material fact with respect to his claims for municipal and supervisory liability on the part of Defendants County of Camden, Camden County Police Department, John Scott Thomson, and Orlando Cuevas. (See Pl.'s Opp'n [Docket Item 170], 20-38.) Plaintiff Dickerson relies heavily on the expert report prepared by Dr. Chapman and asserts that County Defendants employ inadequate investigatory practices, that they ignore citizens' complaints of excessive force, that they have ignored prior incidents of officers inappropriately using force against an arrestee's neck, that they failed to properly implement their "early warning" system with respect to Defendant Merck, that they failed to properly supervise and monitor officers' use of force, that they failed to properly

---

1-3.) However, as the Court shall not grant summary judgment in Officer Defendants' favor as to their liability for the alleged use of excessive force, as explained, supra, the question of Officer Defendants' liability is still to be determined and the Court need not address this argument at this time.

train their officers, and that they had a policy and custom of sanctioning officer misconduct. (See id.)

County Defendants assert that all Monell claims should be dismissed, because Camden County Police Department is in compliance with all guidelines and policies with regard to the use of force. (See County Defs.' Br. [Docket Item 143-1], 29; County Defs.' Reply [Docket Item 183], 6-7, 11.) Further, County Defendants assert that Plaintiff Ingram's claim under a failure to investigate theory must be dismissed, because Officer Defendants had too few prior complaints of excessive force to put County Defendants on notice regarding a potential problem, (see County Defs.' Reply [Docket Item 183], 4), and Dr. Chapman's criticisms of Camden County Police Department's "early warning" and internal affairs systems are overstated. (See id. at 5-9.) County Defendants also assert that Plaintiff Ingram's claim under a failure to train theory must be dismissed, because Plaintiff Ingram has failed to show a pattern of violations by untrained officers. (See id. at 10-11.) As noted, supra, County Defendants' motion to strike the opinion and testimony of Dr. Chapman is still pending in part,[10] and there remains substantial disagreement between the parties as

---

[10] An Order clarifying the status of the many dozens of objections to Chapman's expert opinions and the pared-down list of some 48 objections remaining in dispute was entered earlier at [Docket Item 229], today.

to admissibility of Dr. Chapman's opinion and testimony regarding _Monell_ issues. Therefore, the Court shall reserve judgment as to this portion of County Defendants' motion, until such time as the remaining disagreements with respect to Dr. Chapman's opinion and testimony regarding _Monell_ issues have been resolved.

D. New Jersey's Statutory Pursuit Immunity.

Defendants also assert that they are entitled to summary judgment with respect to Plaintiff Ingram's claims under New Jersey state law, because they are immune from suit as to these issues as a result of New Jersey's statutory "pursuit immunity," codified at N.J. STAT. ANN. § 59:5-2.[11] (County Defs.' Br. [Docket Item 143-1], 28 n.13; Merck's Br. [Docket Item 144-1], 5-6; Gennetta's Br. [Docket Item 145-1], 36.) Plaintiff Ingram opposes this portion of

_____

[11] N.J. STAT. ANN. § 59:5-2 states:
   Neither a public entity nor a public employee is liable for:
      a.  An injury resulting from the parole or release of a prisoner or from the terms and conditions of his parole or release or from the revocation of his parole or release;
      b.  any injury caused by:
         (1)  an escaping or escaped prisoner;
         (2)  an escaping or escaped person;
         (3)  a person resisting arrest or evading arrest;
         (4)  a prisoner to any other prisoner; or
      c.  any injury resulting from or caused by a law enforcement officer's pursuit of a person.
N.J. STAT. ANN. § 59:5-2.

Defendants' motions, asserting that New Jersey's "pursuit immunity" statute does not immunize police officers from injuries caused by the pursuing police alone, (see Pl.'s Opp'n [Docket Item 170], 19-20 (citing Tice v. Cramer, 133 N.J. 347, 371 (1993)), and that the immunity statute is also inapplicable where the officers' use of force is greater than or equal to willful misconduct. (Id. at 20 (citing N.J. STAT. ANN. § 59:3-14).)[12] No Defendant substantively responded to Plaintiff Ingram's position with respect to Tice, 133 N.J. 347, or N.J. STAT. ANN. § 59:3-14 in their reply briefs. Pursuit immunity was mentioned in reply briefs filed by Defendant Marchiafava, (see Marchiafava Reply [Docket Item 184], 11), and by Defendant Gennetta, (see Gennetta Reply [Docket Item 194], 10), but these briefs only state that pursuit immunity should apply for the same reasons that were stated in the original moving briefs; neither reply attempts to rebut Plaintiff Ingram's arguments with respect to Tice, 133 N.J. 347, or N.J. STAT. ANN. § 59:3-14.[13]

---

[12] N.J. STAT. ANN. § 59:3-14 states, in relevant part:
      a. Nothing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.
N.J. STAT. ANN. § 59:3-14.

[13] The reply briefs filed by Defendant Marchiafava and Defendant Gennetta also claim that they are entitled to summary judgment in their favor based on New Jersey's state qualified immunity doctrine. (See Marchiafava Reply [Docket Item 184], 11; Gennetta

The Court first notes that Plaintiff is <u>not</u> claiming that he suffered injury during the foot chase itself including his slip-and-fall, but rather that the "pursuit" continued as the officers jumped on him after the fall until he was seized. Nonetheless, the Court finds that N.J. STAT. ANN. § 59:3-14 permits plaintiffs to recover for state law claims against police officers in pursuit of a person evading arrest, where the officers' actions rise to or above the level of willful misconduct. The Court further finds that, in the version of events most favorable to Plaintiff Ingram, as described, <u>supra</u>, a reasonable jury could find that Defendant Officers' treatment of Plaintiff Ingram constituted willful misconduct. The Court further finds that, in the version of events most favorable to Plaintiff Ingram, as described, <u>supra</u>, a reasonable jury could find that Plaintiff Ingram's injuries were sustained after he fell but before the pursuit ended with his violent seizure. Therefore, this portion of Defendants' motions for summary judgment will be denied.

### E. Supervisory Liability.

Defendant Merck asserts that he is entitled to judgment as a matter of law with regard to Plaintiff Ingram's allegations of

---

Reply [Docket Item 194], 10.) However, this argument was not raised in any party's initial moving brief and it is inappropriate for a party to raise a legal argument for the first time in a reply brief. Therefore, the Court shall not address this issue at this time.

supervisory liability against him contained in Count III of Plaintiff Ingram's Second Amended Complaint [Docket Item 64]. (See Merck's Br. [Docket Item 144-1], 8-11.) Defendant Merck asserts that Plaintiff Ingram is unable to satisfy the three requirements to sustain such a claim: (1) Plaintiff Ingram's constitutional rights were violated,[14] (2) Defendant Merck participated or directed others to violate Plaintiff Ingram's rights, and (3) Defendant Merck knew of and acquiesced in his subordinates' violation of Plaintiff Ingram's rights. (See id.)

Defendant Merck argues that Plaintiff Ingram cannot establish that Defendant Merck participated in, directed, or had knowledge of and acquiesced in his subordinates' alleged violations of Plaintiff Ingram's constitutional rights. (Id. at 10.) Defendant Merck asserts that the alleged violation of rights took place prior to his arrival on the scene, that Defendant Merck arrived after Plaintiff Ingram was handcuffed, and that there is no evidence that any excessive force was used after Defendant Merck arrived. (Id. at 10-11.)

---

[14] While Defendant Merck claims that Plaintiff Ingram cannot show that he suffered a violation of his constitutional rights, (see Merck's Br. [Docket Item 144-1], 9-10), as the Court has already held, supra, that Plaintiff Ingram is able to show at a minimum genuine disputes of material fact as to whether he suffered a violation of his constitutional rights, sufficient to survive a motion for summary judgment, the Court shall not address this portion of Defendant Merck's argument, or Plaintiff Ingram's response thereto, at this time.

Plaintiff Ingram opposes Defendant Merck's request, asserting that Defendant Merck was present at the scene when Plaintiff Ingram sustained his catastrophic injury and was subsequently moved. (See Pl.'s Opp'n [Docket Item 170], 3-5.) In the version of events most favorable to Plaintiff Ingram, as described, supra, a reasonable jury could find that Defendant Merck was present on the scene and participated in causing Plaintiff Ingram's injuries and acquiesced to his subordinates' (i.e. Marchiafava's and Gennetta's) actions which violated Plaintiff Ingram's constitutional rights. Therefore, the Court shall deny Defendant Merck's motion insofar as it seeks summary judgment as to Plaintiff Ingram's claim against him for supervisory liability.

## IV.    Conclusion.

For the reasons stated above, Defendants County of Camden, Camden County Police Department, Chief John Scott Thomson, Orlando Cuevas, and Nicholas Marchiafava's motion for summary judgment, [Docket Item 143], will be granted in part and denied in part. The motion is granted with respect to all claims against Defendant Cuevas and with respect to Defendants County of Camden and Camden County Police Department as to Counts I, II, and III. County Defendants' arguments with respect to Plaintiff Ingram's Monell claims will be addressed after the outstanding disagreements regarding Dr. Chapman's opinion and testimony have been resolved. Defendant Jeremy Merck's motion for summary judgment, [Docket Item

144], Defendant Antonio Gennetta's motion for summary judgment, [Docket Item 145], and Plaintiff Ingram's motion for summary judgment, [Docket Item 146], will be denied. An accompanying Order shall be entered.


**March 29, 2019**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      U.S. District Judge