

**JAY J. BLUMBERG** *
jjblumberg@blumberglawoffices.com
*CERTIFIED CIVIL TRIAL ATTORNEY*

**CHRISTOPHER M. WOLK** *
cwolk@blumberglawoffices.com

**ERIKA L. MOHR**＊
emohr@blumberglawoffices.com

**PARKER W. HALL III**
phall@blumberglawoffices.com

**OF COUNSEL**
**MICHAEL J. O'NEILL**＊
moneill@blumberglawoffices.com

*＊MEMBERS OF PA and NJ BAR*

March 13, 2020

**COURTESY COPY**
Hon. Noel L. Hillman, USDJ
United States District Court of NJ
Mitchell H. Cohen U.S. Courthouse
1 John F. Gerry Plaza
Courtroom 3A
Camden, NJ 08101

> Re:   Ingram v. County of Camden, et al.
>        Civil Action No. 1:14-CV-05519
>        Our File No. 1609SB-B

Dear Judge Hillman:

This office represents Defendant, Jeremy Merck, in the above-referenced civil action. Enclosed please find a courtesy copy of the Motion to Bifurcate filed on behalf of defendant, Jeremy Merck on March 13, 2020.

Thank you for your time and attention to this matter.

Respectfully Submitted,

BLUMBERG & WOLK, LLC

*/s/ Michael J. O'Neill, Esq.*

Michael J. O'Neill, Esq.

MJO/cs
Encl.
C:  Hon. Karen M. Williams, USMJ (w/encl.)
     All Counsel Registered w/Court's E-Filing System (w/encl. via ECF)

**BLUMBERG & WOLK, LLC**
Jay J. Blumberg, Esq.
Michael J. O'Neill, Esq.
158 Delaware Street
P.O. Box 68
Woodbury, NJ 08096
(856) 848-7472
Attorneys for Defendant, Jeremy Merck

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| XAVIER INGRAM<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF CAMDEN, CAMDEN COUNTY POLICE DEPARTMENT, JEREMY MERCK, ANTONIO GENNETTA, MARK MARCHIAFAVA, JOHN SCOTT THOMSON, ORLANDO CUEVAS, JOHN DOE(S) 1-50, and ABC ENTITIES 1-10,<br><br>Defendants. | CIVIL ACTION NO:1:14-CV-05519 (NLH-KMW) |
| Darren A. Dickerson<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF CAMDEN, CAMDEN COUNTY POLICE DEPARTMENT, NIGEL SHOCKLEY, JEREMY MERCK, ANTONIO GENNETTA, MARK MARCHIAFAVA, JOHN SCOTT THOMSON, ORLANDO | CIVIL ACTION NO:1:14-CV-6905 (NLH-KMW) |

| CUEVAS, JOHN DOE(S) 1-50, and ABC ENTITIES 1-10, | |
| Defendants. | |

TO:   Beth A. Baldinger, Esq.
      Mazie, Slater, Katz & Freeman, LLC
      103 Eisenhower Pkwy, STE 207
      Roseland, NJ 07068
      Attorney for Plaintiff, Xavier Ingram

**TAKE NOTICE** that on such date and time scheduled by the United States District Court for the District of New Jersey, the undersigned, Blumberg & Wolk, LLC, attorneys for Defendant, Jeremy Merck will hereby move this Court for an Order to Bifurcate for trial the claims against the individual officer-defendants from the municipal liability claims under <u>Monell</u> in the Ingram matter. In support of this Motion, the undersigned will rely upon the Affidavit of Counsel, Statement of Material Facts and Brief in Support.

Dated: 3/13/20

By: /s/ Michael J. O'Neill
    Jay J. Blumberg, Esq.
    Michael J. O'Neill, Esq.
    Attorneys for Defendant,
    Jeremey Merck

**BLUMBERG & WOLK, LLC**
Jay J. Blumberg, Esq.
Michael J. O'Neill, Esq.
158 Delaware Street
P.O. Box 68
Woodbury, NJ 08096
(856) 848-7472
Attorneys for Defendant, Jeremy Merck

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| XAVIER INGRAM<br><br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF CAMDEN, CAMDEN COUNTY POLICE DEPARTMENT, JEREMY MERCK, ANTONIO GENNETTA, MARK MARCHIAFAVA, JOHN SCOTT THOMSON, ORLANDO CUEVAS, JOHN DOE(S) 1-50, and ABC ENTITIES 1-10,<br><br><br>Defendants. | CIVIL ACTION NO:1:14-CV-05519 (NLH-KMW) |
| Darren A. Dickerson<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF CAMDEN, CAMDEN COUNTY POLICE DEPARTMENT, NIGEL SHOCKLEY, JEREMY MERCK, ANTONIO GENNETTA, MARK MARCHIAFAVA, JOHN SCOTT THOMSON, ORLANDO | CIVIL ACTION NO:1:14-CV-6905 (NLH-KMW) |

| CUEVAS, JOHN DOE(S) 1-50, and ABC ENTITIES 1-10, | |
|---|---|
| Defendants. | |

## ORDER

This matter having come before the Court by way of Motion to Bifurcate filed by Blumberg & Wolk, LLC counsel for Defendant, Jeremy Merck for an Order to Bifurcate and conduct the trial in two phases, and the Court having considered the moving papers, opposition thereto, argument of the parties; and for good cause appearing for the entry of the within Order:

**IT IS** on this _____ day of _____, 2020 hereby **ORDERED:**

1) Defendant, Jeremy Merck's Motion to Bifurcate is GRANTED;

2) Trial in the above captioned consolidated actions will be conducted in two phases;

3) Phase 1 shall determine the liability of the individual officer defendants;

4) Phase 2 will determine the municipal liability and damages claims if there is

a finding in favor of Plaintiff, Xavier Ingram in Phase 1.


_____

Honorable Noel L. Hillman,
United States District Judge

_____ Opposed
_____ Unopposed

Papers considered:
[  ] Motion and supporting documents
[  ] Opposition
[  ] Reply brief

**BLUMBERG & WOLK, LLC**
Jay J. Blumberg, Esq.
Michael J. O'Neill, Esq.
158 Delaware Street
P.O. Box 68
Woodbury, NJ 08096
(856) 848-7472
Attorneys for Defendant, Jeremy Merck

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| XAVIER INGRAM<br><br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF CAMDEN, CAMDEN COUNTY POLICE DEPARTMENT, JEREMY MERCK, ANTONIO GENNETTA, MARK MARCHIAFAVA, JOHN SCOTT THOMSON, ORLANDO CUEVAS, JOHN DOE(S) 1-50, and ABC ENTITIES 1-10,<br><br><br>Defendants. | CIVIL ACTION NO:1:14-CV-05519 (NLH-KMW) |
| Darren A. Dickerson<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF CAMDEN, CAMDEN COUNTY POLICE DEPARTMENT, NIGEL SHOCKLEY, JEREMY MERCK, ANTONIO GENNETTA, MARK MARCHIAFAVA, JOHN SCOTT THOMSON, ORLANDO | CIVIL ACTION NO:1:14-CV-6905 (NLH-KMW) |

| THOMSON, ORLANDO CUEVAS, JOHN DOE(S) 1-50, and ABC ENTITIES 1-10,<br><br>                      Defendants. | |
|---|---|

---

## BRIEF IN SUPPORT OF DEFENDANT, JEREMY MERCK'S MOTION TO BIFURCATE AND CONDUCT THE TRIAL IN TWO PHASES

**Motion Date:**          **April 6, 2020**
**Opposition Deadline:**   **March 23, 2020**
**Reply Deadline:**        **March 30, 2020**


                                      BLUMBERG & WOLK, LLC
                                      Attorneys for Defendant,
                                      Jeremy Merck

Dated: 3/13/20

                                    By: /s/ Michael J. O'Neill
                                            Jay J. Blumberg, Esq.
                                            Michael J. O'Neill, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.........................................i

INTRODUCTION............................................... 1

STATEMENT OF FACTS.........................................2

LEGAL ARGUMENT...........................................13

    A. Standard for Bifurcation under Fed. R. Civ. P. 42(b)...13

        i. <u>This Court Should Bifurcate The Claims Against The Individual Officer Defendants From The Monell Claims In The Interest Of Judicial Economy</u>......................14

       ii. <u>This Court Should Bifurcate The Claims Against The Individual Officer Defendants From The Monell Claims Due To The Risk Of Prejudice</u>............................16

CONCLUSION................................................19

# TABLE OF AUTHORITIES

## **CASES:**

<u>Beck v. City of Pittsburg</u>, 89 F.3d 966(3d.Cir.1996).......13, 14

<u>City of Los Angeles v. Heller</u>, 475 U.S. 796 (1986)...........14

<u>Idzojtic v. Pennsylvania R.R. Co.</u>, 456 F.2d 1228 (3d.Cir.1972)...............................................13

<u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658 (1978)...........................................13, 14, 15

<u>Mulholland v. Government County of Berks, PA</u>, 706 F.3d 227 n.15 (3d.Cir.2003)............................................14

<u>Zampetis v. City of Atlantic City, *et.al.*</u>, 1:15-cv-01231-NLH-AMD, 2018 WL 5729905, 2 (D.N.J. November 2, 2018)............15

## **STATUTES**

42 U.S.C. §1983.........................................13

## **RULES**

Fed. R. Civ. P. 42(b)....................................13

i

# I.   **Introduction**

This brief is submitted on behalf of Defendant, Jeremy Merck ("Defendant Merck") in support of a Motion to Bifurcate under Fed. R. Civ. P. 42(b). This matter involves the consolidated civil actions of Plaintiff, Xavier Ingram and Plaintiff, Darren Dickerson. The consolidated actions involve allegations of constitutional violations under 42 U.S.C. §1983, among other claims, as well as allegations of municipal liability under <u>Monell</u>. Plaintiff, Xavier Ingram ("Plaintiff Ingram") was arrested following a foot pursuit by Defendants, Camden County Police Officers Antonio Gennetta and Nicholas Marchiafava on June 12, 2014. Plaintiff Ingram alleges, among other claims, that the officer defendants used excessive force in his arrest by "kicking, punching" him during his arrest and that Defendant Merck allegedly stepped or stomped on his neck which allegedly resulted in quadriplegia. Defendants have denied all allegations and asserted that Plaintiff Ingram's quadriplegia injury resulted from a fall which occurred while Plaintiff Ingram was fleeing from the police and which ended the foot pursuit.

Plaintiff, Darren Dickerson was arrested on June 12, 2014 in the aftermath of the arrest of Plaintiff Ingram by Camden County Police Officer/Defendant, Nigel Shockley.  For the reasons expressed more fully below, Defendant Merck seeks the Court to conduct the trial in these consolidated actions in two phases. The claims of

liability against the individual officers determined first and then, if necessary, proceeding to municipal liability under <u>Monell</u> and damages.

## II.   <u>STATEMENT OF FACTS</u>

1. Plaintiff, Xavier Ingram's civil action results from his arrest by Camden County Police Officers, Defendants, Jeremy Merck; Nicholas Marchiafava and Antonio Gennetta on June 12, 2014. (*see* Plaintiff's Second Amended Complaint; ECF Document No. 64).

2. Plaintiff, Xavier Ingram asserted under 42 U.S.C. §1983 that his arrest on June 12, 2104 resulted in constitutional violations by use of excessive force; failure to render medical care; supervisor liability; common law assault and battery; negligence; false arrest and imprisonment and state law constitutional violations against Defendant, Jeremy Merck. (*see* <u>Id.</u>).

3. Defendant Merck provided the following version of events in his Incident Report:

"On June 12, 2014, I was assigned to the Community Safety Team uniformed proactive patrol as a city wide supervisor… At approximately 2140, I responded to the area of Sycamore and Chestnut Court Apartments, 7th and Sycamore, to meet with Officer Gennetta #357, who was specifically assigned to that area. The area of Sycamore/Chestnut Courts is a well known and document location where the commission of drug related and violent crimes occur. Upon meeting with Officer Gennetta I advised him that we were going to conduct a complex sweep of the apartment complex on foot. Officer Marchiafava #374 who was also in the area assisted with the complex sweep.

Upon entering the courtyard of Chestnut Court Apartments from the Sycamore Street side, I observed a group of approximately 8 subjects huddled together standing in the center of the courtyard. Once the subjects observed the police in the area, one of subjects yelled "YURP" and they all immediately began to walk off in different directions. One subject, later found to be Xavier Ingram, grabbed the front waist band with both hands, turned away from me and quickly began to walk towards Chestnut Street. Ingram's actions were consistent with someone carrying a weapon. As I followed the Ingram I observed him turn left into the parking lot between two vehicles. At that time I heard the sound of metal object strike the pavement coming from the area Ingram was observed. Ingram emerged from the two vehicles no longer holding his waistband and walked towards Eddies Liquor Store at the corner of Chestnut Street and 7th Street. Before entering the store Ingram turned towards me and stated "Whats up Sgt Merck?" At that time I immediately identified Ingram from past dealings I have had him. Once I immediately identifying him I walked back the area where I observed Ingram in between the two vehicles and the same area where I heard a metal object strike the ground. At that time I observed a large black and silver hand gun (Match Combat Sport 10mm serial EA93801), on ground under the front wheel of a parked vehicle. I instructed Officer Gennetta and Officer Marchiafava of findings and to arrest Ingram. When Officer Gennetta and Marchiafava attempted to arrest Ingram, he fled on foot north on 7th Street towards Mt Vernon Street. At that time I secured the firearm and proceeded to the area of foot pursuit. Once I turned the corner onto 7th Street. I observed Officer Gennetta and Officer Marchiafava effecting the arrest of Ingram at the corner of 7th Street and Mt Vernon. Ingram was lying face down while officers secured him in handcuffs. During search incident to arrest Officer Marchiafava located 4 bags of suspected heroin stamped MIA on in Ingram's front right pants pocket. Once in handcuffs Ingram yelled "Yo Sgt Merck I am sorry, it's mine" He also began to complain of neck and shoulder pain. He stated that he could not feel his legs. At that time I called for Emergency Medical Services to respond to the scene. Emergency Medical Services responded and transported Ingram to Cooper Hospital with a police escort. The firearm was made safe and found to have 12 10mm ball ammunition in the magazine and one 10mm round in the chamber. I responded to the Police Administration Building with the firearm to start processing. Upon arrival I advised Det Divito of my findings. The handgun was found to be stolen out of Gloucester Township. Camden County, on 1/30/2014

3

under case number 2014-0415. Ingram charged with Unlawful Possession of Weapon, Possession of a Weapon for Unlawful Purpose, Certain Persons not to have weapons, Receiving Stolen Property, Possession of CDS, and Resisting by Flight under warrant 0408-W-2014-005654 with $65,000 bail. By the completion of this report Ingram was still being treated at Cooper Hospital under police guard.

(Incident Report of Defendant, Merck attached to Defendants, County of Camden, et.al. Motion for Summary Judgment, Exhibit D-4, ECF No. 139-4).

4. EMS were called to the scene who documented "[Plaintiff Ingram] was fully exposed for trauma exam. No deformities, wounds, or abrasions noted."

(EMS report attached to Defendants, County of Camden, et.al. Motion for Summary Judgment, Exhibit D-25, ECF No. 139-25).

5. Plaintiff Ingram was transported to Cooper University Hospital where he was evaluated by emergency department personnel who documented that Plaintiff Ingram was negative for injuries to his face, nose, ears and teeth and that he had no visible contusions, abrasions or wounds to his neck. Back, chest or abdomen.

(Emergency Department Record of Cooper University Hospital attached to Defendants, County of Camden, et.al. Motion for Summary Judgment, Exhibit D-26, ECF No. 139-26).

6. Plaintiff Ingram also alleged municipal liability claims against Defendants, County of Camden and Camden County Police Department under Monell. (*see* Plaintiff's Second Amended Complaint, ECF No. 64).

7. Plaintiff Ingram intends to produce Christopher Chapman, Ph.D as an expert to opine in support of his claims against Defendant Merck as well as his municipal liability claims under <u>Monell</u>. (Report of Christopher Chapman, Ph.D attached hereto in relevant portion as Exhibit A).

8. In his report, Dr. Chapman offers the following opinions as to the municipal liability claims:

**"Notification to CCPD of Merck's Pattern, Practice and/or Trends of Inappropriate Behavior**

1. **The CCPD knew that they had an obligation to protect the constitutional rights and civil liberties of the citizens of Camden and the State of New Jersey by implementing an IA policy that provided a meaningful and objective investigation of citizen complaints regarding Merck, monitoring and tracking Merck's behavior(s) for incidents of misconduct, and when Merck was found to have engaged in misconduct the CCPD was required to correct his behavior.**

2. **The CCPD Rules and Regulations specifically indicate employees shall observe and obey all laws and ordinances, all rules and regulations and orders of the CCPD which includes the use of force policy.**

3. **The CCPD asserts that IA reviews all use of force reports to determine whether a rile, policy or procedure was violated and audits of its records to determine if Merck had an *emerging pattern, practice or trend* of inappropriate behavior or misconduct.** (emphasis in original)

4. **On or about February 8, 2013, Merck engaged in a use of force activity; on May 3, 2013 and on August 29, 2013 Merck engaged in additional use of force activities. Based upon the three (3) early warning indicators, the CCPD should have anticipated as per**

their policy that an emerging pattern of problematic behavior was developing.

5. On September 24, 2013, Merck engaged in another use of force activity. However, this use of force activity was 22 days outside of the six (6) month window (8/02/13)for inclusion which should have caused an automatic trigger of the CCPD early intervention program as per their Guardian Tracking policy. It is my opinion even though Merck's fourth use of force activity was 22 days outside of the automatic triggering window, the CCPD should have advised Merck that a pattern of use of force was developing. The CCPD took no action which has been documented regarding Merck's use of force activities.

6. It is my opinion that Merck should have been under intensive remedial intervention commencing on September 24, 2013 and continuing until after October 24, 2014. The failure of the CCPD to intervene or investigate Merck's use of force activities and IA complaints sent Merck and others within the CCPD the message, that their use of force against citizens will not be subjected to any meaningful review and that they policy of the CCPD as related to IA & Guardian Tracking is not to follow its policies.

7. As previously discussed and illustrated above and within other sections of this report, I supported the opinion that Merck fit the officer profile of a potential problematic officer who was in need of closer supervision and monitoring. However, the CCPD failed to provide either.

8. Merck who is alleged to have stepped on Ingram about his neck & back, planted evidence (drugs and/or gun), provided conflicting assertions about the incident and filed a misleading police report, has been the subject of 12 or more critical police incidents prior to the Ingram incident and at least four (4) after the Ingram incident based upon data wherein the CCDPD were required to review Merck's behavior to determine if Merck was in need of additional training, supervision or removal as a result of his use of force activities and allegations that he was involved in criminal activity.

9. When reviewing each of Merck's use of force incidents, it is objectively unreasonable for the CCPD not to have subjected Merck to remedial interventions, conducted command reviews and/or had Merck's fitness for duty assessed.

10. When reviewing each of Merck's IA complaints, prior to June 12, 2014 and after, it is objectively unreasonable of the CCPD not to have subjected Merck to remedial interventions, conducted command reviews and/or had Merck's fitness for duty assessed.

11. Because the CCPD failed to have a functioning early warning system in opposition to their IA policy and NJ Attorney General IA Guidelines, they failed to identify his emerging problematic activities thus sending a wrong affective message to Merck that his use of force activities and other complained-about activities were appropriate as a result of failing to intervene.

12. Following are two examples before the Ingram incident where had the CCPD properly addressed Merck's prior use of force and IA complaints, it may have prevented Merck from engaging (believing criminal activity was afoot) Ingram.

13. Merck, who is alleged to have stepped on Ingram's neck and planted evidence (drugs and gun) and provided conflicting assertions about this incident, has been the subject of nine (9) use of force incidents before this incidence and four (4) use of force incidents after this incident. However, the above chart reflects that none of Merck's use of force incidents have undergone a Command Review (no review sheet IA-8) to determine if Merck had an emerging pattern or trend of using unnecessary (excessive) force which required that he receive additional training, supervision or removal as a result of his use of force activities.

14. The CCPD in spite of knowing there was an excessive force complaint made by Ingram against Merck elected to promote Merck without determining if Merck had used force against Ingram and/or if Merck violated any rules of the CCPD during the Ingram Incident.

15. Had the CCPD conducted the required reviews of Merck's use of force activities or conducted a reasonable IA investigation, IA would have learned during [IA Case Number] the excessive force complaint regarding Merck, that he filed a report which was similar (boilerplate language) to the report he filed within the Ingram case, wherein Merck was a high crime area and he asserted an individual placed their hands in their pockets which caused him to believe they had a weapon. However, in [IA Case Number] Merck advised [investigating detective] that he attempted to conduct a pat down of [citizen] for weapons because he immediately placed his hands into his pockets and bladed his body."

(Exhibit A, pgs. 90-94, internal citations omitted).

9. Dr. Chapman further opined in his lengthy report:

"Commencing on or about November 16, 2013, Merck <u>should have been</u> on remedial use of force intervention monitoring as a result of having four early warning force triggers within a six (6) month period. The day after theoretically triggering intervention, Merck was involved in two additional use of force incidents which were later the subject of an internal affairs investigation for excessive. The remedial use of force intervention monitoring should have continued through December of 2014. However, there was no monitoring of Merck in connection with his use of force activities and <u>only one</u> of Merck's use of force activities underwent an administrative review as Thomson stated is required in every instance (the administrative review appears to be perfunctory, because no comments are provided and the reviewer simply selected check boxes). In total, Sgt. Merck had twenty-seven (27) events within his Guardian Tracking profile, twenty of which were prior to Ingram's incident. Despite the 20 events, Merck was not flagged until the first week of June 2014 as described below, for a traffic accident. [emphasis in original]

1. It is objectively unreasonable that CCPD did not conduct Administrative Reviews of Merck's use of force activity, in part because the Guardian Tracking system is designed to include use of force reviews and alert administrators when applicable.

8

\*      \*      \*

Thomson asserts, between February 18, 2013 and October 30, 2014 Merck had a total of seven (7) use of force incidents which were logged within the Guardian Tracking System. A review of the use of force reports indicate that no administrative reviews were conducted and no additional notations were made within the Guardian system as to his use of force frequency.

CCPD had a sophisticated computerized functional method of tracking Merck's possibly problematic behaviors. However, CCPD elected not to enter events entirely or entered events more than a month after occurring. The agency failed to monitor and act upon early warning notification regarding Merck's activities.

Commencing on June 10, 2013, there was a citizen complaint identified by CCPD against Merck, and between June 10, 2013 and November 26, 2013, CCPD knew that there had been four (4) citizen complaints filed against Merck, one (1) criminal investigation and three (3) use of force incidents for a total of seven (7) events.

Between December 10, 2013 and February 25, 2014, Merck's status was identified as red within CCPD's electronic early warning system. However, there is no documentation that Merck was subjected to Remedial Interventions or review in connection with his use of force activities. The alerts in his Guardian Tracking profile relate to his vehicle operation incidents and do not contain automated alerts for monitoring relating to his force used.

Between December 10, 2013 and February 25, 2014, Merck was the subject of three (3) Administrative IA Investigations and one (1) use of force incident, for a total of four (4) monitoring events, yet he did not trigger intervention.

Between March 18, 2014 and June 2, 2014, the same month Ingram's incident, Merck's status was identified as red which indicated Merck was in need of Enhanced Remedial Intervention. As previously stated, Merck should have been in the monitoring

program from fall 2013, when these new events were entered into Guardian. In addition, there was a citizen complaint of excessive force filed against Merck. However, no Remedial Intervention was taken as a result of the electronic early warning indication. The essence of the tracking and intervention system maintained by CCPD is to record events and officer conduct for remedial intervention before problematic behavior, injuries and liability occurs. Timely, accurate and defined entries are critical for prompt and commensurate supervisory responses. A June 2nd vehicle accident is what set in motion Merck's first performance remedial monitoring. At this point, he had used force on nine (9) separate occasions without triggering intervention.

Seven (7) days before Ingram's incident, June 5, 2014, CCPD was alerted to a use of force incident in connection with Merck. However, again CCPD failed to conduct a documented Administrative Review and/or subject Merck to Remedial Intervention. On June 12, 2014, Merck used deadly force against Ingram by stepping on his neck. Within a three-week period in June 2014, Merck's conduct triggered the alert system on three (3) separate occasion, none relating to his actions in Ingram's case.

\*   \*   \*

## OPINION

I conclude had Merck been subjected to the required use of force intervention monitoring and if his prior use of force activities were meaningfully reviewed, Merck would have known that it was impermissible and an example of excessive force to use deadly force by stepping on Ingram's neck. Given Merck's history resorting to force, the fact he should have been subjected to intervention repeatedly prior to the Ingram encounter and based on the number of foot pursuits resulting in internal investigations with injured parties it is reasonable to conclude that injury to Ingram was a foreseeable outcome and thus preventable.

It is my opinion that Merck should have been under intensive remedial intervention commencing on September 24, 2013 and

continuing through March 2015. By this time, Merck would have been significantly disciplined, examined for his fitness for duty or terminated from employment with CCPD had the agency followed its early warning and intervention policy. The failure of CCPD to intervene or investigate Merck's use of force activities and IA complaints sent Merck and others within CCPD the message, that their use of force against citizens will not be subjected to any meaningful review and that the custom and practices of CCPD as related to IA & Guardian Tracking is not to follow its policies.

**CCPD Failure to Monitor Officer Conduct**

\*    \*    \*

When utilizing CCPD's early warning system as the standard to analyzing Merck's early warning indicators, it is my opinion that CCPD failed to anticipate and act to prevent Merck from using unnecessary and excessive force, conducting improper stops and engaging in other activities identified by CCPD and NJ AG as early warning behaviors. It is objectively reasonable to consider that CCPDs lack of a functioning Early Warning System, IA division and supervisors was a cause of excessive and objectively unreasonable force being used against Ingram. If CCPD continues to report IA data as indicated within the IA underreporting section of this report, it will remain unable to identify trends, including trends of excessive force, improper arrest and training deficiencies.

\*    \*    \*

It is my opinion that had CCPD effectively implemented its IA & Early Intervention policies it would have determined that Merck was in need of remedial intervention as a result of his use of force activities, IA complaints and departmental rule violations. It is objectively unreasonable of CCPD not to have properly supervised Merck and not to have had a functioning IA division."

(Exhibit A, pgs. 237-246, internal citations and charts omitted).

10. On January 15, 2019, the Ingram matter was consolidated for trial with another civil action involving the arrest of Plaintiff, Darren Dickenson on June 12, 2014. (Order of January 15, 2019, ECF No. 211).

11. In the Court's January 15, 2019 Memorandum Opinion consolidating the Ingram and Dickerson matter for trial, it stated as follows:

> **"Moreover, after various dispositive motions are addressed in Ingram and Dickerson, the Court will be in position to assess the final scope of trial. At that time, the Court may consider whether the trial should be bifurcated into two phases, with Phase I concerning questions of individual liability of Officer Defendants and Phase II, if necessary, addressing Monell liability and damages. Such a determination awaits further developments."**

(Memorandum Opinion of Jerome B. Simandle, U.S.D.J., ECF 210, Pg. 11, ¶13).

12. On March 29, 2019, this Court ruled upon the various dispositive Motions filed by the Defendants and Plaintiff in the Ingram matter. (Order, ECF 233).

13. Mr. Dickerson's claims in the consolidated action have since been resolved.

# III. Legal Argument

## A. Standard for Bifurcation Under Fed. R. Civ. P. 42(b)

The Federal Rules of Civil Procedure permit a Court to bifurcate issues for convenience, avoid prejudice or to expedite and economize. *See* Fed. R. Civ. P 42(b). The Rule states:

> **"(b) Separate Trials. For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one of more separate issues, claims, cross-claims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial."**

Fed. R. Civ. P. 42(b).

The decision to bifurcate a trial is within the discretion of the trial judge. Idzojtic v. Pennsylvania R.R. Co.*et.al.*, 456 F.2d 1228, 1230 (3d.Cir.1972). In order to establish liability under §1983 a plaintiff must establish that he or she was "depriv[ed] of rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. §1983. A municipality may only be held liable under §1983 "when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." Beck v. City of Pittsburg, 89 F.3d 966, 971 (3d.Cir.1996) *citing* Monell v. New York City Dept. of Social Services*, et.al.*, 436 U.S. 658 (1978). In Beck, the Third Circuit summarized that a municipality can be found liable under §1983 "when

the injury inflicted is permitted under its adopted policy or custom." <u>Beck</u>, *supra* 89

F.3d at 971.

> i. This Court Should Bifurcate The Claims Against The Individual Officer Defendants From the Monell Claims in the Interest of Judicial Economy.

There is ample support to bifurcate alleged constitutional violations by an

officer-defendant from the alleged <u>Monell</u> liability claims asserted against a

municipality. *See* <u>City of Los Angeles v. Heller</u>, 475 U.S. 796 (1986). In <u>Heller</u>, the

Supreme Court stated the following:

"Neither <u>Monell v. New York City Dept. of Social Services</u>, *et.al.*, 436 U.S.
658 (1978), nor any other of our cases authorizes the award of damages against a
municipal corporation based on the actions of one of its officers when in fact the jury
has concluded that the officer inflicted no constitutional harm. If a person has
suffered no constitutional injury at the hands of the individual police officer, the fact
that the department regulations might have authorized the use of constitutionally
excessive force is quite beside the point."

<u>Heller</u>, *supra* 436 U.S. at 799. *See also* <u>Mulholland v. Government County of</u>

<u>Berks, PA</u>, *et.al.*, 706 F.3d 227 n.15 (3d.Cir.2003)("It is well settled that, if there is

no violation in the first place, there can be no derivative municipal claim.").

Moreover, this circuit has stated that in matters involving claims of individual police

officer liability for excessive force claims which contain corresponding municipal

liability claims under <u>Monell</u>, that a bifurcated trial that determines the liability of the individual defendants prior to the municipal liability claims "would ultimately conserve judicial resources and allow the Court a fuller and clearer assessment of the plaintiff's <u>Monell</u> claims after the jury resolved outstanding factual disputes involving the individual defendant officer's alleged wrongdoing. <u>Zampetis v. City of Atlantic City</u>, *et.al.*, 1:15-cv-01231-NLH-AMD, 2018 WL 5729905, 2 (D.N.J. November 2, 2018)(internal citations omitted)(attached hereto as Exhibit B).

This matter involves complicated factual disputes of police practice and medicine. As for the individual officer defendants' liability component, there are factual disputes as to whether probable cause existed for Plaintiff Ingram's arrest. Further, there are factual disputes surrounding whether excessive force was used during Plaintiff Ingram's arrest and whether the individual defendants responded in accordance with their training when Plaintiff Ingram's medical needs became known.

Additionally, there are complex factual disputes concerning the medicine involved and the mechanism of Plaintiff Ingram's quadriplegia injury. There are numerous exhibits and witnesses which will be presented both to prosecute and defend the individual liability and municipal liability claims asserted in this matter. It would be cumbersome, complicated and a waste of judicial resources for the jury

to hear the municipal liability claims at the same time as the individual defendant liability claims. This unnecessary complexity in the trial will all be for naught if there is ultimately a determination that Plaintiff Ingram's constitutional rights were not violated and the individual officers were entitled to qualified immunity.

In the interest of clarity and judicial economy, this Court should bifurcate the trial into two phases.  The claims of the individual officers' liability should be determined in the initial phase and then, if needed, a second phase resolving the municipal liability claims and damages.

      ii.    <u>This Court Should Bifurcate The Claims Against The Individual Defendants From the Monell Claims Due to the Risk of Prejudice</u>

More importantly, this Court should bifurcate the claims against the individual officers, specifically Defendant Merck, from the <u>Monell</u> claims due to the substantial risk of undue prejudice. As stated above, Plaintiff Ingram alleges that his quadriplegia injury resulted from excessive force, including his neck being stepped on forcefully until it cracked. (Plaintiff's Second Amended Complaint, ECF No. 64, P17).  In support of his municipal liability claims, Plaintiff Ingram has identified Christopher Chapman, Ph.D as an expert. (*see* Exhibit A). Dr. Chapman authored a report and was produced for deposition wherein he supported his opinions as to the alleged failures of Camden County Police Department by referencing, among other things, Defendant Merck's previous employment history and citizen complaints with

Evesham Twp. Police Department and Defendant Merck's history of internal affairs investigations and citizen complaints with Camden County Police Department. (*see* Exhibit A).

Specifically, Dr. Chapman opines that CCPD failed to utilize its early warning intervention system and stated "[g]iven Merck's history [of] resorting to force, the fact he should have been subjected to intervention repeatedly prior to the Ingram encounter and based on the number of foot pursuits resulting in internal investigations with injured parties it is reasonable to conclude that injury to Ingram was a foreseeable outcome and thus preventable." (Exhibit A, pg. 245). Further, Dr. Chapman offers the opinion that Defendant Merck "should have been under intensive remedial intervention... Merck would have been significantly disciplined, examined for his fitness for duty or terminated from employment with CCPD had the agency followed its early warning and intervention policy." (Id.).

The liability case against Defendant Merck involves factual determinations as to whether excessive force was used on June 12, 2014 that allegedly resulted in quadriplegia. Defendant Merck would be severely prejudiced in his defense if, prior to resolving the factual disputes surrounding Plaintiff Ingram's arrest, the jury were to hear Dr. Chapman testify as to prior citizen complaints against Defendant Merck and prior internal affairs investigations of Defendant Merck. Moreover, Defendant Merck would be prejudiced if the jury were to hear Dr. Chapman testify that if CCPD

properly implemented a tracking system it would have identified that Defendant Merck "was in need of remedial intervention as a result of his use of force activities, IA complaints and departmental rule violations." (Exhibit A).

Dr. Chapman, in supporting Plaintiff's <u>Monell</u> claim would necessarily have to refer to and describe these prior interactions with Defendant Merck. It would be impossible for the Court to tailor a method or charge which would cure the significant and undue prejudice vested upon Defendant Merck under these circumstances. This would also prejudice the other police officer defendants by extension. The only way to untangle these claims so that a fair trial may be conducted is bifurcation.

As stated, to avoid undue prejudice, this Court should bifurcate the trial into two phases with the first phase resolving the issues of the individual officer defendants' liability and then, if necessary, a second phase resolving the municipal liability claims and damages.

# IV. CONCLUSION

For the foregoing reasons, Defendant Merck respectfully requests that this Honorable Court grant the within Motion to Bifurcate and conduct the trial in the consolidated actions in two phases.

Respectfully Submitted,

**BLUMBERG & WOLK, LLC**
Attorneys for Defendant,
Jeremy Merck

Dated: 3/13/20

By: /s/ Michael J. O'Neill
        Jay J. Blumberg, Esq.
        Michael J. O'Neill, Esq.

# EXHIBIT A

Xavier Ingram, et al. v. Camden County, et al.
United States District Court for the District of New Jersey
Civil Action No: 1:14-cv-05519 (JBS-KMW)

**Notification to CCPD of Merck's Pattern, Practice and/or Trends of Inappropriate Behavior**

1. The CCPD knew that they had an obligation to protect the constitutional rights and civil liberties of the citizens of Camden and the State of New Jersey by implementing an IA policy that provided a meaningful and objective investigation of citizen complaints regarding Merck, monitoring and tracking Merck's behavior(s) for incidents of misconduct, and when Merck was found to have engaged in misconduct the CCPD was required to correct his behavior. (2011 NJ IA Policy & Procedures pg. 3)

2. The CCPD Rules and Regulations specifically indicate employees shall observe and obey all laws and ordinances, all rules and regulations and orders of the CCPD which includes the use of force policy. (Rules & Regulations Obedience to Laws and Regulations, Sections 3:1.10 pg.20 & Use of Force, Section 3:2.20 pg. 29)

3. The CCPD asserts that IA reviews all use of force reports to determine whether a rule, policy or procedure was violated (CCPD Use of Force Policy, pg. 17 CC 000455) and audits of its records to determine if Merck had an _emerging pattern, practice or trend_ of inappropriate behavior or misconduct. (CCPD Internal Affairs pg. 8 CC 258-8)

4. On or about February 8, 2013, Merck engaged in a use of force activity; on May 3, 2013 and on August 29, 2013 Merck engaged in additional use of force activities. Based upon the three (3) early warning indicators, the CCPD should have anticipated as per their policy (Guardian Tracking, pg. 3) that an emerging pattern of problematic behavior was developing.

5. On September 24, 2013, Merck engaged in another use of force activity. However, this use of force activity was 22 days outside of the six (6) month window (08/02/13) for inclusion which should have caused an automatic trigger of the CCPD early intervention program as per their Guardian Tracking policy. (Guardian, pg. 5) It is my opinion even though Merck's fourth use of force activity was 22 days outside of the automatic triggering window, the CCPD should have advised Merck that a pattern of use of force was developing. The CCPD took no action which has been documented regarding Merck's use of force activities.

   a) Merck's CCPD, cycle 1 early warning intervention trigger commenced on August 29, 2013 and should have activated on November 16, 2013 alerting the CCPD that a review of Merck's use of force was needed, as a result of there being four (4) incidents of conduct within a six (6) month period (August-February). It is my opinion which is consistent with the CCPD policy that Merck should have been subjected to remedial intervention and observation for six (6) months, [March 1, 2014]. However, the CCPD failed to subject Merck to remedial intervention related to his use of force activities.

   b) Between November 16, 2013 and April 27, 2014, Merck engaged in nine (9) critical incidents which should have alerted the CCPD that Merck had a

Xavier Ingram, et al. v. Camden County, et al.
United States District Court for the District of New Jersey
Civil Action No: 1:14-cv-05519 (JBS-KMW)

pattern of critical behaviors and was still in need of enhanced remedial intervention related to his use of force activities, IA complaints and departmental violation. In addition, between November and April, Merck should have been on his fourth and continued cycle of remedial intervention as a result of prior use of force and IA related activities. However, the CCPD still did not act upon the easily identifiable early warning indicators of Merck's use of force and IA complaint activities.

c) Had the CCPD subjected Merck to remedial intervention during cycle 4 of early warning indicators (04/26/14), Merck would have been under enhanced remedial intervention and remained on the remedial intervention program until October 24, 204. However, the CCPD failed to subject Merck to any remedial interventions related to his use of force activities or IA complaints in opposition to CCPD policy and reasonable and expected police practices, procedures and supervision.

d) The CCPD continued to turn a blind eye to Merck's early warning patterns of use of force activities and IA complaints evidenced by the failure of the CCPD to subject Merck to remedial interventions regarding 12 early warning indicators prior to the June 12, 2014, incident where Ingram asserts that Merck used unreasonable and excessive force against him by stepping on his neck. On the same day as the Ingram incident, Merck should have been within his 4th cycle of enhanced remedial intervention and just eight (8) days after the Ingram incident, Merck engaged in another use of force activity and should have been within his 5th cycle of enhanced remedial intervention.

6. It is my opinion that Merck should have been under intensive remedial intervention commencing on September 24, 2013 and continuing until after October 24, 2014. The failure of the CCPD to intervene or investigate Merck's use of force activities and IA complaints sent Merck and others within the CCPD the message, that their use of force against citizens will not be subjected to any meaningful review and that the policy of the CCPD as related to IA & Guardian Tracking is not to follow its policies.

Xavier Ingram, et al. v. Camden County, et al.
United States District Court for the District of New Jersey
Civil Action No: 1:14-cv-05519 (JBS-KMW)

### *Merck's Use of Force & IA Early Warning Indicators*

| Cycle | Date | IA No./Control No. | UOF/Complaint/Incident Type | Remedial Intervention/Action |
|---|---|---|---|---|
|  | 8/29/13 | 13-08291428 | Crime in progress | Command Supervision |
| Cycle 1 | 9/24/13 | 13-09241434 | Other: EDP | Remedial Intervention until 03/24/14 |
|  | 11/13/13 | IA 13-327 | Criminal Investigation: Excessive Force | Command Supervision |
| Cycle 2 | 11/16/13 | 13-11160193 | Other: Medical/CDS | Remedial Intervention until 05/06/14 |
|  | 11/17/13 | 13-11170612 | Crime in progress | Remedial Intervention |
|  | 11/17/13 | IA 13-327 | Criminal Investigation: Excessive Force | Remedial Intervention until 005/17/14 |
| Cycle 3 | 12/2/13 | IA 13-336 | Off Duty Rule Violation | Remedial Intervention |
|  | 2/5/14 | IA 14-046 | Rule Violation | Enhanced Remedial Intervention until 08/05/14 |
| Cycle 4 | 2/15/14 | IA 14-071 | Demeanor | Enhanced Remedial Intervention |
|  | 4/22/14 | 14-04220595 | Other: Dis of CDS | Enhanced Remedial Intervention until 10/22/14 |
| Cycle 5 | 4/27/14 | 14-04273163 | Suspicious person | Continue Enhanced Remedial Intervention |
|  | 5/30/14 | IA 14-263 | Rule Violation | Enhanced Remedial Intervention until 11/30/14 |
|  | 6/4/14 | 14-06040100 | Suspicious person | Continue Enhanced Remedial Intervention |
| Cycle 6 | 6/21/14 | 14-06213593 | Crime in progress | Enhanced Remedial Intervention until 12/21/14 |
|  | 9/10/14 | IA 14-414 | Rule Violation | Continue Enhanced Remedial Intervention |
|  | 9/25/14 | IA 14-455 | Criminal Investigation: Improper Search | Continue Enhanced Remedial Intervention |
| Cycle 7 | 12/1/14 | IA 14-243 | Excessive Force | Enhanced Remedial Intervention until 06/20/15 |
|  | 12/20/14 | 14-12203006 | Suspicious person | Continue Enhanced Remedial Intervention |
|  | 2/12/15 | IA 15-047 | Rule Violation | Continue Enhanced Remedial Intervention |

Note:    Cycles were determined by CCPD incident data points, insomuch as if there were two units of analysis which the CCPD should have considered related to a single incident, both data points were utilized. As a result of Merck's high frequency of critical events and the close proximity of incidents, three (3) critical incidents generally should have triggered the early warning system.

7.  As previously discussed and illustrated above and within other sections of this report, I supported the opinion that Merck fit the officer profile of a potential problematic officer who was in need of closer supervision and monitoring. However, the CCPD failed to provide either.

8.  Merck who is alleged to have stepped on Ingram about his neck & back, planted evidence (drugs and/or gun), provided conflicting assertions about the incident and filed a misleading police report, has been the subject of 12 or more critical police incidents prior to the Ingram incident and at least four (4) after the Ingram incident based upon data wherein the CCPD were required to review Merck's behavior to determine if Merck was in need of additional training, supervision or removal as a result of his use of force activities and allegations that he was involved in criminal activity.

9.  When reviewing each of Merck's use of force incidents, it is objectively unreasonable for the CCPD not to have subjected Merck to remedial interventions, conducted command reviews and/or had Merck's fitness for duty assessed.

Xavier Ingram, et al. v. Camden County, et al.
United States District Court for the District of New Jersey
Civil Action No: 1:14-cv-05519 (JBS-KMW)

10. When reviewing each of Merck's IA complaints, prior to June 12, 2014 and after, it is objectively unreasonable of the CCPD not to have subjected Merck to remedial interventions, conducted command reviews and/or had Merck's fitness for duty assessed.

11. Because the CCPD failed to have a functioning early warning system in opposition to their IA policy and NJ Attorney General IA Guidelines, they failed to identify his emerging problematic activities thus sending a wrong affective message to Merck that his use of force activities and other complained-about activities were appropriate as a result of failing to intervene.

12. Following are two examples before the Ingram incident where had the CCPD properly addressed Merck's prior use of force and IA complaints, it may have prevented Merck from engaging (believing criminal activity was afoot) Ingram.

   a) The CCPD failed to identify in Case No. 13-05030887 as a collateral issue that Merck utilized OC on a passive non-aggressive individual contrary to accepted police practices and he failed to complete a narrative explaining the force he used and the reason for the use of force.

   b) The CCPD failed to identify within Case No. 14-04273163 (04/27/14) that Merck's initial detention of Juvenile Muihammad Blackson was contrary to CCPD policy and accepted police practices and procedures, insomuch as the reason Merck used force to compel the detention of Blackson was due to him being in a high drug area, abandoned drugs being found earlier in the day in the area Blackson was observed and Merck's belief that Blackson was being deceptive about awaiting the arrival of a taxi. No reasonable reviewing supervisor would reasonably believe there was reasonable suspicions to detain Blackson based upon any of the individual or collective factors Merck utilized to detain and arrest Juvenile Blackson.

13. Merck, who is alleged to have stepped on Ingram's neck and planted evidence (drugs and gun) and provided conflicting assertions about this incident, has been the subject of nine (9) use of force incidents before this incident and four (4) use of force incidents after this incident. However, the above chart reflects that none of Merck's use of force incidents have undergone a Command Review (no review sheet IA-8) to determine if Merck had an emerging pattern or trend of using unnecessary (excessive) force which required that he receive additional training, supervision or removal as a result of his use of force activities. (CCPD Internal Affairs pg. 2, 8, 29 CC 258- & CCPD Use of Force Policy pg. 14. CC 000452)

14. The CCPD in spite of knowing there was an excessive force complaint made by Ingram against Merck elected to promote Merck without determining if Merck had used force against Ingram and/or if Merck violated any rules of the CCPD during the Ingram incident.

Xavier Ingram, et al. v. Camden County, et al.
United States District Court for the District of New Jersey
Civil Action No: 1:14-cv-05519 (JBS-KMW)

15. Had the CCPD conducted the required reviews of Merck's use of force activities or conducted a reasonable IA investigation, IA would have learned during (IA No. 14-243) the excessive force complaint regarding Merck, that he filed a report which was similar (boilerplate language) to the report he filed within the Ingram case, wherein Merck was in a high crime area and he asserted an individual placed their hands in their pockets which caused him to believe they had a weapon. However, in IA Case No. 14-243 Merck advised IA Det. May that he attempted to conduct a pat down of Mr. Harris for weapons because he immediately placed his hands into his pockets and bladed his body. (IA No: 14-243 CC 015166) Merck's November 28, 2014 Major Incident Report reported indicated the following in part, according to IA:

   a) On November 28, 2014, I was assigned to a uniformed proactive unit conducting proactive directed patrols. The primary focus of my unit is to detect and deter commissions of dangerous and violent crimes including but not limited to murders, robberies, weapons offenses and drug offenses, all with the purpose of increasing the quality of life for the residents of Camden City. It should be noted that the area of Henry Street and Royden Street is a well-known and documented location where the commission of drug related and violent crimes occur. (IA No: 14-243 CC 015162-015163.)

   b) Merck went on to report in part, When I approached Harris he immediately placed his right hand into his front right pocket of his black and orange Flyers sweatshirt, and turned his right hip away from me. Believing that he was possibly armed and attempting to gain control of a weapon, I grabbed Harris and pulled his hands to top of his head. While making contact with Harris I instructed him to interlock his fingers on top of his head. Before I was able to conduct a _putdown_ of his outer clothing, Harris pulled his right hand down towards the same pocket he had his hand in and pushed the side of his waist into fence, not allowing me to conduct a pat down of the area I suspected him to have a weapon. (Id.)

16. It is objectively unreasonable for Merck to believe and act upon his belief that all individuals within a high crime area are associated with criminal activity or that they are in possession of a weapon.

17. The CCPD in connection with the supervision and discipline of Marchiafava and Gennetta have engaged in the same course of conduct regarding reviewing use of force reports and no meaningful IA investigations as it has done with Merck. The following charts identify critical policing incidents wherein the CCPD was required to review Marchiafava and Gennetta's use of force reports and/or conduct a meaningful IA investigation.

Xavier Ingram, et al. v. Camden County, et al.
United States District Court for the District of New Jersey
Civil Action No: 1:14-cv-05519 (JBS-KMW)

An early warning system can be viewed simplistically like the colors on a traffic light, insomuch as when a specific number of threshold behaviors are received the light changes from green to yellow to red thus notifying the police organization that there may be a developing pattern or practice associated with a specific officer. Between May 3, 2013 and June 21, 2014 Merck filed 10 use of force reports which should have subjected him to monitoring, according to CCPD policy which states generally four (4) instances of issues conduct or flag indicators within the same six (6) month period would initiate the remedial intervention process. The instances are not limited to use of force incidents and include vehicle accidents and citizen complaints. (Guardian Tracking, pg. 5)

The following use of force activities represents 10 early warning indicators which should have notified CCPD that Merck was in need of remedial intervention and required an Administrative Review. Factoring other events that are supposed to be captured within the Guardian system, Merck would have triggered Remedial Monitoring on or about September 24th; his 4th overall event and third use of force report. (CC 141-2) Irrespective, relying exclusively on use of force incidents it is clear on the colored chart below Merck should have triggered monitoring and did not. Every subsequent use of force event following the CCCPD Guardian Tracking threshold should have automatically alerted a commander of the need for monitoring Merck's conduct, but this never occurred.

| Date | Case Number | Subject | Type of Incident | Officer Use of Force | Subject Actions | Administrative Review Completed |
|---|---|---|---|---|---|---|
| 5/3/13 | 13-04291647 | Terrell Alexander | Traffic stop | Compliance & Complaint Agent | Resisted | No |
| 9/11/13 | 13-07111349 | Deshay Warner | Citizen complaint | Escort & Lateral | Professional courtesy complaint | No |
| 9/24/13 | 13-09241434 | Conneen Veronica | Other: EDP | Compliance hold & Leg Sweep | Resisted | No |
| 11/16/13 | 13-11160193 | Tremain Scott | Other: Medical/CDS | Compliance | Resisted | No |
| 11/17/13 | 13-11170612 | Brian Foster | Crime in progress | Compliance & Chemical Agent | Resisted | No |
| 2/8/13 | 14-0284747 | Tyreek Mays | Traffic Stop | Leg Sweep | Resisted | No |
| 4/22/14 | 14-04220555 | William Carrillo | Other: Dis of CDS | Compliance | Resisted | No |
| 4/27/14 | 14-04273163 | Muhammad Blackson | Suspicious person | Compliance & Hands/fists | Resisted & Physical threat | No |
| 6/4/14 | 14-06040100 | Gaston Brown | Suspicious person | Compliance & Hands/fists | Resisted | Yes - No indication of what force was used |
| 6/12/14 | | | | | | |
| 6/21/14 | 14-06213593 | Angel Figueroa | Crime in progress | Compliance hold & Kick | Resisted | No |

Commencing on or about November 16, 2013 Merck _should have been_ on remedial use of force intervention monitoring as a result of having four early warning force triggers within a six (6) month period. The day after theoretically triggering intervention, Merck was involved in two additional use of force incidents which were later the subject of an internal affairs investigation for excessive force (IA 13-327). The remedial use of force intervention monitoring should have continued through December of 2014. However, there was no monitoring of Merck in connection with his use of force activities and _only one_ of Merck's use of force activities underwent an administrative review as Thomson stated is required in every instance (the administrative review appears to be perfunctory, because no comments are provided and the reviewer simply selected check boxes)[13]. In total, Sgt. Merck had twenty-seven (27) events within his Guardian Tracking profile, twenty of which were prior to

---

[13] File/CAD No. 14-06-04-0100 (CC003153)

Page 237

Xavier Ingram, et al. v. Camden County, et al.
United States District Court for the District of New Jersey
Civil Action No: 1:14-cv-05519 (JBS-KMW)

Ingram's incident. Despite the 20 events, Merck was not flagged until the first week of June 2014 as described below, for a traffic accident.

*CCPD Monitoring of Merck for Motor Vehicle Accident*



**Camden County Police Department**

Employee Monitoring Report

| Employee | Badge # 126 | Date 6/01/2014 |
| --- | --- | --- |
| Sgt. Jeremy Merck | | |

*This form must be used when monitoring an employee*

Monitoring Report for month: June

Exceptional performances (must attach supporting documents): ☐ Yes  ☒ No

Negative performances (must attach supporting documents): ☐ Yes  ☒ No

Employee's demeanor in regards to being monitored: ☒ Positive  ☐ Negative

If negative, explain: N/A

Policies addressed by supervisor: Accidents in police vehicles

Employee displays an understanding of the Department policies in the area(s) of concern: ☒ Yes  ☐ No

Potential problems identified: ☐ Yes  ☒ No

If yes, explain: N/A

Short and long term goals: Sgt. Merck will exercise extreme caution when utilizing a police vehicle. He has successfully complete EVOC Training and continues to drive safely. No accidents this period. Have driven with him multiple times and observed no unsafe behavior.

Supervisor's assessment of employee's progress: Although the last crash was very minor, Sgt. Merck understands the importance of remaining accident free.

Employee Signature

Supervisor Signature

Commander Signature

Internal Affairs Commander Signature

CC 133-1

Note: The CCPD monitoring system is functional for monitoring officer conduct as evidenced by the above monitoring report. However, the CCPD has chosen not to utilize the available monitoring system to properly track CCPD's officers use of force activities.

Xavier Ingram, et al. v. Camden County, et al.
United States District Court for the District of New Jersey
Civil Action No: 1:14-cv-05519 (JBS-KMW)
*CCPD Administrative Review of Merck for Possible Rule Violation*



1. It is objectively unreasonable that CCPD did not conduct Administrative Reviews of Merck's use of force activity, in part because the Guarding Tracking system is designed to include use of force reviews and alert administrators when applicable.

Page 239

Xavier Ingram, et al. v. Camden County, et al.
United States District Court for the District of New Jersey
Civil Action No: 1:14-cv-05519 (JBS-KMW)

*Guardian Tracking Could Have Been Used to Track Merck's Use of Force - Form Example*

## Incident Report
5/26/2015

Camden County Police Department

### IA Case Notification

**For:** Sergeant Merck, Jeremy (126)  **Occurred:** 5/30/2014

**By:** Admin User Moore, Suzanne (emp id)  **Entered:** 6/10/2014

The Camden County Police Department has received a complaint in which you were named. The complaint type is marked below. Either your Command Staff or Internal Affairs will conduct an investigation into this complaint.

[ ] EXCESSIVE FORCE - Complaint regarding the use or threatened use of excessive force against a person.

[ ] IMPROPER ARREST - Complaint that the restraint of a person's liberty was improper or unjust, or violated the person's civil rights.

[ ] IMPROPER ENTRY - Complaint that the entry into a building or onto property was improper or that excessive force was used against property to gain entry.

[ ] IMPROPER SEARCH - Complaint that the search of a person or property was improper, unjust, violated established agency procedures, or violated the person's civil rights.

[ ] DIFFERENTIAL TREATMENT - Complaint that the taking, failure to take, or method of police action was predicated upon irrelevant factors such as race, appearance, age, or sex.

[ ] DEMEANOR - Complaint that a department member's bearing, gestures, language or other actions were inappropriate.

[x] OTHER, Rule Violation - Complaint for conduct which violates agency rules, but is not specified above. This includes conduct such as insubordination, drunkenness on duty, sleeping on duty, neglect of duty, false statements or malingering, untidiness, tardiness, faulty driving, or failure to follow procedures.

*Form not used in connection with Merck's Excessive Force Complaints. However, the form is used in connection with Rule Violations.*

🛡 GuardianTracking

Page: 1 of 1

CONFIDENTIAL

CC000420

Thomson asserts, between February 18, 2013 and October 30, 2014 Merck had a total of seven (7) use of force incidents which were logged within the Guardian Tracking System. (Thomson, Dep. T.135:6-22) A review of the use of force reports indicate that no administrative reviews were conducted and no additional notations were made within the Guardian system as to his use of force frequency.

Page 240

Xavier Ingram, et al. v. Camden County, et al.
United States District Court for the District of New Jersey
Civil Action No: 1:14-cv-05519 (JBS-KMW)

CCPD had a sophisticated computerized functional method of tracking Merck's possibly problematic behaviors. However, CCPD elected not to enter events entirely or entered events more than a month after occurring.  (CC 122-1)  The agency failed to monitor and act upon early warning notification regarding Merck's activities.

Commencing on June 10, 2013, there was a citizen complaint identified by CCPD against Merck, and between June 10, 2013 and November 26, 2013, CCPD knew that there had been four (4) citizen complaints filed against Merck, one (1) criminal investigation and three (3) use of force incidents for a total of seven (7) events.

*CCPD Electronic Early Warning Notifications Regarding Merck*





CC 122-1

Between December 10, 2013 and February 25, 2014, Merck's status was identified as red within CCPD's electronic early warning system. However, there is no documentation that Merck was subjected to Remedial Interventions or review in connection with his use of force activities.  The alerts in his Guardian Tracking profile relate to his vehicle operation incidents and do not contain automated alerts for monitoring relating to his force used.

Xavier Ingram, et al. v. Camden County, et al.
United States District Court for the District of New Jersey
Civil Action No: 1:14-cv-05519 (JBS-KMW)

Between December 10, 2013 and February 25, 2014, Merck was the subject of three (3) Administrative IA Investigations and one (1) use of force incident, for a total of four (4) monitoring events, yet he did not trigger intervention.

*Cont. CCPD Electronic Early Warning Notifications Regarding Merck*



CC 123-1

Between March 18, 2014 and June 2, 2014, the same month of Ingram's incident, Merck's status was identified as **red** which indicated Merck was in need of Enhanced Remedial Intervention. As previously stated, Merck should have been in the monitoring program from fall 2013, when these new events were entered into Guardian. In addition, there was a citizen complaint of excessive force filed against Merck. However, no Remedial Intervention was taken as a result of the electronic early warning indication. The essence of the tracking and intervention system maintained by CCPD is to record events and officer conduct for remedial intervention before problematic behavior, injuries and liability occurs. Timely, accurate and defined entries are critical for prompt and commensurate supervisory responses. A June 2nd vehicle accident (IA 14-263) is what set in motion Merck's first performance remedial monitoring. At this point, he had used force on nine (9) separate occasions without triggering intervention.

Xavier Ingram, et al. v. Camden County, et al.
United States District Court for the District of New Jersey
Civil Action No: 1:14-cv-05519 (JBS-KMW)

*Cont. CCPD Electronic Early Warning Notifications Regarding Merck*



CC 124-1

Seven (7) days before Ingram's incident, June 5, 2014, CCPD was alerted to a use of force incident in connection with Merck. However, again CCPD failed to conduct a documented Administrative Review and/or subject Merck to Remedial Intervention. On June 12, 2014, Merck used deadly force against Ingram by stepping on his neck. Within a three-week period in June, 2014 Merck's conduct triggered the alert system on three (3) separate occasions, none relating to his actions in Ingram's case.

Page 243

Xavier Ingram, et al. v. Camden County, et al.
United States District Court for the District of New Jersey
Civil Action No: 1:14-cv-05519 (JBS-KMW)
*Cont. CCPD Electronic Early Warning Notifications Regarding Merck*



CC 125-1

The following chart is a combination of Merck's use of force activities and IA investigations, more than one dozen incidents which should have alerted CCPD that Merck had a pattern and trend of use of force activities and other triggering violations.

*CCPD's Notification of Merck's Need of Remedial Intervention -  Guardian Tracking Notifications*

| Date | Early Warning Activity | No Monitoring For Force | Should have been on Monitoring |
|------|------------------------|--------------------------|-------------------------------|
| 10/29/13 | Use of Force | No | Yes |
| 11/18/13 | Use of Force | No | Yes |
| 11/26/13 | Criminal Investigation | No | No |
| 12/04/13 | Injury Referral | No | Yes |
| 12/10/13 | Administrative Investigation – Rule Violation | No | Yes |
| 02/05/14 | Vehicle Accident | No | Yes |
| 02/12/14 | Use of Force | No | Yes |
| 02/14/14 | Vehicle Accident | No | Yes |
| 02/20/14 | Vehicle Accident – Administrative Investigation | No | Yes |
| 02/20/14 | Administrative Investigation – No. 14-071 | No | Yes |
| 02/25/14 | Citizen Complaint – 13-043 | No | Yes |
| 03/18/14 | Vehicle Pursuit | No | Yes |
| 03/28/14 | Criminal Investigation – Excessive Force No 13-327 | No | Yes |
| 04/22/14 | Use of Force | No | Yes |
| 04/28/14 | Use of Force | No | Yes |
| 06/02/14 | Vehicle Accident | No | Yes |
| 06/05/14 | Use of Force | No | Yes |

CC122-I - CC125-1

Page 244

Xavier Ingram, et al. v. Camden County, et al.
United States District Court for the District of New Jersey
Civil Action No: 1:14-cv-05519 (JBS-KMW)

OPINION

I conclude had Merck been subjected to the required remedial use of force intervention monitoring and if his prior use of force activities were meaningfully reviewed, Merck would have known that it was impermissible and an example of excessive force to use deadly force by stepping on Ingram's neck. Given Merck's history resorting to force, the fact he should have been subjected to intervention repeatedly prior to the Ingram encounter and  based on the number of foot pursuits resulting in internal investigations with injured parties it is reasonable to conclude that injury to Ingram was a foreseeable outcome  and thus preventable.

It is my opinion that Merck should have been under intensive remedial intervention commencing on September 24, 2013 and continuing through March 2015. By this time, Merck would have been significantly disciplined, examined for his fitness for duty or terminated from employment with CCPD had the agency followed its early warning and intervention policy.  The failure of CCPD to intervene or investigate Merck's use of force activities and IA complaints sent Merck and others within CCPD the message, that their use of force against citizens will not be subjected to any meaningful review and that the custom and practices of CCPD as related to IA & Guardian Tracking is not to follow its policies.

## CCPD Failure to Monitor Officer Conduct

Unfortunately for the general public within the City of Camden, CCPD has failed to implement and/or utilize the policies (CCPD IA & Guardian Tracking/Early Intervention) and procedures designed to protect citizens and detect patterns and trends of officers with emerging and/or identifiable excessive use of force complaints, use of force activities and/or other identified problematic behaviors identified by CCPD and NJ AG.

When utilizing CCPD's early warning system as the standard to analyzing Merck's early warning indicators, it is my opinion that CCPD failed to anticipate and act to prevent Merck from using unnecessary and excessive force, conducting improper stops and engaging in other activities identified by CCPD and NJ AG as early warning behaviors.
It is objectively reasonable to consider that CCPD's lack of a functioning Early Warning System, IA division and supervisors was a cause of excessive and objectively unreasonable force being used against Ingram. If CCPD continues to report IA data as indicated within the IA underreporting section of this report, it will remain unable to identify trends, including trends of excessive force, improper arrest, and training deficiencies.

While CCPD has a written early warning policy as discussed herein, the failure of CCPD to follow its early warning policy is problematic because CCPD has no method of determining if officers are in need of Fitness for Duty Evaluation and/or Remedial Intervention Monitoring.

It is my opinion that had CCPD effectively implemented its IA & Early Intervention policies it would have detected that Merck was in need of remedial intervention as a result of his use

Page 245

Xavier Ingram, et al. v. Camden County, et al.
United States District Court for the District of New Jersey
Civil Action No: 1:14-cv-05519 (JBS-KMW)

of force activities, IA complaints and departmental rule violations. It is objectively unreasonable of CCPD not to have properly supervised Merck and not to have had a functioning IA division.

**CCPD Failure to Protect the Public by Not Removing Merck, Gennetta and Marchiafava from Duty as Per CCPD Policy and Best Practices**

CCPD Use of Force policy as well as best practices required that Merck, Gennetta and Marchiafava be removed from line duty assignments pending an administrative review, (CCPD Use of Force policy, pg. 8 & NJSACOP LEA, 3.3.4, pg. 39) to protect the community's interest because Merck, Gennetta and Marchiafava may have exceeded the scope of their authority in their actions or in their use of force against Ingram. (Id., NJSACOP LEA) CCPD failed to comply with its policy and best practices and as a result the following occurred.

Merck between June 13, 2014 and February 12, 2015 was the subject of six (6) additional critical events which suggested he was in need of Enhanced Remedial Interventions. Gennetta between June 13, 2014 and September 5, 2014 was the subject of four (4) additional critical events which suggested he was in need of remedial intervention. Marchiafava between June 13, 2014, and March 15, 2015 was the subject of three (3) critical events. However, due to time and distance of each event no remediation was obviously necessary.

CCPD has failed to protect the public, by failing to remove Merck, Gennetta and Marchiafava from line duty assignments until it was determined that the officers were not a risk to the public. The promotion of Merck without determining if Merck had used force against Ingram, and continued line duty assignments of Merck, Gennetta and Marchiafava sent an effective message to CCPD officers that citizen complaints of excessive force are not taken seriously within CCPD and there is no expectation that CCPD policies must be complied with.


Note:

> All of the opinions expressed within this report are to a reasonable degree of professional certainty.

> My analysis and support for every opinion provided within this report are to be considered as if set forth within each section at length and this report is to serve in part as the standards considered and analysis contained with the companion report Darren Dickerson v. Camden County, et al. Expert Report filed under Civil Action No: 1:14-CV-06905.

> The individual and collective failures of the named and unnamed defendants within this case were a cause of objectively unreasonable and excessive force being used against Mr. Ingram and him being denied reasonable and expected police pre-hospital medical care.

# EXHIBIT B

WESTLAW

2018 WL 5729905

Only the Westlaw citation is currently available.

United States District Court, D. New Jersey.

**Zampetis v. City of Atlantic City**
United States District Court, D. New Jersey.    November 2, 2018    Not Reported in Fed. Supp.    2018 WL 5729905    *(Approx. 3 pages)*

Nicholas J. ZAMPETIS, Plaintiffs,

v.

CITY OF ATLANTIC CITY, et al., Defendants.

1:15-cv-01231-NLH-AMD

Signed 11/02/2018

## Attorneys and Law Firms

DAVID R. CASTELLANI, 450 Tilton Road, Suite 245, Northfield, NJ 08225, Attorney for Plaintiff Nicholas J. Zampetis.

TODD J. GELFAND, A. MICHAEL BARKER, VANESSA ELAINE JAMES, Barker, Gelfand & James, 210 New Road, Linwood, NJ 08221, Attorneys for Defendant City of Atlantic City.

MICHAEL E. RILEY, TRACY RILEY, Law Offices of Riley & Riley, 100 High Street, Mt. Holly, NJ 08060, Attorneys for Defendants Ivan Lopez, Anthony Alosi, Jr., and Mike Auble.

## OPINION

NOEL L. HILLMAN, U.S.D.J.

**\*1** Plaintiff, Nicholas J. Zampetis, filed a complaint against Defendants, the City of Atlantic City, Atlantic City Police Officers Ivan Lopez, Anthony Alosi, Jr., Mike Auble, and several John Doe police officers claiming violation of his rights under 42 U.S.C. § 1983 and New Jersey law. Plaintiff claims that at about 2:00 to 3:00 a.m. on February 17, 2013 (early Sunday morning), while celebrating a friend's birthday at the Tropicana Hotel and Casino in Atlantic City, Defendants Lopez, Alosi, Auble and John Doe officers arrested him without probable cause. He claims that these Defendants also beat him and falsely charged him with criminal charges to cover up their wrongdoing.

Plaintiff contends that the individual police officers violated his constitutional rights to freedom from unlawful arrest, false imprisonment, deprivation of liberty, and excessive force. Plaintiff also claims that Atlantic City had knowledge of these officers' propensity to violate a person's constitutional rights, as well as had policies and customs that fostered and condoned such actions by the department's police officers, and are therefore liable for Plaintiff's injuries under Monell. See Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or

agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

Currently before the Court are two motions filed by Atlantic City, both of which concern its objections to Plaintiff's discovery requests. [1] Atlantic City argues that discovery with regard to Internal Affairs files of non-defendant officers relating to Plaintiff's <u>Monell</u> claim should be held in abeyance until after a trial on Plaintiff's excessive force claims against the individual officers. Atlantic City argues that Plaintiff's <u>Monell</u> claims against Atlantic City would only be necessary if Plaintiff proves that the individual police officers violated his constitutional rights, and the discovery of sensitive internal affairs information should not otherwise be disclosed.

Alternatively, in the event the Court does not grant the bifurcation of discovery, Atlantic City argues that the Internal Affairs files Plaintiff requested, and the magistrate judge ordered to be produced, should not be disseminated to Plaintiff because the request is overbroad and concerns complaints of excessive force rather than substantiated findings of excessive force, the latter of which is required to sustain a viable <u>Monell</u> claim.

The Court will decline to order the bifurcation of discovery, and will uphold the magistrate judge's discovery order. With regard to severing the issue of a police officer's individual liability for his excessive force from the issue of whether a municipality is liable for fostering a custom or policy of condoning excessive force by its police officers, this Court has done so in other cases, but in an entirely different procedural posture. In those cases, after denying summary judgment on the plaintiff's excessive force claims because of the existence of material disputed facts about what occurred during the subject incident, the Court ordered the trial to be conducted in two phases.

**\*2** In the first phase, a jury would resolve the historical facts by answering special interrogatories so that the Court could determine whether the officer was entitled to qualified immunity. Depending on the outcome of phase one, the Court would then continue to phase two with the same jury to consider the municipality's liability, if necessary. The Court has found that bifurcation of the two claims was the proper course because it would ultimately conserve judicial resources and allow the Court a fuller and clearer assessment of the plaintiff's <u>Monell</u> claims after the jury resolved outstanding factual disputes involving the individual defendant officer's alleged wrongdoing. <u>See</u> <u>Alvarez v. City of Atlantic City, et al.</u>, 1:15-cv-02061-NLHJS, Docket No. 79 (discussing <u>Harrison v. City of Atlantic City, et al.</u>, 1:14-cv-06292-NLH-AMD; <u>Norman v. Haddon Township, et al.</u>, 1:14-cv-06034-NLH-JS); <u>see also</u> <u>Taylor v. Ambrifi, et al.</u>, 1:15-cv-3280-NLH-KMW, Docket No. 269.

Bifurcation of discovery at the initial stage of a plaintiff's excessive force and municipal liability case does not present the same issue or have the same benefits, however, as bifurcation at the post-summary judgment trial stage. Indeed quite the opposite, as proceeding to a jury verdict on Plaintiff's claims against the individual officers and then having to restart the entire discovery process anew for his municipal liability claims would not be

convenient, avoid prejudice, or expedite and economize the case, all of which are the considerations for ordering separate trials.[2] That observation is particularly compelling in this case, because the discovery Plaintiff seeks has already been prepared by Atlantic City for production in several other cases, and in fact has already been produced to Plaintiff in this case.[3] Moreover, discovery on Monell claims may also inform the Court's judgment as to whether bifurcation at trial is warranted and even if bifurcation at trial is ordered what the scope of permissible evidence might be in either trial phase. The more information available to the parties – and the Court – the better the Court will be able to exercise its Rule 42(b) discretion.

In sum, although this Court has found in several other cases that a bifurcated trial on the issues of individual and municipal liability was the best course for an expeditious and non-prejudicial resolution, the Court is not persuaded that bifurcation of discovery yields the same positive result. Consequently, the Court will deny Atlantic City's motion to bifurcate discovery.

The Court will also deny Atlantic City's appeal of the magistrate judge's discovery order relating to the IA files. Federal Civil Procedure Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. Government Employees Insurance Co. v. Stefan Trnovski, M.D., 2018 WL 5281424, at *2 (D.N.J. Oct. 23, 2018) (citing Tele–Radio Sys, Ltd. v. De Forest Elecs., Inc., 92 F.R.D. 371, 375 (D.N.J. 1981) ). A court may order discovery of any matter relevant to the subject matter involved in the action, and such relevant information does not need to be admissible at trial in order to grant disclosure. Id. (citation omitted). The scope of discovery under the Federal Rules is "unquestionably broad," although discovery requests may be curtailed to protect a person from whom discovery is sought from "annoyance, embarrassment, oppression, or undue burden or expense." Id. (citing Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999); Fed. R. Civ. P. 26(c)(1) ). "[D]istrict courts have broad discretion to manage discovery," and a discovery ruling will not be overturned "absent a showing of actual and substantial prejudice." Greene v. Horry County, 650 F. App'x 98, 99–100 (3d Cir. 2016) (citing Sempier v. Johnson & Higgins, 45 F.3d 724, 734 (3d Cir. 1995) ). Relatedly, a district court judge will only reverse a magistrate judge's opinion on pretrial matters if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72. 1(c)(1)(A).

*3 Atlantic City's arguments for why the requested IA files are not relevant to Plaintiff's claims and cannot serve a basis for Plaintiff's expert's opinions – e.g., that complaints of excessive force, rather than substantiated findings of excessive force, cannot support a Monell claim against a municipality – are best advanced in the context of summary judgment and pretrial motions. Atlantic City has not shown that the production of the IA files, which have already been produced in other cases and provided to Plaintiff in this case, will cause it substantial prejudice, annoyance, embarrassment, oppression, or undue burden or expense.[4] Whether the IA files are relevant to Plaintiff's Monell claim or are properly relied upon by Plaintiff's expert is an issue for another day.

Consequently, Atlantic City's motions to bifurcate discovery and reverse the magistrate judge's order must be denied. An appropriate Order will be entered.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 5729905

---

**Footnotes**

1       Atlantic City filed a motion to bifurcate discovery and an appeal of the magistrate judge's ruling on Plaintiff's discovery requests. (Docket No. 81, 82.)

2       A motion for separate trials is governed by Fed. R. Civ. P. 42(b), which provides:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42(b).

3       Even though Atlantic City already produced the requested IA documents to Plaintiff, the Court does not construe the issue to be moot, as it appears that Atlantic City's position is that Plaintiff is not entitled to the IA documents, either in the first phase of a bifurcated discovery process or at all, regardless of how discovery is conducted. It appears that if Atlantic City had prevailed on its motions, the Court would have ordered Plaintiff to return the IA files to Atlantic City. Because Atlantic City's motions are unavailing, Plaintiff may retain the IA files and use them appropriately.

4       The IA files are subject to the parties' consent discovery confidentiality order. (Docket No. 51.)

---

**End of Document**        © 2020 Thomson Reuters. No claim to original U.S. Government Works.