<u>**Ingram v. County of Camden, et al. - Civ. #14-5519**</u>

**Final Jury Instructions**
**(Read on March 23, 2022)**
**Part I: General Instructions**

<u>**Role of the Jury**</u>

Members of the jury, you have seen and heard all the evidence and the arguments of the lawyers. Now I will instruct you on the law.

The instructions I am about to review with you consist of three parts. The first part involves general rules and principles of law that define and control your duties as jurors in this case. The second part deals with the specific rules of law you must apply to the facts you find in this case. Finally, I will provide you with some guidelines for how you are to conduct your deliberations and return a verdict.

You have two duties as a jury. Your first duty is to decide the facts from the evidence that you have heard and seen in court during this trial. That is your job and yours alone. I play no part in finding the facts. You should not take anything I may have said or done during the trial as indicating what I think of the evidence or what I think about what your verdict should be.

Your second duty is to apply the law that I give you to the facts. My role now is to explain to you the legal principles that must guide you in your decisions. You must apply my instructions carefully. Each of the instructions is important, and you must apply all of them. You must not substitute or follow your own notion or

opinion about what the law is or ought to be.  You must apply the law that I give to you, whether you agree with it or not.

Whatever your verdict, it will have to be unanimous.  All of you will have to agree on it or there will be no verdict.  In the jury room you will discuss the case among yourselves, but ultimately each of you will have to make up his or her own mind.  This is a responsibility that each of you has and that you cannot avoid.  During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, Blackberry or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Instagram, Facebook, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.  In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom.  You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same

evidence you have.  In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom.

Perform these duties fairly and impartially.  Do not allow sympathy, prejudice, fear, or public opinion to influence you.  You should also not be influenced by any person's race, color, religion, national ancestry, gender, profession, occupation, economic circumstances, or position in life or in the community.

**Preliminary Instructions - Identification of Plaintiff**

The Plaintiff in this case is Xavier Ingram.  Throughout these instructions, Xavier Ingram may be referred to as "Mr. Ingram," "Ingram," or "Plaintiff."  Each term may be used to identify Xavier Ingram.  No inference shall be drawn by the specific term used to identify him.

**<u>Preliminary Instructions—Identification of Defendants</u>**

The Defendants in this case are the County of Camden, Camden County Police Department, Jeremy Merck, Antonio Gennetta, Nicholas Marchiafava, and John Scott Thomson.  Throughout these instructions, the County-Defendants may be referred to as "Camden County" and "CCPD."  The individual Defendants may be referred to as "Sergeant Merck," "Officer Gennetta," "Officer Marchiafava," and "Chief Thomson."  They may also be referred to by their last name (for example, Defendants "Merck," "Gennetta," "Marchiafava," and "Thomson").  Finally, the Defendants may simply be referred to as "Defendants." No inference shall be drawn by the specific term used to identify the Defendants.

## Evidence

You must make your decision in this case based only on the evidence that you saw and heard in the courtroom.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence from which you are to find the facts consists of the following:

1. The testimony of the witnesses;

2. Documents and other things received as exhibits;

3. Any fact or testimony that was stipulated—that is, formally agreed to by the parties; and

4. Any facts that are judicially noticed—that is, facts I say you must accept as true even without other evidence.

The following things are not evidence:

1. Statements and arguments of the lawyers for the parties in this case;

2. Questions by the lawyers and questions that I might have asked;

3. Objections by lawyers, including objections in which the lawyers stated facts;

4. Any testimony I struck or told you to disregard; and

5. Anything you may see or hear about this case outside the courtroom.

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events and give it whatever

weight you believe it deserves.  If your experience and common sense tells you that certain evidence reasonably leads to a conclusion, you may reach that conclusion.

As I told you in my preliminary instructions, the rules of evidence control what can be received into evidence.  During the trial the lawyers objected when they thought that evidence was offered that was not permitted by the rules of evidence. These objections simply meant that the lawyers were asking me to decide whether the evidence should be allowed under the rules.

You should not be influenced by the fact that an objection was made.  You should also not be influenced by my rulings on objections or any sidebar conferences you may have overheard.  When I overruled an objection, the question was answered or the exhibit was received as evidence, and you should treat that testimony or exhibit like any other.  When I allowed evidence (testimony or exhibits) for a limited purpose only, I instructed you to consider that evidence only for that limited purpose and you must do that.

When I sustained an objection, the question was not answered or the exhibit was not received as evidence.  You must disregard the question or the exhibit entirely.  Do not think about or guess what the witness might have said in answer to the question; do not think about or guess what the exhibit might have shown. Sometimes a witness may have already answered before a lawyer objected or before I ruled on the objection. If that happened and if I sustained the objection, you must

disregard the answer that was given.

Also, if I ordered that some testimony or other evidence be stricken or removed from the record, you must disregard that evidence. When you are deciding this case, you must not consider or be influenced in any way by the testimony or other evidence that I told you to disregard.

Although the lawyers may have called your attention to certain facts or factual conclusions that they thought were important, what the lawyers said is not evidence and is not binding on you. It is your own recollection and interpretation of the evidence that controls your decision in this case. Also, do not assume from anything I may have done or said during the trial that I have any opinion about any of the issues in this case or about what your verdict should be.

**Direct and Circumstantial Evidence**

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence." An example of "direct evidence" is when a witness testifies about something that the witness knows through his or her own senses — something the witness has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him or her, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

**Credibility of Witnesses**

As I stated in my preliminary instructions at the beginning of the trial, in deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief.  You may believe everything a witness says or only part of it or none of it. A helpful metaphor may be a piece of toast. When you burn a piece of toast, you may decide to do one of three things. You may decide to scrape off the surface of the burnt part. You may decide to cut the bread in half and eat the unburnt portion. Alternatively, you may decide to throw away the entire piece.

In deciding what to believe, you may consider a number of factors, including the following:

1.    the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

2.    the quality of the witness's understanding and memory;

3.    the witness's manner while testifying;

4.    whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

5.    whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

10

6.  how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

7.  any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

**<u>Jury Recollection Controls</u>**

If any reference by the Court or by counsel to matters of testimony or exhibits does not coincide with your own recollection of that evidence, it is your recollection which should control during your deliberations and not the statements of the Court or counsel. You are the sole judges of the evidence received in this case.

**Use of Deposition**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The depositions of some witnesses have been presented to you by video and/or by reading of the transcript. Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

You have heard audio recordings of depositions and other sworn interviews. You have seen video recordings of depositions. You have also seen written transcripts of depositions. This evidence may be used for two purposes. It may be used as substantive evidence of what did or did not occur. But it also may be used as impeachment evidence, to attack a witness's character or credibility.

## Use of Interrogatories

You have heard answers that parties gave in response to written questions submitted by the other side.  The written questions are called "interrogatories." The written answers were given in writing and under oath, before the trial.

You must consider the parties' answers to interrogatories in the same manner as if the answers were made from the witness stand.

## **Charts and Summaries in Evidence**

The parties have presented exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.

**Charts and Summaries Not Admitted in Evidence**

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain or illustrate the contents of books, records, documents, testimony, or other evidence in the case. These charts and summaries are not themselves proof of any facts. They are not binding on you in any way. If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the evidence.

**Opinion Testimony**

You have heard testimony from a witnesses who were called as experts. Generally, witnesses can testify only about the facts and are not permitted to give opinions. However, an exception to this rule exists in the case of an expert witness. An expert witness may give an opinion on a matter in which the witness has (some special knowledge, education, skill, experience or training). An expert witness may be able to assist you in understanding the evidence in this case or in performing your duties as a fact finder. But I want to emphasize to you that the determination of the facts in this case rests solely with you as jurors.

In this case, the following witnesses called as experts and testified about certain opinions: Dr. William Matuozzi (Radiology), Dr. Paul Ivancic and Dr. Scott Batterman (Biomechanics), Dr. James Yue (Orthopedic Surgery), Dr. John Kirby (Internal Medicine), Dr. Christopher Chapman and John Ryan (Police Practices), Edmond Provder and Valerie Parisi (Life Care Planning), John Ryan (Forensics and Evidence Collection), Dr. Guy Fried (Physical Medicine and Rehabilitation), Kristen Kucsma and Chad Staller (Economics), Robert Shavelle (Life Expectancy), and Dr. Peter LeRoux (Neurosurgery).

In examining each expert's opinion(s), you may consider the person's reasons for testifying, if any. You may also consider the qualifications of the individual(s) and the believability of the expert, including all the considerations that generally

apply when you are deciding whether or not to believe a witness' testimony. The weight of the expert's opinion depends on the facts on which the expert bases his/her opinion. You as jurors must also decide whether the facts relied upon by the expert actually exist.

Finally, you are not bound by the testimony of an expert. You may give it whatever weight you deem is appropriate. You may accept or reject all or part of an expert's opinions.

An expert witness was asked to assume that certain facts were true and to give an opinion based on that assumption. This is called a hypothetical question. You must determine if any fact assumed by the witness has not been proved and the effect of that omission, if any, upon the weight of the expert's opinion.

## <u>Transcript of Audio-Recorded Conversation</u>

You have heard conversations that were recorded. This is proper evidence for you to consider. Please listen to it very carefully. I may have allowed you to have a transcript of the recording to help you identify speakers and as a guide to help you listen to the recording. If you believe at any point that the transcript says something different from what you hear on the recording, remember it is the recording that is the evidence, not the transcript. Any time there is a variation between the recording and the transcript, you must be guided solely by what you hear on the recording and not by what you see in the transcript.

**<u>Parties' Presence in the Courtroom</u>**

Finally, throughout the trial, you may have noticed the parties were present in the courtroom on certain days and absent on other days. You should not concern yourself with the parties presence in (or absence from) the courtroom. The Court has made various accommodations for the parties and for reasons of judicial economy. Do not let these administrative a housekeeping matters distract you from the issues in this case.

**<u>Internal Affairs Files</u>**

You have heard evidence as it relates Internal Affairs investigations of the Camden County Police Department before June 12, 2014 – the date of the incident involving Mr. Ingram. The Court has ruled that this evidence is being admitted solely for evaluation by you as it relates to the claims of Failure to Supervise against the County of Camden. Specifically, I instruct you that if any of these Internal Affairs investigations relate to one or more of the officers in this case you are not to use that information to determine if that particular officer acted in a certain way on June 12, 2014.

## Part II: Legal Instructions

Members of the jury, I will now turn to the specifics of this case. I will read you a statement of the case and a summary of Mr. Ingram's claims.

This matter arises out of an arrest that occurred on June 12, 2014, at 7th and Chestnut Streets in Camden, New Jersey.

Plaintiff Xavier Ingram alleges that during the arrest the defendant arresting officers, Jeremy Merck, Antonio Genetta, and Nicholas Marchiafava violated his civil rights by use of excessive force on his neck and failure to render medical care causing him to become paralyzed. The defendant arresting officers strongly deny that this occurred and these claims of excessive use of force and failure to render medical care. Defendants assert that Plaintiff's injuries were caused by his falling on the wet pavement while running from the police, after which they rendered appropriate medical care when they realized that he had a medical issue.

The plaintiff also asserts claims alleging that the Camden County Police Department and the Chief of Police -- failed to follow accepted police practices in the training, supervision and discipline of police officers which were a cause of the violation of his civil rights. Camden County and the Chief of Police deny any such claims and assert that the Camden County Police Department provides proper training, supervision and discipline, that it was not deliberately indifferent to any of these issues, and that there was no violation of Plaintiff's constitutional rights.

22

Plaintiff further alleges that the defendant officers falsely arrested him. The Defendant arresting officers deny this claim and assert that there was probable cause to arrest the plaintiff on weapons and other charges. These criminal charges remain pending at this time.

Mr. Ingram alleges the following:

- Sergeant Merck, Officer Gennetta, and Officer Marchiafava used excessive force, in violation of 42 U.S.C. § 1983;
- Sergeant Merck, Officer Gennetta, and Officer Marchiafava failed to provide medical care in violation of 42 U.S.C. § 1983;
- Sergeant Merck is liable as a supervisor and bystander to constitutional violations in violation of 42 U.S.C. § 1983;
- The County of Camden, Camden County Police Department, and Chief Thomson are liable for a custom of constitutional violations caused by inadequate supervision, investigation, and discipline;
- The County of Camden, Camden County Police Department, and Chief Thomson are liable for constitutional deprivations caused by inadequate training;
- Sergeant Merck is liable for false arrest.

**<u>Preponderance of the Evidence</u>**

This is a civil case. Mr. Ingram is the party who brought this lawsuit. Defendants are the parties against whom the lawsuit was filed. Mr. Ingram has the burden of proving his case by what is called the preponderance of the evidence. That means Mr. Ingram has to prove to you, in light of all the evidence, that what he claims is more likely so than not so. To say it differently: if you were to put the evidence favorable to Mr. Ingram and the evidence favorable to the Defendants on opposite sides of the scales, Mr. Ingram would have to make the scales tip somewhat on his side. If Mr. Ingram fails to meet this burden, the verdict must be for the Defendants. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

On certain issues, called affirmative defenses, Defendants have the burden of proving the elements of the defense by a preponderance of the evidence. I will instruct you on the facts that will be necessary for you to find on this affirmative defense. An affirmative defense is proven if you find, after considering all evidence

in the case, that Defendants have succeeded in proving that the required facts are more likely so than not so.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

## Section 1983 Introductory Instruction

Xavier Ingram is suing under Section 1983, a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal constitutional rights under color of state law.

**<u>Section 1983 – Elements of Claim</u>**

Xavier Ingram must prove both of the following elements by a preponderance of the evidence:

First: One or more Defendants acted under color of state law.

Second: While acting under color of state law, one or more Defendants deprived Ingram of a federal constitutional right.

I will now give you more details on action under color of state law, after which I will tell you the elements Mr. Ingram must prove to establish the violation of his federal constitutional right.

**<u>Section 1983 – Action under Color of State Law</u>**

The first element of Ingram's claim is that one or more Defendants acted under color of state law.  This means that Ingram must show that one or more Defendants was using power that they possessed by virtue of state law.

A person can act under color of state law even if the act violates state law. The question is whether the person was clothed with the authority of the state, by which I mean using or misusing the authority of the state.

By "state law," I mean any statute, ordinance, regulation, custom or usage of any state. And when I use the term "state," I am including any political subdivisions of the state, such as a county or municipality, and also any state, county or municipal agencies.

**Section 1983 – Action under Color of State Law – Action under Color of State Law Is Not in Dispute**

Because Nicholas Marchiafava, Antonio Gennetta, Jeremy Merck, and John Scott Thomson were officials of the County of Camden at the relevant time, I instruct you that they were acting under color of state law.  In other words, this element of Ingram's claim is not in dispute, and you must find that this element has been established.

**<u>Section 1983 – Deprivation of a Federal Right</u>**

I have already instructed you on the first element of Mr. Ingram's claim, which requires Mr. Ingram to prove that one or more Defendants acted under color of state law.

The second element of Mr. Ingram's claim is that one or more Defendants deprived him of a federal constitutional right.

I will now instruct you on the constitutional rights at issue.

**CLAIM ONE: EXCESSIVE FORCE**

**Section 1983 – Excessive Force (Including Some Types of Deadly Force) –**

**Stop, Arrest, or other "Seizure"**

The Fourth Amendment to the United States Constitution protects persons from being subjected to excessive force while being arrested by police.  In other words, a law enforcement official may only use the amount of force necessary under the circumstances to make the arrest.  Every person has the constitutional right not to be subjected to excessive force while being arrested, even if the arrest is otherwise proper.

In this case, Mr. Ingram claims that Officer Marchiafava, Officer Gennetta, and Sergeant Merck used excessive force when Ingram was arrested.  In order to establish that excessive force, Mr. Ingram must prove both of the following by a preponderance of the evidence:

First: Officer Marchiafava, Officer Gennetta, and/or Sergeant Merck intentionally committed certain acts.

Second: Those acts violated Ingram's Fourth Amendment right not to be subjected to excessive force.

In determining whether Officer Marchiafava, Officer Gennetta, and/or Sergeant Merck's acts constituted excessive force, you must ask whether the amount

of force used was the amount which a reasonable officer would have used in making the arrest under similar circumstances.  You should consider all the relevant facts and circumstances leading up to the time of the arrest that each officer reasonably believed to be true at the time of the arrest.  You should consider those facts and circumstances in order to assess whether there was a need for the application of force, and the relationship between that need for force, if any, and the amount of force applied.  The circumstances relevant to this assessment can include:

- the severity of the crime at issue;

- whether Mr. Ingram posed an immediate threat to the safety of officers or others;

- the possibility that Mr. Ingram was armed;

- the possibility that other persons subject to the police action were violent or dangerous;

- whether Mr. Ingram was actively resisting arrest or attempting to evade arrest by flight;

- the duration of Officer Marchiafava, Officer Gennetta, and/or Sergeant Merck's action;

- the number of persons with whom the officers had to contend; and

- whether the physical force applied was of such an extent as to lead to

unnecessary injury.

The reasonableness of each officer's acts must be judged from the perspective of a reasonable officer on the scene.  The law permits the officer to use only that degree of force necessary to make the arrest.  However, not every push or shove by a police officer, even if it may later seem unnecessary in the peace and quiet of this courtroom, constitutes excessive force.  The concept of reasonableness makes allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are sometimes tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation.

As I told you earlier, Mr. Ingram must prove that Officer Marchiafava, Officer Gennetta, and/or Sergeant Merck intended to commit the acts in question; but apart from that requirement, the officers' actual motivation is irrelevant.  If the force that Officer Marchiafava, Officer Gennetta, and/or Sergeant Merck used was unreasonable, it does not matter whether they had good motivations.  And an officer's improper motive will not establish excessive force if the force used was objectively reasonable.

What matters is whether Officer Marchiafava, Officer Gennetta, and/or Sergeant Merck's acts were objectively reasonable in light of the facts and circumstances confronting the officer.

## **Proximate Cause – Where There is a Claim that Concurrent Causes of Harm Were Present**

To find proximate cause, you must first find that either the County of Camden or Chief Thomson or Antonio Gennetta or Nicholas Marchiafava or Jeremey Merck's conduct was a cause of the plaintiff's injuries. If you find that any or all of the defendants' conduct is not a cause of the plaintiff's injuries, then you must find no proximate cause.

Second, you must find that any or all of the defendants' conduct was a substantial factor that singly, or in combination with other causes, brought about the injuries to the plaintiff.  By substantial, it is meant that it was not a remote, trivial or inconsequential cause.  The mere circumstance that there may also be another cause of the injuries does not mean that there cannot be a finding of proximate cause.  Nor is it necessary for the conduct of any or all of the defendants to be the sole cause of the plaintiff's injuries.  If you find that any or all of the defendants' conduct was a substantial factor in bringing about the plaintiff's injuries, then you should find that that defendant or defendants conduct was a proximate cause of plaintiff's injury.

## CLAIM TWO: FAILURE TO PROVIDE MEDICAL CARE

## Section 1983 – Denial of Adequate Medical Care

Because arrestees must rely on law enforcement officers to treat their serious medical needs, the government has an obligation to provide necessary medical care to them.  In this case, Mr. Ingram claims that Defendants violated his constitutional rights by showing deliberate indifference to a serious medical need on Mr. Ingram's part.

In order to establish his claim for violation of the Fourteenth Amendment, Mr. Ingram must prove each of the following three things by a preponderance of the evidence:

First: Mr. Ingram had a serious medical need.

Second: Sergeant Merck, Officer Gennetta, and/or Officer Marchiafava was deliberately indifferent to that serious medical need.

Third: Sergeant Merck, Officer Gennetta, and/or Officer Marchiafava's deliberate indifference caused physical injury to Mr. Ingram.

I will now proceed to give you more details on the first and second of these three requirements.

First, Mr. Ingram must show that he had a serious medical need.  A medical need is serious, for example, when:

- The problem is so obvious that non-doctors would easily recognize the need for medical attention; or

- Denying or delaying medical care creates a risk of permanent physical injury; or

Second, Mr. Ingram must show that Sergeant Merck, Officer Gennetta, and/or Officer Marchiafava was deliberately indifferent to that serious medical need. Mr. Ingram must show that Sergeant Merck, Officer Gennetta, and/or Officer Marchiafava knew of an excessive risk to Mr. Ingram's health, and that Sergeant Merck, Officer Gennetta, and/or Officer Marchiafava disregarded that risk by failing to take reasonable measures to address it.

Mr. Ingram must show that Sergeant Merck, Officer Gennetta, and/or Officer Marchiafava actually knew of the risk. If Mr. Ingram proves that there was a risk of serious harm to him and that the risk was obvious, you are entitled to infer from the obviousness of the risk that Sergeant Merck, Officer Gennetta, and/or Officer Marchiafava knew of the risk.

There are a number of ways in which a plaintiff can show that a defendant was deliberately indifferent, including the following. Deliberate indifference occurs when:

- A police officer denies a reasonable request for medical treatment, and the

officer knows that the denial exposes the arrestee to a substantial risk of pain or permanent injury;

- A police officer knows that an arrestee needs medical treatment, and intentionally refuses to provide that treatment;

- A police officer knows that an arrestee needs medical treatment, and delays the medical treatment for non-medical reasons.

**CLAIM THREE: BYSTANDER LIABILITY**

**Section 1983 – Liability in Connection with the Actions of Another –**

**Failure to Intervene**

Mr. Ingram contends that Officer Gennetta or Officer Marchiafava violated his constitutional rights and that Sergeant Merck should be liable for that violation because Sergeant Merck failed to intervene to stop the violation.

Sergeant Merck is liable for that violation if Mr. Ingram has proven all of the following four things by a preponderance of the evidence:

First:  Officers Gennetta or Marchiafava violated Mr. Ingrams rights to be free from excessive force and to receive adequate medical care.

Second: Sergeant Merck had a duty to intervene. I instruct you that police officers have a duty to intervene to prevent the use of excessive force and deprivation of adequate medical care by a fellow officer.

Third: Sergeant Merck had a reasonable opportunity to intervene.

Fourth: Sergeant Merck failed to intervene.

**<u>Section 1983 – Liability in Connection with the Actions of Another –</u>**

**<u>Municipalities – General Instructions</u>**

If you find that Mr. Ingram was deprived of a federal right, Camden County is liable for that deprivation if Ingram proves by a preponderance of the evidence that the deprivation resulted from either (1) a custom of failure to investigate, supervise, or discipline officers in the Camden County Police Department, or (2) that Camden County exhibited deliberate indifference to a failure to train or supervise officers. These are separate theories of municipal liability, and I will instruct you separately as to each theory.

It is not enough for Mr. Ingram to show that Camden County employed a person who violated Ingram's rights.

I will now explain to you what is meant by these terms.

## CLAIM FOUR: CUSTOM OF FAILING TO INVESTIGATE, SUPERVISE, AND/OR DISCIPLINE OFFICERS

### Section 1983 – Liability in Connection with the Actions of Another – Municipalities – Custom

Mr. Ingram may prove the existence of an official custom of failing to properly investigate, supervise, and discipline officer by showing the existence of a practice that is so widespread and well-settled that it constitutes a standard operating procedure of Camden County.  A single action by a lower-level employee does not suffice to show an official custom.  But a practice may be an official custom if it is so widespread and well-settled as to have the force of law, even if it has not been formally approved.  You may find that such a custom existed if there was a practice that was so well-settled and widespread that the policymaking officials of Camden County either knew of it or should have known of it. I instruct you that John Scott Thomson was the policymaking official.

If you find that such an official custom was the cause of and the moving force behind the violation of Plaintiff's rights under the Fourth Amendment to not be subjected to excessive force and to be provided medical care, then you have found that Camden County caused that violation.

## CLAIM FIVE: FAILURE TO TRAIN OFFICERS

## Section 1983 – Liability in Connection with the Actions of Another – Municipalities – Liability Through Inadequate Training or Supervision

Ingram claims that Camden County failed to adequately train and supervise its employees, and that this failure caused the violation of Ingram's Fourth Amendment rights.

In order to hold Camden County liable for the violation of Ingram's Fourth Amendment rights, you must find that Ingram has proved each of the following three things by a preponderance of the evidence:

First: Camden County's training program was inadequate to train its employees to carry out their duties, or Camden County failed adequately to supervise its employees].

Second:  Camden County's failure to adequately train or supervise amounted to deliberate indifference to the fact that inaction would obviously result in the violation of Fourth Amendment rights.

Third:  Camden County's failure to adequately train or supervise proximately caused the violation of the Fourth Amendment right to not be subjected to excessive force and to receive adequate medical care.

In order to find that Camden County's failure to adequately train or supervise amounted to deliberate indifference, you must find that Ingram has proved each of the following three things by a preponderance of the evidence:

First:  The County of Camden or Chief Thomson knew that employees would confront a particular situation.

Second: The situation involved a matter that employees had a history of mishandling.

Third: The wrong choice by an employee in that situation will frequently cause a deprivation of Fourth Amendment rights.

In order to find that County of Camden's failure to adequately train or adequately supervise proximately caused the violation of Ingram's federal right, you must find that Ingram has proved by a preponderance of the evidence that County of Camden's deliberate indifference led directly to the deprivation of Ingram's Fourth Amendment rights not to be subjected to excessive force and to be provided adequate medical care.

## CLAIM SIX: FALSE ARREST

## False Arrest (False Imprisonment)

### A.    General Rules

False imprisonment is the unlawful detention of an individual.  In this context the word "detention" means the restraint of a person's personal liberty or freedom of movement and the word "unlawful" means without legal authority or justification.

An unlawful restraint may result from actual force or by threats consisting of words or conduct if the words or conduct are such as to include a reasonable apprehension of force and the means of coercion are at hand.

The unlawful detention need not be for more than a minimal length of time since even a brief restraint of a person's freedom is sufficient to constitute false imprisonment.

The restraint must be against the plaintiff's will.  If he/she agreed of his/her own free choice to surrender his/her freedom of motion or personal liberty, there is no false imprisonment.

To be a false imprisonment, the defendant's conduct in restraining the plaintiff must have been done with the intention of causing a confinement.  A purely accidental confinement without the intent to confine is not a false imprisonment nor is the confinement merely because of the negligence of defendant a false imprisonment.

It is not necessary that a defendant was motivated by malice in the sense of ill will or a desire to injure, although, as I shall explain shortly, the presence or absence of malice may be shown to increase or minimize damages.

**B.**     **Defense of Legal Authority for Confinement**

It is a complete defense, however, to a claim of false imprisonment if the defendants restrained or arrested the plaintiff with legal authority or justification.  If the defendants were exercising their rights according to law, then the imprisonment was justifiable.  In this regard, defendants say that they were acting as they had a right to do, because they were arresting plaintiff as police officers, even though at that time, there was no warrant for plaintiff's arrest.

## D.   Police Arrest Without a Warrant

A police officer may arrest an individual without a warrant if he has a reasonable basis to believe that a crime is being or has been committed, that the person to be arrested is committing the crime or has committed it, even though it is not being committed or has not been committed in the officer's presence, and, after the arrest, the individual is restrained only for a reasonable period of time before he is taken before a judge or another appropriate public official to obtain a warrant for the arrest.

So, in deciding whether plaintiff was falsely arrested, there are two decisions you have to make:

The first is whether plaintiff has proven, by the greater weight of the evidence, that defendant intentionally detained or restrained plaintiff in his personal liberty or freedom of movement by arresting him.

The second decision, assuming you find that defendant did intentionally restrain plaintiff by an arrest, involves a defendant officer's claim that he had a right to make the arrest and that the confinement was only for a reasonable period of time. Here, the defendant must prove this to you by the greater weight of the evidence. So, you must decide, one, whether a defendant was a police officer when these events took place; two, if so, whether the defendant had a reasonable basis to believe that the defendant was a police officer when these events took place; two, if so, whether

defendant had a reasonable basis to believe that the specific crime (unlawful possession of a weapon, possession of a weapon for unlawful purpose, possession of controlled dangerous substance, certain persons not to have weapons, receiving stolen property, and resisting by flight) was being or had been committed; three, if so, whether defendant also had reasonable or probable cause to believe that plaintiff committed that crime; and four, if so, did any defendant restrain plaintiff only for a reasonable period of time before bringing plaintiff before a judge or other appropriate public official to obtain a warrant for the arrest.

A reasonable basis for probable cause must be that the facts and circumstances known to the officer were those which would lead a reasonably cautious person to believe that a crime was being committed or had been committed and that the plaintiff had committed it.  It must be more than mere conjecture or unfounded suspicion.  In considering the reasonableness of the defendant's judgment you may consider that a person acting under the pressures of being a police officer cannot make decisions with the same precision as a person making cautious study of the same facts at home while seated in an armchair.  Also, you may consider that an officer of the law has no right to intrude upon the rights of citizens because the officer has an unfounded hunch that something is wrong.  A police officer is required to follow the laws guiding his behavior.

## QUESTION 7: DAMAGES

## Section 1983 – Damages – Compensatory Damages

I am now going to instruct you on damages.  Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not defendants should be held liable.

If you find any Defendants liable, then you must consider the issue of compensatory damages.  You must award Xavier Ingram an amount that will fairly compensate him for any injury he actually sustained as a result of a Defendant's conduct.

Ingram must show that the injury would not have occurred without the act or omission of one or more Defendants. Ingram must also show that a Defendant's act or omission played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of a defendant's act or omission.  There can be more than one cause of an injury.  To find that a defendant's act or omission caused Ingram's injury, you need not find that the defendant's act or omission was the nearest cause, either in time or space. However, if Ingram's injury was caused by a later, independent event that intervened between a defendant's act or omission and plaintiff's injury, the defendant is not liable unless the injury was reasonably foreseeable by the defendant.

Compensatory damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial, and only on that evidence. Ingram has the burden of proving compensatory damages by a preponderance of the evidence.

Ingram claims the following items of damages:

- Physical harm to Ingram during and after the events at issue, including ill health, physical pain, disability, disfigurement, or discomfort, and any such physical harm that Plaintiff is reasonably certain to experience in the future. In assessing such harm, you should consider the nature and extent of the injury and whether the injury is temporary or permanent.

- Emotional and mental harm to Ingram during and after the events at issue, including fear, humiliation, and mental anguish, and any such emotional and mental harm that Ingram is reasonably certain to experience in the future.

- The reasonable value of the medical [psychological, hospital, nursing, and similar] care and supplies that Ingram is reasonably certain to need in the future.

In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

**Section 1983 – Damages – Nominal Damages**

If you return a verdict for Ingram, but Ingram has failed to prove compensatory damages, then you must award nominal damages of $ 1.00.

A person whose federal rights were violated is entitled to a recognition of that violation, even if he suffered no actual injury. Nominal damages (of $1.00) are designed to acknowledge the deprivation of a federal right, even where no actual injury occurred.

However, if you find actual injury, you must award compensatory damages (as I instructed you), rather than nominal damages.

**New Jersey General Provisions for Standard Charge**

I shall now instruct you on the law governing damages in the event you decide the liability issue in favor of plaintiff Ingram.

The fact that I instruct you on damages should not be considered as suggesting any view of mine about which party is entitled to prevail in this case. Instructions on damages are given for your guidance in the event you find that Mr. Ingram is entitled to a verdict. I am required to provide instructions on damages in all cases where the trial includes a claim for damages.

Mr. Ingram has the burden of establishing by a preponderance of the evidence each item of damages that he claims. Mr. Ingram must also prove that the damages were the natural and probable consequences of the defendant's fault. The accident must have been a proximate cause of the damages. Damages may not be based on conjecture or speculation.

In this case the plaintiff Ingram is seeking the following types of damages:

1. Future medical expenses;

2. Pain, suffering, disability, impairment and loss of enjoyment of life.

I will now discuss each category of damages with you.

## Future Medical Expenses

Plaintiff in this case seeks to recover future medical expenses.  Plaintiff has a right to be compensated for any future medical expenses resulting from the injuries brought about by defendant's wrongdoing.

If it is reasonably probable that plaintiff will incur medical expenses in the future then you should also include an amount to compensate the plaintiff for those medical expenses.  In deciding how much to award for future medical expenses think about the factors mentioned in discussing the nature, extent and duration of plaintiff's injury. Also consider plaintiff's age today, his/her general state of health before the accident, and how long you reasonably expect the medical expenses to continue.  Obviously, the time period covering plaintiff's future medical expenses cannot go beyond that point when it is expected that he/she may recover from his/her injuries. You should also consider plaintiff's life expectancy in assessing future medical expenses.

But you should be aware that the figures that you have been given on life expectancy are only statistical averages.  Do not treat them as necessary or fixed rules, since they are general estimates.  Use them with caution and use your sound judgment in taking them into account.

For future medical expenses you must base your decision on the probable amount that plaintiff will incur.  It is the burden of the plaintiff to prove, by a

preponderance of the evidence, the probable need for future medical care and the reasonableness of the charge for future medical care.

In deciding what plaintiff's future medical expenses are, understand that the law does not require of you mathematical exactness. Rather, you must use sound judgment based on reasonable probability.

Once you have decided how much medical care plaintiff will need in the future, you must then consider the effects of inflation and interest. As to inflation, you should consider the effects it probably will have in reducing the purchasing power of money. Any award for future medical expenses should be increased to account for losses due to inflation. The consideration of interest requires that you should not just award plaintiff the exact amount of medical care that he/she will need in the future. The reason for that is that plaintiff will have that money now even though he/she will not have needed that money until some time in the future. And that means that plaintiff will be able to invest the money and earn interest on it now even though he/she otherwise would not have had that money to invest until some future date.

To make up for this, you must make an adjustment for having the money available now even though the expense will not be experienced until the future. This adjustment is known as discounting, and what discounting does is give you the value of the money that you get now instead of getting it at some future time. In other words,

it gives you the present value or present worth in a single lump sum of money which otherwise was going to be received over a number of years at so much per year.

Your goal is to create a fund of money which will be enough to provide plaintiff future medical care and which will be used up at the end of the total period of need.  In arriving at the amount of that fund — the present value of future need — you should consider the interest the fund would earn, the probable amount by which taxation on the interest would decrease the money available to plaintiff and the effect of inflation in decreasing the purchasing power of money.

**Disability, Impairment and Loss of the Enjoyment of Life, Pain and Suffering**

If you find for Mr. Ingram, he is entitled to recover fair and reasonable compensation for the full extent of the harm and losses caused, no more and no less.

Fair and reasonable compensation means to make Mr. Ingram whole for any permanent or temporary injury and the consequences of that injury (or injuries) caused by the defendants' fault.

The law on compensation recognizes that a plaintiff may recover for any disability or impairment that he or she suffers as a result of his or her injuries. Disability or impairment means worsening, weakening or loss of faculties, health or ability to participate in activities.  The law also permits a plaintiff to recover for the loss of enjoyment of life, which means the inability to pursue one's normal pleasure and enjoyment.  You must determine how the injury has deprived Mr. Ingram of his customary activities as a whole person.  This measure of compensation is what a reasonable person would consider to be adequate and just under all the circumstances of the case to make Mr. Ingram whole for his injury and his consequent disability, impairment, and the loss of the enjoyment of life.   The  law  also  recognizes  as proper items for recovery, the pain, physical and mental suffering, discomfort, and distress that a person may endure as a natural consequence of the injury.  Again, this item of recovery is what a reasonable person would consider to be adequate and just under all the circumstances to compensate Mr. Ingram.

Here are some factors you may want to take into account when fixing the amount of the verdict for disability impairment, loss of enjoyment of life, pain and suffering. You may consider Mr. Ingram's age, usual activities, occupation, family responsibilities and similar relevant facts in evaluating the probable consequences of any injuries you find he has suffered. You are to consider the nature, character and seriousness of any injury, discomfort or disfigurement. You must also consider their duration, as any verdict you make must cover the harms and losses suffered by Mr. Ingram since the accident, to the present time, and even into the future if you find that Mr. Ingram's injury and its consequence have continued to the present time or can reasonably be expected to continue into the future.

The law does not provide you with any table, schedule or formula by which a person's pain and suffering, disability, impairment, and loss of enjoyment of life may be measured in terms of money. The amount is left to your sound discretion. You are to use your sound discretion to attempt to make the plaintiff whole, so far as money can do so, based upon reason and sound judgment, without any passion, prejudice, bias or sympathy. You each know from your common experience the nature of pain and suffering, disability, impairment and loss of enjoyment of life and you also know the nature and function of money. The task of equating the two so as to arrive at a fair and reasonable award of compensation requires a high order of human judgment. For this

reason, the law can provide no better yardstick for your guidance than your own impartial judgment and experience.

You are to exercise sound judgment as to what is fair, just and reasonable under all the circumstances. You should, of course, consider the testimony of Mr. Ingram on the subject of his discomforts. You should also scrutinize all the other evidence presented by both parties on this subject, including the testimony of the doctors. After considering the evidence, you shall award a lump sum of money that will fairly and reasonably compensate Mr. Ingram for his pain, suffering, disability, impairment, and loss of enjoyment of life proximately caused by defendant's fault.

## Part III: Deliberations

When you retire to the jury room to deliberate, you may take with you these instructions and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself,

but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a cell phone, smart phone [like iPhones], or computer of any kind; the internet, any internet service, or any text or instant messaging service [like Twitter]; or any internet chat room, blog, website, or social networking service [such as Facebook, Instagram, LinkedIn, or YouTube], to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties

have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to my deputy. The deputy will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. It has a series of questions for you to answer. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers

until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.