**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| XAVIER INGRAM,<br><br>　　　　　Plaintiff,<br>　　vs.<br><br>COUNTY OF CAMDEN, *et al.*,<br><br>　　　　Defendants. | Civil Action No. 14-5519-JRS-PAC<br><br>Return Date:  May 2, 2022<br><br>Before:  Hon. Juan R. Sanchez, U.S.D.J.<br><br>**Oral Argument Requested** |

---

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION**
**PURSUANT TO LOCAL CIVIL RULE 7.1**

---

Beth G. Baldinger, Esq.
Trevor D. Dickson, Esq.
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
P: 973-228-9898
F: 973-228-0303
E: bbaldinger@mazieslater.com
*Attorneys for Plaintiff Xavier Ingram*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

STATEMENT OF FACTS AND PROCEDURAL HISTORY ....................................... 1

LEGAL ARGUMENT ............................................................................................ 5

    POINT I:   STANDARD OF REVIEW ............................................................ 5

    POINT II:   DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
    STATE LAW CLAIMS WAS PROCEDURALLY DEFICIENT AND,
    THEREFORE, THIS COURT CLEARLY ERRED WHEN IT RULED
    ON THE MOTION ..................................................................................... 6

        A. Whether Defendants' Motion to Dismiss is Characterized
        as a Rule 12(b)(6) Motion or a Rule 12(c) Motion, the
        Application Was Untimely and Should Not Have
        Been Considered or Granted ................................................................ 7

        B. Even if Defendants' Request Was Characterized as a Motion for
        Summary Judgment Under Federal Rule of Civil Procedure 56,
        It Was Still Untimely ........................................................................... 8

    POINT III:   DEFENDANTS' ARGUMENT THAT A PLAINTIFF
    CANNOT ASSERT CLAIMS UNDER § 1983 AND STATE LAW
    WAS UNSUPPORTED BY THE LAW AND THIS COURT
    CLEARLY ERRED IN ADOPTING THAT POSITION ................................. 11

        A. There is Ample Case Law Affirming Plaintiff's Right to Bring
        Concurrent Claims for Constitutional Violations Under
        Federal Law and Claims for Negligence Under State Law ............................ 11

        B. The New Jersey Civil Rights Act Has No Legal Import and Plaintiffs
        Have Asserted Claims for Violations of Federal and State Constitutional
        Provisions and Negligence Claims Under Common Law ............................... 16

CONCLUSION ..................................................................................................... 19

i

## **TABLE OF AUTHORITIES**

**Cases:**                                                                                                          **Page(s):**

*Ali v. City of Louisville*, NO. 3:03CV-427-R, 2006 U.S. Dist. LEXIS 66426,
2006 WL 2663018 (W.D. Ky. Sept. 15, 2006) ...............................................................15

*Anderson v. City of Minneapolis*, No. 16-cv-04114 (SRN/FLN),
2018 U.S. Dist. LEXIS 55048, 2018 WL 1582262 (D. Minn. Mar. 30, 2018) ...........................15

*Carpenter v. Chard*, 492 F. Supp. 3d 321, 331 (D.N.J. 2020).......................................................15

*Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176 (3d Cir. 2009) ...............................11

*Coles v. Carlini*, 162 F. Supp. 3d 380 (D.N.J. 2015)......................................................................16

*Daniels v. Williams*, 474 U.S. 327 (1986) ....................................................................................11

*Del Tufo v. Township of Old Bridge*, 278 N.J. Super. 312 (App. Div. 1995).........................12, 13

*Drippe v. Tobelinski*, 604 F.3d 778 (3d Cir. 2010).........................................................................8

*Estate of Strouse v. Atlantic City*, No. 17cv5662 (RMB), 2018 U.S. Dist. LEXIS 89526,
2018 WL 2433785 (D.N.J. May 30, 2018) ......................................................................17

*Gamboa v. King Cnty.*, 562 F. Supp. 2d 1288 (W.D. Wa. 2008) ...................................................17

*Glenn Distribs. Corp. v. Carlisle Plastics, Inc.*, 297 F.3d 294 (3d Cir. 2002) ..............................6

*Harsco v. Zlotnicki*, 779 F.2d 906 (3d Cir. 1985)...........................................................................5

*Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353 (D.N.J. 2013).......................................17

*Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc.*, 602 F.3d 237 (3d Cir. 2010)................5

*In re Grand Jury Investigation*, 445 F.3d 266 (3d Cir. 2006) ........................................................5

*Laudenslager v. Globe-Union, Inc.*, 180 F. Supp. 810 (E.D. Pa. 1958) ...................................9, 10

*Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669 (3d Cir. 1999) .................5

*Millward v. Bd. of Cnty. Comm'rs of Teton*, No. 17-CV-117-SWS,
2018 U.S. Dist. LEXIS 245504, 2018 WL 9371573 (D. Wyo. Oct. 19, 2018) ...........................15

*O'Toole v. Tofutti Brands, Inc.*, 203 F. Supp. 3d 458 (D.N.J. 2016) ..............................................5

*Rosario v. Union City Police Dep't*, 131 Fed. App'x. 785 (3d Cir. 2005) ............................ *passim*

*Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380 (1993) ................................8

*Price v. Trans Union, L.L.C.*, 839 F. Supp. 2d 785 (E.D. Pa. 2012) ...............................6

*Pulte Home Corp. v. Montgomery Cnty.*, 271 F. Supp. 3d 762 (D. Md. 2017) .............................7

*S.E.C. v. Wolfson*, 539 F.3d 1249 (10th Cir. 2008) ................................7

*Stroby v. Egg Harbor Twp.*, 754 F. Supp. 2d 716 (D.N.J. 2010)............................15, 16

*Tice v. Cramer*, 133 N.J. 347 (1993) ................................9

*Trafton v. City of Woodbury*, 799 F. Supp. 2d 417 (D.N.J. 2011)................................17

*We the People in Republic Clarissa Aline v. Temple Univ. Hosp.*,
NO. 03-5037, 2004 U.S. Dist. LEXIS 18160, 2004 WL 2004370 (E.D. Pa. Aug. 8, 2004) ..........7

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)................................18

*Williams v. City of Burlington*, __ F.4th __ (8th Cir. 2022) ................................14, 15


**Statutes:**                                                                    **Page(s):**

42 U.S.C. § 1983 ........................................................................... *passim*

N.J.S.A. 59:3-3................................................................................12, 13

N.J.S.A. 59:3-14................................................................................9


**Court Rules:**                                                                **Page(s):**

Fed. R. Civ. P. 6(b)(1)(B) ................................................................8

Fed. R. Civ. P. 12(b) ......................................................................6

Fed. R. Civ. P. 12(b)(6)................................................................6, 7

Fed. R. Civ. P. 12(c) ......................................................................7, 8

Fed. R. Civ. P. 12(i) ......................................................................7

Fed. R. Civ. P. 50(a) ......................................................................2, 6, 9

Fed. R. Civ. P. 56 ...................................................................................................................7, 8

Fed. R. Civ. P. 56(b) ...................................................................................................................8

**Local Civil Rules:**                                                                              **Page(s):**

L. Civ. R. 7.1(i) .......................................................................................................................1, 5

L. Civ. R. 16.1(b)(1) ...................................................................................................................8

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff moves for reconsideration of this Court's March 22, 2022 Order dismissing Plaintiff's state law negligence claims because this decision was a clear error of law and was manifestly unjust under the circumstances.

This action arises from the June 12, 2014 arrest of Plaintiff Xavier Ingram by Camden County Police Officers, Defendants Jeremy Merck, Antonio Gennetta and Nicholas Marchiafava, which left him a quadriplegic.[1]  This case was tried before the Chief Judge Juan R. Sanchez, from February 28, 2022 through March 29, 2022, on which date a mistrial was declared due to a deadlocked jury.   Pursuant Local Civil Rule 7.1(i),  Plaintiff seeks reconsideration of this Court's Order entered on March 22, 2022, D.E. 449, dismissing the state law claims asserted in Count VII for negligence, including in the use of force and failure to provide medical care against Defendants Merck, Gennetta and Marchiafava; and   Count VIII for negligent training, supervision, and promulgation of policies against Defendants County of Camden and (former) Chief John Scott Thomson as asserted in the Second Amended Complaint.[2]   This Court's eleventh-hour dismissal of these state law claims – as a matter of law – was in violation of the procedural requirements for seeking such relief and denied Plaintiff the opportunity to fully respond.  Moreover, the dismissal

---

[1]  While this Court is well versed as to the factual basis of this lawsuit, for purposes of this Motion, Plaintiff incorporates by reference the facts set forth in Plaintiff's Omnibus Statement of Material Facts, as supported by the Certification of Counsel and exhibits referenced therein. *See* D.E. 146-27; D.E. 146-1; *see also* D.E. 169.

[2]  Plaintiff's Second Amended Complaint asserts the following claims: **Count 1:** Excessive force in violation of 42 U.S.C. § 1983; **Count 2:** Failure to provide medical care in violation of 42 U.S.C. § 1983; **Count 3:** Supervisory and bystander liability under 42 U.S.C. § 1983; **Count 4:** *Monell* "custom" claim for failure to investigate, supervise and discipline its officers; **Count 5:** *Monell* failure to train claim; **Count 6:** Common law assault and battery; **Count 7:** Negligence including in use of force and failure to provide medical care; **Count 8**: Negligent training, supervision, and promulgation of policies; **Count 9:** False Arrest and Imprisonment. *See* D.E. 64. Plaintiff voluntarily dismissed Count 6 during trial.

was not supported by governing substantive law which permitted these state law claims to proceed to the jury for determination.  As the Court record reflects, Defendants' filed their request to dismiss these state law claims at **almost midnight on March 21, 2022**, D.E. 436, just hours before the motion was argued on March 22, 2022, which led to this Court's entry of the Order later that night.  D.E. 449.

The evidentiary proofs adduced at trial by Plaintiff applied equally to support both the federal law claims under 42 U.S.C. § 1983 and state law claims. There was no ruling that the evidence Plaintiff presented was not sufficient to support these claims. Nevertheless, at the close of Plaintiff's case, Defendants filed two motions for Judgment as a Matter of Law ("JMOL") under Fed. R. Civ. P. 50(a).  The first JMOL argued that Plaintiff's claims for failure to render medical care, asserted in Count II and Count VII, should be dismissed because there was insufficient evidence as to proximate cause.  D.E. 405, at 7-9.  Defendants' claimed that Dr. Yue, one of Plaintiff's experts, was "unable to tie any specific post-handcuffing movements . . . to any specific damages of Plaintiff."  D.E. 405, at 8.  Plaintiff opposed the motion, claiming that both Dr. Yue and Dr. Paul Ivancic, a world-renowned biomechanical engineer, both testified that post-handcuffing manipulations would have made Plaintiff's injuries worse and lessened his likelihood of recovering.  *See* D.E. 423, at 14-17.

The second JMOL filed by Defendants sought to dismiss Plaintiff's remaining claims.  *See* D.E. 422.  Defendants argued that, as to Plaintiff's claims under *Monell*, there was no basis for liability as Plaintiff's expert allegedly admitted that the CCPD provided proper training on the use of force on an arrestee's neck and the various deficiencies Plaintiff adduced at trial – *i.e.* use of force reports, IA investigations, early warning system, etc. – would only "suggest mere negligence."  D.E. 422-1, at 3-7.  Defendants also argued that Plaintiff' excessive force claim

should be dismissed because Plaintiff could not particularly identify which officer used force against him.  D.E. 422-1, at 12.  As to Plaintiff's claim for supervisory/bystander liability, Defendants simply argued "such a claim is dubious in the Third Circuit."  D.E. 422-1, at 20.

Of import, Defendants only dedicated less than a page to the argument that Plaintiff's state law claims should be dismissed.  Defendants only argued that Plaintiff's state law claims should be dismissed because Plaintiff did not adduce sufficient expert testimony through his police practices expert and that these claims were barred by various New Jersey statutory immunities. *See* D.E. 422-1, at 21-22.  Plaintiff filed an opposition, and correctly noted that the burden falls on Defendants to prove immunity under the Tort Claims Act ("TCA").  D.E. 426, at 24-25.  Plaintiff maintained that Defendants failed to offer any evidence as to these immunities and, accordingly, failed to meet their burden as a matter of law.  This Court seemingly reserved ruling on Defendants' two JMOLs.

Then, near midnight on March 21, 2022, Defendants moved again to dismiss Plaintiff's state law claims, this time on entirely different grounds. This time, Defendants argued (1) Plaintiff cannot assert a § 1983 under a theory of negligence; (2) Plaintiff did not assert a claim under the New Jersey Civil Rights Act ("NJRCA"); and (3) ordinary negligence is precluded by the TCA. *See* D.E. 436.  Plaintiff opposed and reiterated that "Defendants have the burden to prove . . . immunities and have not done so."  D.E. 438, at 2.  The following day, this Court granted Defendants' eleventh-hour request and dismissed Plaintiff's state law claims without a written or oral opinion.  That same day, Plaintiff moved for reconsideration, noting various cases where plaintiffs have pled and pursued federal law claims arising under § 1983 along with negligence claims under state law.  D.E. 442.  Nonetheless, this Court again decided that Plaintiff's claims were properly dismissed, and again offered no written or oral opinion for its legal reasoning.

3

Plaintiff respectfully submits that this Court clearly erred, both as a matter of procedural law and substantive law, in dismissing Plaintiff's state law negligence claims on the eve of jury deliberations without a full and fair opportunity to brief and argue the issue.  Wherefore, it is requested that this Court vacate the March 22, 2022 Order and reinstate Plaintiff's state law claims under Counts VII and VIII.

## **LEGAL ARGUMENT**

### **POINT I**

### **STANDARD OF REVIEW**

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."  *Harsco v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). "Accordingly, [an order] may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) **the need to correct a clear error of law or fact or to prevent manifest injustice**." *Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc.*, 602 F.3d 237, 251 (3d Cir. 2010) (emphasis added) (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).[3]  The instant motion for reconsideration is proper to correct a clear error of law and to prevent the manifest injustice of dismissing Plaintiff's state law claims.

In opposing Defendants' untimely request to dismiss the state law claims, this Court was presented with ample controlling legal precedent demonstrating that Plaintiff properly pled and had the right to pursue claims arising under both 42 U.S.C. § 1983 along with his claims of negligence under state law. Specifically, the Third Circuit case of *Rosario v. Union City Police Dep't*, 131 Fed. App'x. 785 (3d Cir. 2005),[4]  in which a plaintiff claiming excessive force and

---

[3]  Plaintiff's motion for reconsideration is timely as it is filed within fourteen (14) days of this Court's March 22, 2022 Order.  *See* L. Civ. R. 7.1(i).

[4]  Although this case is not binding on this Court*, see In re Grand Jury Investigation*, 445 F.3d 266, 276 (3d Cir. 2006), it is surely persuasive as it speaks directly to the issue before this Court. *See O'Toole v. Tofutti Brands, Inc.*, 203 F. Supp. 3d 458, 468 (D.N.J. 2016) (noting an unpublished opinion, although not binding, was "persuasive" and adopted its ruling).

failure to provide medical care by the police pursued concurrent claims under federal and state law which were ultimately considered by the jury.  Indeed, in *Rosario*, the jury returned a verdict for the plaintiff on the negligent failure to provide medical care claim.  The *Rosario* case, standing alone, was sufficient to defeat Defendants' baseless argument that Plaintiff cannot  pursue concurrent claims for constitutional violations under federal law as well as negligence claims under state law.  Respectfully, this Court clearly erred, both procedurally and substantively, when it dismissed Plaintiff's state law negligence claims.  Accordingly, this Court should reverse its March 22, 2022 Order and reinstate Counts VII and Counts VIII of Plaintiff's Second Amended Complaint for the forthcoming retrial.

**POINT II**

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S STATE LAW CLAIMS WAS PROCEDURALLY DEFICIENT AND, THEREFORE, THIS COURT CLEARLY ERRED WHEN IT RULED ON THE MOTION**

At the outset, Defendants' motion to dismiss Plaintiff's state law claims was presented to this Court under the guise of a Rule 50 motion.[5]  Moreover, this Court, having granted the relief requested, was in violation of Rule 50 as the evidence introduced at trial was more than sufficient to withstand a Rule 50 challenge.  Instead, the Defendants' motion should have been characterized and treated for what it was – a motion to dismiss under Fed. R. Civ. P. 12(b)(6), or as a motion for

---

[5] Federal Rule of Civil Procedure 50(a) allows for a party to file a motion for judgment as a matter of law where "a reasonable jury would not have **a legally sufficient evidentiary basis** to find for the party on that issue." (emphasis added). "In determining whether to grant judgment as a matter of law, the court must view the evidence in the light most favorable to the non-moving party, and determine whether the record contains **the minimum quantum of evidence from which a jury might reasonably afford relief**."  *Price v. Trans Union, L.L.C.*, 839 F. Supp. 2d 785, 791 (E.D. Pa. 2012) (internal quotation marks omitted and emphasis added) (quoting *Glenn Distribs. Corp. v. Carlisle Plastics, Inc.*, 297 F.3d 294, 299 (3d Cir. 2002)).  Defendants' motion had no bearing on the evidence adduced at trial, and only dealt with pure legal issues, which should have previously been raised by way of a motion to dismiss or a motion for summary judgment.

6

summary judgment under Fed. R. Civ. P. 56.  Under either scenario, Defendants' motion was untimely, and should not have been considered or ruled upon by this Court.

### A. Whether Defendants' Motion to Dismiss is Characterized as a Rule 12(b)(6) Motion or a Rule 12(c) Motion, the Application Was Untimely and Should Not Have Been Considered or Granted

Defendants' Rule 50 motion to dismiss Plaintiff's state law claims was in all respects a motion to dismiss for failure to state a claim upon which relief can be granted.  It is well-settled that such motions "must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  Here, there is no dispute that Defendants failed to abide by Rule 12(b)'s timing provision. Although district courts within the Third Circuit have construed untimely motions to dismiss as motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), *see We the People in Republic Clarissa Aline v. Temple Univ. Hosp.*, NO. 03-5037, 2004 U.S. Dist. LEXIS 18160, 2004 WL 2004370, at *1 (E.D. Pa. Aug. 8, 2004) (district court converted a Rule 12(b)(6) motion to a motion for judgment on the pleadings) (*See* Certification of Trevor D. Dickson, Esq. ("Dickson Cert."), ¶ 1, Exh. "A"), there was no legitimate basis to have done so in this case, particularly on the eve of sending the case to the jury to deliberate after three weeks of trial.  Even if this Court did consider Defendants' motion as such, it was still untimely.  *See* Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."); *see also S.E.C. v. Wolfson*, 539 F.3d 1249, 1264 (10th Cir. 2008) ("[A] motion for judgment of the pleadings can be filed at any time before trial. . . ."); *Pulte Home Corp. v. Montgomery Cnty.*, 271 F. Supp. 3d 762, 769 n.3 (D. Md. 2017) (motion timely where "no trial date has been set").[6]

---

[6] This comports with Federal Rule of Civil Procedure 12(i), which states, in part, "[i]f a party so moves, any defense listed in Rule 12(b)(1)–(7) – whether made in a pleading or by motion – and

**B. Even if Defendants' Request Was Characterized as a Motion for Summary Judgment under Federal Rule of Civil Procedure 56, It Was Still Untimely**

Assuming *arguendo* Defendants' Rule 50 motion requesting dismissal of Plaintiff's state law claims is characterized as a motion for summary judgment, it was still untimely and should not have been granted. *See* Fed. R. Civ. P. 56(b) (stating that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of discovery."). Here, Magistrate Judge Karen Williams entered an Order, *see* D.E. 133, which required all dispositive motions be filed no later than June 22, 2018. *See* L. Civ. R. 16.1(b)(1), and there was no further extension for the defense to file further motions. Moreover, the Third Circuit Court of Appeals has ruled that before a court may consider an untimely motion for summary judgment, "a party must make a formal motion for extension of time [pursuant to Federal Rule of Civil Procedure 6(b)(1)(B)] and the district court must make a finding of excusable neglect, under the *Pioneer* factors, before permitting an untimely motion." *Drippe v. Tobelinski*, 604 F.3d 778, 784-85 (3d Cir. 2010) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993)). Here, Defendants did not seek an extension of time under Fed. R. Civ. P. 6(b)(1)(B), nor could they have demonstrated that their failure to comply with the deadline was the byproduct of legitimate excusable neglect. Accordingly, this Court manifestly erred in deciding Defendants' motion to dismiss Plaintiff's state law claims.

It is important to note that Defendants did previously file a motion for summary judgment as to Plaintiff's state law claims – asserting only that the "pursuit immunity" applied under these circumstances. *See* D.E. 143-1, at 28; D.E. 144-1, at 5-6; D.E. 145-1, at 36. Notably, Defendants did not argue any other immunities. More importantly, Defendants did not argue that the state law

---

a motion under Rule 12(c) must be heard and **decided before trial** unless the court orders a deferral until trial." (emphasis added).

claims should be dismissed as a matter of law because a Plaintiff categorically could not bring concurrent claims under both state and federal law.  *See id.*  Plaintiff opposed the motion to dismiss and the assertion of "pursuit immunity," citing *Tice v. Cramer*, 133 N.J. 347 (1993), to which there was no substantive reply. *See* D.E. 232, at 26.  The late Honorable Jerome B. Simandle, U.S.D.J. denied Defendants' motion for summary judgment as to Plaintiff's state law claims, ruling as follows:

> [T]he Court finds that [N.J.S.A.] 59:3-14 **permits plaintiffs to recover for state law claims against police officers in pursuit of a person evading arrest**, where the officers' actions rise to or above the level of willful misconduct. The Court further finds that, in the version of events most favorable to Plaintiff Ingram, as described, <u>supra</u>, a reasonable jury could find that Defendant Officers' treatment of Plaintiff Ingram constituted willful misconduct. The Court further finds that, in the version of events most favorable to Plaintiff Ingram, as described, <u>supra</u>, a reasonable jury could find that Plaintiff Ingram's injuries were sustained after he fell but before the pursuit ended with his violent seizure. Therefore, this portion of Defendants' motions for summary judgment will be denied.

D.E. 232, at 27 (emphasis added).

In short, Defendants previously filed for summary judgment to dismiss Plaintiff's state law claims and lost that request.  Moreover, it is the Defendants burden of proof to establish entitlement to any immunity defense, which they did not do throughout this trial. Instead, Defendants waited until the eve of jury deliberations, by way of a Rule 50 motion, to request this Court dismiss Plaintiff's most viable and important state law claims.  By so doing, Defendants deprived Plaintiff the right and opportunity to fully and fairly respond to the legally hollow arguments presented in support of the relief requested, as did this Court.[7]  *See Laudenslager v. Globe-Union, Inc.*, 180 F.

---

[7] In the event this Court considers Defendants' application as part and parcel of the motion for a judgment as a matter of law, Fed. R. Civ. P. 50(a), there was no mention of the arguments that this Court found persuasive in their initial filing.  D.E. 422-1, at 21-22. Defendants argued, without any analytical support, that various immunities under the New Jersey Tort Claims Act ("TCA") barred Plaintiff's state law claims.  *See id.*  This is, in and of itself, a concession that Plaintiff properly pled and was able to pursue claims of negligence under state law. In other words, why

Supp. 810, 816 (E.D. Pa. 1958) ("since they have had no opportunity to brief, argue, or present evidence in the matter. . . .I think that this Court should refrain from passing upon the question."). Defendants filed the motion **close to midnight** on March 21, 2022.  *See* D.E. 436.  The next day, this Court adopted Defendants' baseless position and dismissed Plaintiff's state law claims without any statement of reasons or lawful authority.  Defendants, at a minimum, should have included all their legal arguments related to the propriety of Plaintiff's state law claims in the second motion for a judgment as a matter of law.  *See* D.E. 422-1.  Defendants' failure to do so left Plaintiff with no real opportunity to adequately respond to its eleventh-hour request.  As a matter of fundamental fairness, and in the interests of justice, this Court should not have entertained such a belated request.

In sum, Defendants had ample opportunity to brief and argue the viability of Plaintiff's state law claims before trial but failed to do so.  They had ample opportunity to introduce proofs, if any, of entitlement to immunity under the Tort Claims Act, but failed to do so. It was not until the end of trial, under the guise of a Rule 50 motion that Defendants sought to dismiss Plaintiff's state law claims, which under the procedural mandates of this Court, should not have been considered, much less granted. Accordingly, this Court should reconsider the decision dismissing Plaintiff's state law claims and permit them to be tried before the jury at the next trial.

---

argue that certain immunities shielded Defendants from liability if Plaintiff was not permitted to bring claims for which those immunities applied in the first place?

## POINT III

**DEFENDANTS' ARGUMENT THAT A PLAINTIFF CANNOT ASSERT CLAIMS UNDER § 1983 AND STATE LAW WAS UNSUPPORTED BY THE LAW AND THIS <u>COURT CLEARLY ERRED IN ADOPTING THAT POSITION</u>**

Defendants' argument before the district court conflated well-established principles of law in this jurisdiction.  Plaintiff does not deny that claims under § 1983 cannot be decided under a negligence standard.  *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."); *see also Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 191 (3d Cir. 2009) (citing same).  But that argument warps the question that was before this Court -- whether a plaintiff can assert **concurrent** claims under both § 1983 and under state law theories of negligence.  That question must be answered in the affirmative, and this Court's opposite conclusion was a clear error in the law and should be reversed.

> **A.  There is Ample Case Law Affirming Plaintiff's Right to Bring Concurrent Claims for Constitutional Violations Under Federal Law and Claims for Negligence Under State Law**

At oral argument, defense counsel, William Cook maintained that "as to this negligence argument, . . . this is new law . . . [t]here has not been a single case cited by the plaintiff which would allow for a negligence claim . . . to go to the jury in a police liability case."  *See* Dickson Cert., ⁋ 6, Exh. F, Trial Transcript, dated March 22, 2022, at T.3732:14-18; *see also* Dickson Cert., ⁋ 7, Exh. G, Trial Transcript, dated March 23, 2022, at T.3813:3-3815:17.  However, Mr. Cook's argument was not an accurate statement of the governing law.  Indeed, Plaintiff cited at oral argument, *see* Dickson Cert., ⁋ 7, Exh. G, T.3813:3-3815:17, and reiterates here, that *Rosario v. Union City Police Dep't*, 131 Fed. App'x. 785 (3d Cir. 2005) speaks directly to the viability of

11

concurrent claims for police misconduct under both federal law pursuant to § 1983, as well as for negligence under state law.

In *Rosario*, police officers, in the course of executing an arrest warrant, entered the home of Mr. Rosario. *Id.* at 787. Mr. Rosario was ultimately arrested for hindering/obstructing the arrest of his stepson and for allegedly assaulting one of the officers. *Id.* Following his arrest, Mr. Rosario suffered an asthma attack, and despite being given oxygen he died before arriving at the hospital. *Id.* Mr. Rosario's Estate,

> brought a wrongful death action against Union City, its police department, the police chief, and four individual detectives, stating the following claims: (1) **illegal entry, illegal arrest, excessive force, and failure to administer medical attention, under color of law**; (2) municipal liability under § 1983 for violation of Rosario's constitutional rights; (3) **negligent hiring, supervision, and retention**; (4) **assault and excessive force against the individual detectives**; and (5) *respondeat superior* **claims for failure to administer medical care, negligent medical care, and intentional refusal to give medicine.**
>
> The District Court granted summary judgment for the police department and its chief on all municipal liability claims under § 1983 **with the exception of the claim relating to negligent retention**. Following trial, the jury found that Detective Loaces was liable for false arrest; that **all four defendant detectives were negligent in providing medical care**; and that Esteban Rosario's estate was entitled to $ 2,500,000 in compensation for decedent's pain and suffering. The jury also awarded $ 3,000,000 in compensation for the loss of support and guidance suffered by plaintiffs. **With respect to all other claims submitted to the jury, defendants were found not liable**. On defendants' motion for JNOV, the District Court struck the $ 3 million jury award as outside the scope of New Jersey's wrongful death statute based upon the evidence presented at trial.

*Id.* at 787-88 (emphasis added).

The jury in *Rosario* found that the defendant-officers "were **negligent in providing medical care.**" *Id.* at 788 (emphasis added). The defendants argued, on appeal, that the district court erred as a matter of law when it declined to grant good faith immunity under N.J.S.A. 59:3-3. *Id.* The panel, in an opinion authored by then-Chief Judge Scirica, found, citing *Del Tufo v.*

12

*Township of Old Bridge*, 278 N.J. Super. 312 (App. Div. 1995) with approval, that the good-faith

immunity under N.J.S.A. 59:3-3 was inapplicable:

> Depending on the facts, however, whether public officials were enforcing the law is not necessarily determinative in finding immunity. The detectives here were engaged in enforcing the law. But under New Jersey law, immunity from liability for good faith actions undertaken during law enforcement does not relieve a police officer from the duty to administer emergency medical assistance to an arrestee. *See Del Tufo v. Township of Old Bridge*, 278 N.J. Super. 312, 650 A.2d 1044 ([App. Div.] 1995) *aff'd on other grounds* 147 N.J. 90, 685 A.2d 1267 (N.J. 1996). [I]n *Del Tufo*, decedent's estate brought a wrongful death action against police officers, alleging their failure to administer proper medical care during the course of decedent's arrest was the proximate cause of his death. The officers had observed decedent's abnormal movements, lacerations, and seizures, yet waited almost an hour to summon an ambulance. By the time an ambulance was called and decedent was rushed to the hospital, he had died of cardiac failure caused by ingestion of large amounts of cocaine.

> Noting that "when the police arrest someone, they have a duty to provide necessary medical treatment," the court specifically found that N.J.S.A. 59:3-3 was inapplicable to the *Del Tufo* defendants:

>> The plaintiff in the present case is not complaining that the defendants should not have executed or enforced the law.  Their duty to execute or enforce the law did not preclude them from providing emergency medical assistance to their arrestee. The immunity for enforcing and executing the law does not protect defendants.

> *Del Tufo*, 650 A.2d at 1051.  We see little to distinguish the facts in *Del Tufo* from the facts in this case. *Id.* at 789-90.

Clearly, on appeal, the panel would not have been presented with the issue of whether the

good faith immunity under the Tort Claims Act applied had Mr. Rosario's estate not been able to

pursue a claim for negligent failure to provide medical care and, indeed, been successful on such

a claim. In fact, the panel in *Rosario*, in rejecting the defendants' argument of immunity under

N.J.S.A. 59:3-3, relied on *Del Tufo*, a New Jersey case setting forth state law, and determined

"[o]fficers are under a duty to render emergency medical assistance to those in their custody." *Id.*

at 790. In short, the analysis in *Rosario* forecloses any argument that a plaintiff cannot assert

concurrent claims for constitutional violations under § 1983 as well as state law negligence claims.

This Court, at oral argument on Plaintiff's initial motion for reconsideration, questioned

the propriety of *Rosario* simply because in that case there "was almost a two hours' delay" in

providing medical care while in the present case it was "three minutes."[8]  *See* Dickson Cert., ⁋ 7,

Exh. G, at 3813:3-6.  That, respectfully, is an improper distinction as the sole question before this

Court was purely a legal issue, not a factual one. And *Rosario* directly speaks to that issue:  a

plaintiff brought a claim for "illegal entry, illegal arrest, excessive force, and failure to administer

medical attention, **under color of law**," as well as "respondeat superior claims for failure to

administer medical care, **negligent medical care**, and intentional refusal to give medicine."  131

Fed. Appx. at 787 (emphasis added).  The jury returned a verdict in favor of the plaintiff on the

basis that the officers "were **negligent in providing medical care**."  *Id.* at 788 (emphasis added).

Assuming *arguendo* that this Court finds that the slight factual dissimilarities in *Rosario*

somehow undermine the legal issue that is before this Court, or views *Rosario* as an isolated

instance, there is ample authority that establishes a plaintiff can bring concurrent claims under both

42 U.S.C. § 1983 and state law negligence theories.  *See, e.g., Williams v. City of Burlington*, __

F.4th __ (8th Cir. 2022) ("Jones's estate, on behalf of his five minor children, assert three

---

[8] However, Plaintiff Ingram's claims for failure to provide medical care is arguably far worse than *Rosario* because here the Defendant-Officers were accused of first having kneed the plaintiff in his neck and then having stepped down on his neck – **causing his initial injuries** – and furthermore, were all (1) trained in and aware of the signs and symptoms of paralysis; (2) recognized that Plaintiff's complaints, which they were all made aware of, were consistent with potential paralysis; (3) understood the risks of moving an individual presenting with signs and symptoms of paralysis; and (4) needlessly moved Plaintiff anyway by sitting him up and dropping him on his face to force him to stand up to put him in a police car.  *See* D.E. 423.  In other words, the timing of a call for medical help should not be the sole determinative factor, particularly on a motion to dismiss.

remaining claims against the City of Burlington and officer Chiprez. They assert federal and state constitutional violations of excessive use of force and arrest without probable cause."); *Carpenter v. Chard*, 492 F. Supp. 3d 321, 331 (D.N.J. 2020) ("summary judgment is denied as to the state law claims because there is a question of fact as to whether Chard's actions were taken in good faith."); *Anderson v. City of Minneapolis*, No. 16-cv-04114 (SRN/FLN), 2018 U.S. Dist. LEXIS 55048, 2018 WL 1582262, at *3-4 (D. Minn. Mar. 30, 2018) (noting that the plaintiff brought claims for violations under 42 U.S.C. § 1983 and state law claims; specifically, municipal liability for negligent performance of duty by a state actor and negligent undertaking) (Dickson Cert., ⁋ 2, Exh. "B"); *Millward v. Bd. of Cnty. Comm'rs of Teton*, 2018 WL 9371573, at *1 (D. Wyo. Oct. 19, 2018) ("Plaintiffs allege two claims under 42 U.S.C. § 1983 for violation of Scott Millward's due process rights and two claims of negligence under state law.") (Dickson Cert., ⁋ 3, Exh. "C"); *Ali v. City of Louisville*, 2006 WL 2663018, at *5 (W.D. Ky. Sept. 15, 2006) (plaintiff who brought claims for, among other things, excessive force under § 1983 and negligent use of excessive force) (Dickson Cert., ⁋ 4, Exh. "D"); *see also* D.E. 442, at 10-11 (collecting cases in the Third Circuit).

Another case which supports the viability of maintaining concurrent claims under federal and state law for police misconduct is *Stroby v. Egg Harbor Twp.*, 754 F. Supp. 2d 716 (D.N.J. 2010). There, an officer went to the home of the plaintiff to confront him about an affair he had been having with the plaintiff's wife. *Id.* at 718-19. The officer entered the plaintiff's home without permission, and a physical altercation ensued. *Id.* at 719. The plaintiff brought claims against the municipality, arguing that it "failed to adequately train and screen their employees, and adopted or maintained policies and customs that were deliberately indifferent to Plaintiff's constitutional rights, all in violation of 42 U.S.C. § 1983." *Id.* at 719-20. The plaintiff also brought a claim for "negligent training by the [m]unicipal [d]efendants." *Id.* at 721. Although the Court

ultimately dismissed the state law claims on the grounds of proximate cause, it accurately set forth the state law in New Jersey:

> **Under New Jersey law, liability may be imposed on an employer who fails to perform its duty to train and supervise its employees.** *Tobia v. Cooper Hosp. Univ. Med. Ctr.*, 136 N.J. 335, 346 (1994). Because **this is a negligence claim**, in order to establish a prima facie claim for negligent training, plaintiff must show that (1) the defendant owed a duty of care to the plaintiff, (2) defendant breached that duty of care, (3) defendant's breach was the proximate cause of plaintiff's injury, and (4) defendant's breach caused actual damages to plaintiff. *Weinberg v. Dinger*, 106 N.J. 469, 484 (1987).

*Id.* (emphasis added).  Thus, in *Stroby*, the plaintiff asserted *Monell* claims and claims for negligent training and supervision. So too in the case at bar, Plaintiff asserted *Monell* claims in Counts 4 and 5, along with state law claims in Counts 7 and 8.  *See* supra, at n. 2.  This Court clearly erred when it decided as a matter of law that Plaintiff could not simultaneously pursue federal law claims under § 1983, and negligence claims arising under state law.  Particularly on a Rule 50 motion when, in fact, Plaintiff introduced substantial credible evidence on each and every element of these claims during trial. Hence, it was for the jury to decide these claims, and on the retrial of this case, the jury should decide both the federal and state law claims.

## B. The New Jersey Civil Rights Act Has No Legal Import and Plaintiffs Have Asserted Claims for Violations of Federal and State Constitutional Provisions and Negligence Claims Under Common Law

Before this Court, Defense counsel argued that the "proper state law mechanism in New Jersey to challenge police conduct in the handling of an arrest is the New Jersey Civil Rights Act ("NJCRA"), which is the state law equivalent to Section 1983."  D.E. 436, at 1-2.  It is true that the "NJCRA was modeled after 42 U.S.C. § 1983 and [c]ourts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983."  *Coles v. Carlini*, 162 F. Supp. 3d 380, 404 (D.N.J. 2015) (internal quotation marks and citation omitted).  However, nothing in the cases cited by Defendants, *see* D.E. 436, at 1-2, stands for the proposition that a

plaintiff must be forced into pleading claims under the NJCRA when asserting state law claims for negligence.  There have been cases where plaintiffs have asserted federal and state constitutional claims, as well as negligence claims.  *See Gamboa v. King Cnty.*, 562 F. Supp. 2d 1288, 1295 (W.D. Wa. 2008) (noting that the plaintiff brought claims (1) for violations under the First, Fourth, and Fourteenth Amendments; (2) municipal liability for utilizing policies, practices, and customs in violation of the First, Fourth, and Fourteenth Amendments; (3) state law claims of assault and battery as well as negligence; and (4) violations of due process and free speech rights under Washington's state constitution); *see also Ingram v. Twp. of Deptford*, 911 F. Supp. 289, 291 (asserting claims for violations of a plaintiff's Fourth and Fourteenth Amendment rights under the U.S. Constitution, violations of the New Jersey State Constitution, stemming from the same activity, as well as tort claims for negligence, and assault and battery); *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 440-45 (D.N.J. 2011) (plaintiff who brought claims for excessive force under the Fourth Amendment, violations of the civil rights secured under the New Jersey Constitution, and excessive force common law claims); *Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 361-62 (D.N.J. 2013) ("Defendants presently move for summary judgment on the claims remaining against them, including those asserted under state  law theories of negligence and both federal and New Jersey state law civil rights claims."); *Estate of Strouse v. Atlantic City*, 2018 WL 2433785, at *1 (D.N.J. May 30, 2018) (plaintiff asserted claims "under 42 U.S.C. § 1983, the New Jersey Civil Rights Act (NJCRA), state law negligence claims under the New Jersey Tort Claims Act ('TCA'), including wrongful death and a survival action.") (Dickson Cert., ℙ 5, Exh. "E"). Indeed, the purpose of the NJCRA was to be able to permit a plaintiff to bring claims for

constitutional violations in state court against **state actors** without running afoul of the Eleventh Amendment.[9]

There is no statutory bar under the NJCRA, N.J.S.A. 10:6-2, or 42 U.S.C. § 1983, that expressly prohibits a plaintiff from asserting concurrent causes of action under both federal and state law.  Nor is there any requirement that a plaintiff must only sue under NJCRA, N.J.S.A. 10:6-2 and 42 U.S.C. § 1983 and forego all rights to sue under state negligence law. The case law Defendants cited was of no consequence, and Plaintiff has provided this Court with sufficient case law establishing that plaintiffs can, and frequently do, assert claims under federal law and under state law (*i.e.* negligence theories).  This Court clearly erred, substantively, when it dismissed Plaintiff's state law negligence claims at the eleventh-hour before jury deliberations. Accordingly, this Court should vacate the Order of March 22, 2022 and reinstate Plaintiff's negligence claims.

---

[9] Due to Eleventh Amendment protections, neither a State, arms of the state, nor its officials acting in their official capacities are "persons" under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

## <u>CONCLUSION</u>

Plaintiff respectfully submits that this Court clearly erred, both as a matter of procedural law and substantive law, in dismissing Counts VII and VIII of the Second Amended Complaint. There was no basis cited by Defendants to support the untenable position that a plaintiff cannot assert concurrent federal and state law claims, which this Court incorrectly adopted in its March 22, 2022 Order. Therefore, Plaintiff respectfully requests that this Court grant reconsideration, vacate its Order of March 22, 2022 and reinstate the state law claims, Counts VII and VIII, and allow those claims to proceed in the next trial.

Respectfully submitted,

**MAZIE SLATER KATZ & FREEMAN, LLC**
*Attorneys for Plaintiff*


By: */s/ Beth G. Baldinger*
    BETH G. BALDINGER, ESQ.

<u>Dated</u>: April 4, 2022