**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| XAVIER INGRAM,<br><br>    Plaintiff,<br><br> vs.<br><br>COUNTY OF CAMDEN, CAMDEN COUNTY POLICE DEPARTMENT, JEREMY MERCK, ANTONIO GENNETTA, NICHOLAS MARCHIAFAVA, JOHN SCOTT THOMSON, ORLANDO CUEVAS, JOHN DOE(S) 1-50, and ABC ENTITIES 1-10,<br><br>    Defendants. | CIVIL ACTION NO. 1:14-CV-05519<br><br>**CERTIFICATION OF<br>BETH G. BALDINGER<br>IN SUPPORT OF MOTION TO<br>ENFORCE SETTLEMENT** |

Beth G. Baldinger, of full age, hereby certify as follows:

1. I am an attorney at law of the State of New Jersey and a partner in the law firm of Mazie Slater Katz & Freeman, LLC, attorneys for the Plaintiff and am fully familiar with the facts and circumstances set forth herein. I submit this Certification in support of this Motion to Enforce Settlement in which it is requested that this Court issue an Order approving Plaintiff's General Release to the Defendants (Document Identifying Certification of Beth Baldinger ("Baldinger Cert."), Exhibit P) or, alternatively, entering judgment against all Defendants; and thereafter directing that the settlement payment of $10 million be issued within ten (10) days from the date the signed General Release is provided to defense counsel or Judgment is entered against all Defendants; and such further relief as this Court deems just and proper.

2.      This case involves claims brought for violation of Plaintiff's civil rights under 42 U.S.C. § 1983 which occurred during an arrest on June 12, 2014 by Camden County Police officers Jeremy Merck, Antonio Gennetta, and Nicholas Marchiafava ("Defendant Officers").  Plaintiff claimed that during the arrest -- while he was prone, handcuffed, and not resisting -- the Defendant Officers forcefully kneed him in the neck and stepped down on his neck. Then, the Defendant Officers ignored Plaintiff's complaints and signs of paralysis, and in violation of their training as First Responders and in derogation of their duty to render medical care, they sat him up twice and dropped him on his face in an effort to force him to stand up so they could put him into a police car. Plaintiff claimed the Defendant Officers broke his neck and inflicted catastrophic spinal cord injuries rendering him a quadriplegic for life.  The claims against the Defendant Officers under 42 U.S.C. § 1983 were for excessive use of force, failure to provide medical care, and supervisory liability. Plaintiff also asserted *Monell* claims under 42 U.S.C. § 1983 against Camden County and Camden County Police Department Chief of Police John Scott Thomson for their abject failures in training, supervising, and disciplining of its officers under which improper and/or excessive use of force was tolerated and tacitly approved. With the exception of Plaintiff's state law claim for false arrest, the Court dismissed Plaintiff's parallel state law negligence claims as well as his claim for § 1983 conspiracy just prior to the jury being charged and proceeding to deliberations. (D.E. 449).

3.      This lawsuit was filed on August 26, 2014 and, over the following eight (8) years, was the subject of extensive discovery, motion practice, and pre-trial litigation. The trial of this case took place from February 28, 2022 through March 29, 2022 before the Hon.

Juan R. Sanchez, U.S.C.J. which ended with a declaration of mistrial when the jury was deadlocked and unable to reach an unanimous verdict. (D.E. 473)

4. Several weeks after the mistrial, the parties engaged in settlement discussions with the Honorable Pamela A. Carlos, U.S.M.J.

5. On May 6, 2022, all parties agreed to a settlement of the case. The terms of the settlement were memorialized in an e-mail from Magistrate Judge Carlos to all counsel and Chief Judge Sanchez which states:

> Counsel: This message follows my conversations today with Ms. Baldinger (with full authorization on behalf of Mr. Ingram) and Mr. Tambussi (with full authorization on behalf of <u>all</u> Defendants).
>
> This will confirm that the above referenced lawsuit has been resolved for the total sum of Ten Million Dollars and Zero Cents ($10,000,000.00) in exchange for which Plaintiff, Xavier Ingram, will execute a general release of all claims. There are no other conditional terms of settlement.
>
> Chief Judge Sanchez has been personally notified of this development. The parties are to forthwith undertake all necessary stapes to effectuate and complete resolution.

(Baldinger Cert., **Exhibit A:** E-mail of May 6, 2022 from Magistrate Judge Carlos)

6. On May 6, 2022, the above terms of the settlement were acknowledged in e-mails from William M. Tambussi, Esq. and myself. My e-mail indicated that the General Release should be executed the following week and payment made within 30 days. (Baldinger Cert., **Exhibit B:** E-mails of May 6, 2022 from myself and Mr. Tambussi)

7. To be clear, the agreed upon terms of settlement are that the Plaintiff will execute and provide a General Release of all claims in exchange for payment of $10 million. There are no other conditions of settlement.

8. However, as demonstrated below, defense counsel has improperly frustrated and delayed consummating this settlement. In addition to not providing a proposed General Release until twenty (20) days after the settlement was reached, defense counsel has continued to insist on including terms and conditions which were never discussed, nor agreed to. Moreover, many of Defendants' proposed terms and conditions are arbitrary and legally improper, including but not limited to the following:

(a) Conditioning payment on approval by the Board of Commissioners of the County of Camden. Even though this condition has been subsequently waived by defense counsel, they still refuse to remove it from the General Release.

(b) Delaying payment of the settlement funds until 90 to 120 days after approval by the Board of Commissioners of the County of Camden, whichever is longer. As there is no deadline for any such approval, defense can delay payment indefinitely.

(c) Inclusion of Medicare lien obligations and a waiver of a pretextual Medicare Set-Aside -- in an arbitrary sum of $7 million dollars -- even though Plaintiff has never received any Medicare benefits, nor is he now or in the near future (next 30 months) eligible for any Medicare benefits.

(d) Giving Defendants' insurance companies the right to withhold settlement funds and pay off the non-existent Medicare lien and the current Medicaid lien directly. The carriers have no legal right to do this. Moreover, Plaintiff is working directly with Medicaid to finalize the amount of the lien and will pay it off from the settlement funds and will provide proof of the final lien payoff to the Defendants.

(e) Mandating a lifetime ban by Mr. Ingram from ever applying for or receiving any social security income or Medicare benefits – even after reaching the age of 65. This provision is void as against public policy.

(f) Providing Defendants and their insurance companies with an unlimited indemnification and hold harmless obligation including for attorney's fees, costs and any judgment. The proposed terms are overly broad and unjustified. Plaintiff's proposed General Release contains indemnification language commonly accepted including by New Jersey State government.

4

9. To place Defendants' proposed General Release in perspective, my firm routinely handles cases culminating in eight (8) figure settlements for which the General Releases are clear, concise and succinctly cover all bases in just several pages. For example, we just settled the case of Xuefang Zhong vs. New Jersey Transit (Docket No. ESX-L-3230-20) for $10 million with a two-page Release -- approved by New Jersey Transit and the State of New Jersey -- which aptly addresses all liens, as well as indemnification obligations. (Baldinger Cert., Exh. Q, Release in Zhong v NJ Transit, June 15, 2022).  Likewise, my firm recently settled another case (name of the case and litigants are confidential) for $13 million with a three-page Release which aptly addresses all liens, including to Medicaid, as well as proper indemnification terms. (Baldinger Cert., Exh. R, Release in Confidential case, March 22, 2022).  Here, Plaintiff's proposed General Release has incorporated applicable language from these other Releases, as well as certain provisions proposed by Defendants to provide a full and proper general release of all claims. (Baldinger Cert., Exh. P, Plaintiff's General Release)

10. As detailed below, to date, my efforts to consummate this settlement have been delayed by the defense, and thwarted by their interjection of terms and conditions into the General Release which were never discussed, nor agreed to.  Accordingly, this Court should find this constitutes a sufficient basis to grant the relief requested in this Motion.

11. On May 12, 2022, I requested defense counsel provide their proposed General Release.  In response, William Cook, Esq. advised the draft would be provided the following week and he requested a (1) Charles Jones Report as proof of any outstanding child support debtor obligations; (2) an updated lien report; and (3) whether the settlement was reported to CMS [Centers for Medicare & Medicaid Services].  On May 16, 2022, Mr.

Cook requested the name of Plaintiff's MSA [Medicare Set Aside] trust company and the time frame for completing an evaluation of Plaintiff's future medical needs. (Annexed hereto as **Exhibit C** are the referenced emails of May 12, 2022 and May 16, 2022)

12. On May 18, 2022, I again requested the General Release that had not yet been provided. I also responded to Mr. Cook's requests by providing (1) the Charles Jones Report, dated May 6, 2022, showing Plaintiff is not a child support debtor and has no outstanding unsatisfied child support obligations; and (2) the Medicaid Lien Letter dated March 14, 2022 reflecting the total lien of $1,473,998.27 and advised it was our responsibility to address Plaintiff's obligations with Medicaid and Medicare (of which there are none). On May 19, 2022, Mr. Cook demanded that I provide specifics as to how Plaintiff's future medical care was to be paid from the settlement and advised that the Defendants' insurance carriers would be reserving their right to reimburse **Medicare** directly for all **Medicare** liens. (Baldinger Cert., **Exhibit D:** E-mails of May 18, 2022 and May 19, 2022 with attachments, dated May 18, 2022 and May 19, 2022)

13. At all times throughout this litigation, and even now, defense counsel has known that Plaintiff has **<u>never</u>** received any benefits from **<u>Medicare</u>** and does not qualify for Medicare benefits. Nevertheless, defense counsel is seeking to improperly interject **Medicare** obligations – that do not exist – into this settlement. Moreover, defense counsel is now insisting that their insurer's have the right to pay back **Medicare** directly. Not only do the insurers not have any legal right to do this, but there is also no lien to be paid back. (*See* Plaintiff's Brief in Support of Motion to Enforce).

6

14. On May 23, 2022, I wrote to Mr. Cook to address the improper interjection of issues into this settlement. As to **Medicare,** I again advised that Plaintiff has not and does not qualify for Medicare, nor will he be eligible for Medicare. Accordingly, no Medicare Set Aside (MSA) is required. In further support of this representation, I again provided Mr. Cook with my December 15, 2021 letter to Medicare and the responding letter of January 12, 2022 from CMS that Mr. Ingram is not in Medicare's system (the reason Mr. Ingram is not in Medicare's system is because he does not receive any Medicare benefits). It should be noted that this exact same documentation previously provided to and accepted by defense counsel as proof that Mr. Ingram was not a Medicare beneficiary.[1] Also, in further support of this representation, I provided a May 23, 2022 opinion letter from Thomas D. Begley, Jr. Esq., whose expertise is in trusts, estates, and disability benefits. Mr. Begley's opinion letter verifies that Mr. Ingram does not meet any of the eligibility requirements of Medicare, he is not receiving Medicare benefits, and has no reasonable expectation of receiving Medicare within thirty (30) months; therefore, no Medicare Set Aside is required. **As to Medicaid**, I confirmed that we were addressing the lien directly with Medicaid, that I will advise Defendants of the amount of the final lien and provide proof that the lien was fully satisfied from the settlement proceeds. On May 23, 2022, Mr. Cook responded and, while admitting Mr. Ingram is not a Medicare beneficiary ("I am aware that Mr. Ingram is not currently receiving Medicare benefits"), he goes on to state -- without any legal basis -- that "[Plaintiff] will be eligible in the near future" which exposes the Defendants to third party liability. This

---

[1] It should be noted that CMS's letter of January 12, 2022 was previously accepted by defense counsel as confirmation that Plaintiff was not a Medicare beneficiary, and that Plaintiff only received Medicaid benefits as memorialized in the parties' February 18, 2022 Stipulation as to Medicaid Lien. (D.E. 377).

7

is simply not true. Moreover, no general release was provided, despite my renewed request. (Baldinger Cert., **Exhibit E** is a true copy of the referenced e-mails of May 23, 2022 along with attachments -- including the letter from Thomas D. Begley, Jr., Esq.)

15. On May 25, 2022, I reached out to Mr. Cook again advising that Mr. Ingram is not Medicare eligible and will not be eligible in the future, so no Medicare Set Aside is required. I again advised that we would address the Medicaid lien, and advise of the final payoff figure and will provide proof that the lien is paid in full from the settlement funds. I again advised Mr. Cook that there is no such thing as a **Medicaid Set Aside**. Again, I advised that how Mr. Ingram chooses to address his future medical expense is not Defendants' concern, and as I explained, Mr. Ingram could utilize a Special Needs Trust that will allow him to continue to receive Medicaid benefits in the future – which is not Defendants' concern. Still – now almost twenty (20) days since the settlement – no General Release had yet been provided despite my repeated demands. On May 25, 2022, Mr. Cook responded. While confirming he knows that Mr. Ingram is not Medicare eligible, he is now insists that a **notarized document be produced that Plaintiff will never apply for, nor collect any Medicare benefits for the rest of his life.** Specifically, defense requests that such notarized document state Mr. Ingram will not apply for social security benefits in the future, nor collect Medicare benefits upon reaching the minimum Medicare age -- which is **65 years old**. This demand is unlawful and unacceptable. (Baldinger Cert., **Exhibit F** are the referenced emails of May 25, 2022)

16. It should be noted that I called and spoke to Mr. Cook about these issues. Mr. Cook was adamant that he would not provide the General Release until it was reviewed by "many persons" and was insisting that the carriers had the right to just pay back the

8

Medicaid lien directly, which I advised they had no right to do. The call was unproductive and failed to resolve any of the issues in dispute. In a further good faith effort to address these issues, I reached out for Mr. Tambussi but he did not return my calls.

17. Finally, late in the evening of May 25, 2022, Mr. Cook provided their proposed General Release, which contained numerous terms and conditions which were never discussed, nor agreed to. For example, the settlement was "subject to final ratification and approval by the Board of Commissioners of the County of Camden" and that the payment would not be made until 90 days or 120 days after receipt of the signed settlement agreement, or ratification by the Board of Commissioners "whichever was later." This is wholly unacceptable. Mr. Tambussi represented he had authority to act on behalf of all Defendants – including Camden County – and to enter into this settlement. (*See* Baldinger Cert., Exh. A) There is no need for Plaintiff to wait for the Board of Commissioners to subsequently approve the settlement, nor is there any justification to further delay payment for another four (4) months – or even longer depending on when the Board acted to vote on this. The proposed release contained numerous other conditions and terms that were never discussed or agreed to. (Baldinger Cert., **Exh. G:** E-mail of May 25, 2022 with Proposed General Release dated May 25, 2022)

18. Then, on May 26, 2022, Mr. Cook wrote me to advise that **he "received carrier approval to forego a MSA [Medicare Set Aside]"** and that he would be providing an updated release, and that I should wait to receive it before responding. Mr. Cook also advised that the CMS Medicare letter (that which was previously provided and accepted) was not acceptable to the carrier to confirm there was no Medicare lien. (Baldinger Cert., **Exhibit H** E-mail of May 26, 2022 from Mr. Cook)

19. On June 1, 2022, Mr. Cook stated that Nationwide needs a "legitimate CMS no-payment letter" to verify there is no Medicare Lien to be paid back. Mr. Cook stated -- without any proof or articulated basis -- that my December 15, 2021 letter to Medicare requesting information on Mr. Ingram was incorrect and deficient. Yet, defense counsel and the insurance carriers already admitted that Mr. Ingram **never** received any Medicare benefits, hence there is no Medicare lien to be paid back. They also know and admit that Mr. Ingram is not Medicare eligible, thus no Medicare Set Aside is required which is why they are "waiving" the Medicare Set Aside requirement – yet they are continuing to press for additional verification from CMS/Medicare. (Baldinger Cert., **Exhibit I** is a true copy of Mr. Cook's emails of June 1, 2022)

20. Having not received the **revised** Settlement Agreement from Mr. Cook as promised on May 26, 2022, on June 1, 2022, I sent Mr. Cook and all counsel a letter detailing Plaintiff's objections to the draft Settlement Agreement as originally provided on May 25, 2022. As detailed in my letter, many of the terms and conditions of the proposed Agreement had never been discussed nor agreed to, were in contravention of the parties' settlement agreement, and were onerous, overly broad, and inappropriate. (Annexed hereto as **Exhibit J** is a true copy of my letter dated June 1, 2022)

21. On June 2, 2022, Mr. Cook sent an e-mail with the revised draft of the General Release. As stated above, it had been properly documented that Mr. Ingram had not received any Medicare benefits, did not qualify for Medicare, nor would he qualify in the next thirty (30) months such that no Medicare Set Aside was required. Moreover, as stated above, the insurance carriers agreed to waive any Medicare Set Aside. Nevertheless, the

revised draft of the General Release now included a **new 4 page addendum regarding Medicare**, the provisions of which are inappropriate and inapplicable including:

- Should future medical treatment related to the Accident be required, **the expense associated with that treatment will be paid from the proceeds of this settlement**.

- **No further medical expense or prescription drug expense related to the treatment I have received or will receive in the future related to the Accident will be submitted to Medicare for payment**, and I will instruct all medical providers rendering such treatment that expense associated therewith should not be submitted to Medicare for payment.

- No liens, including but not limited to liens for medical treatment by hospitals, physicians, or medical providers of any kind have been filed for the treatment of injuries sustained in the Accident, other than a Medicaid lien. **The Medicaid lien has been directly reimbursed by the Carriers.**

Further, this addendum includes language that the Defendants offered Mr. Ingram a $7,000,000 (Seven Million Dollar) Medicare Set Aside, out of his settlement of $10,000,000. which he is rejecting, along with other provisions that are entirely inappropriate. On June 3, 2022, I advised defense counsel that the proposed Release was unacceptable based on the new provisions and that none of my requested changes had been made. (Baldinger Cert., **Exhibit K** is a true copy of Mr. Cook's email and the Revised General Release dated June 2, 2022, and my responding e-mail of June 3, 2020).

22. On June 3, 2022, Cory Rothbort, Esq. of this firm sent a detailed letter to Mr. Cook and all counsel detailing the history as to Medicare's confirmation that Mr. Ingram was never a beneficiary and there is no lien to be paid back. Also detailed were our proper responses to their post-settlement demands to confirm these facts. In short, Mr. Rothbort's letter documents how CMS's letter, dated January 12, 2022, and his subsequent discussions with CMS on June 2, 2022, as memorialized in a detailed letter to NGHP/CMS of that date, confirms there is no Medicare lien. Moreover, on this date, as per the request of defense

counsel, we provided a signed HIPPA authorization, Power of Attorney and Medicare form to enable defense counsel and their carriers to verify this information for themselves. (Baldinger Cert., **Exhibit L:** June 3, 2022 letter from Mr. Rothbort, along with attachments)

23. Despite all of our efforts to resolve the terms of the General Release, we reached an impasse. Defense counsel were insisting on terms and conditions that were not discussed, nor agreed to, and are holding up consummation of this settlement. The Court became involved and Judge Carlos offered June 7, 2022 for a conference call with all counsel.

24. On June 7, 2022, I sent Mr. Cook and all counsel a redlined version containing my response to their most recent proposed General Release. (Baldinger Cert., **Exhibit M,** June 7, 2022 E-mail and Redline of General Release)

25. On June 7, 2022 Magistrate Judge Carlos held a conference call about the dispute over the terms of the proposed General Release. Defense counsel were all present, along with Mr. Morgenstern, counsel for Nationwide Insurance. Plaintiff's counsel was present, along with Thomas D. Begley, Jr., Esq. Notably, Mr. Morgenstern acknowledged that he himself had checked with Medicare and verified they have no record of Mr. Ingram as a beneficiary.

26. After a general discussion, it was agreed that by June 15, 2022 both sides would submit their proposed version of the General Release, along with a letter explaining the parties' positions to Judge Carlos. I had expressed my concerns to Judge Carlos there was a need to move this matter along quickly and not be subject to further delay, which she indicated she understood the importance of. Notably, Judge Carlos confirmed that she had

12

no authority to order anyone to agree to her suggestions, but that she would review the submissions and follow up.

27. On June 15, 2022, I submitted to Judge Carlos a letter of explanation, along with Plaintiff's proposed General Release, supported by the Opinion letter of Thomas D. Begley, Jr., Esq., as well as another General Release which we recently signed to effectuate a confidential settlement of $10,000,000 (Thirteen Million Dollar) settlement for a catastrophically injured child which was just three (3) pages in length. (Baldinger Cert., **Exhibit N**: June 15, 2022 submission to Magistrate Judge Carlos with all attachments)

28. On June 15, 2022, Mr. Cook, on behalf of all Defendants submitted a letter along with the proposed General Release – which contained all of the same terms and conditions which I previously objected to and even those that they agreed to waive. (Annexed hereto as **Exhibit O** is a true copy of the Defendants' June 15, 2022 submission to Magistrate Judge Carlos with all attachments)

29. To date, Magistrate Judge Carlos has not responded to the submissions.

30. Mr. Ingram has been and remains in a nursing home. He cannot move forward with his life until the settlement funds are paid. He is entitled to receive the settlement funds promptly, so that the Medicaid lien may be finalized and paid, his attorneys' fees and costs paid, and arrangements made for him to leave the nursing home and finally have the quality of life he deserves.

31. As the foregoing aptly demonstrates, this case was settled on May 6, 2022 for the sum of $10,000,000 in exchange for a General Release of all claims. Plaintiff has agreed to and will provide a General Release of all claims. However, Plaintiff will not agree to the terms and conditions which were not subject to the parties' agreement. Wherefore it is

respectfully requested that this Court issue an Order allowing Plaintiff to provide a General Release as set forth in **Exhibit P,** or alternatively enter judgment against the Defendants.

32.     It is also respectfully requested that the Defendants be ordered to pay the full settlement of $10,000,000 within ten (10) days from the date the General Release is provided. N.J.A.C. 11:2-17(a) provides for this time frame for payment:

> Unless otherwise provided by law, every insurer shall pay any amount agreed upon in settlement of all or part of any claim not later than 10 working days from either receipt of such agreement by the insurer or date of the performance by the claimant of any conditions set by such agreement, whichever is later.

33.     Absent this Court's issuing an Order or entering judgment against the Defendants, consummation of this settlement will continue to be delayed for no just cause.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

*/s/ Beth G. Baldinger*
BETH G. BALDINGER, ESQ.

Dated: June 23, 2022