# EXHIBIT L

**Beth Baldinger**

| | |
|---|---|
| **From:** | Cory Rothbort |
| **Sent:** | Friday, June 3, 2022 3:26 PM |
| **To:** | William Cook; Beth Baldinger; Jay Blumberg; William Tambussi; Dean Wittman |
| **Cc:** | Trevor Dickson; David Freeman |
| **Subject:** | RE: Revisions to Release - Ingram vs. Camden County |
| **Attachments:** | Cook ltr re Medicare lien 6-3-22.pdf |

Bill and All Counsel,

Please see the attached letter. As the document contains confidential information, it is password protected. The password will be sent by separate email. A hard copy is also being sent to you.

**Cory J. Rothbort, Esq.**
**Certified by the Supreme Court of New Jersey as a Civil Trial Attorney**
Mazie Slater Katz & Freeman, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068
tel  (973) 228-9898
fax (973) 228-0303
crothbort@mazieslater.com
www.mazieslater.com



The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or Mazie Slater Katz & Freeman, LLC (Tel: 973.228.9898) immediately and delete this message, along with any attachments, from your computer. Thank you.

**From:** William Cook <wcook@brownconnery.com>
**Sent:** Wednesday, June 1, 2022 8:01 PM
**To:** Beth Baldinger <bbaldinger@mazieslater.com>; Cory Rothbort <crothbort@mazieslater.com>; Jay Blumberg <jjblumberg@blumberglawoffices.com>; William Tambussi <wtambussi@brownconnery.com>; Dean Wittman <dwittman@zwattorneys.com>
**Subject:** RE: Revisions to Release - Ingram vs. Camden County

Please cooperate ASAP and provide the requested letter.

As you are well aware, you have been requested to do this on several occasions over the past several weeks.

Your request for this letter was done incorrectly.  I am not fixing your mistake.

The letter you provided says that Medicare does not recognize Ingram in their system.

As I advised, this is not a no-lien letter.  The carrier will not accept it.

# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ 07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn*°
David M. Estes
Adam M. Epstein°

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

**Writer's Direct Dial & Email:**
973-228-0413
crothbort@mazieslater.com

Karen G. Kelsen°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Samuel G. Wildman
Julia S. Slater°
Trevor D. Dickson

°Member of N.J. & N.Y. Bars

June 3, 2022

**VIA E-MAIL AND LAWYERS SERVICE**
William Tambussi, Esq.
William F. Cook, Esq.
Brown & Connery, LLP
360 Haddon Avenue, P.O. Box 539
Westmont, New Jersey 08108

> Re:  **Xavier Ingram v. County of Camden, et al.**
>      **Civil Action No.: 1:14-cv-05519**

Dear Mr. Cook and All Counsel:

This letter is in response to your repeated requests for a "no-lien" letter from CMS -- on behalf of Medicare. Throughout this case, even up through trial, you have been on notice that Mr. Ingram has never received any benefits from Medicare, and that he does **not** qualify for any benefits from Medicare. Nevertheless, you are now seeking to hold up settlement over confirmation of this fact which you have been aware of for years.

To be clear, on **February 10, 2022** we sent you an e-mail attaching our December 15, 2021 letter to Medicare requesting confirmation as whether there was any Medicare lien, along with CMS's January 12, 2022 letter in response advising that they are unable to locate Mr. Ingram in their system. As our e-mail stated to you, *"[t]his was the anticipated response as it has been represented that Mr. Ingram is not a Medicare recipient. This should resolve Defendants concerns about a potential Medicare lien as there is no lien."* (See, E-mail of February 10, 2022). As you will recall, this February 10, 2022 e-mail was sent in connection with our negotiations regarding the stipulation, as reached, regarding the *Medicaid* lien and how that was to be handled at trial. (See, D.E. 377) This February 10, 2022 was also in response to your e-mail request for confirmation that there was no Medicare lien. (See, Cook e-mail to Cory Rothbort on February 10, 2022). These e-mails and attachments, including our December 15, 2021 letter to Medicare and CMS's January 12, 2022 letter in response are enclosed herein.

William Cook and All Counsel
June 3, 2022
Page 2

You have been possession of our request letter to Medicare since at least February 10, 2022 and at no point have you identified any inaccuracies in our request letter[1]. Nevertheless, you now assert – without any basis – that the information we provided to Medicare was inaccurate. As you can clearly see, we provided Medicare with Mr. Ingram's correct name, date of birth and social security number. Your false and unsubstantiated accusations to the contrary are entirely improper. You have had our request letter for months, and to date, still have not identified any inaccuracy in our request letter.

We have also properly responded to your **post-settlement** demands for information about a Medicare Lien. On May 23, 2022, we again sent you our December 15, 2021 request letter to Medicare and CMS's letter in response of January 12, 2022. I also provided you with an opinion letter from Thomas J. Begley, Esq. that Mr. Ingram does not qualify for Medicare benefits, and that accordingly, no Medicare Set Aside is required. This email and attachments, including Mr. Begley's opinion letter, are also enclosed herein.

In your e-mail of June 2, 2022, you state that "**anyone** with a valid SSN would be in Medicare system." That is complete nonsense as it means that over 453,000,000 (four hundred and fifty million) persons would be in Medicare's system.[2] Please provide us with evidence for your assertion that **every** person with a valid SSN would be in Medicare's system, which would include Mr. Ingram who has never received any benefits from them. Accordingly, your attempts to hold up settlement are completely inappropriate.

The Defendants and their insurance carriers are delaying settlement payment by insisting that this January 12, 2022 letter of CMS is insufficient because it does not explicitly state that CMS has reviewed its records for Mr. Ingram and that CMS is not asserting a lien. However, it should be obvious that if Mr. Ingram is not a Medicare beneficiary, then there can be no lien.

While your request is uninformed and lacks any merit, in an effort to resolve this issue, I contacted CMS on June 2, 2022 to ascertain whether a "no-lien" letter, with the explicit language you are insisting upon, can be obtained. Enclosed is a copy of my confirming June 2, 2022 letter to CMS. As indicated therein, I spoke with Maria of CMS (Employee ID No. 4236). Maria advised that the information provided within CMS' January 12, 2022 letter is the only information and letter CMS will provide when a lien request is submitted by a non-Medicare beneficiary. Moreover, Maria advised that CMS will not provide any additional information or a separate form of letter for a non-Medicare beneficiary such as Mr. Ingram. Maria was clear with me that submitting additional requests will not yield a different response. **Said differently, the January 12, 2022 letter is akin to a "no-lien" letter and no further information will be provided by CMS.**

---

[1] At no time have you ever provided any proof that Mr. Ingram did receive any Medicare benefits at any point in his lifetime.

[2] See, https://www.ssa.gov/history/hfaq.html

William Cook and All Counsel
June 3, 2022
Page 3

Bottom line, Plaintiff cannot force CMS to issue a letter with the explicit language you desire and per CMS, the January 12, 2022 letter is sufficient to confirm that Medicare is not asserting a lien against the settlement proceeds in this matter. Notwithstanding the foregoing, should you wish to contact CMS/NHGP to attempt to obtain a letter containing separate information, you have our authority to do so and we enclose an executed HIPAA authorization for those purposes. Moreover, enclosed please find the executed Medicare waiver form which you only requested on June 1, 2022. This waiver form again confirms Mr. Ingram is not a Medicare beneficiary. **Service by us and use by Defendants and their insurance carrier of this executed HIPAA authorization and Medicare waiver form is explicitly contingent on the understanding and acknowledgement that Defendants will not further delay payment of the settlement funds.**

In sum, your continuing requests for a "no-lien" letter from CMS lack any merit and are merely yet another attempt to delay payment of the agreed-upon settlement. Should you continue to withhold payment of the $10 million settlement on this basis, we will file a motion to enforce settlement and seek costs and fees for the necessity of this application.

Please be guided accordingly.

Sincerely,

**MAZIE SLATER KATZ & FREEMAN, LLC**
Attorneys for Plaintiff

CORY J. ROTHBORT, ESQ.

CJR/enc.

Cc:    All Counsel of Record (via Email Only)

I:\BGB\Ingram\Cook Ltr Re Medicare Lien 6-3-22.Docx

# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ  07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn*°
David M. Estes
Adam M. Epstein°

———
*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

Writer's Direct Dial & Email:
973-228-0413
crothbort@mazieslater.com

June 2, 2022

Karen G. Kelsen°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Samuel G. Wildman
Julia S. Slater°
Trevor D. Dickson

———
°Member of N.J. & N.Y. Bars

Via Regular Mail & Fax – (405) 869-3309
NGHP
P.O. Box 138832
Oklahoma City, OK 73113

Re:   Xavier Ingram v. County of Camden, et al.
     Civil Action No.: 1:14-cv-05519-JBS-KMW

     Xavier Ingram
     DOB: 10/24/1993
     SS#█████████

     Document Control Number: 25121521-0001708

Dear Sir / Madam:

I represent Xavier Ingram in the above captioned lawsuit brought to recover damages for injuries sustained on June 12, 2014. In sum, it is alleged that the defendants, Camden County, Camden County Police Department and its officers used excessive and improper force upon Mr. Ingram causing severe cervical injuries rendering him a quadriplegic. This matter recently settled for the sum of $10 million.

By letter dated December 15, 2021 (as enclosed), we requested that Medicare advise whether it intends to assert against any recovery related to treatment for injuries in the subject incident and provide complete back up for the lien. In response, by letter dated January 12, 2022 of Center for Medicare & Medicaid Service ("CMS") (as enclosed), we were informed that CMS is unable to verify that Mr. Ingram is a Medicare beneficiary. This response is consistent with the fact that Mr. Ingram is not a Medicare beneficiary nor has he ever been. Nonetheless, the Defendants and their insurance carriers are insisting that this January 12, 2022 letter of CMS is insufficient as it does not explicitly state that CMS has reviewed its records for Mr. Ingram and that CMS is not asserting a lien.

This letter will serve to confirm my telephone call earlier today with Maria of CMS (Employee ID No. 4236) wherein we were advised that the information provided within CMS' January 12, 2022 letter is the only information and letter CMS will provide when a lien request is submitted by a non-Medicare beneficiary. Moreover, Maria advised that CMS will not provide any additional information or a separate form of letter for a non-Medicare beneficiary such as Mr. Ingram. **Said differently, the January 12, 2022 letter is akin to a "no-lien" letter and no further information will be provided by CMS.**

If any of this information is incorrect, please respond and correct any inaccuracy. We ask that you do so within 7 (seven) days receipt of this letter and if we do not hear from you we will assume that CMS is in agreement with the representations made herein.

Thank you for your assistance.

Very truly yours,

CORY J. ROTHBORT

CJR
Enc.
I:\BGB\Ingram\Lien - Medicare (No Lien)\Medicare re lien ltr 6-2-22.doc

 

1 of 1 R-25

January 12, 2022

 իրդիիիվիիաւիվիիիիրիիիդդիիիդիիիդիի

25 1 MB 0.485
***AUTOMIXED AADC 720 R:25 T:2 P:2 PC:1 F:2119406
MAZIE SLATER KATZ & FREEMAN
103 EISENHOWER PKWY STE 207
ROSELAND, NJ 07068-1029



Beneficiary/Claimant:       XAVIER INGRAM
Date of Incident:           June 12, 2014
Document Control Number:     25121521-0001708

Subject: Unable to Identify Beneficiary

Dear MAZIE SLATER KATZ & FREEMAN:

The Benefits Coordination & Recovery Center (BCRC) received a request regarding the above-referenced individual.

Please be advised, we are not able to confirm Medicare coverage for this individual. Please contact the beneficiary/claimant to obtain the correct Medicare ID from their red, white and blue Medicare identification card and resubmit your letter.

If the correct Medicare ID cannot be obtained, please contact the Social Security Administration (SSA) at 1-800-772-1213 to verify Medicare entitlement.

If you have any questions concerning this matter, please contact the BCRC by phone at 1-855-798-2627 (TTY/TDD: 1-855-797-2627 for hearing/speech impaired), in writing at the address below, or by fax at 405-869-3309. When sending correspondence, please include the Beneficiary Name and Medicare ID.

Sincerely,
BCRC Case Analyst

---



# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ 07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn°
David M. Estes

Writer's Direct Dial & Email:
(973) 228-0473
bbaldinger@mazieslater.com

Karen G. Kelsen°
Adam M. Epstein°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Samuel G. Wildman
Julia S. Slater°
Trevor D. Dickson

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

December 15, 2021

°Member of N.J. & N.Y. Bars

<u>Via Regular Mail & Fax – (405) 869-3309</u>
NGHP
P.O. Box 138832
Oklahoma City, OK 73113

Re:   Xavier Ingram v. County of Camden, et al.
      Civil Action No.: 1:14-cv-05519-JBS-KMW

      Xavier Ingram
      DOB: 10/24/1993
      SS#██████████

Dear Sir / Madam:

I represent Xavier Ingram in the above captioned lawsuit brought to recover damages for injuries sustained on June 12, 2014. In sum, it is alleged that the defendants, Camden County, Camden County Police Department and its officers used excessive and improper force upon Mr. Ingram causing severe cervical injuries rendering him a quadriplegic.

Please accept this letter as a request for any potential lien Medicare intends to assert against any recovery related to treatment for injuries in the subject incident and provide complete back up for the lien. Enclosed is an authorization form and power of attorney allowing the release of the requested information.

Thank you for your assistance.

Very truly yours,

*Beth G. Baldinger*

BETH G. BALDINGER

BGB:tl/Encl.
I:\BGB\Ingram\Medicare re lien ltr 12-15-21.doc



**Nationwide®**
is on your side

P.O. Box 4110
Scottsdale, AZ 85261-4110

---

The Centers for Medicare & Medicaid Services (CMS) is the federal agency that oversees the Medicare program. Many Medicare beneficiaries have other insurance in addition to their Medicare benefits. Sometimes, Medicare is supposed to pay after the other insurance. However, if certain other insurance delays payment, Medicare may make a "conditional payment" so as not to inconvenience the beneficiary, and recover after the other insurance pays.

Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007 (MMSEA), a new federal law that became effective January 1, 2009, requires that liability insurers (including self-insurers), no-fault insurers, and workers' compensation plans report specific information about Medicare beneficiaries who have other insurance coverage. This reporting is to assist CMS and other insurance plans to properly coordinate payment of benefits among plans so that your claims are paid promptly and correctly.

We are asking you to the answer the questions below so that we may comply with this law.

---

**Please review this picture of the Medicare card to determine if you have, or have ever had, a similar Medicare card.**



## Section I

Are you presently, or have you ever been, enrolled in Medicare part A or Part B?............................................☐ Yes ☒ No
*If "yes", please complete the following. If "no", proceed to Section II.*

**Full Name** (Please print the name exactly as it appears on your SSN or Medicare card if available.)

| X | A | V | I | E | R |   | I | N | G | R | A | M |   |   |   |   |   |   |   |   |   |   |   |   |   | A |   |   |   |

**Medicare Claim Number**

| | | | | | | | | | |

**Date of Birth (MM/DD/YYYY)**

| 1 | 0 | / | 2 | 4 | / | 1 | 9 | 9 | 3 |

**Gender**
☒ Male    ☐ Female

**Social Security Number**
*(If Medicare Claim Number is Unavailable)*

▮▮▮ - ▮▮ - ▮▮▮▮

## Section II

I understand that the information requested is to assist the requesting insurance arrangement to accurately coordinate benefits with Medicare and to meet its mandatory reporting obligations under Medicare law.

Xavier Ingram
**Claimant Name (Please Print)**

**Claim Number**

<u>Beth G. Baldinger, Esq. (see attached Power of Attorney)</u>
Name of Person Completing This Form If Claimant is Unable (Please Print)

_____          6/3/22
Signature of person Completing This Form                      Date

*If you have completed Section I and II above, stop here. If you are refusing to provide the information requested in Section I and II, proceed to Section III.*

<u>Section III</u>

_____          _____
Claimant Name (Please Print)                                    Claim Number

For the reason(s) listed below, I have not provided the information requested. I understand that if I am a Medicare beneficiary and I do not provide the requested information, I may be violating obligations as a beneficiary to assist Medicare in coordinating benefits to pay my claims correctly and promptly.

**Reason(s) for Refusal to Provide Requested Information:**

_____

_____

_____

_____

_____          _____
Signature of person Completing This Form                      Date

# EXHIBIT M

**Beth Baldinger**

| | |
|---|---|
| **From:** | Beth Baldinger |
| **Sent:** | Tuesday, June 7, 2022 11:24 AM |
| **To:** | William Cook; William Tambussi; Dean Wittman; 'Jay Blumberg' (jjblumberg@blumberglawoffices.com) |
| **Subject:** | Ingram vs Camden County |
| **Attachments:** | Settlement Agreement 6-6-22( Pltf Redline).docx; SETTLEMENT AGREEMENT AND RELEASE 06.02.2022 Defense Draft (002).DOCX |

Counsel,

Attached is our Redline mark up of the draft your provided to us on 6/2/22.   I am available to discuss the language rejected.

Beth

Beth G. Baldinger, Esq.



**TRIAL ATTORNEYS**

103 Eisenhower Parkway
Roseland, New Jersey 07068
Direct Phone: (973) 228-0473
Main Phone: (973) 228-9898
bbaldinger@mazieslater.com

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

## SETTLEMENT AGREEMENT AND General RELEASE

This Settlement Agreement and Under General Release (hereinafter "this Agreement") is made on this _____ day of June, 2022

By by, and –between, and among XAVIER INGRAM – (hereinafter "Plaintiff") and COUNTY OF CAMDEN, CAMDEN COUNTY POLICE DEPARTMENT, JOHN SCOTT THOMSON, JEREMY MERCK, ANTONIO GENNETTA, AND NICHOLAS MARCHIAFAVA (hereinafter, "Defendants") (collectively, the "Parties" or, individually, a "Party").

> Formatted: Indent: First line: 0.5"

WHEREAS, Plaintiff filed a Complaint against Defendants in the United States District Court for the District of New Jersey entitled Xavier Ingram v. County of Camden, et al. bearing Civil Action No. 14cv5519 (JRS/PAC) (hereinafter "the Litigation" or "this Case"), and has asserted claims in connection with an incident on June 12, 2014 in the City of Camden ("the Incident"), and the Defendants having appeared and filed Answers to the Complaint;   with all such claims being completely denied by Defendants; and

WHEREAS, all Parties acknowledge that the merits of the Litigation are in dispute and have not been subject to a finally adjudication ed as the trial of this Case ended in a declared mistrial, and that no Party admits any liability to any other, but the Parties have reasons to desire an amicable resolution of the matter, including to avoid the costs of further litigation;

NOW, for and in consideration of the terms of this agreements, covenants and conditions herein contained, the adequacy and sufficiency of which are hereby expressly acknowledged by the Parties hereto, the Parties agree as follows:

1.    **TERMS OF SETTLEMENT.**

   (a)    **Settlement Payment.** Plaintiff shall be paid the total settlement amount of $10,000,000.00 (Ten Million Dollars, no cents) as full and final settlement payment for agreeing to and executing this Release. of any and all claims which have been and/or could have been asserted against Defendants in the Litigation (hereinafter "The Settlement Payment"), subject to final ratification and approval by the Board of Commissioners of the County of Camden. The Settlement Payment includes payment for any and all claims, including claims for attorney's fees and costs incurred by counsel for Plaintiff, pre-judgment interest, post-judgment interest, or other monies, fees, or costs. The Settlement Payment shall be sourced from Greenwich Insurance Company ($5,000,000) and National Casualty Company ($5,000,000) who are the insurance carriers for Camden County and Camden County Police Department. Disbursement shall proceed as follows:

   1.    Payment of $10,000,000.00 is to be made payable jointly to Xavier Ingram and Mazie Slater Katz & Freeman, LLC.

   2.

1

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

3.2.

(b) ~~Time of Payment.~~ The Settlement Payment shall be made within 20 (twenty) ~~ninety (90)~~ days ~~(but not more than one hundred twenty (120) days if reasonably necessary)~~ of receipt by Defendants' counsel of a copy of this Agreement executed by Plaintiff, ~~or ratification by the Board of Commissioners, whichever is later.~~

(b) Payment Purpose:  It is understood and agreed that the settlement payment constitutes damages on account of personal physical injuries and physical sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

> **Formatted:** No widow/orphan control

(c) Tax Form 1099 ~~Indemnification~~. Greenwich Insurance Company and National Casualty Company shall each issue a 1099 to Plaintiff's counsel for the Settlement Payment and shall not make any withholdings from the Settlement Payment. ~~Plaintiff agrees that he is solely responsible for all applicable taxes, if any, as a result of the receipt of these monies.  Plaintiff understands and agrees that Defendants are providing no representation for any tax obligations or consequences that may arise from this Agreement. If any action or proceeding shall be instituted against any Defendant related to any alleged failure to make withholdings on such monies, such Defendant will within five (5) days provide written notice to Plaintiff of the action or proceeding.  Plaintiff hereby agrees to indemnify any Defendant in any such action and for any judgment which may be entered against any Defendant for taxes owed by Plaintiff, including costs, penalties, interests, and fees.~~

(c)

~~2.~~ **DISMISSAL OF ACTION.**  Plaintiff's counsel shall execute a Stipulation of Dismissal with Prejudice as to all Defendants and return same with the executed copy of this Agreement to Brown & Connery, LLP.  Brown & Connery, LLP, on behalf of all Defendants, agrees to hold the Stipulation of Dismissal with Prejudice in escrow and not file it with the Court until the full settlement payment has been delivered to Plaintiff's counsel and cleared through their trust account. Upon clearance of the settlement funds, Plaintiff's counsel will notify defense counsel in writing at which time Brown & Connery, LLP will file the Stipulation of Dismissal with Prejudice with the Court. ~~The Parties shall cooperate in executing and filing the required Stipulation of Dismissal With Prejudice with the United States District Court for the District of New Jersey.~~

> **Formatted:** Numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 1 + Alignment: Left + Aligned at: 1" + Tab after: 1.5" + Indent at: 1.5", Widow/Orphan control

2.

~~3.~~ **NO ADMISSION OF LIABILITY.** ~~As an express and essential condition of this Agreement,~~ Plaintiff ~~fully accepts,~~ acknowledges, and understands that the County of Camden, Camden County Police Department, John Scott Thomson, Jeremy Merck, Antonio Gennetta, and Nicholas Marchiafava ~~all absolutely~~ deny any wrongdoing or liability whatsoever in connection with the incident of June 12, 2014 and that ~~.  Xavier Ingram accepts and acknowledges~~ that nothing ~~in~~ this settlement does not constitutes an admission of any kind by any Defendant as to ~~of~~ any liability, ~~or any violation of any law, or any violation of duty or obligation, or that any decisions or actions taken in connection with this matter were unwarranted, unjustified, wrongful, unreasonable or otherwise unlawful. The County of Camden, Camden County Police Department, John Scott Thomson, Jeremy Merck, Antonio Gennetta, and Nicholas Marchiafava each~~

> **Formatted:** Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at 2 + Alignment: Left + Aligned at: 0.5" + Tab after: 0.75" + Indent at: 0", No widow/orphan control, Tab stops: 1", Left + Not at 2.24"

2

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

~~specifically and categorically deny, in the strongest terms possible, any wrongdoing whatsoever as to Xavier Ingram or the June 12, 2014 incident, or that any of their actions caused~~ Plaintiff's injuries. ~~Xavier Ingram 's injuries. Xavier Ingram further agrees, understands, and accepts that, by entering into this Agreement, no admission whatsoever is made by any Defendant that the County of Camden, Camden County Police Department, John Scott Thomson, Jeremy Merck, Antonio Gennetta, or Nicholas Marchiafava violated any constitutional or other rights of Ingram, acted without probable cause, engaged in excessive force, failed to render medical aid, failed to train, failed to supervise, were negligent, acted pursuant to any unconstitutional or unlawful policy, custom, or practice, or were otherwise liable or responsible for any of Xavier Ingram's injuries. The Parties further specifically agree that nothing in this Agreement constitutes any admission that any unconstitutional or unlawful policy, custom, or practice exists in the Camden County Police Department of any nature whatsoever. It is understood that this provision is absolutely fundamental to this Agreement.~~

~~3.~~
4.     **RELEASE.**   In consideration of the Settlement Payment and other consideration provided for in this Agreement, Plaintiff, personally and for his estate and his heirs and/or assigns, waives, releases and gives up any and all claims, demands, obligations, damages, liabilities, causes of action and rights, in law or in equity, known and unknown, that he may have against any of the "Released Parties" as to the current Litigation or the incident of June 12, 2014. "Released Parties" shall include the County of Camden, Camden County Police Department, John Scott Thomson, Jeremy Merck, Antonio Gennetta, Nicholas Marchiafava, any Defendant and any Defendant's agents, representatives and employees (present and former), or any Defendant's respective successors and assigns, heirs, executors and personal or legal representatives and their insurers (including Greenwich Insurance Company and National Casualty Company).   This release is based upon any act, event or omission occurring before the Effective Date of this Agreement.   The term "claim" shall include any and all claims, counterclaims, third-party claims, contribution claims, indemnity claims, cross-claims, and any other type of claim, including but not limited to claims relating to, or arising from, debts, demands, actions, ~~promises,~~ judgments, rights, ~~trespasses, extents, executions,~~ causes of action, suits, ~~accounts, covenants, sums of money, dues, reckonings, bonds, bills,~~ liens, attachments, ~~trustee process, specialties, contracts,~~ controversies, agreements, ~~promises,~~ damages, and all other claims of every kind and nature in law, equity, arbitration, or other forum, whether arising under state, federal or other law, known or unknown, matured or unmatured, foreseeable or unforeseeable, ~~suspected or unsuspected, fixed or contingent,~~ which were asserted, could have been asserted, or could in the future be asserted, whether or not asserted, ~~threatened,~~ or litigated, from the beginning of time to the ~~Effective~~ Date of this Release, any and all claims arising out of, relating to or in any way connected with the Litigation or that have been asserted or could have been asserted in the Litigation, whether absolute or contingent, direct or indirect, known or unknown.   Notwithstanding the foregoing, nothing in this Release shall preclude Plaintiff from pursuing or participating in any investigation by any government authority into the matter. In addition, Plaintiff does not waive his right to have the pending internal affairs complaint completed to final conclusion in accordance with the Attorney General Guidelines on Internal Affairs and Camden County Police Department Policies and Procedures for Internal Affairs investigations; and to be so notified as to the final outcome and disposition.

~~Plaintiff specifically releases any and all claims against each Defendant related to alleged injuries and damages sustained in the incident of June 12, 2014 or any incident with any Defendant. Plaintiff further declares and represents that the injuries sustained are or may be permanent and~~

3

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

~~progressive and that recovery therefrom is uncertain and indefinite. In making this Release, it is thus understood and agreed that Plaintiff relies wholly upon his judgment, belief and knowledge of the nature, extent, effect and duration of said injuries and liability therefore. This release is made without reliance upon any statement or representation of the Party or Parties hereby released or their representatives or by any physician or surgeon by them employed, other than those statements or representations contained herein.~~

~~Plaintiff hereby represents and warrants that he intends to specifically release each Defendant from any and all claims associated with the development and execution of any qualified structured settlement, its tax effect, and the obligations of or the insolvency of the assignees or life insurance companies.~~

~~Plaintiff also hereby represents and warrants that he intends to specifically release each Defendant from Unknown Claims arising from, relating to, or in any way connected with the Litigation that they do not know or suspect to exist, whether or not such Claims might have materially affected this Release. "Unknown Claims" means any Claims that any Party does not know or suspect to exist in his, her or its favor at the time of the release of the Parties that if known by him, her or it, might have affected his, her or its settlement with and release of the Parties. With respect to any and all Claims, the Parties agree that, upon the Effective Date of this Release, they shall have expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, against any Defendant which a Party does not know or suspect to exist at the time of executing the release. The Parties agree and understand that they may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Claims in the Litigation that have been released and discharged, but shall be deemed to have, fully, finally, and forever settled and released any and all Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist, or heretofore have existed, based upon any theory of law or equity now existing or coming into existence in the future, including but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of different or additional facts except for claims arising from misrepresentations contained in this Release. The Parties agree and acknowledge that the inclusion of Unknown Claims against any Defendant arising from the accident in the definition of Claims was separately bargained for and was a key element of the Release.~~

> **5.    RESPONSIBILITY FOR ANY AND ALL LIENS OR JUDGMENTS.** Plaintiff agrees to be responsible for the payment and satisfaction of any and all liens of any kind whatsoever, including (without limitation) liens or judgments arising out of the provision of any professional services or benefits to or for the benefit of Plaintiff by or through medical providers, medical institutions, ~~temporary or permanent disability plans, employer or workers' compensation~~ benefits plans or statutes, ~~and for child support.~~ Plaintiff agrees to <u>resolve and</u> satisfy any and all liens, claims or demands arising out of the June 12, 2014 incident and/or submitted against the proceeds of this settlement, including but not limited to ~~any workers' compensation,~~ Medicare, Medicaid, or other government lien, claim or demand, any lien or claim submitted by any medical provider, physician, hospital, therapist, or other health care giver or insurer seeking compensation or reimbursement for the services provided to him; any other lien arising out of the incident of June 12, 2014.

4

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

~~5.     Plaintiff also hereby agrees to defend, indemnify and otherwise hold harmless any released party, including insurers, from and against any and all claims, demands, or suits made in connection with any such liens or claims.~~  Plaintiff shall keep counsel for Defendants fully informed as to the disposition process for any government liens, including Medicaid. ~~Greenwich Insurance Company reserves the right to reimburse the Centers for Medicare and Medicaid Services (CMS) directly for all existing Medicare or Medicaid liens. National Casualty Company reserves the right to reimburse CMS directly for all existing Medicare or Medicaid liens. As a material term of this settlement, Plaintiff or his attorneys must provide a CMS Final Demand Letter or No-Lien Letter upon the execution of this Settlement Agreement and Release or as soon as possible thereafter with the settlement funding obligation being suspended until twenty days after Defense Counsel's receipt of such letter.~~

~~Plaintiff agrees to execute the attached Addendum to Release of All Claims ((Medicare Beneficiary/Medicare Advantage Plan Enrollee with Conditional and Future Payments, MSA Refused).~~

~~6.~~     **CERTIFICATION PURSUANT TO N.J.S.A. 2A:17-56.23b.**  Plaintiff hereby certifies that he has fully satisfied any and all obligations imposed by New Jersey law with respect to searches of child support judgments and satisfactions thereof including, but not limited to, N.J.S.A. 2A:17-56.23b. Plaintiff hereby further warrants and certifies that a search of child support judgments has been conducted through a private judgment search company that maintains information on child support judgments and that Plaintiff is not a child support judgment debtor. Defendants acknowledge that they have been provided with the results of that search showing Plaintiff is not a child support judgment debtor. ~~Plaintiff specifically agrees to undertake to indemnify and defend any Defendant with respect to any claim by any individual, entity or governmental authority with respect to any alleged failure to satisfy any child support judgment or obligation.~~

6.

~~7.~~          ~~**COVENANT NOT TO SUE.**  Plaintiff warrants that he has not filed any civil or administrative complaints of any nature against any Defendant as of the date of the execution of this Agreement other than the Litigation referenced above. Plaintiff agrees that, for the matters released herein and against Defendants, he will not file, charge, claim, sue or cause or permit to be filed any civil action, suit, administrative claim, or other legal proceeding seeking personal, equitable or monetary relief on his behalf in connection with any matter concerning any Defendant. Plaintiff further agrees that should any person, organization or other entity file, charge, claim, sue or cause or permit to be filed any such civil action, suit or legal proceeding, he will not seek or accept any personal relief in such civil action, suit or legal proceeding. In the event of a violation of this paragraph, Plaintiff agrees that any affected Defendant shall be entitled to immediate dismissal of such civil action, suit or legal proceeding and that Plaintiff shall be responsible for the payment of the reasonable attorneys' fees and expenses incurred by such Defendant.~~

7.

~~8.~~     **INDEMNIFICATION.**  ~~In the event Plaintiff has recovered or recovers any monies from any other person or entity who thereafter seeks contribution, indemnification or allocation of fault from any Defendant arising from the claims released in this Agreement, Plaintiff shall indemnify and hold any affected Defendant harmless for any money spent in defending against these claims including, but not limited to, attorney's fees, costs of suit, judgment or~~

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

~~settlement.~~
~~8.~~

9.      **EFFECTIVE DATE.** This Agreement shall become effective upon service upon Defendants' counsel of the Agreement executed by Plaintiff.  Service may be effectuated by reasonable means including electronic means.  Electronic or .pdf signatures shall be treated as originals for all purposes applicable hereto.  The Parties shall cooperate to exchange fully executed originals.

Formatted: Normal, Justified, Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 2 + Alignment: Left + Aligned at: 0.5" + Tab after: 0.75" + Indent at: 0"

10.      **AUTHORITY.** The Parties represent and warrant that each possesses the full and complete authority to covenant and agree as herein provided, and further represent and warrant that each has the full and complete authority to execute this Agreement.

11.      **COOPERATION OF THE PARTIES.** The Parties and their attorneys, agents, representatives and employees shall cooperate with one another in the implementation of the terms and conditions of this Agreement and agree to use reasonable efforts to promptly secure the signatures required to effectuate this Agreement, including the necessary signatures to expedite the filing of the dismissal of the Party's claims asserted in the Litigation with prejudice.

12.      **APPLICABLE LAW.** This Agreement shall be construed and interpreted in accordance with the laws of the State of New Jersey.

13.      **CONSTRUCTION OF AGREEMENT.** This Agreement shall not be construed more strictly against any Party to this Agreement merely by virtue of the fact that the Agreement may have been drafted or prepared by such party or its counsel, it being recognized that all Parties have contributed substantially and materially to its preparation, all Parties have been represented by counsel in this matter, and that this Agreement has been the subject of negotiations between the Parties and is a product of those negotiations.  This Agreement also shall not be interpreted as rendering any Party a prevailing party for any purpose, including, but not limited to an award of attorney's fees under any statute or otherwise.

14.      **ENTIRE AGREEMENT.**  This Agreement contains the sole and entire agreement between the parties hereto and fully supersedes any and all prior agreements and understanding pertaining to the subject matter hereof, and is intended to memorialize the settlement of Plaintiff's claims.  Plaintiff represents and acknowledges that, prior to executing this Agreement, he consulted his attorney, that he had ample time to do so, that he obtained the advice of counsel prior to making the decision to execute the Agreement and that he had not relied upon any representation or statement not set forth in this Agreement made by any Defendant thereto, or any Defendant's counsel or representatives, with regard to the subject matter of this Agreement.  No other promises or agreements shall be binding unless in writing between the Parties.

15.      **SEVERABILITY.**   The parties agree that if any court declares any portion of this Agreement unenforceable, the remaining portion shall be fully enforceable.

16.      **AMENDMENTS.** This Agreement may not be amended, changed or modified except in a writing between the Parties.  It is expressly understood and agreed that this provision may not be orally amended but must be amended in writing.  This Agreement shall be binding on the heirs, executors, and beneficiaries and any successor organization by merger, change of control

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

or operation of law.

17. **FURTHER ASSURANCES**. The Parties agree to execute any additional documents reasonably necessary to effectuate this Agreement including, without limitation, a Stipulation of Dismissal with prejudice and without costs.

18. **NO WAIVER**. The delay or failure of a Party to exercise any right, power or privilege hereunder, or a failure to strictly enforce any breach or default, shall not constitute a waiver with respect thereto. No waiver of any such right, power, privilege, breach or default on any one occasion shall constitute a waiver thereof on any subsequent occasion unless clear and express notice thereof in writing is provided.

19. **COSTS AND FEES**. Plaintiff agrees to bear his own costs and attorney's fees in connection with the Litigation referenced herein and in connection with the negotiation of this Agreement. This Agreement shall not be interpreted as rendering any Party a prevailing party for any purpose, including, but not limited to an award of attorney's fees under any statute or otherwise.

20. **ACKNOWLEDGMENT**. Plaintiff acknowledges that he has read all of the terms of this Agreement, and has had an opportunity to discuss it with individuals of his own choice. The Parties have been represented throughout this litigation by attorneys of their own choosing and each affirm they have had an opportunity to review the Agreement with such counsel. Plaintiff further acknowledges and understands that by signing this Agreement and accepting the terms set forth above, he is receiving monies and benefits to which he might not otherwise be entitled but for this Agreement. Plaintiff understands that he is receiving such benefits as a result of entering into and complying with the terms and provisions of this Agreement. Plaintiff acknowledges that he executes this Agreement voluntarily and knowingly in exchange for the consideration described herein, which is acknowledged to be adequate and satisfactory.

**EXECUTED AND AGREED TO:**

_____

_____          _____
Xavier Ingram                                    Date

STATE OF _____
                                                           SS.
COUNTY OF _____

I CERTIFY that on _____, _____, Xavier Ingram personally came before me and acknowledged under oath, to my satisfaction, that this person (or if more than one, each person);

(a)      is named in and personally signed this document, and

7

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

    (b)    signed, sealed and delivered this document as his or her act and deed.

Prepared by:

_____

8

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

<u>ADDENDUM TO RELEASE OF ALL CLAIMS</u>
(Medicare Beneficiary/Medicare Advantage Plan Enrollee with Conditional and Future
Payments, MSA Refused)

I, Xavier Ingram, (hereinafter also referred to as "I" or "Claimant"), individually and on behalf of my heirs, executors, administrators and assigns, as further consideration for the settlement referenced in the RELEASE OF ALL CLAIMS, further recite, warrant, and agree to the following:

DISCLOSURES, WARRANTIES AND INDEMNITY AGREEMENT

I.      Recitations and Disclosures

It is not the intention of any party to this settlement to shift to Medicare responsibility for payment of medical expenses for the treatment of injuries sustained as result of the Accident. However, this Addendum is intended to accompany and supplement the Settlement Agreement with the intention of foreclosing the Released Parties as defined below from any responsibility for future payments of any medical expenses and prescription expenses related to that Accident beyond the payments made under the Settlement Agreement. "Released Parties" shall include the County of Camden, Camden County Police Department, John Scott Thomson, Jeremy Merck, Antonio Gennetta, Nicholas Marchiafava, any Defendant and any Defendant's agents, representatives and employees (present and former), or any Defendant's respective successors and assigns, heirs, executors and personal or legal representatives and their insurers (including Greenwich Insurance Company and National Casualty Company).  Greenwich Insurance Company and National Casualty Company are herein referred to as "the Carriers" and are also included within the definition of "Released Parties".

I understand that 42 USC 1395y(b)(2)(A)(ii) precludes the Centers for Medicare and Medicaid Services (CMS) from paying for services also covered by a liability insurance policy to the extent that payment has been made or can reasonably be expected to be made promptly under that liability insurance policy. 42 CFR 411.50 defines liability insurance. Anytime a Medicare beneficiary receives funds from a liability insurance policy due to a settlement, judgment or award arising out of an accident that requires the beneficiary to receive medical treatment, Medicare expects that those funds will be used to pay for services already rendered and services provided in the future related to that medical treatment. Thus, Medicare should not be billed for future services until those funds are exhausted by payments to providers that would otherwise be covered by Medicare.

I further understand that 42 USC 1395w-21 through 42 USC 1395w-28 authorizes CMS to contract with private insurance companies to administer a Medicare Advantage Plan (MAP). These private insurance companies, operating as Medicare Advantage Organizations (MAO), cover Medicare benefits under what is known as Medicare Part C coverage. For the purposes of this addendum, the term "Medicare" also includes and encompasses MAPs and MAOs.

CMS and/or the MAO may be entitled to seek reimbursement from a primary plan or other entity/individual receiving the primary plan's payment under 42 USC 1395y(b). By receiving this settlement, I and my counsel, if represented, understand that I/we may have continuing obligations to CMS and/or the MAO, as the Released Parties have included in their payment to me any

9

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

obligations they have as a PRIMARY PAYER to CMS and/or the MAO. In the event that I do not fulfill my obligations to CMS and/or the MAO, I understand that I or my counsel, if represented, may be subject to a direct suit by CMS and/or the MAO:

1.)    For recovery of attorneys fees collected through a settlement or release (42 CFR 411.24(g) and 42 CFR 422.108(f)).

*Formatted: Indent: Left: 0", First line: 0"*

2.)    For recovery of medical expenses that should have been paid from the settlement (42 CFR 411.24(g) and 42 CFR 422.108(f) and Subrogation 42 CFR 411.26(a)).

I understand and agree that I am aware that, in 2007, the Medicare, Medicaid and SCHIP Extension Act (hereinafter "**Extension Act**") was passed and was enacted, in part, to protect Medicare when the settlement of a bodily injury claim involves the release of all future claims and the alleged injured individual is either a current Medicare beneficiary or has the potential to be entitled to Medicare benefits within thirty (30) months of the date of settlement. Furthermore, I understand that this Act requires the Carriers to report all such settlements within a time established by the Secretary of Health and Human Services.

*Formatted: Indent: First line: 0"*

The Released Parties and the Carriers expressly deny all liability for any damages as a result of the Accident and dispute the reasonableness and necessity of past and future medical treatment and expenses allegedly incurred as a result of said Accident.

I understand that Medicare has paid Zero Dollars ($[0.00]) in conditional payments for medical and prescription expenses related to the Accident. I understand that, as of March 14, 2022, Medicaid has paid One Million, Four-Hundred Seventy-Three Thousand, Nine-Hundred Ninety-Eight Dollars and Twenty-Seven Cents ($1,473,998.27) in conditional payments for medical and prescription expenses related to the Accident, with additional monies paid subsequent to that date. I also understand that the Carriers will reimburse Medicaid directly for those conditional payments in the specified amount or negotiated amount from the proceeds of the settlement.

Additionally, I understand that though the Released Parties and the Carriers dispute the reasonableness and necessity of future medical and prescription expenses related to the Accident, the medical and physician records allege that future medical and prescription expense will be incurred. In order to protect the interests of Medicare as to these alleged future expenses, the Released Parties, by and through the Carriers, have offered to pay to the Claimant [Seven Million Dollars ($7,000,000) out of the total amount of the consideration indicated in the RELEASE OF ALL CLAIMS to be placed in a Medicare "Set Aside Account" or Annuity, in order to comply with the Extension Act. **I hereby expressly reject the Carriers' proposed set aside of funds into a Medicare Set Aside Account or "Structured Settlement" Annuity.**

*Formatted: Indent: First line: 0.5"*

I understand that, if Medicare is not protected as set forth in the Extension Act, Medicare may cease all benefits otherwise available to me. I further understand and agree that, in the event Medicare seeks reimbursement for past or future payments, **the Indemnity Agreement provides that I will indemnify the Released Parties, referenced in the accompanying Release, as well as the Carriers, from all responsibility for Medicare's claim.** I further understand and agree that, in the event Medicare seeks reimbursement for future payments because of my elected refusal to "set aside" a portion of these settlement monies, **my personal assets may be used to satisfy**

10

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

the claims of Medicare. I further understand and agree that I may not sell, convey or otherwise encumber these personal assets to any other person or entity to avoid the appearance of having no personal assets.

II.    Warranties

Therefore, in consideration of the parties' willingness to settle the claim referenced in the RELEASE OF ALL CLAIMS, and to induce said settlement, Claimant makes the following warranties:

- I am a not currently Medicare beneficiary.

- My Social Security Number or Medicare Health Insurance Claim Number is [INSERT APPROPRIATE NUMBER].

- Medicare has made no CONDITIONAL PAYMENTS for medical expense or prescription drug expense related to the Accident. I have given the Carriers a Medicare Authorization form. They have confirmed that no CONDITIONAL PAYMENTS have been paid by Medicare.

- I have disclosed to the Carriers the names of all medical providers which provided treatment for the injuries I sustained in the Accident.

- The Carriers have proposed that $7,000,000 of the total settlement amount be put in a Medicare Set-Aside Account or an Annuity in an effort to comply fully with the Extension Act.

- I have expressly rejected this proposal.

- Should future medical treatment related to the Accident be required, the expense associated with that treatment will be paid from the proceeds of this settlement.

- No further medical expense or prescription drug expense related to the treatment I have received or will receive in the future related to the Accident will be submitted to Medicare for payment, and I will instruct all medical providers rendering such treatment that expense associated therewith should not be submitted to Medicare for payment.

- No liens, including but not limited to liens for medical treatment by hospitals, physicians, or medical providers of any kind have been filed for the treatment of injuries sustained in the Accident, other than a Medicaid lien.  The Medicaid lien has been directly reimbursed by the Carriers.

III.    Hold Harmless and Indemnity Agreement

Additionally, as further consideration of the parties' willingness to settle the claim referenced in the RELEASE OF ALL CLAIMS, and to induce said settlement, Xavier Ingram

11

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

~~agrees by and on behalf of myself and my heirs, executors, administrators, and assigns, that I will hold harmless and indemnify:~~

*Formatted: Strikethrough*

> ~~(1) each and every one of the Released Parties, including the County of Camden, Camden County Police Department, John Scott Thomson, Jeremy Merck, Antonio Gennetta, Nicholas Marchiafava, any Defendant and any Defendant's agents, representatives and employees (present and former), or any Defendant's respective successors and assigns, heirs, executors and personal or legal representatives and their insurers (including Greenwich Insurance Company and National Casualty Company), and~~

> ~~(2) the Carriers (Greenwich Insurance Company and National Casualty Company), including all of their subsidiaries, affiliates, parent companies, divisions, contractors, employees, servants, agents, officers, directors and legal representatives,~~

~~and hold free and harmless from and against any and all losses, claims, demands, cause or causes of action or judgments of every kind and character, which may or could be brought for attorneys' fees, contribution or indemnity, and any and all statutory contractual or common law subrogation claims or liens, including, but not limited to, all Hospital liens, workers' compensation subrogation liens, Medicare or Medicaid liens, Medicare Advantage Organization liens, Social Security disability liens, health insurance liens, Federal, State or local governmental liens.~~

I am of sound mind ~~and body~~ and fully capable of reading and understanding this agreement. ~~I understand the consequences of my failure to abide by the Extension Act.~~

*Formatted: Strikethrough, Highlight*

Done at _____ County, _____ this _____ day of _____, _____.

**EXECUTED AND AGREED TO:**

_____          _____
Xavier Ingram                                                    Date

STATE OF _____
                                                        SS.
COUNTY OF _____

I CERTIFY that on _____, _____, Xavier Ingram personally came before me and acknowledged under oath, to my satisfaction, that this person (or if more than one, each person);

> (a)      is named in and personally signed this document, and
> (b)      signed, sealed and delivered this document as his or her act and deed.

Prepared by:

_____

12

# EXHIBIT N

**Beth Baldinger**

| | |
|---|---|
| **From:** | Beth Baldinger |
| **Sent:** | Wednesday, June 15, 2022 4:29 PM |
| **To:** | Pamela Carlos |
| **Cc:** | William Cook; William Tambussi; 'Jay Blumberg' (jjblumberg@blumberglawoffices.com); Dean Wittman; David Freeman; Cory Rothbort; Tom Begley Jr. (tbegleyjr@begleylawyer.com) |
| **Subject:** | Ingram v Camden County |
| **Attachments:** | Settlement Agreement - PLTF Version to Court 6-14-22.docx; Begley - MSA Opinion Letter.pdf; Settlement Release (Another Case, Redacted).pdf; Letter to Magistrate Carlos with Settlement Agreement 6-15-22.pdf |

Judge Carlos and Counsel:

Attached please find the following:

    (1) Plaintiff's Counsel letter
    (2) Plaintiff's draft version of the Settlement Agreement (in Word)
    (3) Opinion letter from Tom Begley, Jr., Esq.
    (4) Redacted Release in another case recently settled for $13 million

Thank you.

Beth G. Baldinger, Esq.



**Mazie Slater Katz Freeman**
TRIAL ATTORNEYS

103 Eisenhower Parkway
Roseland, New Jersey 07068
Direct Phone: (973) 228-0473
Main Phone: (973) 228-9898
bbaldinger@mazieslater.com

# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ 07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn*°
David M. Estes
Adam M. Epstein°

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

**Writer's Direct Dial & Email:**
973-228-0473
bbaldinger@mazieslater.com

Karen G. Kelsen°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Samuel G. Wildman
Julia S. Slater°
Trevor D. Dickson

°Member of N.J. & N.Y. Bars

June 15, 2022

<u>**Via E-Mail Only**</u>
Honorable Pamela A. Carlos, U.S.M.J.
United States District Court, Eastern District of Pennsylvania
504 West Hamilton Street, Suite 4401
Allentown, PA 18101

      **Re:** <u>**Xavier Ingram v. County of Camden, et al.**</u>
            **Civil Action No.: 1:14-cv-05519**

Dear Magistrate Carlos:

Since we agreed to the settlement on May 6, 2022, the defendants have delayed and

frustrated consummating this settlement. First, there was the initial undue delay of 20 days for

defense counsel to even provide a draft of the Settlement Agreement and Release ("Def. Release").

Next, Def.'s Release contains numerous terms and conditions that were never discussed or agreed

to, and my efforts to have them removed have been futile. As Your Honor confirmed by e-mail on

May 6, 2022, the settlement offer -- as extended and accepted -- was for $10 million dollars with

**no conditions**. Effectuating this settlement need not be as difficult or complicated as the defense

has made it. In fact, we recently settled a case for $13 million with a simple three page Release, a

copy of which is enclosed for the Court's review. While I am appreciative of Your Honor's

Hon. Pamela A. Carlos, U.S.M.J.
June 15, 2022
Page 2

attention and input, I remain concerned about a potential impasse and need to protect my client's

rights to have this settlement done and paid as soon as possible.

Following our conference with Your Honor on June 7, 2022, I am submitting Plaintiff's

Proposed Settlement Agreement and Release ("Pltf. Release"). This letter explains our position

with regard to the sections we objected to in Def's Release.  I also submit the May 23, 2022 letter

from Thomas, J. Begley, Jr., Esq. explaining that because plaintiff is not a Medicare beneficiary,

nor eligible for Medicare, no Medicare Set Aside is required.

**Def. Release: Section 1: Terms of Settlement**

Defendants have made payment of the settlement "subject to final ratification and approval

by the Board of Commissioners of the County of Camden."  This is unacceptable because at the

time of settlement, defense counsel, Mr. Tambussi represented he was authorized to make the offer

on behalf of all defendants.

As for the timing of the payment, Def's Release provides for payment delay for up to 4

months, or even longer. This is entirely unacceptable.  Def's Release states "payment within 90

days (but not more than 120 days if reasonably necessary) of receipt of the copy of this Agreement

or ratification by the Board of Commissioners, **whichever is later**."  Plaintiff is entitled to receive

payment now, it has been more than 30 days since this settlement has been reached. The sums are

being paid by insurance carriers, the Count is not paying any sum out of pocket.  There is no reason

for further delay.

As to the Tax Indemnification clause, this is entirely unnecessary and Plaintiff will not

agree to any indemnification clause.  The insurance carrier's always sent Tax 1099 forms to

plaintiff's counsel, this is routine. Nevertheless, Def's Release seeks to interject representations as

Hon. Pamela A. Carlos, U.S.M.J.
June 15, 2022
Page 3

to tax advice and taxation obligations, as well as an unwarranted indemnification obligation on the plaintiff. This is unacceptable.

**Pltf's Release: Section 1: Terms of Settlement**

Pltf's Release sets forth the requisite details in subsections (a) though (g). Specifically, the amount of the settlement; the settlement covers all claims; the source and form of the payment -- from the insurance carriers and by check payable to plaintiff and his counsel; the timing of payment -- 20 days from receipt of the signed Release; the purpose is for damages for personal injuries for IRS purposes; and confirming the 1099 form will be provided. This is all that is warranted and needed to clearly set forth the terms of the Settlement Payment.

**Def's Release and Pltf's Release: Section 2: Dismissal of Action**

There is no dispute that Plaintiff will issue a Stipulation of Dismissal With Prejudice along with the signed Release. Pltf's Release merely provides that it be held in escrow and not filed with the Court until payment is received and cleared through the trust account. This is routinely the way this is handled in every settlement and should no pose an issue.

**Def's Release and Pltf's Release: Section 3: No Admission of Liability**

This section of the Def's Release is redundant and contains an overly broad, exhaustive list. Moreover, it objectionable by inserting language that Plaintiff "fully accepts" this and making it "absolutely fundamental to this Agreement" both of which are unnecessary and improper.

Pltf's Release provides simple all-inclusive language that "it is understood by and between the parties" that this Agreement does not constitute an admission of any liability by any defendant as to any claim with regard the subject incident, all claims asserted in the litigation and/or that were the subject matter of this case.

Hon. Pamela A. Carlos, U.S.M.J.
June 15, 2022
Page 4

### Def's Release Section 4:  Release

The scope "release" language in Def's Release is redundant, overly broad and contains numerous terms which are wholly inapplicable and inappropriate. Moreover, they seek to implicitly force plaintiff to release them from any government investigation which he has no authority to do. Likewise, they also seek to be released them from their legal obligation, as imposed by the New Jersey Attorney General's Office, to complete the Internal Affairs investigation into this matter. These are not acceptable terms.  Furthermore, defendants seek release of events or matters that are undefined, wholly irrelevant and have no bearing on the claims or settlement, such as "reckonings", "bonds", "trustee process" "specialities", etc.  It is also duplicative of the No Admission of Liability clause.

### Pltf's Release Section 4:  Release

The scope of the language incorporated is that which is standard for releases of this nature. Moreover, it broadly includes waiver of any wrongful death or survivorship claim under state law which should be included.  It also addresses release for the specific claims at issue, including personal injuries, psychological injuries, loss of wages, costs of medical care, etc. Notably, it makes clear that plaintiff does not waive the right for a government investigation, nor to have the Internal Affairs investigation completed to conclusion and to be notified of the results as required by the New Jersey Attorney General Guidelines on Internal Affairs.

### Def's Release Section 5: Responsibility for Any and All Liens

There is no dispute over plaintiff's obligation to be fully responsible for the payment and satisfaction of any and all claims and/or liens, past, current or future, arising out of this settlement

Hon. Pamela A. Carlos, U.S.M.J.
June 15, 2022
Page 5

or asserted against the proceeds of this settlement, including that of Medicaid, Medicare (which does not apply) and any other lien.

Def's Release is wholly unacceptable in giving the insurance carriers the right to reimburse Medicare and Medicaid directly for all existing liens. ("Greenwich Insurance Co. reserves the right to reimburse the Centers for Medicare and Medicaid Services (CMS) directly for all existing Medicare or Medicaid liens" with the same right being reserved to National Casualty Company")

Def's Release seeks to further withhold payment – suspending payment for an additional 20 days after plaintiff provides a CMS Final Demand Letter or No-Lien letter. This is entirely unacceptable. Plaintiff has already provided all such letters and proof, as well as providing defense counsel with authorizations to secure their own verification of the information previously provided.

Moreover, Def's Release, contains an Addendum to Release All Claims, which plaintiff will not agree to for a number of reasons including the fact that it is inapplicable. The defendants offer to take $7 million of plaintiff's settlement and put it into a Medicare Set Aside is both fictious and arbitrary. When a Medicare Set Aside is needed, it is based on a thorough analysis of past and present medical needs, and costs of those needs by certified professionals in this field. This was clearly not undertaken in this case by the insurance company or defense counsel and thus this figure is fictitious. The Addendum, in its totality, is not applicable, nor acceptable.

**Pltf's Release Section 5: Responsibility for Any and All Liens**

Pltf's Release, subsection (a) appropriately reflects plaintiff's obligations for all liens and claims. Subsection (b) fully addresses the Medicaid Lien. Moreover, as previously indicated the full amount of the Medicaid Lien will be held in escrow in MSKF trust account until the amount of the lien is finalized and from which the lien will be paid. Subsection (c) fully addresses the

Hon. Pamela A. Carlos, U.S.M.J.
June 15, 2022
Page 6

Medicare – Plaintiff has not received Medicare benefits, nor is he Medicare eligible, thus, there is

no need for a Medicare Set-Aside.  (See Also, letter from Thomas Begley, Jr., Esq.)

**Def's and Pltf's Release, Section 6: Child Support Search**

Counsel should be able to agree that Plaintiff is not a child support judgment debtor, as

previously demonstrated.

**Def's and Pltf's Release, Section 7: Indemnification**

Defendants seek to impose an indemnification obligation on the plaintiff that is overly

broad and would cover them for anything brought by anyone at any time, regardless of merit.

Plaintiff will not agree to such terms.

The remaining sections of the Def's Release, Sections 8 through 16, have been modified

to remove redundancy and overly broad provisions.  These provisions should be able to be worked

out by counsel.

Please advise as to when Your Honor wishes to further discuss this matter.

Respectfully submitted,

**MAZIE SLATER KATZ & FREEMAN, LLC**
Attorneys for Plaintiff

*/s/ Beth G. Baldinger*
BETH G. BALDINGER, ESQ.

cc:    Counsel of Record (via Email Only)

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter "this Agreement") is made on this _____ day of June, 2022.

By and between the following persons and entities:

**XAVIER INGRAM** (also referred to herein as "Plaintiff", "I", or "Releasor") and

**COUNTY OF CAMDEN, CAMDEN COUNTY POLICE DEPARTMENT, JOHN SCOTT THOMSON, JEREMY MERCK, ANTONIO GENNETTA, AND NICHOLAS MARCHIAFAVA** (also referred to herein collectively as "Defendants", "You" or "Releasees")

(All of whom may be collectively referred to herein as the "Parties")

**WHEREAS**, Plaintiff filed a Complaint against Defendants in the United States District Court for the District of New Jersey entitled <u>Xavier Ingram v. County of Camden, et al.</u> bearing Civil Action No. 14cv5519 (JRS/PAC) (hereinafter "the Litigation") asserting claims in connection with an incident which occurred on June 12, 2014 in the City of Camden, (hereinafter "Subject Incident") to which the Defendants filed an Answer and asserted various defenses to the claims; and

**WHEREAS**, all Parties acknowledge that the claims and defenses asserted in the Litigation have been and remain in dispute, and have not been subject to a final adjudication as the trial in this matter before the Honorable Juan R. Sanchez concluded in March of 2022 with a declared mistrial; and

**WHEREAS**, all Parties have reasons to reach an amicable resolution of the Litigation by way of settlement;

**NOW**, for and in consideration of the terms and conditions as understood and agreed to by the Parties as set forth herein contained, the Parties agree as follows:

1.     **TERMS OF SETTLEMENT.**

**Payment:**

(a) **Amount of Settlement Payment**: Plaintiff shall be paid the total settlement amount of $10,000,000 (Ten Million Dollars, no cents) (hereinafter "Settlement Payment") as full and final payment for agreeing to and executing this Settlement Agreement and Release.

(b) **Settlement Payment Covers All Claims**: The Settlement Payment includes payment for any and all claims, including claims for attorney's fees and costs incurred by counsel for Plaintiff, pre-judgment interest, post-judgment interest, or other monies, fees, or costs.

(c) **Settlement Payment Source**: The Settlement Payment shall be paid by the insurance companies on behalf of the Defendants as follows: (i) Greenwich Insurance Company in the amount of $5,000,000. (Five Million Dollars, no cents), and (ii) National Casualty Company in the amount of $5,000,000. (Five Million Dollars, no cents).

(d) **Form of Settlement Payment**:   The Settlement Payment shall be made by check made payable to "Xavier Ingram and Mazie Slater Katz & Freeman, LLC" and delivered to Plaintiff's counsel's office, Mazie Slater Katz & Freeman, LLC, 103 Eisenhower Parkway, Roseland, New Jersey 07068.

(e) **Timing of Settlement Payment**:   The Settlement Payment shall be made and delivered to Plaintiff's counsel's office within 20 (twenty) days from the date the signed Settlement Agreement and Release is provided to defense counsel's office of Brown & Connery, LLP.   Copies of the signed Settlement Agreement and Release shall be provided to all defense counsel in this action.

(f) **Settlement Payment Purpose**:   The Settlement Payment constitutes damages on account of personal physical injuries and physical sickness within the meaning of Section 104(1)(2) of the Internal Revenue Code of 1986, as amended.

(g) **1099 Tax Forms for Settlement Payment:** Greenwich Insurance Company and National Casualty Company ("Insurance Carriers") shall each issue a 1099 to Plaintiff's counsel for the Settlement Payment.

2.    **DISMISSAL OF ACTION:**   Plaintiff's counsel shall execute a Stipulation of Dismissal with Prejudice as to the Defendants and return same with the executed copy of this Settlement Agreement and Release to Brown & Connery, LLP.   Brown & Connery, LLP, on behalf of all Defendants agrees to hold the Stipulation of Dismissal With Prejudice in escrow and not file it with the Court until the Settlement Payment has been delivered to Plaintiff's counsel and cleared through their trust account.   Upon clearance of the settlement funds, Plaintiff's counsel will notify Brown & Connery, LLP in writing at which time they will file the Stipulation of Dismissal With Prejdice with the United States District Court, District of New Jersey.

3.    **NO ADMISSION OF LIABILITY:**   It is expressly understood by and between the Parties that this Settlement Agreement and Release shall not constitute an admission of liability on the part of the Defendants or any admission by the Defendants that their conduct was, in any way, negligent, intentionally indifferent, or otherwise violated any of the Plaintiff's rights. More specifically, the  County of Camden, Camden County Police Department, John Scott Thomson, Jeremy Merck, Antonio Gennetta, and Nicholas Marchiafava all deny any wrongdoing and any liability of any kind in connection with the subject incident of June 12, 2014 and all of the claims asserted in the Litigation and that were the subject matter of the Litigation.

2

**4.  RELEASE**.  Plaintiff, personally and for his estate, his heirs and/or assigns, releases and gives up any and all rights and claims which he had or may have had against any of the Defendants as the Releasees arising out of or in any way related to the Subject Incident of June 12, 2014 and the Litigation.  The "Releasees" include the County of Camden, Camden County Police Department, John Scott Thomson, Jeremy Merck, Antonio Gennetta, Nicholas Marchiafava, and any of the Defendant's agents, representatives and employees (present and former), or any Defendant's respective successors and assigns, heirs, executors and personal or legal representatives and their insurers, Greenwich Insurance Company and National Casualty Company.

This releases all such claims, including those of which Plaintiff is not aware and those not mentioned in this Release, those which are known and unknown. This Release applies to all such claims arising from and/or related to any act, event or omission from anything that has happened up to now. This Release is based upon any act, event or omission occurring before the Effective Date of this Agreement. I, plaintiff specifically releases the following such claims:

Any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, loss of services, expenses, and compensation of any nature whatsoever based on a tort, contract, statutory, constitutional or other theory of recovery, and whether for compensatory and/or punitive damages which I now have, or which may hereafter accrue or otherwise be acquired against Defendants, and your agents, servants and/or employees, directly or indirectly, including by way of example and not limitation, those which were, may have been or could have been the subject matter of a claim in the Litigation.

This Release is for compensation of any and all injuries I have sustained, known, unknown or unknowable, and in full compensation for any and all personal injuries, past, present or future, physical pain and suffering, mental suffering, psychological injuries, emotional distress, loss of wages now or in the future, and for any development, whether foreseen or unforeseen, which may or may not relate to the life, death, or life expectancy of the Releasor including, but not limited to, any and all potential damages which could possibly be recovered pursuant to the decision of Alfone v. Sarno, 87 N.J. 99 (1980), Mauro v. Raymark Industries, Inc., 116 N.J. 126 (1989), the Wrongful Death Act, N.J.S.A. 2A:3-1, et seq., the Survival Act, N.J.S.A. 2A:15-2, et seq., or other legal authority which absent this Release might permit me or any other person authorized by law to make such a claim or claims.  It is expressly understood that this Release is for the settlement, release, discharge and elimination of any and all such claims.  I hereby acknowledge that by executing this Release and accepting the monies paid hereunder I and those who otherwise might be entitled to make such a claim or claims in the future have received fair, just and adequate compensation for all such claims in exchange for which all such claims, past, present and future are forever released and discharged.  This Release also specifically releases any claims for the cost of past, present or future medical care, living, educational and/or occupational needs or assistance. Even if additional facts become known which were not known at the time of this Release was executed, I waive my right to bring a lawsuit against the Releasees.

Notwithstanding the foregoing, nothing in this Release shall preclude Plaintiff from pursuing or participating in any investigation by any government authority into the Subject Incident. In addition, Plaintiff does not waive his right to have the pending internal affairs

3

complaint and investigation into the Subject Incident completed to final conclusion in accordance with the Attorney General Internal Affairs Guidelines and Camden County Police Departments policies and procedures for Internal Affairs Investigations, and to be properly notified, along with Plaintiff's counsel as to the final outcome and disposition of the pending internal affairs complaint.

### 5.   RESPONSIBILITY FOR ANY AND ALL LIENS OR JUDGMENTS.

#### (a) All Liens and Claims Generally

Plaintiff agrees to be fully responsible for the payment and satisfaction of any and all claims and/or liens, past, current and/or future, arising out of this settlement or asserted against the proceeds of this settlement, including but not limited to any Medicare or Medicaid claims and/or liens (as more fully descrbed below, See, (b) "Medicaid Lien" and (c) "Medicare") Worker's Compensation claims and/or liens, Social Security claims an/dor liens, hospital/healthcare provider and/or healthcare facility claims and/or liens, physician or attorney claims and/or liens, or any of the statutory equitiable, common law or judgment claims and/or liens, including but not limited to claims based on subrogation or any other legal or equitable theory.  Plaintiff further agrees, upon prompt presentation of any such claims and/or liens to defend the Defendants/Releasees against any such claims and/or liens, and to indemnify and hold Defendants/Releasees, and their insurance carriers, harmless against any judgment entered against yu based on such claims and/or liens.

#### (b) Medicaid Lien:

Plaintiff has provided Defendants and their insurance carriers with proof that as of March 14, 2022, Medicaid was asserting a Lien in the amount of $1,473,998.27. Plaintiff agrees to be fully responsible for the payment and satisfaction of the final lien sum due to Medicaid.

It is understood by all Parties that as of the time of execution of this Settlement Agreement and Release the final sum due to Medicaid has not been determined or finalized. Accordingly, Plaintiff and Plaintiff's counsel agree to provide counsel for Defendants, Brown & Connery, LLP with the final amount of the Medicaid Lien once it is determined and finalized.

It is also understood by all Parties that Plaintiff's Counsel shall hold the full sum of the Medicaid Lien ($1,473,998.27) from the Settlement Payment proceeds in the trust account of Mazie Slater Katz & Freeman, LLC and will use such funds to satisfy the final lien sum due to Medicaid with any balance to be paid to or as directed by Plaintiff.  Plaintiff and Plaintiff's counsel agree to provide counsel for Defendants, Brown & Connery, LLP with the proof of payment of the Medicaid Lien from the trust account and proof that the Medicaid lien has been paid and satisfied in full.

4

### (c)   Medicare

Plaintiff represents that he is not currently and has never been a recipient of Medicare benefits.  Accordingly, Medicare has confirmed that it is not asserting a lien over the proceeds of the settlement.  It is also Plaintiff's understanding and he has been advised that he is not now, has never been and has no reasonable expectation that he will be receiving any Medicare benefits during the next thirty (30) months.  Accordingly, Plaintiff is not required to put any of the proceeds of the settlement into a Medicare Set-Aside.

Whereas to be eligible for Medicare, a person must be:

- Aged 65 or older and eligible for either Social Security or Railroad Retirement Benefits, 42 C.F.R. § 406.10; or

- Aged 65 or older and were employees of state or local governments hired after March 31, 1986, 42 C.F.R. § 406.11; or

- Under Age 65 and receiving Social Security Disability or Railroad Retirement Disability Benefirt for 24 months, 42 C.F.R. § 406.12. (For persons suffering from Amyotrophic Lateral Sclerosis (ALS), there is no 24-month waiting period.  There is no waiting period for persons under age 65 with "End Stage Renal Disease;" 42 C.F.R. § 1395(c); 42 C.F.R. § 406.13.

Whereas the Plainfff has not in the past and is not currently receiving Medicare;

Whereas the Plaintiff has not in the past and is not currently receiving Social Security Disability Insurance (SSDI), nor has he applied for SSDI and is not appealing an SSDI denial;

Whereas the Plaintiff has not in the past and is not currently receiving benefits from Railroad Retirement Benefits (RRD), nor has he applied for RRD benefits and is not appealing an RRD denial;

Whereas the Plaintiff is under age 62.5 years;

Whereas the Plaintiff does not suffer from End Stage Renal Disease (ESRD) nor does he suffer from Amyotrophic Lateral Sclerosis (ALS).

Accordingly as Plaintiff is not receiving Medicare, does not qualify for Medicare and has no reasonable expectation of receiving Medicare within 30 months (Memorandum – Centers for Medicare and Medicaid Services (April 20, 2003), no Medicare Set-Aside is required.

6.    **CERTIFICATION PURSUANT TO N.J.S.A. 2A:17-56.23b**.  Plaintiff hereby certifies that he has fully satisfied any and all obligations imposed by New Jersey law with respect to searches of child support judgments and satisfactions thereof including, but not limited to, N.J.S.A. 2A:17-56.23b.  Plaintiff hereby further warrants and certifies that a search of child support judgments has been conducted through a private judgment search company that maintains information on child support judgments and that Plaintiff is not a child support judgment debtor. Defendants acknowledge that they have been provided with the results of that search showing Plaintiff is not a child support judgment debtor.

7.    **INDEMNIFICATION.** [INTENTIONALLY LEFT BLANK]

8.    **EFFECTIVE DATE.** This Agreement shall become effective upon service upon Defendants' counsel of the Agreement executed by Plaintiff.  Service may be effectuated by reasonable means including electronic means.  Electronic or .pdf signatures shall be treated as originals for all purposes applicable hereto.  The Parties shall cooperate to exchange fully executed originals.

9.    **AUTHORITY.**  The Parties represent and warrant that each possesses the full and complete authority to execute this Agreement.

10.   **COOPERATION OF THE PARTIES.**  The Parties and their attorneys, agents, representatives and employees shall cooperate with one another in the implementation of the terms and conditions of this Agreement and agree to use reasonable efforts to promptly secure the signatures required to effectuate this Agreement, including the necessary signatures to expedite the filing of the dismissal of the Party's claims asserted in the Litigation with prejudice.

11.   **APPLICABLE LAW.** This Agreement shall be construed and interpreted in accordance with the laws of the State of New Jersey.

12.   **CONSTRUCTION OF AGREEMENT.**  This Agreement shall not be construed more strictly against any Party to this Agreement merely by virtue of the fact that the Agreement may have been drafted or prepared by such party or its counsel, it being recognized that all Parties have contributed substantially and materially to its preparation, all Parties have been represented by counsel in this matter, and that this Agreement has been the subject of negotiations between the Parties and is a product of those negotiations.

13.   **ENTIRE AGREEMENT.**   This Agreement contains the sole and entire agreement between the parties hereto and fully supersedes any and all prior agreements and understanding pertaining to the subject matter hereof, and is intended to memorialize the settlement of Plaintiff's claims.  No other promises or agreements shall be binding unless in writing between the Parties.

14.   **SEVERABILITY.**   The parties agree that if any court declares any portion of this Agreement unenforceable, the remaining portion shall be fully enforceable.

15.   **AMENDMENTS.**  This Agreement may not be amended, changed or modified

except in a writing between the Parties.  It is expressly understood and agreed that this provision may not be orally amended but must be amended in writing.  This Agreement shall be binding on the heirs, executors, and beneficiaries and any successor organization by merger, change of control or operation of law.

16.   **ACKNOWLEDGMENT**.   Plaintiff acknowledges that he has read, understands and agrees to the terms of this Settlement Agreement and Release. Plaintiff represents and acknowledges that, prior to executing this Agreement, he consulted his attorney, that he had ample time to do so, and that he obtained the advice of counsel prior to making the decision to execute the Agreement. Plaintiff acknowledges that he executes this Agreement voluntarily and knowingly in exchange for the consideration described herein.

**EXECUTED AND AGREED TO:**

_____        _____
Xavier Ingram                                                        Date

STATE OF NEW JERSEY
                                                    SS.
COUNTY OF _____

    I CERTIFY that on _____, _____, Xavier Ingram personally came before me and acknowledged under oath, to my satisfaction, that this person (or if more than one, each person);

(a)    is named in and personally signed this document, and
(b)    signed, sealed and delivered this document as his or her act and deed.

Prepared by:

_____

## ADDENDUM TO RELEASE OF ALL CLAIMS
### (Medicare Beneficiary/Medicare Advantage Plan Enrollee with Conditional and Future Payments, MSA Refused)

Counsel's Note to Court:

Plaintiff does not agree to any of the proposed terms in this section.

# B BEGLEY LAW GROUP, PC
Leaders in Planning for the Elderly and Disabled

THOMAS D. BEGLEY, JR*
ETHAN J. ORDOG
ADAM COHEN †
MARIANNE JOHNSTON †

May 23, 2022

***SENT VIA ELECTRONIC MAIL:***   bbaldinger@mazieslater.com

Beth Baldinger, Esquire
Mazie Slater Katz & Freeman, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068

RE:   Xavier Ingram
      Our File Number:   22PI236

Dear Beth:

You have inquired as to whether it is necessary to establish a Medicare Set-Aside (MSA) or otherwise take Medicare's interest into consideration in the above captioned matter.

To be eligible for Medicare, a person must be:

- Aged 65 or older and eligible for either Social Security or Railroad Retirement Benefits;[1]

- Aged 65 or older and were employees of state or local governments hired after March 31, 1986;[2]

- Under Age 65 and receiving Social Security Disability or Railroad Retirement Disability Benefits for 24 months.[3] (For persons suffering from Amyotrophic Lateral Sclerosis (ALS), there is no 24-month waiting period.   There is no waiting period for persons under age 65 with "End Stage Renal Disease."[4]

Based on the information you have provided, Xavier is not eligible for Medicare. It appears that Xavier:

1.   is not receiving Medicare,

2.   is not receiving benefits from Social Security Disability Insurance (SSDI),

---

[1] 42 C.F.R. § 406.10.
[2] 42 C.F.R. § 406.11.
[3] 42 C.F.R. § 406.12.
[4] 42 C.F.R. § 1395( c); 42 C.F.R. § 406.13.

509 S. Lenola Road, Building 7 ♦ Moorestown, NJ 08057 ♦ tel  856-235-8501  ♦ fax  856.273.1062 ♦ BegleyLawGroup.com
*Certified Elder Law Attorney by the National Elder Law Foundation (organization approved by the American Bar Association) †Licensed in PA & NJ

Page 2

3.     is not receiving benefits from Railroad Retirement Benefits (RRD,

4.     has not applied for SSDI,

5.     has not applied for RRD,

6.     is not appealing an SSDI denial,

7.     is not appealing an RRD denial,

8.     is under age 62.5 years,

9.     does not suffer from End Stage Renal Disease (ESRD), and

10.    does not suffer from Amyotrophic Lateral Sclerosis (ALS).

Since Xavier is not receiving Medicare and has no reasonable expectation of receiving Medicare within 30 months,[5] no Medicare Set-Aside is required.

Very truly yours,

BEGLEY LAW GROUP, P.C.

BY: _____

THOMAS D. BEGLEY, JR.

---

[5] Memorandum - Centers for Medicare and Medicaid Services (April 20, 2003)

# R E L E A S E

This Release, dated the 23rd day of March, 2022 is given

BY:
a:                                    (Referred to as "I," "We," or "Releasor(s)")

TO:

its insureds, employees, agents, servants and assigns, and any and all employers, partners, co-workers or employees of the above-named physician(s) or organizations(s) (referred to as "You" or "Releasee(s)")

1. RELEASE.  I release and give up any and all rights and claims which I may have against You arising out of or in any way related to the facts and circumstances underlying the lawsuit referred to below. This releases all such claims, including those of which I am not aware and those not mentioned in the Release. This Release applies to all such claims resulting from anything which has happened up to now. I specifically release the following such claims:

Any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, loss of services, expenses, and compensation of any nature whatsoever based on a tort, contract, or other theory of recovery, and whether for compensation or punitive damages I now have, or which may hereafter accrue or otherwise be acquired against You or your agents, servants and employees directly or indirectly, including by way of example and not limitation, those which may be or could have been the subject matter of a lawsuit instituted in the Superior Court of New Jersey, Hudson County, bearing Docket Number HUD-L- (Hereinafter "INCIDENT")

This Release is for compensation of any and all injuries I have sustained, known, unknown or unknowable, and in full compensation for any and all personal injuries, past, present or future, physical pain and suffering, mental suffering, psychological injuries, emotional distress, loss of consortium, services or society, loss of wages now or in the future, and for any development, whether foreseen or unforeseen, which may or may not relate to the life, death, or life expectancy of the Releasor including, but not limited to, any and all potential damages which could possibly be recovered pursuant to the decision of Alfone v. Sarno, 87 N.J. 99 (1980), Mauro v. Raymark Industries, Inc., 116 N.J. 126 (1989), the Wrongful Death Act, N.J.S.A. 2A:3-1, *et seq.*, the Survival Act, N.J.S.A. 2A:15-3, *et seq.*, or other legal authority which absent this Release might permit me or any other person authorized by law to make such a claim or claims. It is expressly understood that this Release is for the settlement, release, discharge and elimination of any and all such claims. I hereby acknowledge that by executing this Release and accepting the monies paid hereunder I and those who otherwise might be entitled to make such a claim or claims in the future have received fair, just and adequate compensation for all such claims in exchange for which all such claims, past, present and future are forever

released and discharged.  This Release also specifically covers any potential future lawsuit for the alleged wrongful death of              .    This Release also specifically releases any claims for the cost of past, present or future medical care, living, educational and/or occupational needs or assistance. Even if additional facts become known which were not known at the time this Release was executed, I waive my right to bring a lawsuit against the Releasees.

2.  NON-ADMISSION OF LIABILITY. It is expressly understood that this Release shall not constitute an admission of liability on the part of the Releasee or any admission by the Releasee that the care and treatment rendered was, in any way, negligent or below the accepted standards of practice.

3. NON-DISCLOSURE.  It is further understood and agreed as an honorable undertaking that neither I nor any agents, servants, attorneys or representatives of the Releasor shall, in any way, at any time disclose for any reason or purpose whatsoever to any other person or entity (other than the Releasor's immediate family, attorneys, accountants or financial advisors, or as otherwise may be required by law) either the fact of this settlement, the facts underlying the claims leading to this settlement, or the terms of the consideration, compensation or settlement reached with You. Notwithstanding the foregoing, my attorneys may list the settlement in promotional materials provided that they do not list the identity of any of the parties, nor the situs of the malpractice.

4. CLAIMS and/or LIENS. All claims and/or liens, past, current and/or future arising out of this settlement or asserted against the proceeds of this settlement are to be satisfied by the Releasor, including but not limited to any Medicare or Medicaid claims and/or liens, Worker's Compensation claims and/or liens, Social Security claims and/or liens, hospital/healthcare insurer claims and/or liens, physician or attorney claims and/or liens, or any of the statutory equitable, common law or judgment claims and/or liens, including but not limited to claims based on subrogation or any other legal or equitable theory. I therefore agree, upon prompt presentation of any such claims and or liens, to defend You against any such claims and/or liens, and to indemnify and hold You harmless against any judgment entered against you based on such claims and/or liens.

Specifically, Releasors warrant that there are no liens of which Releasors are aware after having investigated any and all potential liens except the lien asserted by Medicaid in the amount of $479,314.90 which plaintiff agrees to pay from the proceeds of this settlement.

5. INDEMNIFICATION. In the event I shall recover or seek to recover any monies from any person who thereafter seeks defense and/or indemnification from You arising from claims released in this document, I shall, upon prompt presentation of that claim, defend You against that claim and indemnify and hold You harmless against any judgment entered against You based on that claim.

As a further consideration and inducement for this settlement, the Releasors agree

to defend, indemnify, protect and hold the Releasees harmless from any and all liens, rights of subrogation, indemnification claims, contribution claims, defense claims, losses, liability, actions, damages, causes of action, judgments, costs and expenses, including attorney's fees, whatsoever made by or sustained by or arising from any person, corporation, partnership, state or federal government, governmental agency, hospital, or any other medical provider, health care provider, disability or insurance benefits provider, workers compensation carrier, Medicaid provider, and Medicaid provider or any other entity arising in whole or in part out of the INCIDENT, or in any way connected to the INCIDENT.

6. PAYMENT. I have been paid a total of $13,000,000. in full and final payment for agreeing to and executing this Release.  I agree that I will not seek anything further including any other payments(s) from You. Payments to be made in accordance with Exhibit A.

7. SEVERABILITY.  If any provision of this Release shall be held to be invalid, illegal, unenforceable or in conflict with the law of any jurisdiction, the validity, legality and enforceability of the remaining provisions of this Release shall not in any way be affected or impaired thereby.

8. WHO IS BOUND.  I am bound by this Release. Anyone who succeeds to my rights and responsibilities, such as my heirs or the executor(trix) of my estate, is also bound. This Release is made for the benefit of You, and all who succeed to the rights and responsibilities of the Releasee, such as the Releasee's heirs or the executor(trix) of the Releasee's estate.

9. SIGNATURE.  I have read, understand and agree to the terms of this Release. I have consulted with counsel prior to signing this Release.

_____ as Guardian Ad Litem for the infant, individually

Dated: March 23, 2022

STATE OF NEW JERSEY, COUNTY OF ESSEX  SS:

    I CERTIFY that on March 23 2022, personally came before me and acknowledged under oath, to my satisfaction, that this person (or if more than one, each person):
    (a) is named in and personally signed this document; and
    (b) signed, sealed and delivered this document as his or her act and deed.

_____
A Notary Public of New Jersey

Lori A. Treat
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES  August 15, 2026

# EXHIBIT O

# BROWN & CONNERY, LLP

ATTORNEYS AT LAW
360 HADDON AVENUE
WESTMONT, NEW JERSEY 08108
(856) 854-8900
FAX (856) 858-4967

William F. Cook, Esq.
wcook@brownconnery.com

June 15, 2022

<u>**VIA EMAIL**</u>

**The Honorable Pamela A. Carlos, U.S.M.J.**
U.S. District Court for the Eastern District of Pennsylvania
Edward N. Cahn U.S. Courthouse and Federal Building
504 Hamilton Street
Allentown, Pennsylvania 18101

> Re:   <u>**Ingram v. County of Camden, et al.**</u>
> **District of New Jersey Docket No. 14-cv-5519**
> **Our File No. 14-0712**

Dear Judge Carlos:

Please accept this letter on behalf of Defendants in accordance with the telephone status conference conducted on June 7, 2022 in this case.

As the Court is aware, this matter is pending completion of a settlement agreement between the parties. Despite the efforts of the parties to resolve all issues relating to the language of the agreement, certain disagreements remain.

Your Honor requested that the parties provide a brief statement of the primary issues in dispute. Defendants submit that there are three (3) such issues, each identified below.

*First*, Plaintiff objects to Defendants' proposed language relating to the Medicare Secondary Payer Act ("MSPA").[1] The Court is thoroughly familiar with what this Act entails, and thus Defendants will not, for the sake of brevity, rehash the law here. Simply put, Defendants seek the inclusion of language which would protect Defendants, their agents, and their representatives – even Plaintiff and his counsel for that matter – from liability in the event that Medicare becomes responsible for medical costs and needs of Xavier Ingram.

---

[1] 42 U.S.C.A. § 1395y.

7HB1962

**BROWN & CONNERY, LLP**

JUNE 15, 2022
PAGE 2

The MSPA language sought by Defendants is included in Defendant's draft agreement attached hereto. The language is located in the Addendum to Release of All Claims at pages 8-10 of Defendants' draft.[2]

Plaintiff objects to this language on the basis that Mr. Ingram is not eligible for Medicare at this time and is not expected to be eligible. If that is the case, however, then it is unclear why Plaintiff has a concern with this language. Further, the proposed language is to the benefit of all parties, not just Defendants. It is to the benefit of Mr. Ingram and his counsel.

These issues should and must be dealt with proactively so that there are no issues whatsoever in the future relating to the MSPA for any party.

Given the future medical costs likely to be incurred by Mr. Ingram into the future – and potentially well into the future given his age – Defendants absolutely need the assurances and representations of the Addendum to protect them from any future liability for such costs.

*Second*, Plaintiff objects to language which would hold Defendants harmless for other potential liens which may exist. While Defendants appreciate the representations of Plaintiff's counsel that there are no other liens, this does little to insulate Defendants in the future in the event an unknown lien arises.

As with the MSPA, if it is Plaintiff's representation that there are no liens, then it is unclear why Plaintiff would have a concern with this language being in the agreement as there is no harm to Plaintiff.

*Third*, Plaintiff has indicated that there will be limitations on his release with respect to his pursuit of an internal affairs complaint. This is not a full release. A release must be complete as to all claims. The limited release proposed by Plaintiff would potentially suggest that Plaintiff would pursue litigation in future depending on how any such internal affairs complaint proceeds. Again, this is not a full release.

Defendants respectfully submit that these are the primary issues in dispute at this time. While there are other issues disputed between the parties, Defendants trust that these other issues will not require the Court's time and resources.

---

[2] It must be further noted that this Addendum is specifically requested by the Defendants' insurance principals, not just Defendants.

BROWN & CONNERY, LLP

JUNE 15, 2022
PAGE 3

We appreciate the Court's assistance with this matter.

Respectfully submitted,

BROWN & CONNERY, LLP

*/s/ William F. Cook*

William F. Cook, Esquire

WFC/
Enclosure
cc:      Beth Baldinger, Esquire *(via email)*
         David Freeman, Esquire *(via email)*
         Cory Rothbort, Esquire *(via email)*
         Thomas Begley, Esquire *(via email)*
         Jay Blumberg, Esquire *(via email)*
         Dean Wittman, Esquire *(via email)*
         John Morgenstern, Esquire *(via email)*
         Edward Flitter, Esquire *(via email)*

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter "this Agreement") is made by, between, and among **XAVIER INGRAM** (hereinafter "Plaintiff") and **COUNTY OF CAMDEN, CAMDEN COUNTY POLICE DEPARTMENT, JOHN SCOTT THOMSON, JEREMY MERCK, ANTONIO GENNETTA, AND NICHOLAS MARCHIAFAVA** (hereinafter, "Defendants") (collectively, the "Parties" or, individually, a "Party").

**WHEREAS**, Plaintiff filed a Complaint against Defendants in the United States District Court for the District of New Jersey entitled <u>Xavier Ingram v. County of Camden, et al.</u> bearing Civil Action No. 14cv5519 (JRS/PAC) (hereinafter "the Litigation"), and has asserted claims in connection with an incident on June 12, 2014 in the City of Camden, with all such claims being completely denied by Defendants; and

**WHEREAS**, all Parties acknowledge that the merits of the Litigation are in dispute and have not been finally adjudicated, and that no Party admits any liability to any other, but the Parties have reasons to desire an amicable resolution of the matter, including to avoid the costs of further litigation;

**NOW**, for and in consideration of the agreements, covenants and conditions herein contained, the adequacy and sufficiency of which are hereby expressly acknowledged by the Parties hereto, the Parties agree as follows:

1.    <u>**TERMS OF SETTLEMENT.**</u>

(a)    <u>**Payment**</u>. Plaintiff shall be paid the total settlement amount of $10,000,000 as full and final settlement of any and all claims which have been and/or could have been asserted against Defendants in the Litigation (hereinafter "The Settlement Payment"), subject to final ratification and approval by the Board of Commissioners of the County of Camden. The Settlement Payment includes payment for any and all claims, including claims for attorney's fees and costs incurred by counsel for Plaintiff, pre-judgment interest, post-judgment interest, or other monies, fees, or costs. The Settlement Payment shall be sourced from Greenwich Insurance Company ($5,000,000) and National Casualty Company ($5,000,000). Disbursement shall proceed as follows:

1. _____
2. _____
3. _____

(b)    **Time of Payment.** The Settlement Payment shall be made within ninety (90) days (but not more than one hundred twenty (120) days if reasonably necessary) of receipt by Defendants' counsel of a copy of this Agreement executed by Plaintiff, or ratification by the Board of Commissioners, whichever is later.

1

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

(c) **Tax Indemnification**. Greenwich Insurance Company and National Casualty Company shall each issue a 1099 to Plaintiff's counsel for the Settlement Payment and shall not make any withholdings from the Settlement Payment. Plaintiff agrees that he is solely responsible for all applicable taxes, if any, as a result of the receipt of these monies. Plaintiff understands and agrees that Defendants are providing no representation for any tax obligations or consequences that may arise from this Agreement. If any action or proceeding shall be instituted against any Defendant related to any alleged failure to make withholdings on such monies, such Defendant will within five (5) days provide written notice to Plaintiff of the action or proceeding. Plaintiff hereby agrees to indemnify any Defendant in any such action and for any judgment which may be entered against any Defendant for taxes owed by Plaintiff, including costs, penalties, interests, and fees.

2.  **DISMISSAL OF ACTION.**  Plaintiff's counsel shall execute a Stipulation of Dismissal with Prejudice as to Defendants and return same with the executed copy of this Agreement.  The Parties shall cooperate in executing and filing the required Stipulation of Dismissal With Prejudice with the United States District Court for the District of New Jersey.

3.  **NO ADMISSION OF LIABILITY.** As an express and essential condition of this Agreement, Plaintiff fully accepts, acknowledges, and understands that the County of Camden, Camden County Police Department, John Scott Thomson, Jeremy Merck, Antonio Gennetta, and Nicholas Marchiafava all absolutely deny any wrongdoing or liability whatsoever in connection with the incident of June 12, 2014. Xavier Ingram accepts and acknowledges that nothing in this settlement constitutes an admission of any kind by any Defendant of any liability, or any violation of any law, or any violation of duty or obligation, or that any decisions or actions taken in connection with this matter were unwarranted, unjustified, wrongful, unreasonable or otherwise unlawful. The County of Camden, Camden County Police Department, John Scott Thomson, Jeremy Merck, Antonio Gennetta, and Nicholas Marchiafava each specifically and cateogorically deny, in the strongest terms possible, any wrongdoing whatsoever as to Xavier Ingram or the June 12, 2014 incident, or that any of their actions caused Xavier Ingram's injuries. Xavier Ingram further agrees, understands, and accepts that, by entering into this Agreement, no admission whatsoever is made by any Defendant that the County of Camden, Camden County Police Department, John Scott Thomson, Jeremy Merck, Antonio Gennetta, or Nicholas Marchiafava violated any constitutional or other rights of Ingram, acted without probable cause, engaged in excessive force, failed to render medical aid, failed to train, failed to supervise, were negligent, acted pursuant to any unconstitutional or unlawful policy, custom, or practice, or were otherwise liable or responsible for any of Xavier Ingram's injuries. The Parties further specifically agree that nothing in this Agreement constitutes any admission that any unconstitutional or unlawful policy, custom, or practice exists in the Camden County Police Department of any nature whatsoever. It is understood that this provision is absolutely fundamental to this Agreement.

4.  **RELEASE**.  In consideration of the Settlement Payment and other consideration provided for in this Agreement, Plaintiff, personally and for his estate and his heirs and/or assigns, waives, releases and gives up any and all claims, demands, obligations, damages, liabilities, causes of action and rights, in law or in equity, known and unknown, that he may have against any of the "Released Parties" as to the current Litigation or the incident of June 12, 2014. "Released Parties"

2

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

shall include the County of Camden, Camden County Police Department, John Scott Thomson, Jeremy Merck, Antonio Gennetta, Nicholas Marchiafava, any Defendant and any Defendant's agents, representatives and employees (present and former), or any Defendant's respective successors and assigns, heirs, executors and personal or legal representatives and their insurers (including Greenwich Insurance Company and National Casualty Company). This release is based upon any act, event or omission occurring before the Effective Date of this Agreement. The term "claim" shall include any and all claims, counterclaims, third-party claims, contribution claims, indemnity claims, cross-claims, and any other type of claim, including but not limited to claims relating to, or arising from, debts, demands, actions, promises, judgments, rights, trespasses, extents, executions, causes of action, suits, accounts, covenants, sums of money, dues, reckonings, bonds, bills, liens, attachments, trustee process, specialties, contracts, controversies, agreements, promises, damages, and all other claims of every kind and nature in law, equity, arbitration, or other forum, whether arising under state, federal or other law, known or unknown, matured or unmatured, foreseeable or unforeseeable, suspected or unsuspected, fixed or contingent, which were asserted, could have been asserted, or could in the future be asserted, whether or not asserted, threatened, or litigated, from the beginning of time to the Effective Date of this Release, any and all claims arising out of, relating to or in any way connected with the Litigation or that have been asserted or could have been asserted in the Litigation, whether absolute or contingent, direct or indirect, known or unknown.

Plaintiff specifically releases any and all claims against each Defendant related to alleged injuries and damages sustained in the incident of June 12, 2014 or any incident with any Defendant. Plaintiff further declares and represents that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite. In making this Release, it is thus understood and agreed that Plaintiff relies wholly upon his judgment, belief and knowledge of the nature, extent, effect and duration of said injuries and liability therefore. This release is made without reliance upon any statement or representation of the Party or Parties hereby released or their representatives or by any physician or surgeon by them employed, other than those statements or representations contained herein.

Plaintiff hereby represents and warrants that he intends to specifically release each Defendant from any and all claims associated with the development and execution of any qualified structured settlement, its tax effect, and the obligations of or the insolvency of the assignees or life insurance companies.

Plaintiff also hereby represents and warrants that he intends to specifically release each Defendant from Unknown Claims arising from, relating to, or in any way connected with the Litigation that they do not know or suspect to exist, whether or not such Claims might have materially affected this Release. "Unknown Claims" means any Claims that any Party does not know or suspect to exist in his, her or its favor at the time of the release of the Parties that if known by him, her or it, might have affected his, her or its settlement with and release of the Parties. With respect to any and all Claims, the Parties agree that, upon the Effective Date of this Release, they shall have expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, against any Defendant which a Party does not know or suspect to exist at the time of executing the release. The Parties agree and understand that they may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Claims in the Litigation that have been released and

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

discharged, but shall be deemed to have, fully, finally, and forever settled and released any and all Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist, or heretofore have existed, based upon any theory of law or equity now existing or coming into existence in the future, including but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of different or additional facts except for claims arising from misrepresentations contained in this Release.   The Parties agree and acknowledge that the inclusion of Unknown Claims against any Defendant arising from the accident in the definition of Claims was separately bargained for and was a key element of the Release.

     **5.**    **RESPONSIBILITY FOR ANY AND ALL LIENS OR JUDGMENTS.** Plaintiff agrees to be responsible for the payment and satisfaction of any and all liens of any kind whatsoever, including (without limitation) liens or judgments arising out of the provision of any professional services or benefits to or for the benefit of Plaintiff by or through medical providers, medical institutions, temporary or permanent disability plans, employer or workers' compensation benefits plans or statutes, and for child support.  Plaintiff agrees to satisfy any and all liens, claims or demands arising out of the June 12, 2014 incident and/or submitted against the proceeds of this settlement, including but not limited to any workers' compensation, Medicare, Medicaid, or other government lien, claim or demand, any lien or claim submitted by any medical provider, physician, hospital, therapist, or other health care giver or insurer seeking compensation or reimbursement for the services provided to him; or any other lien arising out of the incident of June 12, 2014. Plaintiff also hereby agrees to defend, indemnify and otherwise hold harmless any released party, including insurers, from and against any and all claims, demands, or suits made in connection with any such liens or claims.  Plaintiff shall keep counsel for Defendants fully informed as to the disposition process for any liens.  Greenwich Insurance Company reserves the right to reimburse the Centers for Medicare and Medicaid Services (CMS) directly for all existing Medicare or Medicaid liens.  National Casualty Company reserves the right to reimburse CMS directly for all existing Medicare or Medicaid liens. As a material term of this settlement, Plaintiff or his attorneys must provide a CMS Final Demand Letter or No-Lien Letter upon the execution of this Settlement Agreement and Release or as soon as possible thereafter with the settlement funding obligation being suspended until twenty days after Defense Counsel's receipt of such letter.

     Plaintiff agrees to execute the attached Addendum to Release of All Claims ((Medicare Beneficiary/Medicare Advantage Plan Enrollee with Conditional and Future Payments, MSA Refused).

     **6.**    **CERTIFICATION PURSUANT TO N.J.S.A. 2A:17-56.23b.**  Plaintiff hereby certifies that he has fully satisfied any and all obligations imposed by New Jersey law with respect to searches of child support judgments and satisfactions thereof including, but not limited to, N.J.S.A. 2A:17-56.23b.  Plaintiff hereby further warrants and certifies that a search of child support judgments has been conducted through a private judgment search company that maintains information on child support judgments and that Plaintiff is not a child support judgment debtor. Plaintiff specifically agrees to undertake to indemnify and defend any Defendant with respect to any claim by any individual, entity or governmental authority with respect to any alleged failure to satisfy any child support judgment or obligation.

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

7.     **COVENANT NOT TO SUE.**  Plaintiff warrants that he has not filed any civil or administrative complaints of any nature against any Defendant as of the date of the execution of this Agreement other than the Litigation referenced above. Plaintiff agrees that, for the matters released herein and against Defendants, he will not file, charge, claim, sue or cause or permit to be filed any civil action, suit, administrative claim, or other legal proceeding seeking personal, equitable or monetary relief on his behalf in connection with any matter concerning any Defendant. Plaintiff further agrees that should any person, organization or other entity file, charge, claim, sue or cause or permit to be filed any such civil action, suit or legal proceeding, he will not seek or accept any personal relief in such civil action, suit or legal proceeding. In the event of a violation of this paragraph, Plaintiff agrees that any affected Defendant shall be entitled to immediate dismissal of such civil action, suit or legal proceeding and that Plaintiff shall be responsible for the payment of the reasonable attorneys' fees and expenses incurred by such Defendant.

8.     **INDEMNIFICATION**.  In the event Plaintiff has recovered or recovers any monies from any other person or entity who thereafter seeks contribution, indemnification or allocation of fault from any Defendant arising from the claims released in this Agreement, Plaintiff shall indemnify and hold any affected Defendant harmless for any money spent in defending against these claims including, but not limited to, attorney's fees, costs of suit, judgment or settlement.

9.     **EFFECTIVE DATE.** This Agreement shall become effective upon service upon Defendants' counsel of the Agreement executed by Plaintiff.  Service may be effectuated by reasonable means including electronic means.  Electronic or .pdf signatures shall be treated as originals for all purposes applicable hereto.  The Parties shall cooperate to exchange fully executed originals.

10.     **AUTHORITY.**  The Parties represent and warrant that each possesses the full and complete authority to covenant and agree as herein provided, and further represent and warrant that each has the full and complete authority to execute this Agreement.

11.     **COOPERATION OF THE PARTIES.**  The Parties and their attorneys, agents, representatives and employees shall cooperate with one another in the implementation of the terms and conditions of this Agreement and agree to use reasonable efforts to promptly secure the signatures required to effectuate this Agreement, including the necessary signatures to expedite the filing of the dismissal of the Party's claims asserted in the Litigation with prejudice.

12.     **APPLICABLE LAW.** This Agreement shall be construed and interpreted in accordance with the laws of the State of New Jersey.

13.     **CONSTRUCTION OF AGREEMENT.**  This Agreement shall not be construed more strictly against any Party to this Agreement merely by virtue of the fact that the Agreement may have been drafted or prepared by such party or its counsel, it being recognized that all Parties have contributed substantially and materially to its preparation, all Parties have been represented by counsel in this matter, and that this Agreement has been the subject of negotiations between the Parties and is a product of those negotiations.  This Agreement also shall not be interpreted as rendering any Party a prevailing party for any purpose, including, but not limited to an award of attorney's fees under any statute or otherwise.

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

14.   **ENTIRE AGREEMENT.**  This Agreement contains the sole and entire agreement between the parties hereto and fully supersedes any and all prior agreements and understanding pertaining to the subject matter hereof, and is intended to memorialize the settlement of Plaintiff's claims.  Plaintiff represents and acknowledges that, prior to executing this Agreement, he consulted his attorney, that he had ample time to do so, that he obtained the advice of counsel prior to making the decision to execute the Agreement and that he had not relied upon any representation or statement not set forth in this Agreement made by any Defendant thereto, or any Defendant's counsel or representatives, with regard to the subject matter of this Agreement.  No other promises or agreements shall be binding unless in writing between the Parties.

15.   **SEVERABILITY.**  The parties agree that if any court declares any portion of this Agreement unenforceable, the remaining portion shall be fully enforceable.

16.   **AMENDMENTS.**  This Agreement may not be amended, changed or modified except in a writing between the Parties.  It is expressly understood and agreed that this provision may not be orally amended but must be amended in writing.  This Agreement shall be binding on the heirs, executors, and beneficiaries and any successor organization by merger, change of control or operation of law.

17.   **FURTHER ASSURANCES.**  The Parties agree to execute any additional documents reasonably necessary to effectuate this Agreement including, without limitation, a Stipulation of Dismissal with prejudice and without costs.

18.   **NO WAIVER**.  The delay or failure of a Party to exercise any right, power or privilege hereunder, or a failure to strictly enforce any breach or default, shall not constitute a waiver with respect thereto.  No waiver of any such right, power, privilege, breach or default on any one occasion shall constitute a waiver thereof on any subsequent occasion unless clear and express notice thereof in writing is provided.

19.   **COSTS AND FEES.**  Plaintiff agrees to bear his own costs and attorney's fees in connection with the Litigation referenced herein and in connection with the negotiation of this Agreement.  This Agreement shall not be interpreted as rendering any Party a prevailing party for any purpose, including, but not limited to an award of attorney's fees under any statute or otherwise.

20.   **ACKNOWLEDGMENT.**  Plaintiff acknowledges that he has read all of the terms of this Agreement, and has had an opportunity to discuss it with individuals of his own choice.  The Parties have been represented throughout this litigation by attorneys of their own choosing and each affirm they have had an opportunity to review the Agreement with such counsel. Plaintiff further acknowledges and understands that by signing this Agreement and accepting the terms set forth above, he is receiving monies and benefits to which he might  not otherwise be entitled but for this Agreement. Plaintiff understands that he is receiving such benefits as a result of entering into and complying with the terms and provisions of this Agreement.  Plaintiff acknowledges that he executes this Agreement voluntarily and knowingly in exchange for the consideration described herein, which is acknowledged to be adequate and satisfactory.

6

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

**EXECUTED AND AGREED TO:**

_____
_____
Xavier Ingram                                    Date                    _____

STATE OF _____
                                                        SS.
COUNTY OF _____

    I CERTIFY that on _____, _____, Xavier Ingram personally came before me and acknowledged under oath, to my satisfaction, that this person (or if more than one, each person);

    (a)    is named in and personally signed this document, and
    (b)    signed, sealed and delivered this document as his or her act and deed.

Prepared by:

_____

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

## ADDENDUM TO RELEASE OF ALL CLAIMS
### (Medicare Beneficiary/Medicare Advantage Plan Enrollee with Conditional and Future Payments, MSA Refused)

I, Xavier Ingram, (hereinafter also referred to as "I" or "Claimant"), individually and on behalf of my heirs, executors, administrators and assigns, as further consideration for the settlement referenced in the RELEASE OF ALL CLAIMS, further recite, warrant, and agree to the following:

## DISCLOSURES, WARRANTIES AND INDEMNITY AGREEMENT

### I.    Recitations and Disclosures

It is not the intention of any party to this settlement to shift to Medicare responsibility for payment of medical expenses for the treatment of injuries sustained as result of the Accident. However, this Addendum is intended to accompany and supplement the Settlement Agreement with the intention of foreclosing the Released Parties as defined below from any responsibility for future payments of any medical expenses and prescription expenses related to that Accident beyond the payments made under the Settlement Agreement. "Released Parties" shall include the County of Camden, Camden County Police Department, John Scott Thomson, Jeremy Merck, Antonio Gennetta, Nicholas Marchiafava, any Defendant and any Defendant's agents, representatives and employees (present and former), or any Defendant's respective successors and assigns, heirs, executors and personal or legal representatives and their insurers (including Greenwich Insurance Company and National Casualty Company). Greenwich Insurance Company and National Casualty Company are herein referred to as "the Carriers" and are also included within the definition of "Released Parties".

I understand that 42 USC 1395y(b)(2)(A)(ii) precludes the Centers for Medicare and Medicaid Services (CMS) from paying for services also covered by a liability insurance policy to the extent that payment has been made or can reasonably be expected to be made promptly under that liability insurance policy. 42 CFR 411.50 defines liability insurance. Anytime a Medicare beneficiary receives funds from a liability insurance policy due to a settlement, judgment or award arising out of an accident that requires the beneficiary to receive medical treatment, Medicare expects that those funds will be used to pay for services already rendered and services provided in the future related to that medical treatment. Thus, Medicare should not be billed for future services until those funds are exhausted by payments to providers that would otherwise be covered by Medicare.

I further understand that 42 USC 1395w-21 through 42 USC 1395w-28 authorizes CMS to contract with private insurance companies to administer a Medicare Advantage Plan (MAP). These private insurance companies, operating as Medicare Advantage Organizations (MAO), cover Medicare benefits under what is known as Medicare Part C coverage. For the purposes of this addendum, the term "Medicare" also includes and encompasses MAPs and MAOs.

CMS and/or the MAO may be entitled to seek reimbursement from a primary plan or other entity/individual receiving the primary plan's payment under 42 USC 1395y(b). By receiving this settlement, I and my counsel, if represented, understand that I/we may have continuing obligations

8

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

to CMS and/or the MAO, as the Released Parties have included in their payment to me any obligations they have as a PRIMARY PAYER to CMS and/or the MAO. In the event that I do not fulfill my obligations to CMS and/or the MAO, I understand that I or my counsel, if represented, may be subject to a direct suit by CMS and/or the MAO:

1.)     For recovery of attorneys fees collected through a settlement or release (42 CFR 411.24(g) and 42 CFR 422.108(f)).

2.)     For recovery of medical expenses that should have been paid from the settlement (42 CFR 411.24(g) and 42 CFR 422.108(f) and Subrogation 42 CFR 411.26(a)).

I understand and agree that I am aware that, in 2007, the Medicare, Medicaid and SCHIP Extension Act (hereinafter **"Extension Act"**) was passed and was enacted, in part, to protect Medicare when the settlement of a bodily injury claim involves the release of all future claims and the alleged injured individual is either a current Medicare beneficiary or has the potential to be entitled to Medicare benefits within thirty (30) months of the date of settlement. Furthermore, I understand that this Act requires the Carriers to report all such settlements within a time established by the Secretary of Health and Human Services.

The Released Parties and the Carriers expressly deny all liability for any damages as a result of the Accident and dispute the reasonableness and necessity of past and future medical treatment and expenses allegedly incurred as a result of said Accident.

I understand that Medicare has paid Zero Dollars ($[0.00]) in conditional payments for medical and prescription expenses related to the Accident. I understand that, as of March 14, 2022, Medicaid has paid One Million, Four-Hundred Seventy-Three Thousand, Nine-Hundred Ninety-Eight Dollars and Twenty-Seven Cents ($1,473,998.27) in conditional payments for medical and prescription expenses related to the Accident, with additional monies paid subsequent to that date. I also understand that the Carriers will reimburse Medicaid directly for those conditional payments in the specified amount or negotiated amount from the proceeds of the settlement.

Additionally, I understand that though the Released Parties and the Carriers dispute the reasonableness and necessity of future medical and prescription expenses related to the Accident, the medical and physician records allege that future medical and prescription expense will be incurred. In order to protect the interests of Medicare as to these alleged future expenses, the Released Parties, by and through the Carriers, have offered to pay to the Claimant [Seven Million Dollars ($7,000,000)] out of the total amount of the consideration indicated in the RELEASE OF ALL CLAIMS to be placed in a Medicare "Set Aside Account" or Annuity, in order to comply with the Extension Act. **I hereby expressly reject the Carriers' proposed set aside of funds into a Medicare Set Aside Account or "Structured Settlement" Annuity.**

I understand that, if Medicare is not protected as set forth in the Extension Act, Medicare may **cease all benefits** otherwise available to me. I further understand and agree that, in the event Medicare seeks reimbursement for past or future payments, **the Indemnity Agreement provides that I will indemnify the Released Parties, referenced in the accompanying Release, as well as the Carriers, from all responsibility for Medicare's claim.** I further understand and agree that, in the event Medicare seeks reimbursement for future payments because of my elected refusal

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

to "set aside" a portion of these settlement monies, **my personal assets may be used to satisfy the claims of Medicare.** I further understand and agree that I may not sell, convey or otherwise encumber these personal assets to any other person or entity to avoid the appearance of having no personal assets.

## II.    **Warranties**

Therefore, in consideration of the parties' willingness to settle the claim referenced in the RELEASE OF ALL CLAIMS, and to induce said settlement, Claimant makes the following warranties:

- I am a not currently Medicare beneficiary.

- My Social Security Number or Medicare Health Insurance Claim Number is [INSERT APPROPRIATE NUMBER].

- Medicare has made no CONDITIONAL PAYMENTS for medical expense or prescription drug expense related to the Accident. I have given the Carriers a Medicare Authorization form. They have confirmed that no CONDITIONAL PAYMENTS have been paid by Medicare.

- I have disclosed to the Carriers the names of all medical providers which provided treatment for the injuries I sustained in the Accident.

- The Carriers have proposed that $7,000,000 of the total settlement amount be put in a Medicare Set-Aside Account or an Annuity in an effort to comply fully with the Extension Act.

- I have expressly rejected this proposal.

- Should future medical treatment related to the Accident be required, the expense associated with that treatment will be paid from the proceeds of this settlement.

- No further medical expense or prescription drug expense related to the treatment I have received or will receive in the future related to the Accident will be submitted to Medicare for payment, and I will instruct all medical providers rendering such treatment that expense associated therewith should not be submitted to Medicare for payment.

- No liens, including but not limited to liens for medical treatment by hospitals, physicians, or medical providers of any kind have been filed for the treatment of injuries sustained in the Accident, other than a Medicaid lien.  The Medicaid lien has been directly reimbursed by the Carriers.

## III.    **Hold Harmless and Indemnity Agreement**

Additionally, as further consideration of the parties' willingness to settle the claim referenced in the RELEASE OF ALL CLAIMS, and to induce said settlement, Xavier Ingram

10

DEFENDANTS' DRAFT – JUNE 2, 2022 9:02 PM

agrees by and on behalf of myself and my heirs, executors, administrators, and assigns, that I will hold harmless and indemnify:

> (1) each and every one of the Released Parties, including the County of Camden, Camden County Police Department, John Scott Thomson, Jeremy Merck, Antonio Gennetta, Nicholas Marchiafava, any Defendant and any Defendant's agents, representatives and employees (present and former), or any Defendant's respective successors and assigns, heirs, executors and personal or legal representatives and their insurers (including Greenwich Insurance Company and National Casualty Company), and

> (2) the Carriers (Greenwich Insurance Company and National Casualty Company), including all of their subsidiaries, affiliates, parent companies, divisions, contractors, employees, servants, agents, officers, directors and legal representatives,

and hold free and harmless from and against any and all losses, claims, demands, cause or causes of action or judgments of every kind and character, which may or could be brought for attorneys' fees, contribution or indemnity, and any and all statutory contractual or common law subrogation claims or liens, including, but not limited to, all Hospital liens, workers' compensation subrogation liens, **Medicare** or Medicaid liens, Medicare Advantage Organization liens, Social Security disability liens, health insurance liens, **Federal,** State or local governmental liens.

I am of sound mind and body and fully capable of reading and understanding this agreement. I understand the consequences of my failure to abide by the Extension Act.

**Done at _____ County, _____ this _____ day of _____, \_\_\_\_\_.**

**EXECUTED AND AGREED TO:**

_____                    _____
Xavier Ingram                                                          Date

STATE OF _____

                                              SS.

COUNTY OF _____

I CERTIFY that on _____, _____, Xavier Ingram personally came before me and acknowledged under oath, to my satisfaction, that this person (or if more than one, each person);

> (a)   is named in and personally signed this document, and
> (b)   signed, sealed and delivered this document as his or her act and deed.

Prepared by:

_____

11