# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ 07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn*°
David M. Estes
Adam M. Epstein°

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

Writer's E-mail:
bbaldinger@mazieslater.com

Karen G. Kelsen°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Samuel G. Wildman
Julia S. Slater°
Trevor D. Dickson

°Member of N.J. & N.Y. Bars

June 23, 2022

**Via Electronic Filing**
Honorable Juan R. Sanchez, U.S.C.J.
United States District Court, Eastern District of Pennsylvania
James A. Byrne United States Courthouse
Room 14613
Philadelphia, Pennsylvania 19106-1797

    Re:    Xavier Ingram v. County of Camden, et al.
              Civil Action No.: 1:14-cv-05519

Dear Judge Sanchez:

Please accept this letter brief in support of Plaintiff Xavier Ingram's motion to enforce settlement. On May 6, 2022, and as memorialized in this Court's email, the parties settled this matter. The terms of the settlement were that Defendants were to pay $10 million in exchange for a General Release of all claims. There are no other conditions to settlement. To date, Plaintiff's efforts to consummate this settlement have been delayed by Defendants and thwarted by their interjection of terms and conditions into the General Release that were never discussed, nor agreed to. Plaintiff respectfully requests that this Court, which has jurisdiction over the pending matter, grant the relief sought for the reasons set forth in the Certification of Beth G. Baldinger in Support of Motion to Enforce Settlement ("Baldinger Cert.").

I. **STANDARD**

Courts treat a motion to enforce settlement under the same standard as a motion for summary judgment because the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement. *Washington v. Klem*, 388 F. App'x 84, 85 (3d Cir. 2010) (citing *Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991)). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

Here, there is no genuine dispute that there is a binding, enforceable settlement between the parties. Defendants are to pay $10,000,000.00 in exchange for a General Release of all claims. Baldinger Cert., at ¶ 5, Exhibit "A."

II. **THIS COURT HAS JURISDICTION TO ENFORCE THE SETTLEMENT**

There can be no doubt that this Court has jurisdiction to hear and decide Plaintiff's motion to enforce the settlement. Where, as here, the action remains pending and no stipulation of dismissal has been filed, this Court has jurisdiction to hear Plaintiff's motion and enforce the settlement.[1]

It is true that, because "[f]ederal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute," there is not "automatic jurisdiction" over

---

[1] Similarly, the Third Circuit, pursuant to 28 U.S.C. § 292(b), assigned this cast to the Honorable Juan R. Sanchez "for such a period as is necessary for the disposition of the above-entitled matter." D.E. 298.

2

enforcement of settlement agreements that result in the **dismissal** of a federal case. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  However, it is well-established that the analysis is different where a settlement dispute arises in a matter that remains pending.  As the Court of Appeals for the District of Columbia Circuit has explained:  "**If . . . party seeks to enforce a settlement while the underlying suit remains pending, then the district court has jurisdiction to enforce the related settlement.**"  *T St. Dev., LLC v. Dereje & Dereje*, 586 F.3d 6, 11 (D.C. Cir. 2009) (emphasis added).

The Third Circuit has reached a similar conclusion. In *Bryan v. Erie Cty. Office of Children & Youth*, 752 F.3d 316 (3d Cir. 2014), the Third Circuit explained that it was "[t]he absence of an ongoing matter within the district court's original jurisdiction" following the district court's dismissal of the underlying suit that "left the district court in *Kokkonen* without any basis on which to predicate ancillary jurisdiction" over disputes arising under the parties' settlement agreement. *Id.* at 322. The *Bryan* Court distinguished the circumstances of *Kokkonen* from those of the case before it, where the parties had reached an agreement while litigation of the case was ongoing but the underlying suit had not been dismissed. *Id.* The Third Circuit found this to be a critical distinction, and therefore held that the district court in *Bryan* had erred in concluding that it lacked subject matter jurisdiction to enforce the parties' agreement where the underlying suit had not been dismissed. *Id.*

In short, the case at bar is still pending as no stipulation of dismissal has been entered. Accordingly, pursuant to *Bryan*, this Court has subject-matter jurisdiction to hear Plaintiff's motion and enforce the settlement.

### III. THERE IS A VALID AND ENFROCEABLE SETTLEMENT AGREEMENT

There is a valid, enforceable, and binding settlement agreement between the parties. Defendant should not be permitted to obstruct the consummation by insisting on including material terms to the settlement agreement and General Release that were never negotiated or agreed upon.

"The validity and enforceability of settlement agreements is governed by state contract law." *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 200 (3d Cir. 2012). It is well-established that, in New Jersey, "a settlement agreement between parties to a lawsuit is a contract." *Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990); *see also Zuccarelli v. N.J. Dep't of Envtl. Prot.*, 326 N.J. Super. 372, 380 (App. Div. 1999) ("an agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of fraud or other compelling circumstances, should honor and enforce as it does other contracts." (quoting *Pascarella v. Bruck*, 190 N.J. Super. 118, 124-25 (App. Div. 1983)). The law governing the enforcement of a settlement agreement, thus, holds that a settlement agreement between parties to a lawsuit is a contract like any other contract. *Peskin v. Peskin*, 271 N.J. Super. 261, 275 (App. Div. 1994) (citation omitted).

#### A. The Parties Have Agreed to the Essential Terms and, Thus, There is an Enforceable Settlement Agreement.

The parties in this case have agreed to the essential terms of the settlement and, accordingly, this Court should enforce the settlement.

A contract, like a settlement, is formed where there is offer and acceptance and terms sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty. *U.S. v. Lightman*, 988 F. Supp. 448, 458 (D.N.J. 1997) (citing *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992)). That contract is enforceable if the parties agree on essential terms and manifest an intention to be bound by those terms. *Id.* "So long as the basic

essentials are sufficiently definite, **any gap left by the parties should not frustrate their intent to be bound**." *McDonnell v. Engine Distribs.*, No. 03-1999, 2007 U.S. Dist. LEXIS 70925, 2007 WL 2814628, at *3 (D.N.J. Sept. 24, 2007) (emphasis added) (citing *Hagrish v. Olson*, 254 N.J. Super. 133, 138 (App. Div. 1992) (citation and quotation omitted)).

Here, the parties reached a settlement agreement on May 6, 2022, which was memorialized in an email by this Court that same day: "This will confirm that the above referenced lawsuit has been resolved for the total sum of Ten Million Dollars and Zero Cents ($10,000,000.00) in exchange for which Plaintiff, Xavier Ingram, will execute a general release of all claims. **There are no other conditional terms of settlement**." Baldinger Cert., at ¶ 5, Exhibit "A." (emphasis added). This served as the agreement on the essential terms of the settlement agreement. *See Longo v. First Nat'l Mortg. Sources*, No. 07-04372 (MLC), 2010 U.S. Dist. LEXIS 80510, 2010 WL 3169276, at *4 (D.N.J. July 14, 2010) ("the Court finds that a valid settlement agreement was achieved by Plaintiffs' acceptance of [defendant's] offer of $5,000 in full satisfaction of their claims. . . ."). Both Plaintiff's counsel and Defendants' counsel acknowledged receipt of the email that confirmed the terms of the settlement. Baldinger Cert., at ¶ 6, Exhibit "B." This served as the intention to be bound by the terms of the settlement. Importantly, and as discussed *supra*, there were "**no other conditional terms of settlement**." Baldinger Cert., at ¶ 5, Exhibit "A." (emphasis added). Because the parties agreed on the essential terms and subsequently manifested an explicit intention to be bound by those terms, there is a valid settlement agreement that this Court should must enforce.

5

### B. Defendants Cannot Interject Medicare Obligations in an Effort to Frustrate the Settlement, Nor Do They Have Standing to Do So.

Defendants, in effect, attempt to complicate and confuse what should have been a simple process by interjecting issues related to Medicare benefits, which Defendants concede Plaintiff has never received and is not eligible to receive.

Under current law, Medicare has a right to recover from any entity, including a beneficiary, provider, supplier, physician, attorney, State agency or private insurer that has received a primary payment. 42 C.F.R. § 411.24(g). "If Medicare is not reimbursed..., the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party." 42 C.F.R. § 411.24(i). However, here, because Plaintiff has never received any Medicare benefits, there is no Medicare lien to be repaid. Moreover, because Plaintiff is not eligible – now or in the near future (30 months) – there is no requirement for a Medicare Set Aside ("MSA"). Under these circumstances, Defendants and their insurers have no secondary payor liability or exposure for Medicare. *See* Baldinger Cert., ¶ 14.

Even so, one court has rejected the very attempt Defendants now make in the present case. *Zaleppa v. Seiwell*, 9 A.3d 632 (Pa. Super. Ct. 2010) addressed a private party's means of protecting Medicare's right to reimbursement. There, a jury awarded $15,000 to an injured motorist as a result of an automobile accident. Following the verdict, and prior to tendering a check to plaintiff, the defense raised concerns about its obligations under the Medicare Secondary Payer Act ("MSPA"). In a defense post-trial motion, it was argued that the MSPA requires all parties in litigation to protect the interests of Medicare when resolving claims that involve conditional payments made by Medicare. *Id.* at 634. The defendant requested the trial judge allow it to name Medicare, the plaintiff, and the plaintiff's counsel as payees on the check or, in the alternative, pay the verdict into the trial court pending notification from Medicare that the liens had been satisfied.

*Id.* The defendant argued that she risked potential future liability stemming from the MSPA and its corresponding regulations unless she was able to ensure that Medicare's right to reimbursement was protected. *Id.* at 635.

> The court in *Zaleppa* determined that the defendant's:
>
>> statutory obligation to reimburse Medicare is distinct from Medicare's statutory right of reimbursement. Nothing in § 1395y(b)(2)(B)(iii), or any other provision of the MSPA, expressly authorizes a primary plan to assert Medicare's right to reimbursement as a preemptive means of guarding against its own risk of liability.
>
> [*Id.* at 638.]

Consequently, the court opined that "the statutory scheme established by the MSPA is not designed to enable private parties to act on behalf of the United States government as private attorney general." *Id.* at 639. Furthermore, the court stated that their "review of the statute as a whole reveals that the intent of Congress found within the express language of the MSPA, bestowed only the United States government with the authority to recover outstanding conditional Medicare payments." *Id.*

*Zaleppa* legally dispels of Defendant's factually unsupported effort at interjecting an issue with Medicare in this settlement. There, as here, the MSPA should prohibit "private entities from asserting the interests of the United States government in a post-trial motion or any other phase of the litigation," because there has been no evidence of Medicare payments had been presented. *Id.* at 639. Even assuming, *arguendo*, that Defendants did have standing, there is nothing in the record to suggest Plaintiff has been qualified or is eligible for Medicare. In fact, Plaintiff's counsel provided Defendants' counsel with a letter from the Center for Medicare & Medicaid Services ("CMS") indicating that Plaintiff was not in Medicare's system. Baldinger Cert., at ¶ 12, Exhibit "E." Mr. Cook acknowledged that Plaintiff was not receiving Medicare benefits and that he

7

"received carrier approval to forego a MSA."   Baldinger Cert., at ¶¶ 15-16, Exhibit "H" and Exhibit "I."  Moreover, counsel for Nationwide verified that their check revealed Plaintiff never received any Medicare benefits.  It is undisputed that Plaintiff has **never** received any benefits from Medicare, he does not qualify for Medicare benefits, now or in the near future (30 months).  Accordingly, there is no legal or any other justification for the excessive, overly broad language regarding Medicare which the Defendants are insisting be included in the General Release.  Specifically, Defendants included a four-page addendum regarding Medicare, which is unconscionable and void against public policy.  The provisions objected to include:

- Should future medical treatment related to the Accident be required, **the expense associated with that treatment will be paid from the proceeds of this settlement**.

- **No further medical expense or prescription drug expense related to the treatment I have received or will receive in the future related to the Accident will be submitted to Medicare for payment**, and I will instruct all medical providers rendering such treatment that expense associated therewith should not be submitted to Medicare for payment.

- No liens, including but not limited to liens for medical treatment by hospitals, physicians, or medical providers of any kind have been filed for the treatment of injuries sustained in the Accident, other than a Medicaid lien. **The Medicaid lien has been directly reimbursed by the Carriers.**

*See* Baldinger Cert., Exhibit "O" (emphasis added).

There is no basis, in the law or in the record, for Defendants to obstruct a valid and enforceable settlement based on Medicare obligations that simply do not exist, either now or in the near future.  Defendants cannot seek to add new, material terms to a valid and binding settlement agreement.  *See, e.g.*, *Hyacinthe v. Piedmont Airlines*, No. 20-cv-05222-WB, 2021 U.S. Dist. LEXIS 154407, 2021 WL 3630478, at *4 (E.D. Pa. Aug. 17, 2021) ("Plaintiff's six issues amount to new terms that she cannot insert into the already-existing agreement."); *Alpart v. General Land Partners, Inc.*, No. 07-4457, 2010 U.S. Dist. LEXIS 115846, 2010 WL 4320509, at *2 (E.D. Pa.

8

Oct. 29, 2010) ("While they could most certainly add ordinary and customary terms . . ., they could not inject new terms.").

Defendants also sought to add other terms that were never discussed nor agreed to. For example, Defendants included a provision that the settlement was "subject to final ratification and approval by the Board of Commissioners of the County of Camden" and that payment would not be made until ninety (90) days or 120 days after receipt of the signed settlement agreement or ratification by the Board of Commissioners. *See* Baldinger Cert., at ¶ 8.

Plaintiff has proposed a General Release that releases all claims and provides for repayment of all liens as well as indemnification for any liability related to the liens as well as all other language typically utilized in general releases. Balinger Cert., Exhibit "P." Plaintiff seeks an Order approving Plaintiff's General Release as to effectuate this settlement. Absent an Order from this Court, this settlement will continue to be delayed for no just cause.

## IV. CONCLUSION

Based upon the foregoing, and in the interests of bringing about a just determination and finality to this protracted litigation, Plaintiff respectfully requests this Court grant the motion to enforce settlement.

Respectfully submitted,

**MAZIE SLATER KATZ & FREEMAN, LLC**
*Attorneys for Plaintiff*

By: */s/ Beth G. Baldinger*
    BETH G. BALDINGER, ESQ.

cc:   All Counsel of Record – Via Electronic Filing