**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| XAVIER INGRAM,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>COUNTY OF CAMDEN,<br>CAMDEN COUNTY POLICE DEPARTMENT,<br>JEREMY MERCK,<br>ANTONIO GENNETTA,<br>NICHOLAS MARCHIAFAVA,<br>JOHN SCOTT THOMSON,<br>JOHN DOE(S) 1-50, and ABC ENTITIES 1-10,<br><br>　　　　　　Defendants. | CIVIL ACTION NO. 1:14-CV-05519<br><br>**CERTIFICATION OF<br>BETH G. BALDINGER** |

　　　　BETH G. BALDINGER, of full age, hereby certifies as follows:

　　　　1.　　I am an attorney at law of the State of New Jersey and a partner in the law firm of Mazie Slater Katz & Freeman, LLC, attorneys for plaintiff Xavier Ingram in the above captioned matter. As such, I am fully familiar with the facts and circumstances detailed herein. I submit this Certification in support of this application for approval of attorney's fees for amounts recovered in excess of $2 million.

　　　　2.　　The parties have agreed to settle this case for the sum of $10 million. This settlement was not reached until after 8 years of litigation, and a month-long trial which ended in a mistrial with the jury deadlocked unable to reach a unanimous verdict.

3. Because the settlement is in excess of $2 million, we request an attorney's fee of 33.33 % on the net recovery in excess of $2 million. We have discussed our requested attorney's fee with Xavier Ingram, advised him that he could oppose our application, and he consents to our request. (See, Certification of Xavier Ingram filed herewith)

4. This case involves claims for violation of Plaintiff's civil rights under 42 U.S.C. § 1983 which occurred during an arrest on June 12, 2014 by Camden County Police officers Jeremy Merck, Antonio Gennetta, and Nicholas Marchiafava ("Defendant Officers"). In sum, Plaintiff claimed the Defendant Officers used excessive force during the arrest -- having forcefully kneed him in the neck and then stepped down on his neck rendering him a quadriplegic. Plaintiff also claimed the Defendant Officers failed to provide medical care. More specifically, in violation of their First Responder Training they ignored Plaintiff's complaints and signs of paralysis, sat him up and dropped him on his face to put him in a police car, aggravating his injuries. The claims against the Defendant Officers under 42 U.S.C. § 1983 were for excessive force, failure to provide medical care, and supervisory liability. Defendant Officers denied these claims and asserted Plaintiff's injuries were due to a slip and fall immediately before there was any physical contact with the arresting Defendant Officers.

5. Plaintiff also asserted *Monell* claims under 42 U.S.C. § 1983 against Camden County and Camden County Police Department Chief of Police John Scott Thomson (collectively "CCPD") alleging failures in training, as well as failures in supervision and discipline of its officers through Internal Affairs led to the excessive use of force and violations of Plaintiff's civil rights. These claims were vigorously denied by the defense.

6. Plaintiff also asserted parallel state law claims for negligence against the Defendant Officers and CCPD, as well as a state law claim for false arrest. These claims were also vigorously denied.

7. My firm was retained on June 13, 2014, the day after Mr. Ingram was injured. We immediately canvassed the scene, located and took statements from eyewitnesses; located and secured all surveillance video footage; and took other vital steps to locate and secure evidence that was critical to this case.

8. This was a case which was vigorously litigated by all parties. The Defendants were represented by 3 separate groups of lawyers.

9. In litigating this case over the past 8 years, Mazie Slater expended significant time and resources, with the great majority of the time on the file expended by Senior Partner, Beth Baldinger and associate, Cory Rothbort, a certified trial attorney. Due to the significant time commitment required by this, we were compelled to turn down a number of other potential matters.

10. Given the wide range of contested issues -- on liability and damages -- together the parties had 20 experts from a number of disciplines: experts on injury causation; police practices; forensic evidence practices; medical issues relating to quadriplegia; life care planning and economic valuations; as well as life expectancy.

11. On the critical issue of injury causation, plaintiff retained a team of highly respected experts: a board-certified radiologist, William D. Matuozzi, M.D.; as well as one of the country's leading biomechanical engineers, Dr. Paul Ivancic and board certified orthopedic surgeon, specializing in spinal trauma, Dr. Yue both out of Yale University. Plaintiff's experts opined the constellation of injuries could not have occurred in a slip and fall as the defense asserted, but was caused by the tremendous amount of force applied to Plaintiff's neck by the officers' knee and

foot stepping down. To effectively communicate the medical, biomechanical, and scientific evidence to the jury, we retained a medical illustration/animation firm to work with our experts. Together they created a collection of demonstrative slides and animations which were extremely helpful at trial.

12. Defendants engaged a responding team of injury causation experts: Dr. Richard Chesbrough, radiologist; Biomechanical engineer, Dr. Scott Batterman; and neurosurgeon Dr. Peter LeRoux. A great deal of time and attention went into preparing for each of these depositions, as well as for the cross examination of the experts at trial.

13. The Monell claims were heavily contested. Plaintiff prevailed on a motion to compel production of the internal affairs (IA) records of Camden County Police Department. The review and analysis of each IA case record, including the audio statements and video, was labor intensive and time consuming. However, the result was a compelling body of evidence to substantiate these claims.

14. Plaintiff retained two police practices experts. Dr. Christopher Chapman's report was approximately 300 pages long, reflecting the magnitude of his work product and opinions. Dr. Chapman testified at trial for 2.5 days. Former Captain, John Ryan, of the New Jersey State Police, addressed all of the forensic evidence issues in this case – which were substantial and of great import. Defendants countered with their police practices expert (also named) John Ryan. Tremendous work went into preparing for Mr. Ryan's deposition, as well as his cross exam at trial.

15. The severity of Plaintiff's injuries, paralysis from the neck down with associated pain and complications were not in dispute. However, the necessity of medical care and services for such injuries was hotly contested. Plaintiff produced multiple expert reports and presented trial

testimony from his treating physicians -- experts in their respective fields of medicine: Dr. John Kirby, Dr. Guy Fried from Magee Rehabilitation, as well as Deb Castellucci, R.N., catastrophic care nurse. They addressed Mr. Ingram's past, current and future conditions and complications; the treatments rendered and needed; his diagnosed conditions and prognosis as a quadriplegic. Dr. Fried reviewed and supported the life care plan prepared by plaintiff's expert, Edmond Provder. The life care plan was valued by economist, Kris Kuscma.

16. Defendants challenged every aspect of plaintiff's damages through their own team of experts: Life care planner, Valerie Parisi; medical cost expert, Chad Staller; psychologist, Dr. Weiss; and life expectancy expert, Dr. Shavelle.

17. There was significant discovery taken in this case, including multiple sets of interrogatories and numerous document demands. Significantly, **more than 60 depositions** were taken, many of which were videotaped.

18. We were very successful in motion practice, defeating Defendants' motions for summary judgment, as well as defeating Defendants' *Daubert* motions to disqualify plaintiff's experts. We also prevailed in various discovery motions. Importantly, we were successful in the majority of our motions *in limine*.

19. Preparing this case for the Final Pre-Trial, and the actual trial was another enormous undertaking led by Beth Baldinger, along with trial counsel Cory Rothbort and Trevor Dickson. It took several months to organize well over 1,000 exhibits consisting of tens of thousands of pages of documents, video clips and audio clips. As the trial was "paperless", every exhibit was put into electronic format. Plaintiff retained trial support expert, James Cortopassi, to prepare the electronic record for trial and to be in Court every day to handle the audio/video, and

present trial exhibits as needed. Mr. Cortopassi's services proved indispensable, both before and during trial.

20. Prior to and throughout the duration of the month long trial, plaintiff's trial team resided at a local hotel in Mt. Laurel and worked out of a "war room" set up for trial. In addition to the 9 to 5 schedule for each trial day, every evening was spent preparing for the next day's witnesses, as well as filing numerous briefs on issues as they arose. In my many years of trying cases, this was the most demanding trial. Special arrangements were made to bring Mr. Ingram in from his nursing home by medical transport so he could testify in person before the jury.

21. It should be noted that our representation and advocacy for Mr. Ingram exceeded the four corners of this legal case. Over the past 8 years, Mr. Ingram's extraordinary predicament was such that he had to live in nursing homes, where his age and medical needs were outside the norm. Throughout this time, we have needed to advocate for specialized care, as well as equipment and services needed. There were many medical emergencies. We brought in Deborah Castellucci, RN, a catastrophic care consultant, to address and manage the day to day medical needs of Mr. Ingram. Along with his family, it has literally taken a village of caring professionals, along with our firm, to support and advocate for Mr. Ingram's health and well-being.

22. There was no certain recovery in this case; every case has risk and the jury could have accepted the Defendants' theories and returned a "no cause". If that occurred, then we alone would have been responsible for the case expenses and we would not have collected any fee despite spending significant time and money litigation this matter. The case expenses are just over $800,000 -- a very significant sum. As stated by our Supreme Court, lawyers should be compensated for the risks they take on contingent fee matters: "A lawyer who both bears the risk of not being paid and provides legal services in not receiving the fair market value of his work if

he is paid only for the second of these functions." Rendine v. Pantzer, 141 N.J. 292, 333 (1995), citing John Leubsorf, The Contingency Factor in Attorney Fee Awards, 90 Yale L.J. 473, 480 (1981).

23. As required by the Court Rule and the comment thereto, in making this application for a fee I am required to discuss my experience, reputation and ability. I have tried many jury and bench trials over my 37 years of practicing law. I am experienced in complex litigation and have secured many verdicts and settlements exceeding $1 million, and several in excess of $10 million, these include but are not limited to a $166 million (jury verdict with partner, David Mazie, reversed by the Appellate Division); $10 million (jury verdict, failure to provide police protection, NYC); $12.5 million (settlement medical malpractice); $7.45 million (settlement medical malpractice); $5 million (confidential, settlement wrongful death);  $5 million (verdict/settlement with partner David Mazie, DYFS failure to protect); $2.8 million (wrongful death, football concussion); $2.5 million (confidential, premises liability); $2 million (settlement pedestrian struck by a bus); $1.85 (settlement inadequate security); $1.7 (settlement accounting/legal malpractice); $1.475 (settlement tractor trailer death); and many more settlements in the $1 million range.  I have also handled a number of cases of police misconduct, including the first positional asphyxiation wrongful death case brought in New Jersey, Estate of Robert Stein vs. Bridgewater Township Police, et al.  which settled in plaintiff's favor.

24. I have been named to the Best Lawyers in America numerous times, and have been included in the National Trial Lawyers, Top 100; the National Women Trial Lawyers, Top 100, and National Women Trial Lawyers, Top 25 in New Jersey.  Over the past 4 years, I have also been named to the Lawdragon 500, which lists the top 500 plaintiff's attorneys in the country.  Our law firm has been recognized in New Jersey and nationally for its accomplishments, including

7

National Law Journal, Elite Trial Lawyer, Medical Malpractice Law Firm of the Year (2021); New Jersey, Litigation Department of the Year (2018); and New Jersey Personal Injury Law Firm of the Year (2013).

25. The settlement of this case for $10 million is a significant accomplishment. Based on our research, we believe it is the highest settlement of any police excessive force case in New Jersey history. Nationally, it falls just behind the settlements reached with the family of George Floyd, as well as the settlement with the family of Breonna Taylor – cases in which justice and accountability from the police were sought. Moreover, settlement of this case received national and international press coverage through news outlets including Associated Press, CNN, CBS, and NBC, which is another recognition of its import.

26. Based on the work we performed, the results we achieved, and my expertise, we request that the Court grant our fee request.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

*Beth G. Baldinger*
BETH G. BALDINGER

Dated: July 15, 2022