# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ  07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn*°
David M. Estes
Adam M. Epstein°

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

**Writer's Direct Dial & Email:**
**973-228-0473**
**bbaldinger@mazieslater.com**

Karen G. Kelsen°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Samuel G. Wildman
Julia S. Slater°
Trevor D. Dickson

°Member of N.J. & N.Y. Bars

August 2, 2022

**VIA ECF ONLY**
Honorable Juan R. Sanchez, U.S.C.J.
United States District Court, Eastern District of Pennsylvania
James A. Byrne United States Courthouse
Room 14613
Philadelphia, Pennsylvania 19106-1797

> Re:   **Xavier Ingram v. County of Camden, et al.**
>        **Civil Action No.: 1:14-cv-05519**

Dear Chief Judge Sanchez:

This letter brief is submitted in further support of Mazie Slater Katz & Freeman's ("Mazie Slater") pending Motion to Approve Attorney's Fee. (D.E.507)  As the Court requested, this letter brief explains why this Court has jurisdiction to consider and approve Mazie Slater's application for an attorney's fee of 33 1/3% of the net recovery in excess of $2 million in accordance with N.J. Ct. R. 1:21-7.[1]

That this Court is authorized to address this application was made clear by the Third Circuit in Mitzel v. Westinghouse Elec. Corp., 72 F.3d 414, 417 (3d. Cir. 1995) which noted that "contingency fee agreements… fall within a court's 'supervisory power over the members of its

---

[1] As the Court requested, I am attaching as Exhibit "A" a copy of our contingency fee retainer agreement with Mr. Ingram.

Hon. Juan R. Sanchez, U.S.C.J.
August 2, 2022
Page 2

bar,'" Schlesinger v. Teitelbau, 475 F.2d 137, 141 (3d Cir.), cert. denied, 414 U.S. 1111, 94 S.Ct.

840, 38 L.Ed.2d 738 (1973); see Dunn v. H.K Porter Co., 602 F.2d 1105, 1110, n.8 (3rd Cir. 1979)

Based on this "supervisory power", the Third Circuit affirmed this Court's application of N.J. Ct.

R. 1:21-7 when it determined the fee to be awarded to plaintiff's counsel.

More recently, in King v. County of Gloucester, 483 F. Supp. 2d 396, (D.N.J. Feb. 26,

2007), Magistrate Judge Schneider considered counsel's fee application under N.J. Ct. R. 1:21-

7(f) and awarded a fee of 33 1/3% on the amount recovered in excess of $2 million. Although the

case was never tried, the court granted the application for a 1/3 fee based on the "significant time

and effort" made by plaintiff's counsel. In particular, the court found:

> This case was difficult to litigate and was vigorously contested by the defendants
> at all stages of the proceedings. The case was made even more difficult because a
> grand jury did not indict any of the defendants. Also, [plaintiff's decedent] was
> assailed in the press as an out-of-control 300 pound, mentally ill inmate. In order
> to convince the [defendants] to settle for a significant sum, [plaintiff's attorney]
> was compelled to conduct significant discovery and to produce comprehensive and
> credible expert reports.... Time records document the extraordinary time they spent
> on this case....Id. at 399
> 
> &ast;&ast;&ast;&ast;
> 
> The Court is mindful of the significant time and effort plaintiff's small law office
> spent on this matter... this litigation consumed a large percentage of [plaintiff's
> attorney's] resources (without a guarantee of any renumeration) and that this
> substantial investment detracted from other potentially profitable engagements
> [they] could accept....Id.
> 
> &ast;&ast;&ast;&ast;
> 
> This is far from a "run of the mill" case. The legal issues in this case are complex
> and the proceedings were "hard-fought." Nevertheless, plaintiffs' counsel litigated
> this case with exemplary care and skill. Id.

The argument supporting our request for a 33 1/3% fee is even more compelling as this case was

not settled until after a month-long trial involving a significant investment of attorney time, firm

resources and significant monetary expense.

Hon. Juan R. Sanchez, U.S.C.J.
August 2, 2022
Page 3

This Court has considered an application for an attorney's fee based on <u>N.J. Ct. R.</u> 1:21-7 on numerous other occasions. See e.g., <u>Estate of McMahon v. Turner Corp.</u>, 2007 WL 2688557 *3 (D.N.J. September 7, 2007) (Magistrate Judge Schneider granted counsel's request for an attorney fee pursuant to <u>N.J. Ct. R.</u> 1:21-7(f)) (A copy of <u>McMahon</u> is attached hereto as Exhibit "B"); <u>Nikoo v. Cameron</u>, 2021 WL 672930 *3 (D.N.J. February 22, 2021) (Judge Kugler considered an application for an attorney's fee under <u>N.J. Ct. R.</u> 1:21-7(f) and ruled that a fee of 33 1/3% or more would be warranted where a Court finds that there was "exceptional lawyering") (A copy of <u>Nikoo</u> is attached hereto as Exhibit "C".)

As these cases -- and many others -- demonstrate, this Court has jurisdiction to address the pending Motion to Set Attorney's Fees. Moreover, as this Court noted in this morning's teleconference, plaintiff's counsel prepared and presented a compelling case which warrants the fee sought. Accordingly, for the reasons set forth herein and in our prior submission, it is respectfully requested that this Court enter an Order approving the pending fee application.

Respectfully submitted,

**MAZIE SLATER KATZ & FREEMAN, LLC**
Attorneys for Plaintiff

<u>/s/ Beth G. Baldinger</u>
BETH G. BALDINGER, ESQ.

cc:    Counsel of Record
       Xavier Ingram (Via Email)

# EXHIBIT A

## AGREEMENT TO PROVIDE LEGAL SERVICES

THIS AGREEMENT, dated June 13, 2014, is made

BETWEEN the Client(s)  ASHLEY INGRAM on behalf of XAVIER INGRAM

whose address is      142  Branch Village
                      Camden, New Jersey 08104

                      referred to as "You"

AND                   MAZIE SLATER KATZ & FREEMAN, LLC

whose address is      103 Eisenhower Parkway
                      Roseland, New Jersey 07068,
                      referred to as the "Law Firm"

1.      **Your Injury or Damages.**  You suffered injuries or damages due to _____.

2.      **Legal Services.**  The Law Firm will protect your legal rights and do all necessary legal work to properly represent you in this matter.  We will not handle any workers compensation, social security, taxation, or disability insurance matters, for which you will need to retain separate counsel who specializes in these areas of the law.

3.      **Cost and Expenses.**  We will incur (and pay on your behalf) all expenses in connection with the institution and prosecution of your claim.  Such expenses may include, among other things, experts' fees, court costs, service fees, investigators' fees, deposition costs, extraordinary photocopying, long-distance telephone and postage expenses.  We may elect to borrow some or all of these expenses from a bank.  You will <u>not</u> be required to pay for usual and customary law office overhead expenses, such as local telephone charges, routine photocopying and postage costs.  Once there is a recovery, the above-listed costs and expenses and any interest charged by the bank will be deducted from the recovery.  The remaining amount of the recovery will be apportioned in accordance with Paragraph 4.

4.      **Legal Fees.**  If the Law Firm recovers money for you which is greater than your costs and expenses (see paragraph 3), you will pay the Law Firm a legal fee.  The fee will be based on a percentage of the net recovery.  Net recovery is the total recovered on your behalf, minus your costs and expenses, and minus any interest included in a judgment pursuant to R.4:42-11(b).  The fee will be as follows:
                        33-1/3% of the first $500,000 net recovery;
                        30% of the next $500,000 net recovery;
                        25% of the next $500,000 net recovery;
                        20% of the next $500,000 net recovery.

The above fees may be increased by the Court if they are deemed inadequate. Fees on net recoveries exceeding $2,000,000.00 will be determined by the court. If we do not collect any money by way of settlement or judgment, you will <u>not</u> be responsible to pay any legal fee.

5.    Reduced Fees for Infants or Incompetents. (Check one)

( X ) This Agreement is not signed on behalf of an infant or an incompetent.

(    )  The legal fees will be reduced to 25% of the net recovery for a minor child if a settlement occurs without the Law Firm commencing a trial on the minor child's behalf. If trial is commenced, the fee shall be as set forth above.

6.    Alternative Fee Plan. The Law Firm has offered to represent you and charge you legal fees on an hourly basis which you will be required to pay even if you recover no money. You have rejected this and have, instead, agreed to pay the contingent fees, as set forth in this Agreement.

7.    Investigation. You acknowledge that the Law Firm has taken this representation without the opportunity to review all of your medical records. At this point, we have been retained to investigate whether or not there is a claim, and to file a lawsuit in the event that we deem the case to be viable. You agree that should we be unable to establish a claim or retain an expert, or if we do not deem the case to be cost effective, we will have the unilateral right to withdraw as your counsel.

Signatures.    You have read this Agreement. The Law Firm has answered all of your questions and fully explained this Agreement to your complete satisfaction. You have been given a signed copy of this Agreement.

Law Firm:

MAZIE SLATER KATZ & FREEMAN, LLC

By: _____          _____
        ADAM M. EPSTEIN      (Attorney)          ASHLEY INGRAM            (Client)
                                                                        On Behalf of XAVIER INGRAM

# EXHIBIT B

2007 WL 2688557
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

ESTATE OF Donatius MCMAHON, et al., Plaintiffs,
v.
The TURNER CORPORATION, et al., Defendants.

Civil No. 05-4389(JBS).
|
Sept. 7, 2007.

**Attorneys and Law Firms**

Sean E. Quinn, Sheridan and Murray, Thomas W. Sheridan, The Sheridan Firm, Audubon, NJ, for Plaintiffs.

Deborah Ann Plaia, Raymond J. Michaud, III, Marshall, Dennehey, Warner, Coleman & Goggin, Mark Joseph Dianno, Salmon, Ricchezza, Singer & Turchi, L.L.P., Cherry Hill, NJ, for Defendants.

*OPINION AND ORDER*

JOEL SCHNEIDER, United States Magistrate Judge.

**\*1** This matter is before the Court on "Plaintiff's Amended Petition for Approval of Wrongful Death Settlement and Attorney's Fees" [Doc. No. 32]. Plaintiff supplemented the Petition with her August 24, 2007 submission which included the Certification of Thomas W. Sheridan, Esquire with attachments. Although defendants F raco Products, Ltd. and Fraco Products, Inc. d/b/a Fraco USA ("Fraco") do not oppose plaintiff's application and the proposed settlement allocation and payment of attorney's fees, they filed a Reply objecting to plaintiff's characterization of the evidence [Doc. No. 33]. The Court held a hearing on plaintiff's Petition on August 27, 2007. Subsequent to the hearing plaintiff supplied this Court with a copy of the revised "Bobbie Butz-McMahon Irrevocable Trust for the Benefit of Victoria McMahon and Colleen McMahon." (Exhibit "A"). The Court also received the parties' executed Release and Settlement Agreement. For the reasons to be discussed plaintiff's Petition is GRANTED.

*Background*
This action arises out of an accident that occurred on September 9, 2003. On that date, Donatius McMahon ("McMahon") was killed in a construction accident in Camden, New Jersey. At the time of his death McMahon was working on the construction of an eight-story building for Camden County College's downtown campus when the scaffolding supporting him collapsed. Defendant TurnerConstruction Company, a. subsidiary of Defendant Turner Corporation ("Turner"), served as the general contractor for the construction project. At the time of his death McMahon was employed as a union glazer for King Glass Company ("King Class"), a Pennsylvania based glazing contractor that Turner subcontracted to perform all window, door and curtain wall installation on the project. King Glass entered into an agreement with Fraco to rent and assemble scaffolding equipment for the project. Fraco is based in Montreal, Canada.

McMahon was killed when the scaffolding on which he was working fell 30 feet to the ground. Plaintiff alleges in her moving papers that after McMahon hit the ground he was crushed and killed when the equipment loaded onto the scaffolding platform crashed onto him. McMahon was 44 years old at the time of his death. He is survived by his wife, Bobbie McMahon, and two children: Colleen (currently 10 years old) and Victoria (currently 13 years old).

After the accident plaintiff hired Thomas W. Sheridan, Esquire, and Sean E. Quinn, Esquire, of the Sheridan Firm to represent them under a contingent fee agreement. The complaint in this matter was filed on September 8, 2005 by Bobbie McMahon on behalf of the Estate of Donatius McMahon and individually in her own right. After extensive efforts the case recently settled.

Plaintiff's counsel engaged in extensive discovery and preparation prior to the settlement of this case. Document production from defendants exceeded 50,000 pages, filling approximately 75 boxes. Many of the documents produced by Fraco were written in French and required translation. Plaintiff's counsel also requested significant electronic discovery, necessitating the review of thousands of emails and other electronic documents. Additionally, twelve (12) depositions were completed at the time of settlement, many of which were videotaped and required counsel to travel to out of town locations.

**\*2** Beyond this extensive discovery, Plaintiff's counsel expended large sums of time and money securing and conferring with various experts and consultants. Plaintiff's counsel retained eight. experts and consultants, and hired a media group to prepare a "settlement documentary."

Plaintiff's attorneys incurred $139,748.09 in costs to pursue the case. After extensive sessions with a mediator, the parties settled this case for $3.65 million. Plaintiff's counsel requests a fee of $1.1 million, which after reimbursement of costs, represents 31.3% of the net settlement proceeds.

*Fee Approval*

The awarding of attorney's fees in this case is governed by N.J.R. 1:21-7(c). This Rule provides a statutory limit for contingent fees and states:

> In any matter where a client's claim for damages is based upon the alleged tortious conduct of another, ..., an attorney shall not contract for, charge or collect a contingent fee in excess of the following limits:
>
> (1) 33 1/3% on the first $500,000 recovered;
>
> (2) 30% on the next $500,000 recovered;
>
> (3) 25% on the next $500,000 recovered;
>
> (4) 20% on the next $500,000 recovered;
>
> (5) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof.

While this graduated fee schedule ordinarily represents the outer limits in cases governed by Rule 1:21-7, paragraph (f) permits an attorney to apply for an increased fee if he considers the statutory fee schedule "inadequate." Moreover, on all settlement amounts received in excess of $2 million, an attorney must apply for a reasonable fee pursuant to paragraph (f). The instant Petition requests an enhanced fee under this section and approval of the fee on the settlement amount recovered in excess of $2 million. *See* N.J.R. 1:21-7(c) (5).[1] The Court will accordingly determine whether the total requested fee of $1.1 million or 31.3% of the net settlement proceeds, is reasonable in view of all relevant circumstances.

When deciding whether to grant a request for an enhanced fee pursuant N.J.R. 1:21-7(f), New Jersey Rule of Professional Conduct 1 .5 provides guidance as to what factors should be examined to evaluate what constitutes a reasonable fee. These factors are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and the ability of the lawyer or lawyers performing the services;

**\*3** (8) whether the fee is fixed or contingent.

Additionally, several New Jersey cases guide the determination of granting an increased fee. In two recent cases this Court wrote that, "[i]n considering a fee request under Rule 1:21-7(f), a court must make a reasonable fee determination in light of all the circumstances." *King v. County of Gloucester, et al.,* 483 F.Supp.2d 396, 398 (D.N.J.2007); *Butterly v. Tamerlane Campground, Inc.,* C A. No. 03-3352(JEI), 2007 WL 1827209, at \*2. *See also Bolle v. Community Memorial Hospital,* 145 N.J.Super. 593, 595-96, 368 A.2d 935 (App.Div.1976). The Third Circuit has recognized that:

> [t]he New Jersey caselaw instructs that the attorney seeking an increased fee must demonstrate that (1) the fee allowed under [Rule 1:21-7(c) ] is not reasonable compensation for the services actually rendered, and (2) the case presented problems which required exceptional skills beyond that normally encountered in such cases or the case was unusually time consuming.

*Mitzel v. Washington Elec. Corp.,* 72 F.3d 414, 418 (3d Cir.1995), *citing Wurtzel v. Werres,* 201 N.J.Super., 544, 549, 493 A.2d 611 (App.Div.1995). In addition, this

Estate of McMahon v. Turner Corp., Not Reported in F.Supp.2d (2007)

Court has noted that two especially important factors courts consider in determining a reasonable fee are whether the case presented problems which required exceptional skills beyond that normally encountered in such cases or the case was unusually time consuming, King, 483 F.Supp.2d at 399; Butterly, at *3. The New Jersey Supreme Court has also stated that "[i]t is instructive to point out that the element of uncertainty of recovery is often important in determining whether a contingent fee as ultimately charged is reasonable or excessive." Matter of Reisdorf, 80 N.J. 319, 329, 403 A.2d 873 (1979).

After reviewing the work of plaintiff's counsel and the background circumstances in this matter, the Court finds that the requested fee of $1.1 million is fair and reasonable. As already noted, the discovery and preparation undertaken by plaintiff's counsel was far-reaching, complicated and expensive. According to plaintiff's counsel, every trial attorney and staff member at their relatively small law firm committed a significant amount of time to preparation of this case, presumably to the exclusion of other cases. These factors weigh heavily in the Court's analysis as mandated by N.J.R.P.C. 1.5(1) and (2).

It is noteworthy that plaintiff's attorneys overcame several significant obstacles before they reached a settlement. Initially, plaintiff overcomes an unfavorable OSHA report regarding the accident. After an investigation following the accident, OSHA placed all of the blame for the scaffolding collapse upon King Glass and its employees. As a result, plaintiff faced the possibility that she would be limited to recovering McMahon's worker's compensation benefits. Nevertheless, due to the skill and hard work of plaintiff's counsel, defendants became convinced that they faced significant liability. In addition, the potential damages for pain and suffering could have been substantially limited if the jury determined that McMahon died instantaneously. Plaintiff's counsel, however, was able to gather persuasive evidence to create a fact question whether McMahon died instantly. This plainly was a significant factor in motivating the defendants to settle for a substantial sum. Also, an autopsy performed on McMahon after his death was positive for marijuana in his urine. Plaintiff's attorneys successfully persuaded defendants that a jury could find that this did not impact the cause of the accident. In light of these circumstances, the settlement reached by plaintiff's counsel represents an excellent result in a challenging, risky and timeconsuming case. Therefore, this Court approves the requested fee of $1,100,000, or 31.3% of the net settlement proceeds. [2]

*4  This Court has also reviewed the costs incurred by plaintiff's counsel in this litigation and has determined that they were reasonably incurred and are fair and reasonable. These costs total $139,748.09 and should be reimbursed.

*Settlement Allocation*

Plaintiff's Petition also requests this Court to approve the proposed allocation of the net settlement proceeds under the New Jersey Survival and Wrongful Death Acts, N.J.S.A. 2A:15-3 and N.J.S.A. 2A:31-1. After payment of attorney's fees and costs, the net recovery to plaintiff is $2,410,251.91. Plaintiff proposes that $1,935,251.91 be allocated to the wrongful death action, and that $475,000 be allocated to the survival action. The Court finds that the proposed allocation is reasonable in view of the damages available under these statutes. The Wrongful Death Act allows the decedent's beneficiaries to recover damages for pecuniary loss sustained as result of a death. N.J.S.A. 2A:31-1. These damages include any loss in financial value attributable to lost support, services, assistance, care and guidance. The Survival Act, on the other hand, allows the administrator of the decedent's estate to recover for any claims the decedent himself would have had if he was living, N.J.S.A. 2A:15-3. As plaintiff's Petition correctly states, the majority of damages in this case were recoverable under the Wrongful Death Act. The decedent incurred no medical expenses, a question existed as to the pain and suffering he suffered, and the decedent lost limited earnings-damages commonly recovered under the Survival Act. The beneficiaries' loss of support, services, assistance, guidance, and care, however, was substantial. Therefore, the Court approves plaintiff's proposed allocation of the settlement proceeds among the survival and wrongful death actions,

*Allocation of Wrongful Death Claim*

The amount recovered under the Wrongful Death Act must be allocated among the decedent's beneficiaries. According to statue:

> The amount recovered in proceedings under this chapter shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same. If any

of the persons so entitled were dependent on the decedent at his death, they shall take the same as though they were sole persons so entitled, in such proportions, as shall be determined by the court without a jury, and as will result in a fair and equitable apportionment of the amount recovered, among them, taking into account in such determination, but not limited necessarily thereby, the age of the dependents, their physical and mental condition, the necessity or desirability of providing them with educational facilities, their financial condition and the availability to them of other means of support, present and future, and any other relevant factors which will contribute to a fair and equitable apportionment of the amount recovered, N.J.S.A. 2A:31-4. The total amount to be allocated is $1,935,251.91. Plaintiff proposes that $1,635,251.91 be allocated to Bobbie McMahon, $150,000 to Colleen McMahon, and $150,000 to Victoria McMahon. The Court finds that this allocation is a fair and equitable apportionment of the amount recovered taking into account all of the statutory factors in N.J.S.A. 2A:31-4. The Court notes that the period of substantial dependency on decedent would have been much longer for decedent's widow than for his two children, who will reach majority in five and eight years respectively. The Court also recognizes that the decedent's widow must support her two children until their majority.[3] In view of these considerations, the Court approves plaintiff's proposed allocation of the settlement proceeds from the wrongful death claim.

*5 Accordingly, for all the foregoing reasons, it is this 7th day of September, 2007,

ORDERED that the settlement of this case for $3.65 million is APPROVED; and

IT IS FURTHER ORDERED that Sheridan's application for reimbursement of litigation costs in the amount of $139,743.09 is APPROVED; and

IT IS FURTHER ORDERED that Sheridan's application for attorney's fees in the amount of $1.1 million is APPROVED and the gross payment to Sheridan from the settlement proceeds is $1,239,748.09 ($1.1 million + $139,748.09); and

IT IS FURTHER ORDERED that pursuant to the settlement $1,935,251.91 of the net settlement proceeds is allocated to the wrongful death claim. The sum of $1,635,251.91 is allocated to Bobbie McMahon. Colleen McMahon and Victoria McMahon shall each be allocated $150,000 as their share of the wrongful death proceeds; and

IT IS FURTHER ORDERED that the sum of $475,000 is allocated to the survival claim, and Bobbie McMahon as the sole intestate heir under N.J.S.A. 3B:5-3a(2) is entitled to the full recovery of this amount; and

IT IS FURTHER ORDERED that $150,000 on behalf of Colleen McMahon and $150,000 on behalf of Victoria McMahon shall be paid into "The Bobbie Butz-McMahon Irrevocable Trust for the Benefit of Victoria Belle McMahon and Colleen Caroline McMahon." ("Exhibit A"). The Court has reviewed the Trust and is satisfied that it is fair and reasonable and protects the interests of the minors. The Court is also satisfied after reviewing all relevant facts that the circumstances involved in this case justify depriving the minors of absolute and unrestricted enjoyment of a portion of their allocated settlement money upon attaining majority; and

IT IS FURTHER ORDERED that nothing in this Order eliminates the need for plaintiff to comply with all applicable laws regarding the decedent's estate; and

IT IS FURTHER ORDERED that all documents and agreements referred to herein shall be interpreted in accordance with New Jersey law; and

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter to address disputes and issues that arise from the settlement of this litigation; and

IT IS FURTHER ORDERED that to the extent not already done all settlement proceeds shall be paid by the defendants to plaintiff within thirty (30) days of the date of the entry of this Order; and

IT IS FURTHER ORDERED with the consent of all parties that since this case is settled and the settlement has been approved by the Court, this matter is DISMISSED.

### SHERIDAN & MURRAY, LLC

Attorneys at Law

403 South White Horse Pike

One Logan Square, Suite 3000

Audubon, NJ 08106

(856) 216-2200 * Fax (856) 216-2342

Toll Free (877) 699-7800

*www.sheridanandmurray.com*

130 North 18th Street

Philadelphia, PA 19103

(215) 977-9500

Fax (215) 977-9800

Sean E. Quinn

Direct Email: *squinn@sheridanandmurray.com*

Admitted to PA & NJ Bars LLM in Trial Advocacy

September 5, 2007

**\*6  *Via Telefax and Regular Mail***

Honorable Joel Schneider

Mitchell H. Cohen U.S. Courthouse

1 John F. Gerry Plaza, Suite 2060

P.O. Box 887

Camden, NJ 08101

**RE: Estate of Donatius McMahon v. Turner Construction, et. al.**

**USDC of New Jersey, Civil Action No. 7901-05**

**Our File No.: 1032-001**

Dear Judge Schneider:
As you are aware, this office represents the Plaintiff in connection with the above-referenced matter.

Enclosed please find the revised Irrevocable Trust for Victoria McMahon and Colleen McMahon for your review in connection with the pending Petition for Approval of Wrongful Death Settlement and Attorney's Fees, It is believed that the revised Trust addresses the concerns raised by Your Honor in our August 31, 2007 telephone conference.

Please be advised that the enclosed Trust was prepared by Mrs. McMahon's trusts and estates counsel, John Lolio, Jr., of Sherman, Silverstein, Kohl, Rose & Podolsky, PA. The investment counselor selected by Mrs. McMahon is John Costa of the AIG Advisor Group-Royal Alliance. As set forth more fully in the Trust, the settlement proceeds will be deposited in a federally insured deposit account with the AIG Advisor Group-Royal Alliance.

EXHIBIT "A"

If Your Honor requires any additional information or documentation, please do not hesitate to contact the undersigned. Thank you for your consideration and courtesies in connection with this matter.

Respectfully Submitted,

SEAN E. QUINN

Enc.

*Via Telefax and Regular Mail*

cc: Mark J. Dianno, Esquire

Estate of McMahon v. Turner Corp., Not Reported in F.Supp.2d (2007)

Raymond J. Michaud, Esquire (w/o enc.)

THE BOBBIE BUTZ-McMAHON

IRREVOCABLE TRUST

FOR THE BENEFIT OF

VICTORIA BELLE McMAHON

AND

COLLEEN CAROLINE McMAHON

**TIN: (FBO Victoria) XX-XXXXXXX**

**TIN: (FBO Colleen) XX-XXXXXXX**

**TRUST AGREEMENT,** effective August 1, 2007, between BOBBIE BUTZ-McMAHON now of Delran, Burlington County, New Jersey (hereinafter called "Grantor") and BOBBIE BUTZ-McMAHON and WILLIAM BUTZ (hereinafter called "Trustees").

I. *TRUST PROPERTY.*
Grantor hereby irrevocably transfers to the Trustees any property identified in Schedule "A" attached hereto and made a part hereof. Such property, including but not limited to the proceeds/property added to the trust from the wrongful death settlement of Grantor's husband's estate pursuant to a Court Order of Disbursement which shall be initially deposited with AIG Advisor Group, Royal Alliance in a federally insured deposit account, and all investments and reinvestments thereof ("trust principal") shall be held for the purposes and uses and on the conditions hereinafter stated. Any bank shall be paid reasonable fees which are customary or consistent with the industry's practice. Quarterly financial statements shall be obtained and maintained by the Trustees at 10 Mulberry Street, Delran, New Jersey, for all property transferred to this Trust.

II. *DISPOSITIVE PROVISIONS.*
**\*7** As of the date of this instrument, the Trustees shall divide and allocate the trust principal into two

separate equal trusts named respectively for Grantor's children, VICTORIA BELLE McMAHON and COLLEEN CAROLINE McMAHON. Each trust named for a child of Grantor shall be administered as follows:

A. Commencing on the date of this instrument and during the life of the child for whom the trust is named:

1. The Trustees shall distribute to the child such amounts of the net income of the trust named for the child as the child, or the lawful guardian of the child on her behalf, may demand by written instrument delivered to the Trustees, subject to the following restrictions and requirements:

(a) The child or the lawful guardian of the child may only make a demand hereinbelow in any calendar year with respect to a contribution of "Gift Property" (as defined hereinbelow) to the trust named for the child and the demand with respect to such contribution shall not exceed the lesser of (i) the fair market value of such contribution determined as of the time it was added to the trust and (ii) the donor's applicable gift tax annual exclusion amount, which is currently Twelve Thousand ($12,000.00) Dollars. If the child or the lawful guardian of the child demands and receives a distribution in excess of the amount she is entitled to withdraw under this provision, the Trustees shall require the child or the lawful guardian of the child to repay such excess amount promptly. This demand power takes precedence over any other power or discretion granted the Trustees.

(b) Any demand by the child or the lawful guardian of the child must be made to the Trustees by the first to occur of (i) thirty (30) days after the contribution of Gift Property to the principal of the trust named for the child, and (ii) the day preceding the date of death of the child; and any demand by the child or the lawful guardian of the child is non-cumulative and lapses on the earlier of (i) the last day of the calendar year in which the contribution was made or (ii) thirty (30) days following the date of such contribution. No payment may be made in a subsequent year on account of the child's failure to demand a distribution in a prior year. The Trustees may satisfy a demand for a distribution by distributing cash, other assets, or fractional interests in other assets, as Trustees deem appropriate.

(c) Immediately upon the creation of the trust named for the child the Trustees shall notify the child or the lawful guardian of the child in writing of the existence of the withdrawal right granted under this subparagraph and the value of the

Estate of McMahon v. Turner Corp., Not Reported in F.Supp.2d (2007)

original contribution of Gift Property, if any, to the trust, and in addition, the Trustees shall also give written notice to the child or the lawful guardian of the child of the date and value of any Gift Property added to the trust promptly upon receipt of that property unless actual notice of the addition already exists. Upon any contribution of property to the trust named for the child, the donor shall advise the Trustees in writing the extent to which such property constitutes Gift Property, and the Trustees may rely upon such advice without further inquiry and without liability to the donor or to any beneficiary hereunder, absent bad faith; and

*8 (d) As used in this instrument "Gift Property" means such part or all of any property given to the trust named for the child as to which the donor could claim a gift tax annual exclusion under ⬚ Section 2503(b) of the Internal Revenue Code of 1986, as revised or amended (Code"), if the property were given outright to the child.

2. The Trustees shall also distribute to the child as much or all of the net income and principal of the trust as the Trustees from time to time believes desirable for the health, education, best interest, and welfare of the child, considering all circumstances and factors believed pertinent by the Trustees; provided, however,

(a) Any undistributed net income shall be accumulated and added to the principal of the trust, as from time to time determined by the Trustees; and

(b) Grantor's primary concern during the life of the child is for the child's health, education, best interest, and welfare rather than for the preservation of trust principal for ultimate distribution to the child or the child's descendants.

B. The Trustees shall distribute to the child for whom the trust is named, if the child has reached the age of twenty-one (21) years, in addition to any property which the child may withdraw under the provisions of this instrument, one-half (1/2) of the entire principal of the trust, and the Trustees shall distribute the balance of the principal of the trust when the child has reached the age of twenty-five (25) years, or such amounts of the principal of her trust, as the child may request from time to time by written instrument delivered to the Trustees during the life of the child.

C. Upon the death of the child for whom the trust is named before withdrawal of the entire balance of the trust, the principal of the trust shall be distributed as follows:

1. To such one or more persons or organizations or the estate of the child as the child may appoint by Will specifically referring to this power of appointment; or

2. In default of effective appointment, to the then living descendants of the child, per stirpes, or if none, to the child's estate.

D. Despite the preceding provisions of this instrument;

1. Property otherwise distributable to a beneficiary for whom a trust then held hereunder is named shall be added to that trust; and

2. The Trustees may elect to withhold any property ot herwise distributable under this instrument to a beneficiary not covered by the subparagraph immediately above and who has not reached the age of twenty-five (25) years and may retain the property for that beneficiary in a separate trust named for the ben e ficiary, to be distributed to the beneficiary when he or she reaches the age of twenty-five (25) years, or before then if the Trustees so elect. The Trustees shall apply as much of the net income and principal of the trust so retained as the Trustees believe desirable for the health, support in reasonable comfort, best interests, welfare, and education of the beneficiary for whom the trust is named, considering all circumstances and factors deemed pertinent by the Trustees. Any undistributed net income shall be accumulated and added to principal, as from time to time determined by the Trustees. If the beneficiary for whom the trust is named dies before complete distribution of the trust, the remaining net income and principal of the trust shall be distributed to the beneficiary's estate.

III. *ADMINISTRATIVE PROVISIONS.*
*9 The provisions of this Article shall apply to each trust held under this instrument;

A. If at any time a beneficiary eligible to receive net income or principal distributions is under legal disability, or in the opinion of the Trustees is incapable of properly managing his or her financial affairs, the Trustees may make those distributions directly to the beneficiary, to a lawful guardian of the beneficiary, or to a custodian selected by the Trustees for the beneficiary under a Uniform Transfers to Minors Act or similar applicable law, or may otherwise expend the amounts to be distributed for the benefit of the beneficiary in such manner as the Trustees consider advisable. As used

Estate of McMahon v. Turner Corp., Not Reported in F.Supp.2d (2007)

throughout this instrument, the term "lawful guardian" shall mean successively in the order named (i) the court-appointed guardian of the estate,(ii) either parent (other than me), or (iii) the individual having personal custody (whether or not a court-appointed guardian) where no guardian of the estate has been appointed.

B. Among the circumstances and factors to be considered by the Trustees in determining whether to make discretionary distributions of income or principal to a beneficiary are the other income and assets known to the Trustees to be available to that beneficiary and the advisability of supplementing such income or assets. As used throughout this instrument, the term "education" includes, but is not limited to, private schooling at the elementary and secondary school level, college, graduate and professional education, and specialized or vocational training.

C. Except as otherwise provided by law, no power of appointment or power of withdrawal shall be subject to involuntary exercise, and no interest of any beneficiary shall be subject to anticipation, to claims for alimony or support, to voluntary transfer without the written consent of the Trustees, or to involuntary transfer in any event.

D. Any trust principal or net income with respect to which a power of appointment is exercised shall be distributed to the appointee or appointees upon such conditions and estates, in such manner (in trust or otherwise), with such powers, at such time or times and in such amounts or proportions as the holder of the power may specify in the instrument exercising the power. In determining whether a testamentary power of appointment has been exercised, the Trustees may rely on a Will admitted to probate in any jurisdiction as the Will of the holder of the power or may assume the holder left no Will in the absence of actual knowledge of one within three months after the holder's death.

E. If at any time after twenty (20) years from the date of this instrument the Trustees shall determine that the trust is of a size that is no longer economical to administer, the Trustees, without further responsibility, may (but need not) distribute the trust to the beneficiary for whom the trust is named.

F. Notwithstanding any other provision of this instrument, at the end of twenty-one years after the death of the Grantor, and all descendants of Grantor who are living on the date of this instrument, the Trustees shall distribute the principal and

any accrued or undistributed net income of the trust to the beneficiary for whom the trust is named.

\*10  G. For purposes of determining who is a descendant of Grantor or of any other person:

1. Legal adoption before the person adopted reached the age of eighteen (18) years shall be the equivalent in all respects to blood relationship; and

2. A person born out of wedlock and those claiming through that person shall be deemed to be descendants (i) of the natural mother and her ancestors, and (ii) if the natural father acknowledges paternity, of the natural father and his ancestors, in each case unless a decree of adoption terminates such natural parent's parental rights.

IV. *TRUSTEE POWERS.*
A. The Trustees shall have the following powers with respect to each trust held under this instrument, exercisable in the discretion of the Trustees:

1. To make allocations, divisions, and distributions of trust property in cash or in kind, or partly in each; to allocate different kinds or disproportionate shares of property or undivided interests in property among the beneficiaries or separate trusts, without liability for, or obligation to make compensating adjustments by reason of, disproportionate allocations of unrealized gain for federal income tax purposes; and to determine the value of any property so allocated, divided, or distributed;

2. To exercise in person or by general or limited proxy all voting and other rights, powers, and privileges and to take all steps to realize all benefits with respect to any investments;

3. To cause any investment or other property to be held, without disclosure or any fiduciary relationship, in the name of the Trustees, in the name of a nominee, or in unregistered form;

4. To pay all expenses incurred in the administration of the trust, including reasonable compensation to any Trustee, and to employ or appoint and pay reasonable compensation to accountants, depositaries, investment counsel, attorneys, attorneys-in-fact, and agents (with or without discretionary powers);

Estate of McMahon v. Turner Corp., Not Reported in F.Supp.2d (2007)

5. To deal with the fiduciary or fiduciaries of any other trust or estate, even though the Trustees are also the fiduciary or one of the fiduciaries of the other trust or estate;

6. To compromise or abandon any claim in favor of or against the trust;

7. To invest in federally insured savings accounts, certificates of deposit, government backed instruments and securities, including but not limited to U.S. Treasury Bills/U.S. Treasury Notes;

8. To commingle for investment purposes the property of the trust with the property of any other trust held hereunder, allocating to each an undivided interest in the commingled property;

9. To receive any other property which may be added to the trust, from Grantor in any event (and, if the Trustees consent in writing, from any other person) by lifetime or testamentary transfer or otherwise;

10. To execute instruments of any kind, including instruments containing covenants and warranties binding upon and creating a charge against the trust property and containing provisions excluding personal liability;

 *11   11. To purchase an annuity contract or life insurance contract from a reputable insurance company that provides guaranteed benefits to the owner or owner's estate; and

12. To perform all other acts necessary to accomplish the proper management, investment and distribution of the trust property in accordance with the powers conferred upon Trustees by common law or statute.

B. The powers granted in this Article shall be in addition to those granted by law and may be exercised even after termination of all trusts hereunder until actual distribution of all trust principal, but not beyond the period permitted by any rule of law relating to perpetuities. However, notwithstanding anything herein contained to the contrary, no powers enumerated herein or accorded to Trustees generally by law shall be construed to enable the Trustees or any other person to purchase, exchange or otherwise deal with or dispose of the principal or income of this Trust for less than an adequate consideration in money or money's worth, or to enable the Grantor to borrow all or any party of the principal or income of the Trust, directly or indirectly. No

person other than the Trustees shall have or exercise the power to vote or direct the voting of any shares or other securities of the Trust, to control the investment of the Trust either by directing investments or reinvestments or by vetoing proposed investments or reinvestments, or to re-acquire or exchange any property of the Trust by substituting other property of an equivalent value.

C. The Trustees shall designate during the administration of each trust an investment counselor. Despite the general powers of the Trustees, the following provisions shall apply where the context admits, to each trust from time to time held hereunder, during any period in which an investment counselor shall be acting:

1. The Trustees shall follow the written directions of the investment counselor with respect to the purchase, sale, or encumbrance of trust principal and the investment and reinvestment of funds held hereunder and the Trustee shall exercise due diligence at all times to review and monitor the trust investments made by the investment counselor. The Trustees shall confer with the investment counselor and make financial and investment decision which are in the best interests of the beneficiaries of this Trust;

2. No Trustee shall be accountable for any loss or depreciation in value sustained by reason of action (i) taken with the approval of the investment counselor or (ii) not taken by reason of disapproval by the investment counselor pursuant to the preceding provisions of this paragraph, and no person dealing with the Trustees shall be required or privileged to inquire whether there has been compliance with those provisions;

3. Any investment counselor acting hereunder may resign at any time, and from time to time may waive for limited periods of time or delegate to any other person (excluding the Trustees) any or all of his or her rights under this paragraph, by written notice delivered to the Trustees. In the case of any such delegation, the person to whom rights and powers are delegated may take any action or make any decision for the investment counselor making that delegation, within the scope of the delegated rights and powers, with the same effect as if the investment counselor making that delegation had participated in that action or decision;

 *12   4. The rights and powers herein conferred on the investment counselor shall be exercisable only in an investment advisory capacity;

Estate of McMahon v. Turner Corp., Not Reported in F.Supp.2d (2007)

5. The cost for such investment advisor shall be paid from the fund on a current basis and shall be subtracted from the fiduciary's commissions. The investment counselor shall only be paid reasonable fees which are consistent with the industry's practice; and

6. The term "investment counselor" means the person named or designated by the Trustees from time to time acting in an investment advisory capacity, who shall be licensed with the National Association of Securities Dealers ("NASD"), has a Series 7 license, and is registered and licensed with the New Jersey Department of Banking and Insurance. Any investment counselor must be a member of the NASD and be SIPC insured.

V. *TRUSTEE RESIGNATION.*
Trustees may resign at any time by giving prior written notice to the beneficiary or beneficiaries to whom the current trust income may or must then be distributed.

VI. *SUBSTITUTE TRUSTEE.*
A. In the event WILLIAM BUTZ ceases to act as Trustee hereunder for any reason, then Grantor's sister, BETH WALKER, shall fill such vacancy. If Grantor's sister, BETH WALKER, ceases to act as Trustee hereunder for any reason, then Grantor's half-brother, JESSE BRADDOCK, shall fill such vacancy. If no successor Trustee appointed above is able to act as Trustee hereunder for any reason, the majority of the beneficiaries to whom the current trust income may or must then be distributed shall, by written instrument, immediately appoint any person (other than a "disqualified person," as defined in Section 672(c) of the Code), or any bank or trust company, within or outside the State of New Jersey, as successor co-Trustee or sole Trustee, whichever the case may be.

B. The majority of the beneficiaries to whom the current trust income may or must then be distributed shall at any time, by written instrument, approve the accounts of the Trustee with the same effect as if the accounts had been approved by a court having jurisdiction of the subject matter and of all necessary parties.

C. If any corporate Trustee designated to act or at any time acting hereunder is merged with or transfers substantially all of its assets to another corporation, or is in any other manner reorganized or reincorporated, the resulting or transferee corporation shall become Trustee in place of its corporate predecessor.

D. As often as the Trustees shall deem such action to be advantageous to the trusts or to any beneficiary, the Trustees may, by written instrument, resign and appoint as substitute Trustee with respect to all or any part of the trust principal, including property as to which the Trustee cannot act, any person (other than a disqualified person), or any bank or trust company, within or outside the State of New Jersey. The substitute Trustee shall have all of the title, powers, and discretion of the original Trustees, but shall exercise the same under the supervision of the resigning Trustee, who shall act as adviser to the substitute Trustee. The adviser may at any time remove the substitute Trustee by written instrument delivered to the substitute Trustee. Upon the removal or resignation of the substitute Trustee, the adviser may resume the office of Trustee or may continue to act as adviser and appoint another substitute Trustee. Any adviser may receive reasonable compensation for services as adviser.

**\*13** E. A successor Trustee may be appointed pursuant to the terms of this Article and the accounts of the Trustees may be approved pursuant to the terms of this Article, by a majority in number of the beneficiaries to whom the current trust income may or must then be distributed. If any beneficiary so entitled to act is then under legal disability, the instrument of appointment or approval may be signed, executed, and delivered by the lawful guardian of such beneficiary on his or her behalf.

F. The incumbent Trustee shall have all of the title, powers, and discretion granted to the original Trustees, without court order or act of transfer. No successor Trustee shall be personally liable for any act or failure to act of the predecessor Trustee. With the approval of a majority in number of the beneficiaries to whom current trust income may or must then be distributed, who may approve the accounts of the Trustees, a successor Trustee may accept the account furnished, if any, and the property delivered by or for a predecessor Trustee without liability for so doing, and such acceptance shall be a full and complete discharge to the predecessor Trustee.

G. In the event the Co-Trustees disagree on any decision with regard to the administration of this Trust, including but not limited to investments, distributions, and discretionary powers granted to the Trustees, the decision of BOBBIE BUTZ-McMAHON shall control and be binding upon all parties.

## VII. *COMPENSATION OF TRUSTEE.*

Any individual Trustee appointed by Grantor hereby waives the payment of any compensation for services hereunder, but this waiver shall not apply to any successor substitute Trustee who qualifies and acts under this Agreement, except that no person who adds to the principal of this Trust shall ever be entitled to any compensation for services hereunder. As full compensation for its services hereunder, any corporate Trustee shall receive such fees from time to time as are agreed upon by it and Grantor in writing separate from this Agreement but if, for any period, no such fees are so agreed upon, any corporate Trustee shall receive compensation in accordance with its standard schedule of fees in effect while its services are performed.

## VIII. *WAIVER OF BOND AND ACCOUNTING.*

To the extent that such requirements can legally be waived, no Trustee hereunder shall ever be required to give bond or security as Trustee, or to qualify before, be appointed by or account to any court, or to obtain the order of approval of any court with respect to the exercise of any power or discretion granted in this instrument.

## IX. *TRUSTEE EXCULPATION.*

The Trustees' exercise or non-exercise of powers and discretions in good faith shall be conclusive on all persons. No person paying money or delivering property to any Trustee hereunder shall be required or privileged to see to its application. The certificate of the Trustees that the Trustees are acting in compliance with this instrument shall fully protect all persons dealing with a Trustee.

## X. *IRREVOCABILITY.*

**\*14** This Trust shall be irrevocable. Grantor expressly waives all rights and powers, whether alone or in conjunction with others, and in whatever capacity, to alter, amend, or revoke it, in whole or in part, as to any of its terms. No part of the principal or income of the Trust shall ever revert to or be used for the benefit of the Grantor, or be applied to the payment of premiums upon policies of insurance on the life of the Grantor, or be used to satisfy any legal obligations of the Grantor. The Grantor hereby renounces for herself and her estate any interest, either vested or contingent, including any reversionary right or possibility of reverter, in the principal and income of the Trust. Any distribution to or for the benefit

of any beneficiary, primary or otherwise, is not intended to be, and shall not be, made in lieu of or in discharge of any legal obligation of the Grantor.

## XI. *ACKNOWLEDGMENT BY TRUSTEE.*

The Trustees acknowledge receipt of the trust property and does hereby accept this Trust upon the terms set forth in this Agreement.

## XII. *SITUS AND INTERPRETATION.*

Notwithstanding that the Grantor or any beneficiary may now or at any future time be domiciled in any other jurisdiction, this Agreement shall be regarded for all purposes as a State of New Jersey document, and the validity and construction hereof shall be determined and governed in all respects by the laws of the State of New Jersey. This Trust is intended to satisfy all requirements of the Internal Revenue Code, as amended, so that the Grantor will not be treated as the owner of the trust estate for income and estate tax purposes, and all provisions of the Trust shall be interpreted accordingly.

IN WITNESS WHEREOF, BOBBIE BUTZ-McMAHON, as Grantor, and BOBBIE BUTZ-McMAHON and WILLIAM BUTZ, as Trustees, have executed this agreement the day and year first above written.

Estate of McMahon v. Turner Corp., Not Reported in F.Supp.2d (2007)

**SHERIDAN & MURRAY, LLC**

Attorneys at Law
403 South White Horse Pike
Audubon, NJ 08105
(856) 546-3000 • Fax (856) 310-6342
Tel Free (877) 999-7009
www.sheridanandmurray.com

One Logan Square, Suite 2030
155 North 15th Street
Philadelphia, PA 19103
(215) 972-9900
Fax (215) 972-9902

Sean E. Quinn
Direct Email: squinn@sheridanandmurray.com

Appearing PA & NJ Bars
Licensed Attorney

September 6, 2007

RECEIVED
SEP 07 2007
JOEL SCHNEIDER
U.S. Magistrate Judge

**Via Telefax and Regular Mail**

Honorable Joel Schneider
Mitchell H. Cohen U.S. Courthouse
1 John F. Gerry Plaza, Suite 2060
P.O. Box 887
Camden, NJ 08101

RE:   Estate of Donalue McMahon v. Turner Construction, et. al.
       USDC of New Jersey, Civil Action No. 7901-05
       Our File No. 1032-001

Dear Judge Schneider:

As you are aware, this office represents the Plaintiff in connection with the above-referenced matter.

Enclosed please find the revised Irrevocable Trust for Victoria McMahon and Colleen McMahon for your review in connection with the pending Petition for Approval of Wrongful Death Settlement and Attorney's Fees. It is believed that the revised Trust addresses the concerns raised by Your Honor in our August 31, 2007 telephone conference.

Please be advised that the enclosed Trust was prepared by Mrs. McMahon's trusts and estates counsel, John Leitz, Jr., of Shotman, Silverstein, Kohl, Rose & Podolsky, P.A. The investment counselor selected by Mrs McMahon is John Costa of the AIG Advisor Group – Royal Alliance. As set forth more fully in the Trust, the settlement proceeds will be deposited in a federally insured deposit account with the AIG Advisor Group – Royal Alliance.

EXHIBIT "A"

STATE OF NEW JERSEY:

COUNTY OF Camden
On the 1 day of August, 2007, before me, the subscribed, personally appeared BOBBIE BUTZ-McMAHON, and in due form of law acknowledged the foregoing to be her act and deed, and desired the same might be recorded as such.

IN WITNESS WHEREOF, I have hereunto set my hand and seal.

KELLE R. CRAIG

NOTARY PUBLIC OF NEW JERSEY

My Commission Expiree June 10, 2010

*SCHEDULE A*

The sum of One Hundred ($100.00) Dollars.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2688557

## Footnotes

1   Plaintiff's Petition does not specify whether her attorneys are requesting an enhanced fee on the first $2 million recovered or approval of a fee on the remaining $1.65 million. According to the Court's calculations, if plaintiff's counsel receives the statutory fee on the first $2 million recovered, the fee counsel is requesting on the remaining $1.65 million is approximately 37%. As a result, the Court assumes that plaintiff's counsel is requesting an enhancement pursuant to N.J.R. 1:21-7(f).

2   For the reasons discussed in *King, supra,* 483 P. Supp.2d at 400, the Court did not give any significant weight to plaintiff's Affidavit approving the application for attorney's fees. The Court also notes that defendants' attorneys in this case were highly skilled and they also did a commendable job representing their clients.

3   The proceeds of the settlement allocated to Colleen and Victoria McMahon will be held in a Trust for their benefit.

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT C

2021 WL 672930
Only the Westlaw citation is currently available.
<u>NOT FOR PUBLICATION</u>
United States District Court, D. New Jersey,
Camden Vicinage.

Hooshang NIKOO, et al., Plaintiffs,
v.
Norman CAMERON, et al., Defendants.

Civil No. 18-11621 (RBK/AMD)
|
Signed 2/22/2021

**Attorneys and Law Firms**

Andrea Marie Sasso, Kevin Patrick O'Brien, Stampone Law, Cheltenham, PA, for Plaintiffs.

Lorne M. Reiter, Law Offices of Lorne M. Reiter, LLC, Atlantic Highlands, NJ, for Defendants.

**OPINION**

KUGLER, United States District Judge:

*1 This matter comes before the Court upon (1) Plaintiffs' Counsel's Motion for Attorney Fees (Doc. 60) and (2) Joint Motion to Seal Motion for Fees (Doc. 61). For the reasons stated herein, the Motion for Attorney Fees is **GRANTED IN PART AND DENIED IN PART**, and the Motion to Seal is **GRANTED**.

**I. BACKGROUND**

This is a personal injury action arising out of a motor vehicle accident. Plaintiffs Nancy and Dr. Hooshang Nikoo were passengers in a vehicle which was struck by a tractor trailer operated by Defendants Norman Cameron and Transservice Logistics. (Doc. 60, "Mot. for Fees" at 1.) After engaging in significant discovery, Defendants admitted liability. (*Id.* at 2.) However, Plaintiffs continued to pursue a punitive damages claim against Defendants. (*Id.*) Plaintiffs' Counsel engaged in significant efforts to prepare information to prove that Defendants' "driver cam" was covered at the time of the accident. (*Id.*) In June 2020, the parties attended a mediation conference in which they reached a confidential settlement. (*Id.*) The parties wish to keep the amount of the settlement confidential. (*Id.*)

**II. LEGAL STANDARD**

**A. Motion for Attorney Fees**
N.J.R. 1:21-7 defines a contingent fee arrangement as an "agreement for legal services of an attorney ... under which compensation, contingent in whole or in part upon the successful accomplishment or disposition of the subject matter of the agreement, is to be in an amount which either is fixed or is to be determined under a formula." N.J.R. 1:21-7(c) sets forth the maximum contingency fee an attorney may contract for "where a client's claim for damages is based upon the alleged tortious conduct of another[.]" The fee maximums are as follows:

**(1)** 33 1/3% on the first $750,000 recovered;

**(2)** 30% on the next $750,000 recovered;

**(3)** 25% on the next $750,000 recovered;

**(4)** 20% on the next $750,000 recovered; and

**(5)** on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof[.]

Accordingly, under this Rule, Counsel for represented parties must apply to the court for a "reasonable fee" on a contingency fee settlement amount where the total amount of the settlement exceeds $3,000,000. *See* N.J.R. 1:21-7(c). The amount of the fee on the settlement amount exceeding $3,000,000 is to be determined by the court. *In re Estate of F.W.*, 942 A.2d 48, 56 (N.J. Super. Ct. App. Div. 2008). In making such determination, the Court is guided by the factors set forth below:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

**\*2**  (5) the time limitations imposed on the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

RPC 1.5(a).

## B. Motion to Seal

Requests to seal are governed by New Jersey Local Civil Rule 5.3, which provides, in pertinent part, that a request to seal must be presented by motion, and that the motion papers must describe "(a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available," L. Civ. R. 5.3(c)(2). It is well established that there is a "common law public right of access to judicial proceedings and records," *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001), but "[i]n order to overcome this presumption of a public right of access, the movant must demonstrate that 'good cause' exists for the protection of the material at issue," *Securimetrics, Inc. v. Iridian Techs., Inc.*, Civ. No. 03-4394, 2006 WL 827889, at \*2 (D.N.J. Mar. 30, 2006). Good cause exists when a party makes a particularized showing that disclosure will cause a "clearly defined and serious injury to the party seeking closure." *Id.* (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). A motion to seal should be granted when the movant proves that the information is confidential in nature such that allowing the general public to access the information will cause a specific and serious injury, *Pansy*, 23 F.3d at 788. "Circumstances weighing against confidentiality exist" when (1) "confidentiality is being sought over information important to public health and safety;" (2) "when the sharing of information among litigants would promote fairness and efficiency;" (3) when "a party benefiting from the order of confidentiality is a public entity or official;" and (4) "when the judicial record involves matters of legitimate public concern."

*LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216 (3d Cir. 2011).

## III. DISCUSSION

### A. Motion for Attorneys' Fees

Counsel seeks this Court's approval of a 33% fee on the settlement amount that exceeds $3,000,000. Accordingly, in applying N.J.R. 1:21-7, the Court must decide whether Counsel's proposed 33% fee for amounts recovered in excess of $3,000,000 is reasonable. The Court is guided by the factors listed under Rule 1.5(a) of the N.J. Rules of Professional Conduct. *See* N.J. Ct. R. 1:21-7(e) ("In all cases contingent fees charged or collected must conform to RPC 1.5(a)."); *King v. County of Gloucester*, 483 F. Supp. 2d 396, 399 (D.N.J. 2007) (applying RPC 1.5(a) to determine a fair fee").

In applying RPC 1.5(a), courts focus on "whether 'the case presented problems which required exceptional skills beyond that normally encountered in such cases or the case was unusually time consuming.' " *See id.* at 399 (internal citation omitted). Even in the absence of novel law and appellate litigation, courts have found exceptional lawyering where the case presented significant obstacles to counsel and success appeared unlikely. *See Estate of McMahon v. Turner Corp.*, No. 05-4389, 2007 WL 2688557, at \*3 (D.N.J. Sept. 7, 2007) (quoting *Matter of Reisdorf*, 80 N.J. 319, 329 (1979)) ("The New Jersey Supreme Court has also stated that '[i]t is instructive to point out that the element of uncertainty of recovery is often important in determining whether a contingent fee as ultimately charged is reasonable or excessive.' "). Courts have found exceptional lawyering in cases that have established new law, *see Buckelew v. Grossbard*, 461 A.2d 590 (N.J. Super. Ct. 1983), aff'd, 469 A.2d 518 (N.J. Super. Ct. App. Div. 1983), or "where trial, appeal, and retrial [was] required," *see Anderson v. Conley*, 501 A.2d (N.J. Super. Ct. App. Div. 1985) (citations omitted).

**\*3**  Even in the absence of novel law and appellate litigation, courts find exceptional lawyering where the case presented significant obstacles to counsel and success appeared unlikely. *See Estate of McMahon*, 2007 WL 2688557, at \*3 (quoting *Matter of Reisdorf*, 403 A.2d 873, 878 (N.J. 1979)) ("The New Jersey Supreme Court has also stated that '[i]t is instructive to point out that the element of uncertainty of recovery is often important in determining whether a contingent fee as ultimately charged

is reasonable or excessive.' "); 🔲*King*, 483 F. Supp. 2d at 399 (no grand jury indictment of defendants and plaintiff "assailed" by the press). In each of these cases, the element of uncertainty was present, requiring exceptional skills to induce an otherwise unlikely settlement. *See Estate of McMahon*, 2007 WL 2688557, at *3; 🔲*King*, 483 F. Supp. 2d at 399– 400 (same). Conversely, in *Anderson*, a New Jersey appellate court did not find exceptional lawyering where an 18-year-old plaintiff was left quadriplegic by a car accident caused by an intoxicated driver. *See* 501 A.2d at 1059. In light of the facts, the court noted that it was "the type [of case] which is ripe for settlement." *See id.* at 1066. Moreover, courts have found cases to be unexceptional when they are not unusually time consuming. *See* 🔲*Mitzel*, 72 F.3d at 416, 418-19 (finding two-and-a-half years of litigation and 5100 attorney hours of discovery was not unusually time consuming where case did not present problems requiring exceptional skills); *Mechin v. Carquest Corp.*, No. 2:07-cv-05824, 2011 WL 13141661, at *1 (D.N.J. June 14, 2011) (finding litigation lasting for approximately four years as not time consuming where case was not sufficiently exceptional); *cf.* 🔲*King*, 483 F. Supp. 2d at 399 (finding three "plus" years of litigation and 4290 hours as time consuming where wrongful death was "far from the 'run of the mill' case" and "hard-fought").

If the Court finds that a case presented exceptional lawyering, it will generally award a fee approximately at or above one-third of the excess amounts recovered. *See Estate of McMahon*, 2007 WL 2688557, at *3 (approving net recovery of 31.3% of settlement); 🔲*King*, 483 F. Supp. 2d. at 399 (approving a 33.33% fee on excess amounts above $2 million, based on the prior version of N.J. Ct. R. 1:21-7(c)). Where, however, courts have found that the case presented more typical circumstances, rather than exceptional circumstances, the excess fee will range from 20% to 25% of the excess amounts recovered. *See* 🔲*Mitzel*, 72 F.3d at 416–20 (affirming magistrate judge's decision to deny net recovery of 33.33% of settlement and fix fee at 20% in excess recovery).

Plaintiffs' Counsel contends that their work was exceptional because they went "beyond that work which is typically performed in an[ ] admitted liability motor vehicle collision matter[ ] and greatly increased the value of the Plaintiff's claims," which "was a critical factor in reaching a favorable settlement before trial." (Mot. at 3.) Therefore, Plaintiffs' counsel asserts that the 33% fee is appropriate. In light of

the affidavits, moving papers, and a review of the litigation, the Court cannot find that Counsels' work on this case was "exceptional" within the meaning of the term under N.J. Ct. R. 1:2107(c). The Court recognizes that Counsels' efforts via discovery, accident reconstructions, and mediation ultimately resulted in a favorable settlement. Furthermore, the Court does not question Counsel's diligent and competent work which delivered excellent results for Plaintiffs. However, this is not an exceptional case, and the circumstances enumerated above where New Jersey courts have found "exceptional" work are simply not present here. The matter was no more time consuming than an average traffic accident case. The suit was filed in 2018 (*see* Doc. 1) and settled less than two years later (Doc. 58). Counsel does not contend that any obstacles existed or that success was unlikely. Rather, Defendants admitted liability. (Mot. at 2.) Moreover, there was no appeal, retrial, or even trial needed in this matter. Beyond mere run-of-the-mill discovery and accident reconstruction efforts that are typical in such cases, Counsel cannot enumerate any actions they took to secure the favorable settlement in this case. (*See generally* Mot.)

Where Courts do not find exceptional lawyering, the awarded fees generally range from 20% to 25%, in excess of the amounts recovered under N.J. Ct. R. 1:21-7(c). As such, in light of the ordinary nature of this case, the Court finds it appropriate to award counsel 25% of the amounts recovered in excess of $3,000,000. In making this determination, the Court does not raise any doubts about the diligence and competence of counsel and recognizes that Plaintiffs are satisfied with the outcomes secured by Plaintiffs' Counsel. (*See* Docs. 60-1, 60-2.) However, this is a one-sided motion, with no opposing party, and the Court must scrutinize Counsels' application. In so scrutinizing and for all the aforementioned reasons, the Court finds that the 25% fee is appropriate. Therefore, the Court **GRANTS** the Motion for Fees, but awards 25% on the settlement in excess of $3,000,000, rather than the requested 33%.

### B. Motion to Seal

**\*4** The parties additionally ask this Court to seal the Motion for Attorneys' Fees. The Court notes that the Motion to Seal is unopposed. Both parties assert that they will be harmed if the contents of the Motion for Attorneys' Fees become public because the Motion contains specific details contained in a confidential settlement agreement. (Mot. to Seal at 1.) If the terms of the settlement agreement become public, such disclosure could potentially constitute a breach of the agreement. (*See id.*) The Court agrees and finds that good

cause exists for the sealing of the motion. The Court finds that the presumption in favor of public accessibility has been rebutted. Both parties are private entities, their dispute has no impact on the safety and health of the public, and their settlement agreement demonstrates an intent to maintain confidentiality. *See* 🏳 *LEAP Sys., Inc.*, 638 F.3d at 216. Moreover, there is no less restrictive alternative to sealing the Motion for Attorneys' Fees because the Motion makes numerous references to the settlement award. Accordingly, based on these findings, the Court **GRANTS** the Motion to Seal the Motion for Attorneys' Fees.

## IV. CONCLUSION

For the reasons contained herein, (1) the Motion for Attorneys' Fees is **GRANTED IN PART AND DENIED IN PART** and (2) the Motion to Seal Motion for Attorneys' Fees is **GRANTED**. An accompanying Order shall issue.

## All Citations

Slip Copy, 2021 WL 672930

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.