# BROWN & CONNERY, LLP

ATTORNEYS AT LAW
360 HADDON AVENUE
WESTMONT, NEW JERSEY 08108
(856) 854-8900
FAX (856) 858-4967

William F. Cook, Esq.
wcook@brownconnery.com

August 4, 2022

**VIA ECF**

**The Honorable Juan R. Sanchez, U.S.D.J.**
Chief Judge, Eastern District of Pennsylvania
601 Market Street, No. 17614
Philadelphia, PA 19106

>      Re:     **Ingram v. County of Camden, et al.**
>              **District of New Jersey Docket No. 14-cv-5519**
>              **Our File No. 14-0712**

Dear Chief Judge Sanchez:

Please accept this letter on behalf of Defendants in reference to a letter filed on August 2, 2022 by Plaintiff counsel with respect to counsel's request for an enhanced fee under New Jersey Court Rule 1:21-7 (herein, R. 1:21-7). Although typically the defense will take no position on such a request, Defendants must intervene in this instance to correct certain fundamental misstatements of this rule by the Plaintiff. Defendants have a direct interest in this issue as this matter was settled with the express understanding that Plaintiff would stipulate to an immediate dismissal upon receipt of settlement funds.[1] Finally, it is the position of Defendants that the Court no longer possesses jurisdiction over these issues based on Plaintiff's August 2nd submission.

A complete copy of R. 1:21-7 is provided to the Court as Exhibit A. Attached as Exhibit B is a comprehensive analysis of these issues conducted in the District of New Jersey's recent opinion in Rudderow v. Bos. Sci. Corp., No. CV 20-08561 (CPO), 2022 WL 1500958 (D.N.J. May 12, 2022). Rudderow provides critical guidance for the Court's review of this matter.

---

[1] The settlement checks were delivered on August 2, 2022 by hand delivery to Plaintiff's counsel's office. Defendants await confirmation from Plaintiff's counsel that the funds have cleared the firm's trust account. Once that occurs, the settlement agreement requires to filing of the stipulation of dismissal with prejudice. It is expected that the stipulation of dismissal with prejudice will be filed by the end of this week.

7HR8428

BROWN & CONNERY, LLP

Ironically, Rudderow involved a request by Mazie Slater, the attorneys in this instant action, for an enhanced fee. In Rudderow, the District Court found that Mazie Slater misstated the applicable limits under R. 1:21-7(c) governing when an enhanced fee can be requested. As explained in Rudderow, R. 1:21-7(c) only allows for an enhanced fee in excess of a net recovery of $3 million, not $2 million. The $2 million limit applied to an earlier version of R. 1:21-7(c). R. 1:21-7(c) was then amended in July19, 2014, with an effective date of September 1, 2014. Since the continent fee agreement in question in Rudderow was executed after the new version of R. 1:21-7(c) was adopted, the District Court held that the $3 million limit applied and the Court was without jurisdiction to address any fee enhancement in the range of $2 million to $3 million, as the recovery in that range was governed by the updated version of R. 1:21-7(c). The Court further held that Mazie Slater was not entitled to a fee enhancement over $3 million, as the factors of R. 1:21-7 did not support such an enhancement since the work "did not rise to the level of exceptional that is required to support the requested fee." Rudderow, 2022 WL 1500958, at *5.

In this case, there are a multitude of complications with Plaintiff's request that not only delay this matter contrary to the settlement agreement but are also wholly outside this Court's jurisdiction.

First, the fee agreement tendered to the Court in counsel's August 2, 2022 letter is not a contract between Plaintiff's counsel and Xavier Ingram. It is a contract between counsel and Ashley Ingram, a sister of Xavier Ingram, dated June 13, 2014, the day after the June 12, 2014 incident. New Jersey law requires that "An attorney shall not enter into a contingent fee arrangement without first having advised *the client* of the right and afforded *the client* an opportunity to retain the attorney under an arrangement for compensation on the basis of the reasonable value of the services." See R. 1:21-7(b) (emphasis added). New Jersey law further requires a written agreement between the attorney and client. See R. 1:21-7(g) ("Where the amount of the contingent fee is limited by the provisions of paragraph (c) of this rule, the contingent fee arrangement shall be in writing, signed both by the attorney and *the client*, and a signed duplicate shall be given to the client.") (emphasis added).

Here, there is no fee agreement presented by counsel that was executed between Mr. Ingram and the Mazie Slater firm. The fee agreement tendered to the Court is a contract between counsel and Ashley Ingram, a sister of Xavier Ingram, dated June 13, 2014, the day after the June 12, 2014 incident. It should be noted that, during discovery, Plaintiff's counsel produced a General Durable Power of Attorney dated June 13, 2014 (see Ex. C) purporting to be a delegation of such powers by Xavier Ingram to Ashley Ingram. However, the validity of this Power of Attorney is at best questionable in its effectiveness to grant any such authority to Ashley Ingram. Xavier Ingram was incapacitated on June 13, 2014 and could not have freely and voluntarily delegated this power to her.

Moreover, even if the June 13, 2014 fee agreement could be considered a valid agreement between Xavier Ingram and Mazie Slater, R. 1:21-7(c)(6) provides, "where the amount recovered

## BROWN & CONNERY, LLP

AUGUST 4, 2022
PAGE 3

is for the benefit of a client who was a minor or mentally incapacitated when the contingent fee arrangement was made, the foregoing limits shall apply, except that the fee on any amount recovered by settlement before empaneling of the jury or, in a bench trial, the earlier to occur of plaintiff's opening statement or the commencement of testimony of the first witness, shall not exceed 25%." Clearly, Mr. Ingram was mentally incapacitated on June 13, 2014. By operation of R. 1:21-7(c)(6), the "foregoing limits" are those set forth in R. 1:21-7(c)(1)-(5), with the enhancement threshold being $3 million, not $2 million.

Resolution of all of these state law issues is beyond this Court's jurisdiction at this time, both as a matter of law and by operation of the settlement agreement. In In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig., 911 F.3d 666, 674 (3d Cir. 2018), the Third Circuit held that it was error for the District Court to exercise jurisdiction over a fee dispute where settlement funds had been distributed and the Court had no control over them. Likewise, the District Court here has no control over the settlement funds. The funds have already been paid under the settlement agreement. Additionally, the analysis in this matter now turns on whether a valid power of attorney was given and whether a valid fee agreement existed in the first instance. Meanwhile, it was expressly stipulated and understood by Plaintiff that, once the settlement funds are received, a stipulation of dismissal with prejudice is to be filed in this Court. There are no further conditions that the dismissal of this action should be delayed to address fee enhancement issues, let alone state law questions which are now generated by the purported fee agreement.

Defendants respectfully submit that this matter should be dismissed with prejudice in accordance with the settlement agreement. Plaintiff's fee enhancement request should be remanded to the Superior Court of New Jersey for disposition. Indeed, R. 1:21-7(f) provides that this procedural vehicle should be utilized:

If at the conclusion of a matter an attorney considers the fee permitted by paragraph (c) to be inadequate, an application on written notice to the client may be made to the Assignment Judge or the designee of the Assignment Judge for the hearing and determining of a reasonable fee in light of all the circumstances. This rule shall not preclude the exercise of a client's existing right to a court review of the reasonableness of an attorney's fee.

As it is the intent of the rules governing contingent fees in New Jersey that fee enhancement issues be adjudicated in the Superior Court of New Jersey, the issues now raised by Plaintiff's counsel should be adjudicated in that forum, particularly since ancillary issues as to the existence of a fee agreement are now raised.

To conclude, Defendants submit this letter to ensure that the Court has the proper legal authorities and factual background before it, as a complete record was not provided by Plaintiff. Moreover, Defendants have a strong interest in the immediate conclusion of this action. This matter was settled. Plaintiff agreed that, upon receipt of settlement funds, a stipulation with

BROWN & CONNERY, LLP

AUGUST 4, 2022
PAGE 4

prejudice would be immediately filed.  No conditions were made or imposed that this matter would continue indefinitely to determine whether Plaintiff's counsel can collect an enhanced fee.  These fee issues should be remanded to Superior Court in accordance with the procedures above.  The case before this Court is over.

Respectfully submitted,

BROWN & CONNERY, LLP

*/s/ William F. Cook*

William F. Cook, Esquire

WFC/
Enclosures
cc:      All Record Counsel *(via ECF)*

# EXHIBIT A

New Jersey Statutes Annotated
　New Jersey Rules of Court
　　Part I. Rules of General Application
　　　Chapter III. Practice of Law and Admission to Practice
　　　　Rule 1:21. Practice of Law

R. 1:21-7

1:21-7. Contingent Fees

Currentness

**(a)** As used in this rule the term "contingent fee arrangement" means an agreement for legal services of an attorney or attorneys, including any associated or forwarding counsel, under which compensation, contingent in whole or in part upon the successful accomplishment or disposition of the subject matter of the agreement, is to be in an amount which either is fixed or is to be determined under a formula.

**(b)** An attorney shall not enter into a contingent fee arrangement without first having advised the client of the right and afforded the client an opportunity to retain the attorney under an arrangement for compensation on the basis of the reasonable value of the services.

**(c)** In any matter where a client's claim for damages is based upon the alleged tortious conduct of another, including products liability claims and claims among family members that are subject to Part V of these Rules but excluding statutorily based discrimination and employment claims, and the client is not a subrogee, an attorney shall not contract for, charge, or collect a contingent fee in excess of the following limits:

(1) 33 1/3 % on the first $750,000 recovered;

(2) 30% on the next $750,000 recovered;

(3) 25% on the next $750,000 recovered;

(4) 20% on the next $750,000 recovered; and

(5) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof; and

(6) where the amount recovered is for the benefit of a client who was a minor or mentally incapacitated when the contingent fee arrangement was made, the foregoing limits shall apply, except that the fee on any amount recovered by settlement before empaneling of the jury or, in a bench trial, the earlier to occur of plaintiff's opening statement or the commencement of testimony of the first witness, shall not exceed 25%.

**(d)** The permissible fee provided for in paragraph (c) shall be computed on the net sum recovered after deducting disbursements in connection with the institution and prosecution of the claim, whether advanced by the attorney or by the client, including investigation expenses, expenses for expert or other testimony or evidence, the cost of briefs and transcripts on appeal, and any interest included in a judgment pursuant to R. 4:42-11(b); but no deduction need be made for post-judgment interest or for liens, assignments or claims in favor of hospitals or for medical care and treatment by doctors and nurses, or similar items. The permissible fee shall include legal services rendered on any appeal or review proceeding or on any retrial, but this shall not be deemed to require an attorney to take an appeal. When joint representation is undertaken in both the direct and derivative action, or when a claim for wrongful death is joined with a claim on behalf of a decedent, the contingent fee shall be calculated on the aggregate sum of the recovery.

**(e)** Paragraph (c) of this rule is intended to fix maximum permissible fees and does not preclude an attorney from entering into a contingent fee arrangement providing for, or from charging or collecting a contingent fee below such limits. In all cases contingent fees charged or collected must conform to RPC 1.5(a).

**(f)** If at the conclusion of a matter an attorney considers the fee permitted by paragraph (c) to be inadequate, an application on written notice to the client may be made to the Assignment Judge or the designee of the Assignment Judge for the hearing and determining of a reasonable fee in light of all the circumstances. This rule shall not preclude the exercise of a client's existing right to a court review of the reasonableness of an attorney's fee.

**(g)** Where the amount of the contingent fee is limited by the provisions of paragraph (c) of this rule, the contingent fee arrangement shall be in writing, signed both by the attorney and the client, and a signed duplicate shall be given to the client. Upon conclusion of the matter resulting in a recovery, the attorney shall prepare and furnish the client with a signed closing statement.

**(h) Calculation of Fee in Structured Settlements.** As used herein the term "structured settlement" refers to the payment of any settlement between the parties or judgment entered pursuant to a proceeding approved by the Court, the terms of which provide for the payment of the funds to be received by the plaintiff on an installment basis. For purposes of paragraph (c), the basis for calculation of a contingent fee shall be the value of the structured settlement as herein defined. Value shall consist of any cash payment made upon consummation of the settlement plus the actual cost to the party making the settlement of the deferred payment aspects thereof. In the event that the party paying the settlement does not purchase the deferred payment component, the actual cost thereof shall be the actual cost assigned by that party to that component. For further purposes of this rule, the party making the settlement offer shall, at the time the offer is made, disclose to the party receiving the settlement offer its actual cost and, if it does not purchase the deferred payment aspect of the settlement, the factors and assumptions used by it in assigning actual cost.

**(i) Calculation of Fee in Settlement of Class or Multiple Party Actions.** When representation is undertaken on behalf of several persons whose respective claims, whether or not joined in one action, arise out of the same transaction or set of facts or involve substantially identical liability issues, the contingent fee shall be calculated on the basis of the aggregate sum of all recoveries, whether by judgment, settlement or both, and shall be charged to the clients in proportion to the recovery of each. Counsel may, however, make application for modification of the fee pursuant to paragraph (f) of this rule in appropriate cases.

**Credits**

Note: Source--*R.* 1:21-6(f), as adopted July 7, 1971 to be effective September 13, 1971 and deleted December 21, 1971 to be effective January 31, 1972. Adopted December 21, 1971 to be effective January 31, 1972. Amended June 29, 1973 to be effective September 10, 1973. Paragraphs (c) and (e) amended October 13, 1976, effective as to contingent fee arrangements entered into on November 1, 1976 and thereafter. Closing statements on all contingent fee arrangements filed as previously required between January 31, 1972 and January 31, 1973 shall be filed with the Administrative Office of the Courts whenever the case is closed; paragraph (c) amended July 29, 1977 to be effective September 6, 1977; paragraph (d) amended July 24, 1978 to be effective September 11, 1978; paragraph (c) amended and new paragraphs (h) and (i) adopted January 16, 1984, to be effective immediately; paragraph (d) amended July 26, 1984 to be effective September 10, 1984; paragraph (e) amended June 29, 1990 to be effective September 4, 1990; paragraphs (b) and (c)(5) amended July 13, 1994 to be effective September 1, 1994; paragraph (c) amended June 28, 1996 to be effective September 1, 1996; paragraph (c) amended January 21, 1999 to be effective April 5, 1999; paragraphs (g) and (h) amended July 5, 2000 to be effective September 5, 2000; paragraph (c) amended July 12, 2002 to be effective September 3, 2002; paragraphs (d) and (f) amended July 9, 2008 to be effective September 1, 2008; paragraph (f) amended July 19, 2012 to be effective September 4, 2012; paragraph (c) amended July 22, 2014 to be effective September 1, 2014.

R. 1:21-7, NJ R GEN APPLICATION R. 1:21-7

New Jersey rules are current with amendments received through July 15, 2022. Some rules may be more current; see credits for details.

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

2022 WL 1500958
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Sharon RUDDEROW and
Robert Rudderow, Plaintiffs,
v.
BOSTON SCIENTIFIC CORPORATION,
John and Jane Does 1–10, and
ABC Corps. 1–10, Defendants.

Civil Action No. 20-08561 (CPO)
|
Signed 05/11/2022
|
Filed 05/12/2022

**Attorneys and Law Firms**

Adam M. Slater, Julia S. Slater, Mazie Slater Katz & Freeman, 103 Eisenhower Parkway, Suite 207, Roseland, NJ 07068, On behalf of Plaintiffs Sharon and Robert Rudderow.

James Holsey Keale, Tanenbaum Keale, LLP, Three Gateway Center, 100 Mulberry Street, Suite 1301, Newark, NJ 07102, Marina Mcguire, Tanenbaum Keale, LLP, One Newark Center, 1085 Raymond Boulevard, 16th Floor, Newark, NJ 07102, On behalf of Defendant Boston Scientific Corporation.

**OPINION**

O'HEARN, District Judge.

**I. INTRODUCTION**

**\*1** This matter comes before the Court on Mazie Slater Katz & Freeman, LLC's ("Mazie Slater" or "MS") Motion to Set a Reasonable Fee, (ECF No. 42), and Motion to Seal, (ECF No. 75). The Court did not hear oral argument pursuant to Local Civil Rule 78.1.[1] For the reasons discussed below, the Motion to Set a Reasonable Fee is **GRANTED IN PART AND DENIED IN PART**. The Motion to Seal is **GRANTED**.

[1] The Court initially noticed this matter for argument, (ECF No. 90), however, Plaintiffs advised the Court that, while they opposed any award of a fee to Mazie Slater,

they would be unable to appear for argument, (ECF No. 92).

**II. BACKGROUND**

The Court recites herein only those facts necessary to provide a brief background and resolve the pending Motions.

This is a products liability case concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse. (MS Reasonable Fee Br., ECF No. 43, at 1–2). On June 30, 2010, Plaintiff Sharon Rudderow was surgically implanted with the Uphold Vaginal Support System ("the Uphold"), a device manufactured and sold by Boston Scientific Corporation. (MS Reasonable Fee Br., ECF No. 43, at 2). She suffered, and continues to suffer, significant injuries as a result of the Uphold. (MS Reasonable Fee Br., ECF No. 43, at 2).

In 2016, shortly after filing their initial lawsuit, Plaintiffs replaced their initial counsel with Mazie Slater after having been dissatisfied with the quality of representation. (MS Reasonable Fee Br., ECF No. 43, at 2–3). The first serious settlement negotiations began in 2019, while the case was a part of the pelvic mesh Multi-District Litigation ("MDL"). (MS Reasonable Fee Br., ECF No. 43, at 3). After mediation was not successful, Plaintiffs re-filed their case in this Court on September 9, 2022 and began discovery. (MS Reasonable Fee Br., ECF No. 43, at 3). After a second mediation on August 25, 2021, the parties reached a settlement in excess of $3,000,000. (MS Reasonable Fee Br., ECF No. 43, at 2–3).

Mazie Slater subsequently filed the two motions that the Court now addresses. First, Mazie Slater filed a Motion to Set a Reasonable Fee, (ECF No. 42), which Plaintiffs, Sharon and Robert Rudderow acting pro se,[2] opposed, (ECF Nos. 55, 56). Second, Mazie Slater filed a Motion to Seal, (ECF No. 75), seeking to permanently seal Mazie Slater's Memorandum of Law in Support of Motion to Set a Reasonable Fee, (ECF No. 43), Adam M. Slater, Esquire's Certification in Support of that Motion, (ECF No. 43-1), the associated Proposed Order, (ECF No. 43-2), Mazie Slater's December 6, 2021 Letter to the Court, (ECF No. 45), the Memorandum in Opposition filed by Sharon Rudderow, (ECF No. 55), the Memorandum in Opposition filed by Robert Rudderow, (ECF No. 56), Plaintiffs' Exhibits to those Memoranda, (ECF No. 57), Plaintiffs' Motion to File Extended Briefs, (ECF No. 62), Mazie Slater's Reply Brief, (ECF No. 65), Adam M. Slater's Certification in Support of that Reply, (ECF No. 65-1), the Exhibits to that Certification, (ECF Nos. 65-2 to 65-8), the associated Proposed Order, (ECF No. 65-9), Plaintiffs' Sur-

Reply, Exhibits, and associated Proposed Order, (ECF No. 67), Plaintiffs' Motion to File Supplemental Reply Brief and Exhibits, (ECF No. 69), Plaintiffs' Opposition Letter Dated February 25, 2022, (ECF No. 76), and Plaintiffs' Motion for Leave to File Out of Time, (ECF No. 71). The Court interprets Plaintiffs' submissions as also opposing the Motion to Seal although the submissions are not entirely clear. (ECF No. 78).

2  Throughout the pendency of these Motions, Plaintiffs have indicated their intent to seek legal counsel to represent them and to oppose the Motions. The Court granted multiple requests for an extension of time for Plaintiffs to do so. (ECF Nos. 47, 53). The Court further held a hearing on January 10, 2022, (ECF Nos. 58, 60), in which Plaintiffs stated that the time was sufficient for them to obtain counsel. As of this date, Plaintiffs continue to appear pro se.

**\*2** Plaintiffs' submissions exceed 200 pages and include arguments and materials that are substantially irrelevant to the pending Motions.[3] The Court interprets Plaintiffs' submissions as requesting that the fee on the excess portion of the settlement be 0%, (Sharon Rudderow's Br. in Response to Motion to Set a Reasonable Fee, ECF No. 55, at 98), because Plaintiffs allege that Mazie Slater pressured them into signing the settlement agreement, manipulated them throughout the settlement process, and refused to return their medical and legal files upon their request. (ECF Nos. 55, 56). Plaintiffs also allege that Mazie Slater failed to adequately represent their interests, engaged in unethical behavior, and is attempting to deceive and manipulate the Court. (ECF Nos. 55, 56). The Court has reviewed relevant email communications during the course of this litigation between Plaintiffs and Mazie Slater and, it is clear that there has been a substantial breakdown in the attorney-client relationship. (ECF Nos. 43, 55, 56, 57).

3  Given Plaintiffs' pro se status, the Court granted their request to file two overlength briefs in response to the Motion to Set a Reasonable Fee. (ECF Nos. 55, 56, 57, 63). Plaintiffs were advised, however, that no further briefings would be permitted and that additional filings not in compliance with Local Civil Rule 7.1 would be stricken. (ECF Nos. 82, 89). Numerous subsequent letters submitted by Plaintiffs were thereafter stricken. (ECF Nos. 81, 83, 84, 87, 88, 94, 95).

As for the Motion to Seal, Plaintiffs request additional time to secure legal advice to determine how sealing the filings would impact their interest, citing concerns of HIPPA violations and what they allege to be their counsel's attempt to deceive the Court. However, while seemingly opposing the Motion to Seal, Plaintiffs request the redaction of their "identification, private communication, medical records, and private physician communication." (Pla. Response to Motion to Seal, ECF No. 78, at 5).

## III. LEGAL STANDARD

### A. Motion to Set a Reasonable Fee

New Jersey Rule 1:21-7(c) governs the fee that an attorney may charge a client when the attorney represents the client in a personal injury action based on a contingent fee agreement. The rule sets forth the maximum contingency fee an attorney may contract for in tort cases:

(1) 33 1/3% on the first $750,000 recovered;

(2) 30% on the next $750,000 recovered;

(3) 25% on the next $750,000 recovered;

(4) 20% on the next $750,000 recovered; and

(5) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof[.]

N.J.R. 1:21-7(c). Accordingly, Counsel must apply to the court for a "reasonable fee" on a recovery where the total amount of the excess $3,000,000. See N.J.R. 1:21-7(c). The amount of the fee in excess of $3,000,000 is to be determined by the court in light of all the circumstances. See King v. Cty. of Gloucester, 483 F. Supp. 2d 396, 398 (D.N.J. 2007) (citing Ehrlich v. Kids of North Jersey, Inc., et al., 338 N.J. Super. 442, 446 (App. Div. 2001)).

In determining the reasonable fee, the Court is guided by eight factors as laid out by the New Jersey Rules of Professional Conduct:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed on the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

R.P.C. 1.5(a); *see* N.J.R. 1:21-7(e) ("In all cases contingent fees charged or collected must conform to RPC 1.5(a)."); *Nikoo v. Cameron*, No. 18-11621, 2021 WL 672930, at *2 (D.N.J. Feb. 22, 2021) (applying New Jersey R.P.C. 1.5(a) to determine a reasonable fee). "Two especially important factors courts consider in determining a reasonable fee are whether 'the case presented problems which required exceptional skills beyond that normally encountered in such cases or the case was unusually time consuming.' " *King*, 483 F. Supp. 2d at 399 (citing *Wurtzel v. Werres*, 201 N.J. Super. 544, 549 (App. Div. 1985)).

**B. Motion to Seal**

**\*3**  Requests to seal are governed by Local Civil Rule 5.3, which provides, in pertinent part, that a request to seal must be presented by motion, and that the motion papers must describe "(a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available." L. Civ. R. 5.3(c)(2).

It is well established that there is a "common law public right of access to judicial proceedings and records," *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001), but "[i]n order to overcome this presumption of a public right of access, the movant must demonstrate that 'good cause' exists for the protection of the material at issue," *Securimetrics, Inc. v. Iridian Techs., Inc.*, No. 03-4394, 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006). Good cause exists when a party makes a particularized showing that disclosure will cause a "clearly defined and serious injury to the party seeking closure." *Id.* (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).

A motion to seal should be granted when the movant proves that the information is confidential in nature such that allowing the general public to access the information

will cause a specific and serious injury. *Pansy*, 23 F.3d at 788. "Circumstances weighing against confidentiality exist" when (1) "confidentiality is being sought over information important to public health and safety"; (2) "when the sharing of information among litigants would promote fairness and efficiency"; (3) when "a party benefiting from the order of confidentiality is a public entity or official"; and (4) "when the judicial record involves matters of legitimate public concern." *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 222–23 (3d Cir. 2011) (quoting *Pansy*, 23 F.3d at 787–78) (internal quotations omitted).

**IV. DISCUSSION**

Addressing the Motion to Set a Reasonable Fee, (ECF No. 42), the Court finds that a fee of 25% in excess of $3,000,000 is appropriate considering the nature of the case and the amount of time expended by counsel. Regarding the Motion to Seal, (ECF No. 75), the Court finds that Mazie Slater has presented good cause to seal the Motion to Set a Reasonable Fee, (ECF No. 42), and associated filings and has rebutted the presumption in favor of public accessibility given the confidentiality of attorney-client communications, work product, and settlement terms discussed therein.

**A. Motion to Set a Reasonable Fee**

The Court addresses two preliminary issues: first, Plaintiffs' opposition, and second, whether the fee agreement between Mazie Slater and Plaintiffs and the Court's discretion to set a reasonable fee is governed by N.J.R. 1:21-7(c) in its current version or as it was prior to its most recent amendment in 2014.

First, the majority of Plaintiffs' arguments opposing the Motion focus on their stated displeasure with the services of Mazie Slater, allegations that they were coerced to agree to a settlement, and the payment of a referral fee to their prior counsel. To the extent that Plaintiffs contest the calculation of the contingency fee and/or payment of any referral fee therefrom, this Court has no jurisdiction to determine such disputes. *See Saffer v. Willoughby*, 670 A.2d 527, 531–32 (1996) ("[New Jersey] Rules 1:20A–1 to –6 govern the fee arbitration process" before the appropriate district's fee committee); N.J.R. 1:20A-2(a) ("Each Fee Committee shall, pursuant to these rules, have jurisdiction to arbitrate fee disputes between clients and attorneys"); *In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.*, 911 F.3d 666, 672 (3d Cir. 2018) (discussing that federal courts may take jurisdiction over fee disputes "where the district court had

control over the disputed funds" or "where resolution of the fee dispute enables the court to resolve the underlying action over which the court has jurisdiction"). Finally, there is no motion filed by Plaintiffs seeking to set aside the settlement reached in this matter or any factual or legal basis to support such arguments.

**\*4** Second, the Court must determine whether the prior or current version of N.J.R. 1:21-7(c) applies to this Motion. Prior to 2014, the maximum fee schedule permitted by N.J.R. 1:21-7(c) fixed the fee for the first $2,000,000 of a recovery,[4] requiring the Court to set the fee for any recovery over $2,000,000. The current version of N.J.R. 1:21-7(c) fixes the fee for the first $3,000,000, requiring the Court to set the fee for any recovery over $3,000,000.

[4]    Prior to 2014, the maximum fee set by N.J.R. 1:21-7(c) was:

(1) 33 1/3% on the first $500,000 recovered;

(2) 30% on the next $500,000 recovered;

(3) 25% on the next $500,000 recovered;

(4) 20% on the next $500,000 recovered; and

(5) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof[.]

Mazie Slater contends that the fee agreement signed by Plaintiffs in 2016 is subject to the prior version of the rule, stating that the prior version of N.J.R. 1:21-7(c) was in place when the fee agreement was signed. (MS Reasonable Fee Br., ECF No. 43, at 4 n.3). However, N.J.R. 1:21-7(c) was most recently amended in 2014, and was in fact already place when Plaintiffs signed the fee agreement in 2016. Thus, the Court finds that Mazie Slater's fee agreement and this Motion are governed by the current version of N.J.R. 1:21-7(c), which was in effect in 2016.

Turning to the merits of the Motion, Mazie Slater seeks this Court's approval for a 33.3% fee on the settlement amount that exceeds $2,000,000. (MS Reasonable Fee Br., ECF No. 43, at 4). The 2016 fee agreement signed by Plaintiffs sets the fee for the first $2,000,000 of the settlement and states any fee on recovery in excess of $2,000,000 will be determined by the Court. (MS Reasonable Fee Br., ECF No. 43, Exh. 1). Because that fee is less than the maximum amount set by N.J.R. 1:21-7(c), the fee for recovery on the first $2,000,000 of the award is governed by the fee agreement. However, Mazie Slater's application seeking a 33.3% fee on the recovery in excess of $2,000,000 is not consistent with N.J.R. 1:21-7(c) because the Court does not have discretion to set a reasonable

fee for the recovery between $2,000,000 and $3,000,000. Instead, the fee amount between $2,000,000 and $3,000,000 is governed by the fee schedule of N.J.R. 1:21-7(c).[5] As such, the fee on the recovery from $2,000,000 to $2,250,000 is set at 25% and the fee on the recovery between $2,250,000 and $3,000,000 is set at 20%. It is only on the recovery greater than $3,000,000 that the Court has authority to set a reasonable fee. See N.J.R. 1:21-7. Plaintiffs' suggestion that Mazie Slater should receive no fee over $2,000,000 is not reasonable and lacks merit. Application of the factors listed in New Jersey R.P.C. 1.5(a) leads the Court to find that an award of 25% is appropriate.

[5]    Mazie Slater provides no analysis or discussion for its position that the 2016 fee agreement signed by Plaintiffs is not governed by the then, and now, current version of N.J.R. 1:21-7(c).

When a case presents exceptional lawyering, the court will generally award a fee approximately at or above one-third of the excess amounts recovered. See King, 483 F. Supp. 2d. at 399 (approving a 33.33% fee on excess amount above $2,000,000, based on the prior version of N.J.R. 1:21-7(c)). Courts have found exceptional lawyering warranting a one-third recovery where the case presented significant obstacles and success appeared unlikely, see Estate of McMahon v. Turner Corp., No. 05-4389, 2007 WL 2688557, at \*3 (D.N.J. Sept. 7, 2007), where new law is established on appeal, Buckelew v. Grossbard, 461 A.2d 590, 592 (N.J. Super. Ct. 1983), aff'd, 469 A.2d 518 (N.J. App. Div. 1983), or "where trial, appeal, and retrial [was] required," Luchejko v. Membreno, 475 A.2d 696, 697 (N.J. Super. Ct. Law Div. 1983) (finding exceptional lawyering in a medical malpractice action involving a "number of difficult legal issues," as well as extensive discovery, pre-trial motions, a six-day trial, and post-trial motions).

**\*5** Conversely, however, when a case presents more typical circumstances, rather than exceptional circumstances, the fee will range from 20% to 25% of the excess amounts recovered. Nikoo, 2021 WL 672930, at \*3; see Mitzel v. Westinghouse Elec. Corp., 72 F.3d 414, 416–20 (3d Cir. 1995) (affirming denial of net recovery of 33.33% of settlement and fixing fee at 20% in excess recovery in unexceptional case). Courts have found cases to be unexceptional when they went to trial despite being "ripe for settlement," Anderson, 501 A.2d at 1066, or are not unusually time consuming, see Mitzel, 72 F.3d at 416, 418-19 (finding two-and-a-half years of litigation and 5100 attorney hours of discovery as not unusually time

consuming where case did not present problems requiring exceptional skills).

Considering Mazie Slater's submissions regarding the time and effort expended on this case, and evaluating the required factors, the Court is not persuaded that this case was so exceptional as to warrant the requested fee of 33.3% on the recovery exceeding $3,000,000. In evaluating the case, the Court does not doubt the diligence and competence of counsel. The Court recognizes the potential difficulty in proving causation in this case—particularly given the lengthy medical history of the Plaintiff as set forth in Counsel's certification—and Mazie Slater's ability to resolve this case with a significant settlement for Plaintiffs without unnecessary trial. *See Anderson*, 501 A.2d at 1066.

However, the Court notes that Mazie Slater reported 1530.6 hours on the case over five years, vastly less than cases in which courts have found cases to be unusually time consuming. (MS Reasonable Fee Br., ECF No. 43, at 5); *see King*, 483 F. Supp. 2d at 399 (finding that 4290 attorney hours was unusually time consuming); *Mitzel*, 72 F.3d at 416, 418-19 (finding 5100 attorney hours was not unusually time consuming). While a partner did perform several hundred hours of work on this case, the large majority of the 1530.6 hours were performed by two attorneys with five or fewer years of experience, and estimating market value for the 1530.6 hours, the monetary value of the time spent on this case is much less than the value of the 33.3% fee requested. *See King*, 483 F. Supp. 2d at 398-400 (considering the value of the legal services billed at counsel's hourly rate as compared to the requested fee). Further, while the nature of pelvic mesh cases is difficult and requires a knowledge of medical procedures and medical device designs, there was no trial in this case, let alone an appeal or retrial, and the motion practice was unremarkable—no motion to dismiss, summary judgment, or *Daubert* motion having been filed.

As such, the Court finds that the case does not rise to the level of exceptional that is required to support the requested fee. Therefore, after an evaluation of the factors as they pertain to this case, the Court will grant the Motion to Set a Reasonable Fee but award 25% on the settlement in excess of $3,000,000 instead of the requested 33.3%.[6]

[6]  A motion under N.J.R. 1:21-7(c)(5) requires the Court to determine the maximum fee permitted. Pursuant to N.J.R. 1:21-7(d) that award "shall be computed on the net sum recovered after deducting disbursements

in connection with the institution and prosecution of the claim." To the extent Mazie Slater asks this Court to determine the reasonableness of its fees or disbursements, such a request is beyond the discretion of this Court and the purview of N.J.R. 1:21-7(c).

**B. Motion To Seal**

Mazie Slater additionally moves to seal the Motion to Set a Reasonable Fee and accompanying filings claiming that they contain information that is (1) subject to attorney-client privilege, (2) subject to the confidentiality requirement of the settlement agreement, and (3) highly confidential and proprietary regarding Mazie Slater's legal strategy in pelvic mesh cases. (MS Motion to Seal, ECF No. 75 at 2). The Court notes that while Plaintiffs state that they oppose this Motion, they expressly seek to have a significant portion of the submissions redacted. (Pla. Response to Motion to Seal, ECF No. 78, at 5). Further, while Plaintiffs request additional time to seek legal counsel on this issue, the Court has afforded Plaintiffs multiple extensions of time—almost five months have passed since the Court first granted Plaintiffs an extension of time to seek counsel, and at least two have passed since the filing of the Motion to Seal—and Plaintiffs continue to proceed pro se. (ECF Nos. 47, 53, 75). As such, Plaintiffs have had a reasonable period of time to obtain counsel. *See, e.g., Hayes v. Nestor*, No. 09-6092, 2013 WL 5176703, at *2–4 (D.N.J. Sept. 12, 2013) (noting that pro se plaintiff had "ample time" to retain counsel in the two months since her counsel withdrew).

**\*6**  With respect to the first factor, the nature of the materials at issue, the subject of the Motion to Seal—the Motion to Set a Reasonable Fee and associated filings—contain communications between Plaintiffs and their attorney as well as the terms of the settlement agreement. The filings have little, if any, relationship to the underlying claims in this action, but rather touch upon Plaintiffs' counsel's fee following the settlement agreement. The filings Mazie Slater seeks to seal are, by nature, privileged attorney-client communications and information, as they discuss communications between Mazie Slater and its clients, fee structures, and work product.

For the second factor, the legitimate private or public interests, there are many, namely, the parties' interest in maintaining attorney-client privilege, and keeping Plaintiffs' medical information, Mazie Slater's legal strategy, and the terms of the settlement confidential.

As to the third factor, it is clear to the Court that the parties will be harmed if the Motion and accompanying filings are not sealed as it will destroy the privilege of some attorney-client communications. *See Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 97 (3d Cir. 1992), *as amended* (Sept. 17, 1992) (holding that even where there may be an exception to the attorney-client privilege, documents must remain sealed). Plaintiffs, as the holder of the privilege, could certainly waive the attorney-client privilege, however, it is far from clear from their submissions that in fact they seek to do so. *See Berardino v. Prestige Mgmt. Servs., Inc.*, No. 14-3451, 2017 WL 1084523, at *5 (D.N.J. Mar. 21, 2017) ("nor were there any acts evincing a clear intent to waive the attorney-client privilege...."). Further injury would result from the public having access to Mazie Slater's summary of work on Plaintiffs' case as it would reveal the attorneys' strategy and work-product. *See Pal v. Univ. of Med. & Dentistry of N.J.*, No. 11-06911, 2013 WL 4607160, at *2 (D.N.J. Aug. 29, 2013) (citing *Bracco Diagnostics, Inc. v. Amersham Health Inc.*, 2007 WL 2085350, at *5 (D.N.J. July 18, 2007)). Additionally, the settlement agreement at the heart of this matter indicates an intent by all parties to keep the contents confidential, and, thus, publication of the terms could potentially constitute a material breach of the agreement. *Nikoo*, 2021 WL 672930, at *4 (D.N.J. Feb. 22, 2021) (citing *LEAP*, 638 F.3d at 222). Finally, the filings detail Plaintiff's medical history and treatment, which invoke serious privacy concerns. *Bertolotti v. AutoZone, Inc.*, 132 F. Supp. 3d 590, 609 (D.N.J. 2015) (citing *Everett v. Nort*, 547 Fed. App'x 117, 122 n.9 (3d Cir. 2013)) ("[t]he Third Circuit has recognized the important privacy interest in one's medical records[.]").

Regarding the final factor, since the Motion and accompanying filings discuss attorney-client communications and the terms of the settlement agreement in detail throughout, there is no less restrictive means by which to protect the parties' interests.

The Court therefore finds that good cause exists to seal the filings. Turning next to the presumption in favor of public accessibility, the Court notes that both parties are private entities, their dispute does not implicate the health and safety of the public, and their settlement agreement demonstrates an intent to maintain confidentiality. Accordingly, based on these findings, the Court finds these facts to rebut the presumption and will grant Mazie Slater's Motion to Seal.

## V. CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART AND DENY IN PART** Mazie Slater's Motion to Set a Reasonable Fee, (ECF No. 42). The fee for the recovery under $2,000,000 is governed by the 2016 fee agreement signed by Plaintiffs; the fee for the recovery between $2,000,000 and $3,000,000 is governed by the fee schedule set by the current version of N.J.R. 1:21-7(c) meaning the fee on the recovery from $2,000,000 to $2,250,000 is set at 25% and the fee on the recovery between $2,250,000 and $3,000,000 is set at 20%; and the fee for the recovery in excess of $3,000,000 is set by the Court at 25%. The Court will also **GRANT** Mazie Slater's Motion to Seal, (ECF No. 75). An appropriate Order will be entered.

**All Citations**

Slip Copy, 2022 WL 1500958

---

End of Document

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT C

## NEW JERSEY GENERAL DURABLE POWER OF ATTORNEY

### THE POWERS YOU GRANT BELOW ARE EFFECTIVE
### EVEN IF YOU BECOME DISABLED OR INCOMPETENT

NOTICE: THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. THEY ARE EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT. IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO. THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE TO BE EFFECTIVE EVEN IF YOU BECOME DISABLED, INCAPACITATED, OR INCOMPETENT.

I _Xavier Tyree Ingram_, _714 Sycamore St., Apt B4, Camden NJ_ [insert your name and address] appoint _Ashley Ingram, 142 Branch Village, Camden, NJ_ [insert the name and address of the person appointed] as my Agent (attorney-in-fact) to act for me in any lawful way with respect to the following initialed subjects:

TO GRANT ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF (N) AND IGNORE THE LINES IN FRONT OF THE OTHER POWERS.

TO GRANT ONE OR MORE, BUT FEWER THAN ALL, OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF EACH POWER YOU ARE GRANTING.

TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF IT. YOU MAY, BUT NEED NOT, CROSS OUT EACH POWER WITHHELD.

Note: If you initial Item A or Item B, which follow, a notarized signature will be required on behalf of the Principal.

INITIAL

_(A)_ Real property transactions. To lease, sell, mortgage, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any interest in real property whatsoever, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, tear down, alter, rebuild, improve manage, insure, move, rent, lease, sell, convey, subject to liens, mortgages, and security deeds, and in any way or manner deal with all or any part of any interest in real property whatsoever, including specifically, but without limitation, real property lying and being situated in the State of New Jersey, under such terms and conditions, and under such covenants, as my Agent shall deem proper and may for all deferred payments accept purchase money notes payable to me and secured by mortgages or deeds to secure debt, and may from time to time collect and cancel any of said notes, mortgages, security interests, or deeds to secure debt.

_(B)_ Tangible personal property transactions. To lease, sell, mortgage, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any personal property whatsoever, tangible or intangible, or interest thereto, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, improve, manage, insure, rent, lease, sell, convey, subject to liens or mortgages, or to take any other security interests in said property which are recognized under the Uniform Commercial Code as adopted at that time under the laws of the State of New Jersey or any applicable state, or otherwise



hypothecate (pledge), and in any way or manner deal with all or any part of any real or personal property whatsoever, tangible or intangible, or any interest therein, that I own at the time of execution or may thereafter acquire, under such terms and conditions, and under such covenants, as my Agent shall deem proper.

(C) **Stock and bond transactions.** To purchase, sell, exchange, surrender, assign, redeem, vote at any meeting, or otherwise transfer any and all shares of stock, bonds, or other securities in any business, association, corporation, partnership, or other legal entity, whether private or public, now or hereafter belonging to me.

(D) **Commodity and option transactions.** To organize or continue and conduct any business which term includes, without limitation, any farming, manufacturing, service, mining, retailing or other type of business operation in any form, whether as a proprietorship, joint venture, partnership, corporation, trust or other legal entity; operate, buy, sell, expand, contract, terminate or liquidate any business; direct, control, supervise, manage or participate in the operation of any business and engage, compensate and discharge business managers, employees, agents, attorneys, accountants and consultants; and, in general, exercise all powers with respect to business interests and operations which the principal could if present and under no disability.

(E) **Banking and other financial institution transactions.** To make, receive, sign, endorse, execute, acknowledge, deliver and possess checks, drafts, bills of exchange, letters of credit, notes, stock certificates, withdrawal receipts and deposit instruments relating to accounts or deposits in, or certificates of deposit of banks, savings and loans, credit unions, or other institutions or associations. To pay all sums of money, at any time or times, that may hereafter be owing by me upon any account, bill of exchange, check, draft, purchase, contract, note, or trade acceptance made, executed, endorsed, accepted, and delivered by me or for me in my name, by my Agent. To borrow from time to time such sums of money as my Agent may deem proper and execute promissory notes, security deeds or agreements, financing statements, or other security instruments in such form as the lender may request and renew said notes and security instruments from time to time in whole or in part. To have free access at any time or times to any safe deposit box or vault to which I might have access.

(F) **Business operating transactions.** To conduct, engage in, and otherwise transact the affairs of any and all lawful business ventures of whatever nature or kind that I may now or hereafter be involved in.

(G) **Insurance and annuity transactions.** To exercise or perform any act, power, duty, right, or obligation, in regard to any contract of life, accident, health, disability, liability, or other type of insurance or any combination of insurance; and to procure new or additional contracts of insurance for me and to designate the beneficiary of same; provided, however, that my Agent cannot designate himself or herself as beneficiary of any such insurance contracts.

(H) **Estate, trust, and other beneficiary transactions.** To accept, receipt for, exercise, release, reject, renounce, assign, disclaim, demand, sue for, claim and recover any legacy, bequest, devise, gift or other property interest or payment due or payable to or for the principal; assert any interest in and exercise any power over any trust, estate or property subject to fiduciary control; establish a revocable trust solely for the benefit of the principal that terminates at the death of the principal and is then distributable to the legal representative of the estate of the principal; and, in general, exercise all powers with respect to estates and trusts which the principal could exercise if present and under no disability; provided, however, that the Agent may not make or change a will and may not revoke or amend a trust revocable or amendable by the principal or require the trustee of any trust for the benefit of the principal to pay income or principal to the Agent unless specific authority to that end is given.

PLTF014462

**(I) Claims and litigation.** To commence, prosecute, discontinue, or defend all actions or other legal proceedings touching my property, real or personal, or any part thereof, or touching any matter in which I or my property, real or personal, may be in any way concerned. To defend, settle, adjust, make allowances, compound, submit to arbitration, and compromise all accounts, reckonings, claims, and demands whatsoever that now are, or hereafter shall be, pending between me and any person, firm, corporation, or other legal entity, in such manner and in all respects as my Agent shall deem proper.

**(J) Personal and family maintenance.** To hire accountants, attorneys at law, consultants, clerks, physicians, nurses, agents, servants, workmen, and others and to remove them, and to appoint others in their place, and to pay and allow the persons so employed such salaries, wages, or other remunerations, as my Agent shall deem proper.

**(K) Benefits from Social Security, Medicare, Medicaid, or other governmental programs, or military service.** To prepare, sign and file any claim or application for Social Security, unemployment or military service benefits; sue for, settle or abandon any claims to any benefit or assistance under any federal, state, local or foreign statute or regulation; control, deposit to any account, collect, receipt for, and take title to and hold all benefits under any Social Security, unemployment, military service or other state, federal, local or foreign statute or regulation; and, in general, exercise all powers with respect to Social Security, unemployment, military service, and governmental benefits, including but not limited to Medicare and Medicaid, which the principal could exercise if present and under no disability.

**(L) Retirement plan transactions.** To contribute to, withdraw from and deposit funds in any type of retirement plan (which term includes, without limitation, any tax qualified or nonqualified pension, profit sharing, stock bonus, employee savings and other retirement plan, individual retirement account, deferred compensation plan and any other type of employee benefit plan); select and change payment options for the principal under any retirement plan; make rollover contributions from any retirement plan to other retirement plans or individual retirement accounts; exercise all investment powers available under any type of self-directed retirement plan; and, in general, exercise all powers with respect to retirement plans and retirement plan account balances which the principal could if present and under no disability.

**(M) Tax matters.** To prepare, to make elections, to execute and to file all tax, social security, unemployment insurance, and informational returns required by the laws of the United States, or of any state or subdivision thereof, or of any foreign government; to prepare, to execute, and to file all other papers and instruments which the Agent shall think to be desirable or necessary for safeguarding of me against excess or illegal taxation or against penalties imposed for claimed violation of any law or other governmental regulation; and to pay, to compromise, or to contest or to apply for refunds in connection with any taxes or assessments for which I am or may be liable.

**(N) ALL OF THE POWERS LISTED ABOVE.** YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).

SPECIAL INSTRUCTIONS:

ON THE FOLLOWING LINES YOU MAY GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT.

_____

_____

_____

_____

_____

_____

_____

THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.

THIS POWER OF ATTORNEY SHALL BE CONSTRUED AS A GENERAL DURABLE POWER OF ATTORNEY AND SHALL CONTINUE TO BE EFFECTIVE EVEN IF I BECOME DISABLED, INCAPACITATED, OR INCOMPETENT.

(YOUR AGENT WILL HAVE AUTHORITY TO EMPLOY OTHER PERSONS AS NECESSARY TO ENABLE THE AGENT TO PROPERLY EXERCISE THE POWERS GRANTED IN THIS FORM, BUT YOUR AGENT WILL HAVE TO MAKE ALL DISCRETIONARY DECISIONS. IF YOU WANT TO GIVE YOUR AGENT THE RIGHT TO DELEGATE DISCRETIONARY DECISION-MAKING POWERS TO OTHERS, YOU SHOULD KEEP THE NEXT SENTENCE, OTHERWISE IT SHOULD BE STRICKEN.)

**Authority to Delegate.** My Agent shall have the right by written instrument to delegate any or all of the foregoing powers involving discretionary decision-making to any person or persons whom my Agent may select, but such delegation may be amended or revoked by any agent (including any successor) named by me who is acting under this power of attorney at the time of reference.

(YOUR AGENT WILL BE ENTITLED TO REIMBURSEMENT FOR ALL REASONABLE EXPENSES INCURRED IN ACTING UNDER THIS POWER OF ATTORNEY. STRIKE OUT THE NEXT SENTENCE IF YOU DO NOT WANT YOUR AGENT TO ALSO BE ENTITLED TO REASONABLE COMPENSATION FOR SERVICES AS AGENT.)

**Right to Compensation.** My Agent shall be entitled to reasonable compensation for services rendered as agent under this power of attorney.

(IF YOU WISH TO NAME SUCCESSOR AGENTS, INSERT THE NAME(S) AND ADDRESS(ES) OF SUCH SUCCESSOR(S) IN THE FOLLOWING PARAGRAPH.)

**Successor Agent.** If any Agent named by me shall die, become incompetent, resign or refuse to accept the office of Agent, I name the following (each to act alone and successively, in the order named) as successor(s) to such Agent:

_____

_____

**Choice of Law.** THIS POWER OF ATTORNEY WILL BE GOVERNED BY THE LAWS OF THE STATE OF NEW JERSEY WITHOUT REGARD FOR CONFLICTS OF LAWS PRINCIPLES. IT WAS EXECUTED IN THE STATE OF NEW JERSEY AND IS INTENDED TO BE VALID IN ALL JURISDICTIONS OF THE UNITED STATES OF AMERICA AND ALL FOREIGN NATIONS.

I am fully informed as to all the contents of this form and understand the full import of this grant of powers to my Agent.

I agree that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party learns of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this 13th day of June, 20 14

_Chelley Jam_     FOR XAVIER INGRAM
[Your Signature]      ( BROTHER )

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
[Your Social Security Number]

---

## CERTIFICATE OF ACKNOWLEDGMENT OF NOTARY PUBLIC

STATE OF NEW JERSEY
COUNTY OF Camden

This document was acknowledged before me on 6/13/14 [Date] by
Adam M. Epstein, Esq. [name of principal].

[Notary Seal, if any]:

_Adam Epstein_ (attorney at law)
(Signature of Notarial Officer)

Notary Public for the State of New Jersey

My commission expires: _____

---

## ACKNOWLEDGMENT OF AGENT

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

Ashley Ingram
[Typed or Printed Name of Agent]

_Chelley Jam_
[Signature of Agent]

PLTF014465

PREPARATION STATEMENT

This document was prepared by the following individual:

For Xavier Ingram
(brother)

Ashley Ingram
[Typed or Printed Name]

[Signature]

PLTF014466