# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ 07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn*°
David M. Estes
Adam M. Epstein°

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

**Writer's Direct Dial & Email:**
973-228-0473
bbaldinger@mazieslater.com

Karen G. Kelsen°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Samuel G. Wildman
Julia S. Slater°
Trevor D. Dickson

°Member of N.J. & N.Y. Bars

August 17, 2022

**VIA ECF ONLY**
Honorable Juan R. Sanchez, U.S.C.J.
United States District Court, Eastern District of Pennsylvania
James A. Byrne United States Courthouse
Room 14613
Philadelphia, Pennsylvania 19106-1797

  Re: **Xavier Ingram v. County of Camden, et al.**
    **Civil Action No.: 1:14-cv-05519**

Dear Chief Judge Sanchez:

  This letter is submitted in response to the August 16, 2022 letter by William Cook, Esq., where once again, out of sheer vindictiveness, he seeks to derail the pending application for approval of attorney's fees and delay Mr. Ingram's receipt of the settlement funds.  In sum, Mr. Cook claims that his filing the Stipulation of Dismissal, on August 16, 2022 at 11: 27 p.m., immediately divested this Court of all jurisdiction over this case. Specifically, Mr. Cook, who has absolutely no stake or interest in the pending fee application, states:

> …The Court is now devoid of any further jurisdiction… to embark on any independent inquiry, under New Jersey state law, as to whether Plaintiff should be ordered to pay his lawyers even more fees from his settlement funds." (D.E. 514-1, Page 2, Note 1)

  Mr. Cook provides no Court Rule, nor any case law to support this absurd and untenable position. As is most evident -- between Mr. Cook's frivolous and baseless challenges to the

Hon. Juan R. Sanchez, U.S.C.J.
August 17, 2022
Page 2

pending fee application raised in his letter of August 4, 2022 (D.E. 511) [1] and this latest missive –

Mr. Cook's sole intent and motivation is to punish my firm and Mr. Ingram. Mr. Cook's goal is

clear -- have Your Honor not rule the pending fee application, and instead, force this firm and

plaintiff to bring a separate State Court action solely to address the fee application.   This

obstructionist gamesmanship should not be sanctioned by this Court,

Unequivocally, by virtue of well-established precedent in the Third Circuit, including

Mitzel v Westinghouse Elec. Corp., 72 F.3d 414, 417 (3d. Cir. 1995)(Contingency fee agreements

fall within a court's supervisory power over the members of its bar); King v County of Gloucester,

483 F. Supp. 2d 396 (D.N.J. Feb. 26, 2007(Awarding fees under N.J. Rule 1:21-7 to plaintiff's

counsel in civil rights case), as well as the May 14, 2020 Order of Chief Judge D. Brooks Smith

of the United States Court of Appeals for the Third Circuit Court, this Court -- and more

specifically Your Honor -- has jurisdiction to address the pending fee application, as this Order

provides,

> Pursuant to 28 U.S.C. Section 292(b), and finding that it is in the
> public interest to do so, I hereby designate and assign the Honorable
> Juan R. Sanchez of the United States District Court for Eastern
> District of Pennsylvania for such a period as is necessary for the
> disposition of the above-entitled matter.  [D.E. 298]

(See, Baldinger Letters filed August 2, 2022 (D.E. 509) and August 5, 2022 (D.E. 513)) Moreover,

contrary to Mr. Cook's contention, the August 16, 2022 filing of the Stipulation of Dismissal does

not divest this Court of jurisdiction to resolve the fee application filed a month ago.

---

[1]     Plaintiff effectively dispelled Mr. Cook's baseless assertions that Mr. Ingram was mentally
incompetent rendering his Power of Attorney and our Retainer Agreement void; alternatively, that
the Retainer Agreement should be modified by a subsequent change to the contingency fee Rule
1:21-7; and that the fee application must be heard in State Court. (D.E. 512)

Hon. Juan R. Sanchez, U.S.C.J.
August 17, 2022
Page 3

Cases are routinely settled by payment of funds in exchange for a stipulation of dismissal of the claims between the parties, and the mere filing of a stipulation of dismissal does not divest the Court of jurisdiction to address a pending fee application. This principle is well known and followed by defense counsel from Brown & Connery, LLP, William Cook and William Tambussi, as illustrated by their conduct in the case of King v. Gloucester County, 483 F. Supp.2d 396 (D.N.J. February 26, 2007).   In King, a civil rights case, William Tambussi, Esq. of Brown & Connery, LLP defended the prime defendants, County of Gloucester and a number of its employees. On October 12, 2006, Mr. Tambussi, along with other parties, reached a settlement for $3 million dollars. Id. 398. After the case was settled, on January 9, 2007, plaintiff's counsel, Sharon A. King and Stanley O. King, filed their fee application -- Motion for reasonable counsel fees. (Annexed hereto as **Exhibit A:** Motion for reasonable counsel fees filed January 9, 2007(D.E. 78)) After the fee application was filed, on February 6, 2007, a Stipulation of Dismissal with Prejudice was filed -- as signed by all counsel including William Tambussi. (Annexed hereto as **Exhibit B**: Stipulation of Dismissal filed February 6, 2007 (D.E. 79)) Thereafter, on February 23, 2007, the fee application was heard by Magistrate Joel Schneider and an Order entered granting the motion, followed by a written Opinion and Order entered on February 26, 2007. (Annexed hereto as **Exhibit C**: Minutes of Proceedings entered February 23, 2007, Opinion and Order entered February 26, 2007 (D.E. 83, 84)) As made clear in King, the Court properly exercised its jurisdiction to address plaintiff's counsel's fee application – even after the stipulation of dismissal with prejudice was filed – as embraced by William Tambussi of Brown & Connery, LLP.  So, too should be the case here.

Furthermore, the fact that plaintiff, Xavier Ingram *supports* this pending fee application should not be overlooked.  Contrary to Mr. Cook's characterization, the pending fee application is

Hon. Juan R. Sanchez, U.S.C.J.
August 17, 2022
Page 4

not a motion "to compel Xavier Ingram to pay his lawyers more fees from his settlement by way of a 'fee enhancement' under New Jersey law." (D.E. 514, Note 1)  This motion seeks an award of fees lawfully provided for under N.J. Rule 1:21-7, properly set forth in the Retainer Agreement with the plaintiff, and justifiably earned as set forth in the fee application.  Which by the way, during a conference call with Your Honor on August 2, 2022, all defense counsel, including Bill Cook, indicated they had no objection to.

One last important point.  Because of defense counsel's machinations, Mr. Ingram has been held hostage and has not been able to get on with his life.  The full settlement sits in our trust account, awaiting the court's resolution of defense counsel's objections.  Mr. Ingram is entitled to closure, and we ask that the fee issue be resolved by the Court so that we can disburse the settlement monies to Mr. Ingram.

For these reasons, and those previously provided to the Court, it is respectfully requested that this Court address and enter the Fee Application as formerly returnable on August 15, 2022.

Respectfully submitted,

**MAZIE SLATER KATZ & FREEMAN, LLC**
Attorneys for Plaintiff

*/s/ Beth G. Baldinger*
BETH G. BALDINGER, ESQ.

cc:   Counsel of Record
      Xavier Ingram (Via Email)

# EXHIBIT A

Stanley O. King, Esquire
Sharon A. King, Esquire
KING & KING, LLC
231 S. Broad Street
Woodbury, NJ 08096
Tel.: (856) 845-3001
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHESTER A. KING and ELIZABETH M. DARDEN, individually and in their capacities as Co-Administrators and Administrators *Ad Prosequendum* of the ESTATE OF BERNARD A. KING, Deceased, | HON. RENEE M. BUMB, U.S.D.J |
| Plaintiffs, | Civil Action No.  03-5863 |
| v. | |
| COUNTY OF GLOUCESTER; GLOUCESTER COUNTY JAIL; MONROE TOWNSHIP; MONROE TOWNSHIP POLICE CHIEF EDWIN BERWICK; CHRISTOPHER HARRIS; MICHAEL McLAUGHLIN; ROBERT DeMARZIO; RICHARD ANDRESS; WILLIAM GLAZE; DOMINIC CAPANNA; JOHN VARALLI; GERALD SHANNON; DEREK BRITT, JAMES SHARP; ANDY McCLAVE; JUSTIN HATTON; STEVEN NEWSOME; BRIAN ZANE; TIMOTHY KRULIKOWSKI; ROBERT BRUNO; RONNIE SANDY; BARRY FELLS, JON RUMPF; CRAIG MONAHAN; and HOWARD WIEMER, individually and/or in their official capacities, jointly, severally, and/or in the alternative, | CERTIFICATION OF SHARON A. KING  AND STANLEY O. KING, IN SUPPORT OF MOTION FOR REASONABLE COUNSEL FEES |
| Defendants. | |

Sharon A. King, Esquire, and Stanley O. King, Esquire, hereby certify as follows:

1.     We are attorneys licensed to practice in the State of New Jersey and the United States District Court for the District of New Jersey.

2.     We represent the plaintiffs in the above-captioned matter.

3.     This is a civil rights and wrongful death action stemming from the death of Bernard A. King on April 9, 2003, while in custody of Gloucester County Jail. Mr. King had a long history of mental illness–specifically schizophrenia and bipolar disorder. At the time of his death, Mr. King was 32 years old and worked as a Human Services Assistant at Ancora Psychiatric Hospital. He earned approximately $32,000 per year. Mr. King maintained an apartment in Lindenwold, New Jersey, but spent significant time at the Monroe Township home of his father, Plaintiff Chester A. King, and his stepmother, Claudette King.

4.     On or around March 26, 2003, Mr. King Bernard ransacked the home of his father and stepmother, throwing furniture and other items out of the house and into the garage and lawn. Suspecting that his son's medication needed adjusting, Chester King pleaded with his son to voluntarily seek psychiatric help. Bernard King refused his father's pleas, causing his father to call Monroe Township Police Department ("MTPD") for assistance. Monroe Township police officers were familiar with Bernard King's mental illness. They had responded to calls from Chester and Claudette King on at least eight prior occasions for disturbances stemming from Bernard's mental illness. Upon the advice of Monroe Township Police Department, Claudette King applied for and was granted a TRO on March 31, 2003. On April 8, 2003, Bernard returned to the home of his father and stepmother and began banging on the door. This resulted in Bernard's arrest by Monroe Township Police Department for violating the restraining order.

2

5.      Bernard was processed by MTPD.  Despite evidence that Bernard was suffering from bipolar disorder and did not have the necessary medication and despite pleas that he needed psychiatric treatment, MTPD transferred custody of Mr. King to  Gloucester County Jail.  MTPD failed to obtain medical clearance and failed to warn the jail of the security risks posed by Mr. King as a result of his mental illness.  Once in the jail, Mr. King was clearly agitated.  This lead to a "scuffle" involving several officers.  Within hours of being admitted to the jail, Mr. King sustained a broken larynx and ultimately died from positional asphyxiation, as a result of being improperly restrained.

6.      At the time of his death, Bernard King had no children.  He was survived by his father, Plaintiff Chester King, and his mother, Plaintiff Elizabeth Darden.

7.      On or around December 10, 2004, the parents of Bernard. King, in their individual capacities and as co-administrators of the Estate of Bernard A. King, sued the County of Gloucester, Gloucester County Jail, New Jersey Department of Corrections, Monroe Township, Monroe Township Police Chief Edwin Berwick, Christopher Harris, Michael McLaughlin, Robert DeMarzio, Richard Andress, William Glaze, Dominic Capanna, John Varalli, Gerald Shannon; Derek Britt, James Sharp, Andy McClave, Justin Hatton, Steven Newsome, Brian Zane, Timothy Krulikowski, Robert Bruno, Ronnie Sandy and Barry Fells.  The parents alleged (1) violation of 42 U.S.C. §1983; (2) assault and battery; (3) negligence; (4) gross negligence; (5) wrongful death and (6) survivorship.

8.      This action was discontinued as to Defendant New Jersey Department of Corrections by way of stipulation and order.

9.      Monroe Township Officers, Jon Rumpf, Craig Monahan and Howard Wiemer were joined as defendants on or around May 10, 2005.

3

10.     This matter was vigorously prosecuted by Plaintiffs' counsel and vigorously defended by Defendants' Counsel.  There were twenty-five defendants, represented collectively by three law firms–Madden, Madden, & Del Duca and Brown & Connery on behalf of the County of Gloucester, Gloucester County Jail, Christopher Harris, Michael McLaughlin, Robert DeMarzio, Richard Andress, William Glaze, Dominic Capanna, John Varalli, Gerald Shannon, Derek Britt, James Sharp, Andy McClave, Justin Hatton, Steven Newsome, Brian Zane, Timothy Krulikowski, Robert Bruno, Ronnie Sandy and Barry Fell (the "Gloucester County defendants") and Allen E. Richardson on behalf of Monroe Township, Monroe Township Police Chief Edwin Berwick, Jon Rumpf, Craig Monahan and Howard Wiemer (the "Monroe Township defendants").

11.     On or around October 12, 2006, the plaintiffs reached a settlement with the Gloucester County defendants.  This occurred some thirty-four months after the Complaint was filed.  The plaintiffs agreed to dismiss their claims against the Gloucester County defendants in exchange for a cash settlement of $3,000,000.00.

12.     The litigation expenses associated with this case to date total $71,207.27, as follows:

| | |
|---|---:|
| Filing Complaint and Service of Process | 671.54 |
| Medical Records | 504.18 |
| Expert Witnesses | 38,514.74 |
| Court Reporting Services | 18,983.69 |
| Mediation Services | 2,248.78 |
| Courier/Express Delivery | 516.07 |
| Municipal Records Processing Fees | 1,002.76 |
| Copying/Scanning/Litigation Support | 6,899.33 |
| Investigative Services | 1,405.90 |
| Teleconference Service | 430.22 |
| Child Support Judgment Search | 30.00 |
| | |
| Total | 71,207.27 |

4

13.     Out of expenses totaling $71,207.27, our firm advance $58,071.49, leaving $13,135.78 to be paid from settlement funds.  After deducting litigation expenses, the plaintiffs are left with a net recovery of **$2,928,792.73.**

14.     Our firm entered into a contingency fee arrangement with Plaintiffs, consistent with New Jersey Court Rule 1:21-7.  We agreed to fees of 33⅓ percent on the first $500,000 recovered, 30 percent on the second $500,000 recovered, 25 percent on the next $500,000 and 20 percent on the next $500,000.   The parties further agreed that additional reasonable fees would be by application to the court pursuant to *Rule* 1:21-7(f).  See Exhibit "A."

15.     Under our fee agreement, our firm is entitled to $541,666.66 on the first $2,000,000 recovered, as follows:

| 33⅓% | x | 500,000 | = | 166,666.66 |
|------|---|---------|---|-----------|
| 30 % | x | 500,000 | = | 150,000.00 |
| 25 % | x | 500,000 | = | 125,000.00 |
| 20 % | x | 500,000 | = | 100,000.00 |
| Total on first $2,000,000 | | | = | 541,666.66 |

16.     Based on the services provided to the plaintiffs and the outcome achieved, we respectfully request an award of reasonable attorney's fees in the amount of $309,597.57 of the remaining  $928,792.73 net recovery, representing 33⅓% of this amount.

17.     If the Court approves our request, our firm will receive total fees of $851,264.23, or 29 percent of the net recovery.   These fees are additional to the reimbursement of litigation expenses of $58,071.49 advanced by our firm.

18.     There are claims of approximately $57,971.89.00 against the Estate of Bernard A. King.   After the payment of these claims, litigation expenses and proposed attorneys fees, the

plaintiffs will receive $2,019,556.61 ($3,000,000.00 - [57,971.89 + 71,207.27 + 851,264.23]. Accordingly, Plaintiffs Chester A. King and Elizabeth M. Darden will each receive **$1,009,778.30**.

19. Prior to signing our retainer agreement, we explained the terms of this agreement to the plaintiffs. They were presented with an took advantage of the opportunity to ask questions regarding the terms of our representation.

20. After the case was settled as to the Gloucester County defendants, the plaintiffs were presented with a comprehensive breakdown and substantiation of expenses incurred to date. The plaintiffs represented to us that they understood the expenses and were satisfied with the reasonableness of the expenses.

21. The plaintiffs were also presented with our proposal for reasonable attorney's fees, including the breakdown of our calculations. Plaintiff Darden requested a copy of *Rule* 1:21-7(f), which was referenced in Paragraph 3(A)(5) of our retainer agreement. A copy of this rule was presented to both plaintiffs.

22. After reviewing the materials presented and having an opportunity to have their questions answered, both plaintiffs expressed satisfaction with the reasonableness of our proposed fees.

23. The amount of attorney's fees requested is fair and reasonable in light of the recovery, the vigorousness of the prosecution and the defense of this case, and the amount of work performed by Plaintiffs' counsel in obtaining the recovery. During our representation of Plaintiffs, a substantial portion of our practice was devoted to the prosecution of Plaintiffs' case. Our work included, without limitation, the following:

(a) Extensive pre-litigation investigation of Bernard King's death.

(b)     Taking of and responding to extensive discovery, including numerous appeals to the Court–and consequential discovery hearings–to compel defendants to comply with discovery obligations.

(c)     Meeting with various fact and prospective expert witnesses and eventually retaining five of these expert witnesses.

(d)     Site inspection of Gloucester County Jail with Plaintiffs' prison consultant and videographer at 4:00 a.m.

(e)     On-site inspection and off-site review of the voluminous records of the Gloucester County Prosecutor's Office.  Extensive communications with Prosecutor's Office relating to release of investigation records.

(f)     Taking thirty-five (35) depositions on behalf on the Plaintiffs and defending/participating in an additional six (6) depositions taken by defense counsel.

(g)     Participation in three settlement conferences at various stages of litigation, each involving extensive preparation of position papers.  Other extensive settlement discussions with counsel for defendants.

(h)     Preparing pleadings, written discovery, and other written communications resulting in excess of 4,700 hours in attorney and staff time and eighteen banker's boxes.

24.     At the time we entered into a fee agreement with the plaintiffs on April 29, 2003, our hourly rate was $200.00.

25.     Our hourly rate has since increased to $300.00, warranted by the successes of our practice.  In 2004, we were recognized by *New Jersey Law Journal* for receiving the ninth largest settlement/award in New Jersey.  At the time, we successfully prosecuted a motor vehicle accident

case that resulted in a settlement of $4,000,000. Liability in this case was vigorously contested as the defendant-driver testified that he hit the Plaintiff's vehicle as a result of the plaintiff traveling on the New Jersey Turnpike at 2:00 a.m. without tail lights.

26.     The present case was similarly vigorously defended by reputable law firms in the southern New Jersey area. The case presented unique challenges as the decedent-plaintiff suffered from bipolar and schizophrenia disorder. He was widely portrayed in the press as an out-of-control, 300-pound, mentally ill inmate who assaulted and terrorized officers attempting to subdue him. The presentation of this case to the grand jury over a period of three days failed to produce any indictments against the officers involved in the incident.

27.     The present case also involved numerous defendants, most of whom were directly involved in the incident that lead to Mr. King's death. The process of preparing for each deposition was arduous and entailed extensive review of documents relating to the particular deponent, as well as other documents from relevant co-defendants and some thirty inmate/third-party witnesses.

28.     Although the claims against the Gloucester County defendants are resolved, litigation against Monroe Township, Monroe Township Police Chief Edwin Berwick, Jon Rumpf, Craig Monahan and Howard Wiemer continues. While fact discovery has ended, the depositions of at least four expert witnesses are expected to be taken.

29.     Plaintiffs' counsel continues to assume substantial risk in the ongoing litigation. If this litigation in unsuccessful, counsel will receive no further compensation although counsel will continue to expend attorney hours on this file.

30.     Our firm consists of only two attorneys.  After being retained by Plaintiffs, we were forced to turn down other cases because of the anticipated demands of this case.  Since April 2003, we have clearly devoted a substantial portion of our practice to this case.

31.     We have discussed our proposed fees with both plaintiffs.  Both Chester King and Elizabeth Darden consent to an award of reasonable attorney's fees in the amount of $851,880.79 plus reimbursement of litigation expenses of $58,071.49.   Affidavit from Chester A. King and Elizabeth M. Darden are attached as Exhibits "B" and "C" respectively.

We hereby certify that the foregoing facts are true to the best of our knowledge, information and belief.  We understand that knowingly false statements contained herein are subject to penalty.


/s/ Sharon A. King                                    /s/ Stanley O. King
Sharon A. King                                         Stanley O. King

# EXHIBIT B

**MADDEN, MADDEN & DEL DUCA**
A Professional Corporation
108 Kings Highway East - Suite 200
P.O. Box 210
Haddonfield, New Jersey 08033
(856)428-9520
Attorneys for Defendants, County of Gloucester,
Gloucester County Jail, Christopher Harris, Michael McLaughlin,
Robert DeMarzio, Richard Andress, William Glaze, Dominic Capanna,
John Varalli, Gerald Shannon, Derek Britt, James Sharp, Andy McClave,
Justin Hatton, Steven Newsome, Brian Zane, Timothy Krulikowski,
Robert Bruno, Ronnie Sandy and Barry Fells

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHESTER A. KING and ELIZABETH M. DARDIN, individually and in their capacities as Co-Administrators and Administrators *ad Prosequendum* of the ESTATE OF BERNARD A. KING, Deceased | CIVIL ACTION NO.03-5863(JBS) |
| Plaintiff(s) | **STIPULATION OF DISMISSAL WITH PREJUDICE AND WITHOUT COSTS AS TO THE COUNTY OF GLOUCESTER, GLOUCESTER COUNTY JAIL, CHRISTOPHER HARRIS, MICHAEL MCLAUGHLIN, ROBERT DEMARZIO, RICHARD ANDRESS, WILLIAM GLAZE, DOMINIC CAPANNA, JOHN VARALLI, DEREK BRITT, JAMES SHARP, ANDY McCLAVE, JUSTIN HATTON, STEVEN NEWSOME, BRIAN ZANE, TIMOTHY KRULIKOWSKI, RONNIE SANDY, and BARRY FELLS** |
| vs. | |
| COUNTY OF GLOUCESTER, ET ALS. | |
| Defendant(s) | |

The matter in difference in the above entitled action having been amicably adjusted by and between the parties, it is hereby stipulated and agreed that defendants, County of Gloucester, Gloucester County Jail, Christopher Harris, Michael McLaughlin, Robert DeMarzio, Richard Andress, William Glaze, Dominic Capanna, John Varalli, Derek Britt, James Sharp, Andy

LAW OFFICES
MADDEN, MADDEN & DEL DUCA
A Professional Corporation
SUITE 200
108 KINGS HIGHWAY EAST
P.O. BOX 210
HADDONFIELD, NEW JERSEY 08033

McClave, Justin Hatton, Steven Newsome, Brian Zane, Timothy Krulikowski, Ronnie Sandy and

Barry Fells are hereby dismissed with prejudice and without costs against either party.

Dated: 1/6/07

STANLEY KING, ESQUIRE
Attorney for Plaintiffs
Chester A. King and Elizabeth Dardin,
individually and in their capacities as
Co-Administrators and Administrators *ad
Prosequendum* of the ESTATE OF BERNARD A.
KING, Deceased

Dated: 2/5/07

By: MICHAEL P. MADDEN, ESQUIRE

Counsel for Defendants, County of Gloucester,
Gloucester County Jail, Christopher Harris,
Michael McLaughlin, Robert DeMarzio,
Richard Andress, William Glaze, Dominic
Capanna, John Varalli, Gerald Shannon,
Derek Britt, James Sharp, Andy McClave,
Justin Hatton, Steven Newsome, Brian Zane,
Timothy Krulikowski, Robert Bruno, Ronnie
Sandy and Barry Fells

Dated: 1/15/07

By: WILLIAM TAMBUSSI, ESQUIRE

Counsel for Defendants, County of Gloucester,
Gloucester County Jail, Christopher Harris,
Michael McLaughlin, Robert DeMarzio,
Richard Andress, William Glaze, Dominic
Capanna, John Varalli, Gerald Shannon,
Derek Britt, James Sharp, Andy McClave,
Justin Hatton, Steven Newsome, Brian Zane,
Timothy Krulikowski, Robert Bruno, Ronnie
Sandy and Barry Fells

LAW OFFICES
ADDEN, MADDEN & DEL DUCA
A PROFESSIONAL CORPORATION
SUITE 200
196 KINGS HIGHWAY EAST
P.O. BOX 210
HADDONFIELD, NEW JERSEY 08033

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

## MINUTES OF PROCEEDINGS

Camden Office                                    Date of proceeding: February 23, 2007

**JUDGE JOEL SCHNEIDER, USMJ**

Return Date:

COURT REPORTER: Disc #16

Motion filed Date:

**TITLE OF CASE:**                    **DOCKET NO. 03-5863(RMB)**
KING, et al
    v.
COUNTY OF GLOUCESTER, et al
**APPEARANCES:**
Stanley King, Esq.
Sharon King, Esq.

**NATURE OF PROCEEDINGS:**
Motion for Attorney's fees by Plaintiff.

**DISPOSITION:**
Ordered Motion granted. Order entered.

DEPUTY CLERK:_____ _____Beth Bagnell_____

CC: CHAMBERS

Time Commenced: 12:00pm  Time Adjourned: 12:30pm

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---

CHESTER A. KING, et al.,

        Plaintiffs,

    v.

COUNTY OF GLOUCESTER, et al.,

        Defendants.

Civil No. 03-5863 (RMB)

---

**OPINION AND ORDER**

    This matter is before the Court on the "Motion by King and King, LLC, for Reasonable Attorney's Fees" [Doc. No. 78].[1]  The Court held a hearing on this motion on February 23, 2007.  For the reasons to be discussed, the motion will be GRANTED.

Background

    The original complaint in this case was filed on December 11, 2003 [Doc. No. 1].  The named plaintiffs are the parents and surviving heirs-at-law of Bernard A. King, deceased.  Plaintiffs claim that Bernard, age 32, was beat to death by the defendants at Gloucester County Jail ("Jail") on April 9, 2003.  Bernard had a history of mental illness and after he was arrested by the Monroe Township Police on April 8, 2003, he was transferred to the Jail.

---

    [1]King and King, LLC will hereafter be referred to as K and K.

Plaintiffs allege that at the Jail the defendants knew Bernard was having a "mental crisis" but nevertheless severely beat him in an elevator.  After the beating, Bernard was allegedly handcuffed and shackled to a bedpost in a holding cell.  Bernard was pronounced dead after he was transferred to Underwood Hospital.  Plaintiffs allege that Bernard's beating and subsequent death was unprovoked and that at no time did Bernard ever strike or assault any of the defendants.  See generally Complaint, ¶¶ 1-48 [Doc. No. 1].

Plaintiffs' Complaint alleges that the defendants violated Bernard's civil rights pursuant to 42 U.S.C. §1983, they committed assault and battery, they were negligent and were grossly negligent.  Plaintiffs filed survivor and wrongful death claims. Two general categories of parties were named in the Complaint: Gloucester County defendants and Monroe Township defendants.  Due to the complexity of this matter plaintiffs' complaint originally named 23 defendants.  Plaintiff's Amended Complaint [Doc. No. 43] added three additional defendants.  Defendants were represented by three law firms.

Since the outset of this litigation the case has been vigorously defended.  To date K and K has taken 35 depositions and participated in an additional 6 depositions taken by defendants. See Certification of Counsel, ¶ 23 [Doc. No. 78-2]. In addition, K and K engaged in substantial pre-litigation investigation, attended numerous court-ordered discovery and settlement conferences,

2

inspected the Jail, obtained and reviewed voluminous relevant records and retained five expert witnesses. K and K worked in excess of 4700 hours on the litigation and its file comprises 18 bankers boxes. Id.

On August 24, 2005, the Gloucester County defendants made a Fed. R. Civ. P. 68 Offer of Judgment to plaintiffs in the amount of $375,000. On or around October 12, 2006, plaintiffs reached a settlement with these same defendants for $3 million.

Discussion

On April 29, 2003, the named plaintiffs and K and K entered into an "Agreement to Provide Legal Services". The agreed upon contingency fee is identical to what is set forth at N.J.R. 1:21-7 and provides as follows:

In any matter where a client's claim for damages is based upon the alleged tortious conduct of another, ..., an attorney shall not contract for, charge or collect a contingent fee in excess of the following limits:

(1) 33 1/3% on the first $500,000 recovered;
(2) 30 % on the next $500,000 recovered;
(3) 25 % on the next $500,000 recovered;
(4) 20 % on the next $500,000 recovered;
(5) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof.

Since plaintiffs settled for an amount in excess of $2 million, K and K applied for a reasonable fee pursuant to N.J.R. 1:21-7(f). This Rule provides that an attorney must make an application to the court for "a reasonable fee in light of all the circumstances."

K and K's motion requests an award of 33 1/3% for the

3

settlement sum in excess of $2 million. According to K and K's calculations, they are entitled to a fee of $541,666.66 on the first $2 million of the settlement sum. K and K avers they incurred $71,207.27 in total costs. After deducting litigation expenses, the plaintiffs are left with a net recovery over $2 million of $928,792.73. K and K requests 33 1/3% of this amount or $309,597. If K and K's fee request is approved it will receive total fees of $851,264.23 (29% of the recovery) and total costs in the amount of $71,207.27, resulting in the total amount of $922,471.50. There are also claims of $57,971.89 against the Estate of Bernard A. King. According to K and K if all of this is taken into account, the net recovery to the two named plaintiffs will be $2,019,556.61 or $ 1,009,778.30 per plaintiff. See Certification, ¶¶11-18.

In considering a fee request under R.1:21-7(f), a court must make a reasonable fee determination in light of all the circumstances. Ehrlich v. Kids of North Jersey, Inc., et al., 338 N.J. Super 442, 446 (2001); Wurtzel v. Werres, 201 N.J. Super 544, 549 (App. Div. 1985); see also Bolle v. Community Memorial Hospital, 145 N.J. Super. 593, 596 (App. Div. 1976) ("Each case must rest on its own peculiar facts, and we do not and cannot now anticipate the vagaries of litigation concerning which [sic] an attorney may seek to establish a [reasonable] fee ....") In determining whether a fee is fair and reasonable, a court should be

guided by R.P.C. 1.5 which identifies the factors to be considered in determining a reasonable fee.   These factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and the ability of the lawyer or lawyers performing the services;
> (8) whether the fee is fixed or contingent.

Two especially important factors courts consider in determining a reasonable fee are whether "the case presented problems which required exceptional skills beyond that normally encountered in such cases or the case was unusually time consuming." See Wurtzel, 201 N.J. Super at 549; Mitzel v. Washington Elec. Corp., 72 F.3d 414, 418 (3d Cir. 1995).

After reviewing the totality of the background of this case in detail, this Court believes that K and K's request for a 33 1/3% fee on the settlement amount above $2 million is reasonable and appropriate.   This case was difficult to litigate and was vigorously contested by the defendants at all stages of the proceedings.   The case was made even more difficult because a grand jury did not indict any of the defendants.   Also, Bernard King was assailed in the press as an out-of-control 300 pound, mentally ill

5

inmate.  In order to convince the Gloucester County defendants to settle for a significant sum, K and K was compelled to conduct significant discovery and to produce comprehensive and credible expert reports.  K and K's time records document the extraordinary time they spent on this case.  The lawyers at K and K worked a total of 4290 hours on this litigation.  <u>See</u> Supplemental Certification, ¶4 [Doc. No. 82].  If K and K billed the time at its hourly rate of $300 per hour (<u>see</u> Certification, ¶25) its bill would total $1.287 million which is more than the fee they are seeking in this application.

This Court is mindful of the significant time and effort plaintiffs' small law office spent on this matter.  It is undoubtedly true that this litigation consumed a large percentage of K and K's resources(without a guarantee of any renumeration) and that this substantial investment detracted from other potentially profitable engagements K and K could accept during the three plus years this case has been pending.  This is documented by K and K: "Our firm consists of only two attorneys.  After being retained by Plaintiffs, we were forced to turn down other cases because of the anticipated demands of this case.  Since  April 2003, we have clearly devoted a substantial portion of our practice to this case."  <u>See</u> Certification of Counsel, ¶30.

This is far from a "run of the mill" case.  The legal issues in this case are complex and the proceedings were "hard-fought."

Nevertheless, plaintiffs' counsel litigated this case with exemplary care and skill. The fact that the Gloucester County defendants settled for a sum eight times higher than the Rule 68 Offer of Judgment they made in August 2005, is a testament to the skill of plaintiffs' counsel. Under these circumstances a 33 1/3% fee on the amount recovered over $2 million is appropriate and justified. See Ehrlich, 338 N.J. Super at 446 (N.J.R. 1:21-7(f) does not limit the maximum recovery above $2 million to twenty percent). K and K is entitled to a reasonable fee commensurate with its excellent result. See Burd v. Hackensack Hosp. Ass'n, 195 N.J. Super. 35, 37-38 (N.J. Super. 1984); Merendino v. FMC Corp., 181 N.J. Super. 503, 511-12 (N.J. Super. 1981); Murphy v. Mooresville Mills, 132 N.J. Super. 197, 199-200 (N.J. Super. 1975).

The Court notes the two named plaintiffs submitted affidavits confirming that they agree with K and K's fee application. However, based upon relevant case law, the Court did not give any significant weight to the affidavits. The Third Circuit has noted the inherent and inevitable conflict that exists when an attorney seeks a fee pursuant to N.J.R. 1.21-7(f). Mitzel, 72 F.3d at 419-20; see also Burd, 195 N.J. Super. at 37 ("It is virtually impossible for lay persons to make informed judgments as to the reasonableness of attorneys' contingent fees, since they do not have the experience required to make a comparative evaluation of the factors involved in a particular case ....") To be sure, however, it is clear that there is no evidence of overreaching by

7

counsel.  It is just as clear that the named plaintiffs have been fully and completely informed of their rights.

Based upon the foregoing, this Court finds there is good cause to grant the Motion of Plaintiffs' Counsel for Reasonable Attorneys' Fees.  The Court finds that the following distribution of the $3 million settlement is reasonable and appropriate:

```
33 1/3% x $500,000.00 =$166.666.66
30%     x $500,000.00 = 150,000
25%     x $500,000.00 = 125,000
20%     x $500,000.00 = 100,000
33 1/3% x $928,792.73 = 309,597.57
TOTAL                 =$851,264.23
```

The Court has also reviewed K and K's breakdown of its litigation costs totaling $71,207.27 and finds that they are reasonable and should be reimbursed.  Accordingly, the Court finds that plaintiffs' attorneys are entitled to receive the gross sum of $922,471.50 from the $3 million settlement.  This represents a total legal fee of $851,264.23 and reimbursement of $71,207.27 in costs.  The balance of the $3 million settlement is payable to the named plaintiffs.

The Court Orders that plaintiffs' counsel shall distribute the settlement funds pursuant to the terms of this Opinion and Order.

S/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge
